## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS
## AT KANSAS CITY, KANSAS

DAVID S. MOORE, Ph.D.,                          )
                                                )
                    Plaintiff,                  )
                                                )
             vs.                                )
                                                )
THE UNIVERSITY OF KANSAS,                       )
       an agency of the State of Kansas,        )
                                                )          ┌─────────────────┐
       *Serve*:                                 )          │  **Electronically** │
                                                )          │     **Filed**     │
       Bernadette Gray-Little, Ph. D., Chancellor, )        └─────────────────┘
       Strong Hall, Room 230,                   )
       1450 Jayhawk Blvd.,                       )
       Lawrence, Kansas 66045-7535,             )
                                                )
             or                                 )
                                                )
       James P. Pottorff, Jr., General Counsel, )          Case No. _____
       Strong Hall, Room 245,                   )
       University of Kansas,                     )          Div. _____
       1450 Jayhawk Blvd.,                       )
       Lawrence, Kansas 66045-7535,             )          Hon. _____
                                                )
JEFFREY S. VITTER, Ph.D.                         )
       in his official capacity and             )
       in his capacity as an individual,        )
                                                )
       *Serve personally at*:                   )
                                                )
       Youngberg Hall, Room 212,                )
       2385 Irving Hill Rd.,                     )
       University of Kansas,                     )
       Lawrence, Kansas, 66045-7535,            )
                                                )
STEVEN F. WARREN, Ph.D.                          )
       in his official capacity and             )
       in his capacity as an individual,        )
                                                )
       *Serve personally at:*                   )
                                                )
       Youngberg Hall, Room 212,                )
       2385 Irving Hill Rd.,                     )
       University of Kansas,                     )
       Lawrence, Kansas 66045-7535,  and        )

1

JOSEPH A. HEPPERT, Ph.D.,       )
      in his official capacity and      )
      in his capacity as an individual,   )
                               )
      *Serve personally at:*        )
                               )
      Youngberg Hall, Room 211,    )
      2385 Irving Hill Rd.,         )
      University of Kansas,         )
      Lawrence, Kansas 66045-7535,   )
                               )
            Defendants.      )

## COMPLAINT FOR DISABILITY DISCRIMINATION AND RETALIATION, WHISTLEBLOWING RETALIATION, DEPRIVATION OF CONSITUTIONAL RIGHTS AND COMMON LAW UNLAWFUL TERMINATION OF EMPLOYMENT

COMES NOW plaintiff David S. Moore, by and through his attorney, and for his claims against defendants University of Kansas, Jeffrey S. Vitter, Steven F. Warren and Joseph A. Heppert states:

### Introduction

1.     This is an action for damages and equitable relief arising from the suspension, hostile work environment and subsequent termination of appointment and employment of plaintiff David S. Moore, Ph.D., as the Director of the University of Kansas Microscopy Analysis and Imaging Laboratory, Lawrence Campus, such suspension, hostile work environment and termination being unlawful and in violation of plaintiff David S. Moore's rights:

     (a)    *Americans with Disabilities Act.*  As a disabled person and an employee of the University of Kansas under the federal Americans with Disabilities Act, as amended, 42 U.S.C. Secs. 12,101, *et seq.,* because of his disability and in retaliation for exercising his rights as a disabled person under such Act;

     (b)    *Rehabilitation Act.*  As a disabled person and an employee of the University of Kansas under the federal Rehabilitation, Comprehensive Services and Developmental Disabilities

Act, 29 U.S.C. *Sec. 701, et seq.*, as amended, because of his disability and in retaliation for exercising his rights as a disabled person under such Act;

(c)     *Contractor Protection from Reprisal for Disclosure Act.*   As a person who exercised his rights as a "whistleblower" and was suspended, subjected to a hostile work environment, discharged and otherwise discriminated against as reprisals for disclosing to management officials and other employees of the University of Kansas information that he reasonably believed was evidence of gross mismanagement of federal contracts or grants, gross waste of federal funds, abuses of authority related to federal contracts or grants, and violations of laws, rules and regulations related to federal contracts in violation of the federal Pilot Program for Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information Act, 41 U.S.C. Sec. 4712, *et seq.*;

(d)     *False Claims Act.*   As a person who exercised his rights as a "whistleblower" and was suspended, subjected to a hostile work environment, discharged and otherwise discriminated against as reprisals for lawful acts done by plaintiff in furtherance of his rights under the federal False Claims Act, 31 U.S.C. Sec. 3730, *et seq.,* including his investigating and requesting information that he reasonably believed was evidence of fraud and mismanagement of federal contracts or grants, including presenting false or fraudulent claims for federal funds and making false records or statements material to a false or fraudulent claim in violation of such Act;

(e)     *Federal Civil Rights Act.*   As a person whose clearly established constitutional right of free speech under the U. S. Const., amends. I and XIV, to speak out on matters of public concern regarding violation of federal laws regarding the expenditure of federal funds have been violated under color of state law by defendants Jeffrey Vitter, Steven Warren and Joseph Heppert in taking various adverse employment actions against plaintiff David S. Moore including but not limited to suspension from employment, creation of a hostile work environment and termination

3

Complaint for Disability Discrimination and Retaliation,
Whistleblowing Retaliation,
Deprivation of Constitutional Rights and
Common Law Unlawful Termination of Employment

of employment in violation of the federal Civil Rights Act of 1871, as amended, 42 U.S.C. Sec 1983, *et seq.*; and

      (f)    *Kansas Common Law Public Policy "Whistleblower" Exception to Employment At-Will Doctrine.*  As a person who exercised his rights as a "whistleblower" and was discharged and otherwise discriminated against as a reprisal for disclosing to management officials and other employees of the University of Kansas information that he reasonably believed were violations of law and University policies regarding misuse of public funds and academic misconduct.

### Parties, Jurisdiction and Venue

*Parties*

2.    Plaintiff David S. Moore, Ph.D., is an individual and resident of the state of Kansas, residing at 17222 W. 70th St., Shawnee, Kansas 66217-9523, which address is plaintiff's mailing address. Plaintiff was employed by defendant University of Kansas as an Assistant Scientist and the Director of the Microscopy Analysis and Imaging Laboratory at its Lawrence, Kansas campus until October 18, 2013.

3.    Defendant University of Kansas ("University") is a state university, state agency and institution of the State of Kansas with principal campuses in Lawrence, Kansas City, Overland Park and Wichita, Kansas.  Defendant University of Kansas may be served with process by service thereof upon Bernadette Gray-Little, Chancellor, at Strong Hall, Room 230, 1450 Jayhawk Blvd., Lawrence, Kansas, or upon James P. Pottorff, Jr., General Counsel, at Strong Hall, Room 245, 1450 Jayhawk Blvd., Lawrence, Kansas.  The University's mailing address is Strong Hall, Room 230, 1450 Jayhawk Blvd., Lawrence, Kansas 66045-7535.

4.    Defendant Jeffrey S. Vitter, Ph. D. ("Vitter"), is Provost and Executive Vice Chancellor for defendant University of Kansas.  Defendant Jeffrey S. Vitter is sued in his official capacity for injunctive relief (Count One) and in his capacity as an individual for money damages and injunctive relief

(Count Five), all as more particularly set forth below.  Defendant Jeffrey S. Vitter may be served with process by service thereof upon him at Youngberg Hall, Room 212, 2385 Irving Hill Rd., University of Kansas, Lawrence, Kansas.  Defendant Jeffrey S. Vitter's mailing address is Youngberg Hall, Room 212, 2385 Irving Hill Rd., University of Kansas, Lawrence, Kansas 66045-7535.

5.     Defendant Steven F. Warren, Ph.D. ("Warren"), is a Professor of Applied Behavioral Science, Senior Scientist and, at all times relevant hereto, was Vice Chancellor for Research and Graduate Studies for the University of Kansas.  Defendant Steven F. Warren is sued in his official capacity for injunctive relief (Count One) and in his capacity as an individual for money damages and injunctive relief (Count Five), all as more particularly set forth below.  Defendant Steven F. Warren may be served with process by service thereof upon him at Youngberg Hall, Room 212, 2385 Irving Hill Rd., University of Kansas, Lawrence, Kansas.  Defendant Steven F. Warren's mailing address is Youngberg Hall, Room 212, 2385 Irving Hill Rd., University of Kansas, Lawrence, 66045-7535.

6.     Defendant Joseph A. Heppert, Ph.D. ("Heppert"), is a Professor and Associate Vice Chancellor for Research and Graduate Studies for the University of Kansas.  Defendant Joseph A. Heppert is sued in his official capacity for injunctive relief (Count One) and in his capacity as an individual for money damages and injunctive relief (Count Five), all as more particularly set forth below. Defendant Joseph A. Heppert may be served with process by service thereof upon him at Youngberg Hall, Room 211, 2385 Irving Hill Rd., University of Kansas, Lawrence, Kansas.  Defendant Joseph A. Heppert's mailing address is Youngberg Hall, Room 211, 2385 Irving Hill Rd., University of Kansas, Lawrence, Kansas 66045-7535.

## *Jurisdiction*

7.     *Federal Question Jurisdiction.*  Subject matter jurisdiction of this court to hear and adjudicate plaintiff's claims is proper as a matter of enforcing the rights of plaintiff under the laws of the United States, particularly:

(a)     The federal Americans with Disabilities Act, as amended, 42 U.S.C. Secs. 12,101, *et seq.;*

(b)     The federal Rehabilitation, Comprehensive Services and Developmental Disabilities Act, 29 U.S.C. *Sec. 701, et seq.*, as amended;

(c)     The federal Pilot Program for Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information Act, 41 U.S.C. Sec. 4712, *et seq.;*

(d)     The False Claims Act, 31 U.S.C. Sec. 3730, *et seq.;* and

(e)     The federal Civil Rights Act of 1871, as amended, 42 U.S.C. Sec 1983, *et seq.,* and the U.S. Const., amends I and XIV, particularly a government employee's clearly established right of freedom of speech on matters of public concern.

8.     *Supplemental Jurisdiction.*  Subject matter jurisdiction of this court to hear and adjudicate plaintiff's claims for assertion of his rights under the Kansas public policy exception to the common law exception to the employee-at-will doctrine is proper as a matter of this court's supplemental jurisdiction under 28 U.S.C. Sec. 1367 as a tort claim by an at-will employee suspended, subjected to a hostile work environment and discharged in retaliation for reporting unlawful conduct under rules, regulations and laws pertaining to the public health, safety and welfare, all as a claim so related to the federal question claims asserted in this action that they form part of the same case or controversy.

*Venue*

9.     Venue is proper before this court under 28 U.S.C. Sec. 1391(b) inasmuch as all defendants are residents of the state of Kansas.  This judicial district is coterminous with and located in the state of Kansas.

**Facts Common to All Counts**

10.     Plaintiff incorporates herein by reference paragraphs 1 through 9 above as though fully set forth herein.

6

COMPLAINT FOR DISABILITY DISCRIMINATION AND RETALIATION,
WHISTLEBLOWING RETALIATION,
DEPRIVATION OF CONSTITUTIONAL RIGHTS AND
COMMON LAW UNLAWFUL TERMINATION OF EMPLOYMENT

*Employment History and Notice of Disability*

11.     Plaintiff began graduate studies at the University of Wisconsin, Madison, Wisconsin, in Neurophysiology under the National Institute of Health ("NIH") Training Program in Neuroscience in 1992.

12.     Plaintiff thereafter continued his studies beginning in 1996 in the NIH Medicinal Chemistry and Pharmacology Training Program at the University of Kansas, Lawrence, Kansas, completing his Master's of Science degree in the Department of Pharmacy, Toxicology and Medicinal Chemistry in 1998 and his Ph.D. degree in Pharmacy and Toxicology at the University of Kansas two years later in 2000.

13.     From 1996 through 2000, before and while engaged in pre-doctoral studies with the University, plaintiff was employed by the University as a pre-doctoral research assistant in the Department of Pharmacology and Toxicology conducting research in drug discovery using a variety of scientific methods, including but not limited to, physiological imaging or neuronal responses in pharmaceutical characterizations, optical methods of monitoring live cell neuronal biophysics and the pharmacology and toxicology of glutamate-sensitive neuronal activity and neurotoxicity.

14.     While working in the Department of Pharmacology and Toxicology as aforesaid, plaintiff advised his superior and advisor that he had been diagnosed with Attention Deficit Disorder, also known as Attention Deficit Disorder/Attention Deficit and Hyperactivity Disorder ("ADD/ADHD"). Plaintiff's advisor was informed of the disability after plaintiff requested special conditions in which to re-take a test given in a graduate level cell biology course in the Department of Molecular Biosciences. The University had been notified of plaintiff's ADD/ADHD condition prior to that date through what has since been called the KU Academic Achievement and Access Center. Both course instructors of the cell biology class were informed of plaintiff's ADD/ADHD disability, which already had been registered with the Academic Achievement & Access Center.

COMPLAINT FOR DISABILITY DISCRIMINATION AND RETALIATION,
WHISTLEBLOWING RETALIATION,
DEPRIVATION OF CONSTITUTIONAL RIGHTS AND
COMMON LAW UNLAWFUL TERMINATION OF EMPLOYMENT

15. Accommodations were provided. Plaintiff's advisor, although supportive, advised plaintiff not to inform anyone else at the University of his condition because it could be viewed negatively, preclude him from opportunities at the University and affect his chances of success.

16. ADD/ADHD can affect, *inter alia,* an individual's ability to concentrate, avoid distractions, get organized, meet deadlines, set priorities, manage time, focus on tasks, speak impulsively without first fully processing thoughts, observe social norms, obsess and persist in correcting perceived wrongs, and deal with anxiety and restlessness.

17. Plaintiff at that time, thereafter and through the current day has experienced symptoms referred to in the preceding paragraph, but over the years has managed them with prescribed medications, counseling and behavior management skills.

18. From 2003 through 2005, while engaged in post-doctoral studies in the Department of Chemistry at the University, plaintiff was employed by the University as a post-doctoral research associate conducting research in various areas, including but not limited to atomic force microscopy of single nuclear pore complexes, biophysics, development of scanning probe microscopy methods and optical imaging assays for single molecule characterization in biological membranes.

19. While working in the Department of Chemistry as aforesaid, plaintiff advised his superior and post-doctoral advisor that he had been diagnosed with ADD/ADHD, which sometimes contributed to taking longer time to write up papers for publication and which affected plaintiff's ability to prepare, long in advance, abstracts and posters for presentation at national meetings and poster presentations. Plaintiff was advised by his superior and post-doctoral advisor not to inform anyone else with the University of his ADD/ADHD condition because it could be viewed negatively and affect his chances for success with the University.

20. Beginning in 2005, plaintiff was appointed Assistant Scientist and Director of the University's Microscopy Analysis and Imaging Laboratory ("MAI Lab"), a laboratory equipped with

8

highly sophisticated electron and other advanced microscopic and scanning instruments and equipment used to support sophisticated research work conducted by University professors and graduate students for scientific training, education and research funded with University funds, federal grants and corporate research grants and private sector industry sponsored work, primarily in materials and life sciences, including grant and fee-for-service work to produce income for the University in addition to scientific training, education and research for University students and researchers.

21.     The MAI Lab is one of eleven "core" laboratories of the University. "Core" laboratories are specialized, highly technical shared-resource laboratories available to University faculty and scientists with specialized instruments, equipment, processes, techniques and trained professionals that otherwise would be too expensive for individual departments to equip and maintain, *e.g.,* electron microscopy and analytical imaging, mass spectrometry and analytical proteomics, molecular graphics and modeling, x-ray crystallography, flow cytometry, nuclear magnetic resonance and high throughput screening.

22.     Shortly after being appointed Director of the MAI Lab, plaintiff informed his superior and advisor that he that he had been diagnosed with ADD/ADHD, which sometimes caused him to be late with written administrative reports to the Center for Research and Graduate Studies, but was advised by such superior and advisor not to inform anyone else with the University of his condition because it could be viewed negatively and affect his chances for success with the University.

23.     Plaintiff's work in the MAI Lab included molecular and atomic level assay and methods development, experimental design and optimization, computational analysis for electron beam spectroscopy microscopy, tomography and diffraction, cation beam microscopy, dual-beam scanning electron microscope/focused ion beam microscopy and spectroscopy, tomography, diffraction, milling, scanning probe microscopy, fluorescence microscopy, high content imaging, fluorescence activated cell-sorting and imaging cytometry, electron beam gas deposition, cryo-electron transmission electron microscopy and environmental scanning electron microscopy.

9

24.     As Director of the MAI Lab plaintiff improved the laboratory from a typical university electron microscopic teaching facility to a highly technical teaching, training and hard-science research facility with several million dollars in additional state-of-the art electron microscopic instruments and equipment, funded with federal government and other grants for purchasing such instruments and equipment.

25.     As Director of the MAI Laboratory, plaintiff improved the MAI Lab physically and operationally from a typical research service core facility with only three instruments, into an intensive microscopy and spectroscopy educational resource with fourteen major instruments. For example:

(a)     The facility went from being equipped with approximately $1.0 million worth of older equipment for collecting pictures to a highly technical teaching, training, research and quantitative spectroscopic imaging facility with over $6.5 million in new equipment;

(b)     Funding sources for new equipment secured by plaintiff ranged from prestigious federal agencies including the National Institute of Health and the National Science Foundation to the Defense Advance Research Projects Authority, the Department of Defense and the Department of Energy;

(c)     The MAI Lab's users increased in number from two to three visiting scientists or students per week, to two to three researchers per hour daily;

(d)     Plaintiff was a primary investigator at the University both performing original research and writing both research and instrument grant proposals;

(e)     Approximately $5.5 million dollars in equipment was added to the MAI Lab between 2006 and 2013;

(f)     The MAI Lab at the time of plaintiff's termination of employment supported a registered list of over 700 users of the laboratory since its opening of the laboratory in 2005; and

10

(g)     Plaintiff educated hundreds of undergraduate, graduate, and post-doctoral researchers in the science of spectroscopic imaging as well as professors and scientists of multiple Kansas businesses relying on such technologies for their research and development operations;

(h)     Plaintiff secured federal and other grant funds to acquire and install several million dollars in new state-of-the-art electron microscopic and related instruments and equipment;

(i)     Plaintiff restored to service electron microscopic and related instruments and equipment in the MAI Lab that long had been unused due to not being upgraded or receiving maintenance prior to plaintiff's becoming Director of the MAI Lab;

(j)     Plaintiff maintained electron microscopic and related instruments and equipment with in-house capabilities rather than spending University or other funds for outside vendor service contracts;

(k)     Plaintiff significantly increased use of the MAI Lab by University faculty research scientists to the point that MAI Lab time frequently was fully booked several weeks in advance;

(l)     Plaintiff trained undergraduate and graduate students in the operation and use of sophisticated electron microscopic and related instruments and equipment; and

(m)     Plaintiff significantly increased contracting with outside private sector clients and other universities for income-producing research projects.

26.     As Director of the MAI Lab, plaintiff and his laboratory staff pioneered significant, nationally recognized developments in applied electron microscopy analysis and imaging used by University professors and researchers, enhancing the University's regional, national and international reputations, including hosting and sponsoring the work of visiting Fulbright Scholars, assisting in the development of the directorship and microscopy facility at Wichita State University, and acting as a

11

regional resource for nano-science related research being performed at Kansas State University, Kansas University's Medical Center, researchers at the University of Missouri-Kansas City, and providing solutions for multiple nanoscience-based commercial enterprises. The MAI Lab was the only such nanoscience facility offering students full 24 hours a day/seven days a week access during school terms to such advanced instrumentation.

27.     During plaintiff's tenure as Director of the MAI Lab, plaintiff and his staff supported sophisticated research by University faculty and scientists leading to publication of such persons' research, and corresponding enhanced national and international reputations for the University, in highly regarded national and international peer-reviewed scientific journals including, but not limited to, *Nature Communications*, the *Proceedings of the National Academy of Sciences*, the *Journal of Biological Chemistry*, the *Journal of the American Chemical Society*, *Applied Physics Letters*, *Human Vaccines*, and *Infection and Immunity*.

28.     Additional publishing achievements during plaintiff's tenure as Director of the MAI Lab include the following:

(a)     Plaintiff was co-author of a textbook chapter on "Near-Field Optical Microscopy;"

(b)     An additional paper co-authored by plaintiff was cited as one of the 20 most read papers in *Infection and Immunity*;

(c)     An additional paper was cited as reasons for a University student to receive a "Young Investigator of the Year" designation from the *Journal of Molecular Neuroscience*; and

(d)     An additional paper published in *Nature Communications* resulted in a patent for plaintiff and Kansas State University for nanotomy-based production of transferable and dispersible graphene nanostructures of controlled shape and size.

29.     As Director of the MAI Lab, plaintiff increased his productive output, regularly publishing work in significant national scientific journals, most recently, six in 2012, five so far for 2013, and two more that were being assembled for publication at the time of plaintiff's termination of employment. Further:

(a)     Plaintiff published over 25 peer-reviewed articles while serving as Director of the MAI Lab;

(b)     Over 100 peer-reviewed articles acknowledge plaintiff's significant contributions to their publication;

(c)     Plaintiff has published in prestigious journals such as *Nature Communications*, and the *Proceedings of the National Academy of Sciences* on topics ranging from molecular biology, cancer, pharmaceuticals development, bioengineering and drug discovery to alternative algae-derived alternatives to fossil fuels and solar cell development, geology, and paleontology; and

(d)     Plaintiff is listed as one of four co-principal investigators on a National Science Foundation Major Research Instrumentation Award resulting the purchase of a $2.3 million multi-disciplinary instrument that permits simultaneous chemical mapping of biological and materials samples in two dimension, three dimension and time-lapse modes of operation.

30.     During plaintiff's tenure as Director of the MAI Lab, his work, and that of his staff, was highly regarded.  It was noted for dedication to excellence and innovative approaches to addressing scientific problems brought to plaintiff by University faculty and scientists.  Plaintiff's and his staff's work was regarded as having helped push the research of University faculty and scientists relying on microscopic imaging technology much farther than they otherwise would have gone.  The MAI Lab under plaintiff's direction was recognized as having a broad impact in materials and life science research.

Plaintiff's superior had the utmost respect for the quality of science produced by plaintiff and his laboratory staff.

31.     Further, the MAI Lab under plaintiff's direction has been regionally recognized as having a broad impact across the life sciences, natural sciences, materials sciences and engineering.

*Whistleblowing*

. . . Federal Funds Mismanagement and Noncompliance . . .

32.     As the MAI Lab's work and capabilities increased following plaintiff's appointment as its Director, plaintiff in good faith became increasingly concerned about the University's financial management and accountability for the MAI Lab, handled by the University's Research and Graduate Studies program's Business Office, including the following:

(a)     Episodic billing practices resulting in uncollected revenues for the use of MAI Lab electron microscopic and related instruments and equipment and staff time funded with federal grant funds awarded to, or charged to the grants of other investigators receiving federal grant monies that were contracting work or instrument use with the MAI Laboratory or additional KU core facilities and other funds;

(b)     Inconsistent revenue collection practices resulting in uncollected revenues for the use of MAI Lab electron microscopic and related instruments and equipment and staff time funded with federal grant funds awarded to, or charged to the grants of other investigators receiving federal grant monies that were contracting work or instrument use with the MAI Laboratory or additional KU core facilities and other funds;

(c)     Not properly charging for the use of MAI Lab electron microscopic and related instruments and equipment and MAI Lab staff time funded with federal grant funds awarded to, or charged to the grants of other investigators receiving federal grant monies that were

14

Complaint for Disability Discrimination and Retaliation,
Whistleblowing Retaliation,
Deprivation of Constitutional Rights and
Common Law Unlawful Termination of Employment

contracting work or instrument use with the MAI Laboratory or additional KU core facilities and other funds;

(d)     Charging administration, overhead and related expenses to the MAI Lab which, on information and belief, did not comply with federal requirements for the proper expenditure of federal grant funds awarded to, or charged to the grants of other investigators receiving federal grant monies that were contracting work or instrument use with the MAI Laboratory or additional KU core facilities.;

(e)     Possible fictitious charging to federal and other grant fund accounts for the use of electron microscopic and related instruments and equipment funded with federal grant funds awarded to, or charged to the grants of other investigators receiving federal grant monies that were contracting work or instrument use with the MAI Laboratory or additional KU core facilities not in fact used; and

(f)     Not having established, uniform procedures for contracting with outside private sector industry clients and others for research and other work performed by the MAI Lab, all of which could result in diversion, misapplication and unaccountability of federal and other funds for non-qualifying projects, purposes and expenditures; diversion, misapplication and use of federally funded equipment and materials for non-qualifying projects, purposes and expenditures; inflated expenses for facilities and administration; and wasteful disposition of federal and other funds on otherwise qualifying projects, purposes and expenditures; (altogether, "Federal Funds Mismanagement and Noncompliance").

33.     Plaintiff in good faith reported his concerns about such Federal Funds Mismanagement and Noncompliance to the University administration, particularly Vice Provost Joseph Heppert and former Vice Chancellor for Research and Graduate Studies Steven Warren.

34.     Plaintiff's concerns about such Federal Funds Mismanagement and Noncompliance were not, in plaintiff's good faith belief, timely or satisfactorily rectified and plaintiff so informed his University superiors.

. . . MAI Lab Renovation Project Waste . . .

35.     In addition, as the MAI Lab's work and capabilities increased following plaintiff's appointment as its Director, plaintiff in good faith expressed concern to his superiors about the amount and condition of physical space for the MAI Lab.

36.     The need for improvements to the MAI Lab's physical space was acknowledged by University administration, resulting in plans for the expansion and renovation of the MAI Lab space.

37.     The renovations to the MAI Lab's space were planned, budgeted and supervised by the University's Design and Construction Management office.

38.     The MAI Lab renovations as planned, budgeted and supervised by the Design and Construction Management office encountered problems resulting in needless waste in the use of federal and other funds, in plaintiff's good faith belief, including the following:

(a)     Renovations were not performed in a workmanlike manner,

(b)     Renovations were not completed in a timely manner; and

(c)     Renovations were not completed for the budgeted amounts submitted by the University's Design and Construction Management office

(altogether, "MAI Lab Renovation Project Waste").

39.     Plaintiff in good faith reported his concerns about such MAI Lab Renovation Project Waste to the University administration, particularly Associate Vice Chancellor Joseph Heppert.

40.     Plaintiff's concerns about such MAI Lab Renovation Project Waste were not, in plaintiff's good faith belief, timely or satisfactorily rectified and plaintiff so informed his University superiors.

16

. . . Academic Misconduct . . .

41.     Further, as the MAI Lab's work and capabilities increased following plaintiff's appointment as its Director, plaintiff in good faith became concerned about academic misconduct by University faculty and researchers using MAI Lab instruments and staff time, particularly, plagiarism and faculty not providing authorship credit to the MAI Lab and its personnel for research projects successfully submitted for peer-reviewed publications ("Academic Misconduct").

42.     Plaintiff in good faith reported his concerns about such Academic Misconduct to the University administration, particularly Associate Vice Chancellor Joseph Heppert.

43.     Plaintiff's concerns about such Academic Misconduct were not, in plaintiff's good faith belief, timely or satisfactorily rectified and plaintiff so informed his University superiors.

*Suspension and Termination in Retaliation*

44.     On July 26, 2013, Vice Chancellor Steven Warren by letter informed plaintiff that he was prepared to recommend to Vice Chancellor Jeffrey Vitter that plaintiff be placed on a four-week unpaid suspension as Assistant Scientist and Director of the MAI Lab under the University's formal disciplinary policies and procedures due to a series of disruptive and unprofessional behaviors that had occurred over the past few years, including particularly plaintiff's aforesaid good faith expressions of concern about the Federal Funds Mismanagement and Noncompliance as handled by the Research and Graduate Studies program Business Office; the MAI Lab Renovation Project Waste as planned, budgeted and supervised by the Design and Construction Management office; the Academic Misconduct by University faculty and researchers using MAI Lab instruments and staff time; as well as plaintiff's not submitting timely annual self-review materials.

45.     Over the course of his eight-year employment as Assistant Scientist and Director of the MAI Lab, as well as the preceding ten years as a pre-doctoral research assistant and post-doctoral research associate, while from time to time informally counseled about strident communications to others,

attributable to plaintiff's ADD/ADHD condition, plaintiff had never been disciplined under the University's formal disciplinary policies and procedures.

46.     The University's formal disciplinary policies and procedures, under Article VI of its "Faculty Code of Rights, Responsibilities and Conduct," include levels of sanctions, namely, in increasing levels of severity, (a) written warning, (b) restitution in the event of damage to or misappropriation of property, (c) censure as a reprimand, (d) suspension and (e) dismissal.

47.     Plaintiff as of July 26, 2013, had never received a warning, restitution directive or censure under the University's disciplinary policies and procedures under the aforesaid "Faculty Code of Rights, Responsibilities and Conduct."

48.     In response to the Steven Warren July 26, 2013 letter, plaintiff by letters dated August 6, 2013, August 16, 2013, and August 30, 2013, as well as meetings with University administrators on August 6, 2013 and August 16, 2012:

(a)     Explained the facts and circumstances surrounding Dr. Warren's July 26, 2013 letter's allegations as taken out of context, incorrect or otherwise as truthful assertions made by plaintiff;

(b)     Again informed the University of his ADD/ADHD diagnosis and disability;

(c)     Acknowledged that, while unaware at the time, he could see how individuals could perceive his remarks, attributable to his ADD/ADHD diagnosis and disability,   as inappropriate; and

(d)     Requested and proposed an accommodation plan for his ADD/ADHD diagnosis and disability including (i) his undertaking enhanced ADD/ADHD treatment, (ii) regular monitoring meetings with University personnel to assess his progress and (iii) his accepting a formal warning under the University's disciplinary policies and procedures.

49.     While plaintiff believes he has done well managing his ADD/ADHD condition over the years while employed with the University, the instances of alleged disruptive and unprofessional conduct to the extent seen as inappropriate by others are instances of remaining ADD/ADHD behaviors including persistence correcting perceived wrongs and speaking impulsively and bluntly with supervisory personnel in positions to correct such perceived wrongs and who are otherwise responsible for the efficient, cost effective, ethical and lawful operation of University activities.

50.     Plaintiff is unaware of and has not been accused of alleged instances of disruptive and unprofessional conduct with others in the University community.  Indeed, plaintiff is liked and respected by his peers, faculty and students.  Any alleged instances of disruptive and unprofessional conduct have been with University administrative personnel in positions to investigate and rectify the aforesaid Federal Funds Mismanagement and Noncompliance, MAI Lab Renovation Project Waste and Academic Misconduct but who have failed and refused to do so.

51.     It is the University's stated policy to recognize and accommodate disabilities under its "Disability and ADA Issues" policy, approved 1990, including not discriminating against qualified individuals with disabilities in hiring, firing and other terms, conditions and privileges of employment, including discipline and making accommodations to known disabilities of qualified employees if it will not impose an undue hardship on the operation of the University's business.

52.     Notwithstanding plaintiff's informing the University of his ADD/ADHD disability; the University's stated policy on non-discrimination and accommodating disabilities; plaintiff's requesting and proposing an accommodation plan for his ADD/ADHD disability; and otherwise explaining the University's allegations as taken out of context, incorrect or otherwise truthful and good faith assertions made by plaintiff about the Federal Funds Mismanagement and Noncompliance, MAI Lab Renovation Project Waste and Academic Misconduct; the University, by and through defendants Jeffrey Vitter, Steven Warren and Joseph Heppert, unilaterally refused to discuss the matter further and by a letter dated

September 19, 2013 from Jeffrey Vitter placed plaintiff on a four-week unpaid suspension as Assistant Scientist and Director of the MAI Lab.

53.     Instead of engaging in a meaningful, interactive process with plaintiff about his requested and proposed accommodation, the University unilaterally suspended plaintiff as aforesaid, at this time also including consideration of additional, alleged misconduct by plaintiff following his again advising defendants on August 6, 2013, of his ADD/ADHD disability.  Notwithstanding unilateral imposition of such disciplinary action, the University advised plaintiff to contact the University's Office of Institutional Opportunity and Access regarding any claimed disability even though defendants had already denied plaintiff's requests for accommodation.

54.     Contacting the University's Office of Institutional Opportunity and Access for accommodation would have been an exercise in futility and a useless act since defendants had already refused to consider plaintiff's disability and imposed the suspension discipline.  In any event, even if the defendants had not already refused to consider his disability, the University shortly thereafter terminated plaintiff's employment, described below, before he had an opportunity to complete other tasks assigned to him by defendants in order to avail himself of any benefit with the University's Office of Institutional Opportunity and Access.

55.     On October 3, 2013, plaintiff appealed his suspension to the University's Faculty Rights Board by filing a written "Notice of Appeal for Review of Disciplinary Action Together with Statement in Support" based on his requesting and proposing an accommodation for his ADD/ADHD disability and his explaining that the University's allegations were taken out of context, incorrect or were otherwise good faith and truthful assertions made by plaintiff regarding the Federal Funds Mismanagement and Noncompliance, the MAI Lab Renovation Project Waste and the Academic Misconduct.

56.     While plaintiff's appeal to the University Faculty Rights Board was pending, the University, notwithstanding its knowledge of plaintiff's ADD/ADHD disability, intensified its criticisms

of plaintiff, which knowingly made plaintiff's execution of his job responsibilities more difficult and aggravated his ADD/ADHD symptoms and corresponding ability to perform his employment responsibilities, thereby creating a hostile work environment for plaintiff.

57.    Ten days later, on Tuesday, October 14, 2013, while plaintiff's appeal was pending before the University's Faculty Rights Board, plaintiff was called to the office of Joseph Heppert ostensibly to discuss a contracting matter plaintiff had originated with a private sector industry client.

58.    When he arrived at Joseph Heppert's office, however, nothing was said about the private sector contracting matter.  Instead, plaintiff was provided with a letter dated October 14, 2013 from Steven Warren informing plaintiff that his position was being terminated effective that Friday, October 18, 2013, that he immediately was to return any University property to the University, and that he immediately was barred from being in the MAI Lab unless he was authorized in advance or was requested by University personnel to perform work to winding up or transitioning existing projects.

59.    The October 14, 2013 letter from Steven Warren stated that Warren had considered the future of the MAI Lab and had determined that it was in the best interests of the Research and Graduate Studies and the University that plaintiff's position with the University be terminated.

60.    The reason given for termination of plaintiff's position, namely, that the future of the MAI Lab had been considered and that it was in the best interests of the Research and Graduate Studies program and the University that plaintiff's position with the University be terminated, was false and pretextual.  The real reasons for the termination were:

   a.    Retaliation for plaintiff's persistently expressing good faith concerns, protected under University policy, state and federal law, about the Federal Funds Mismanagement and Noncompliance, the MAI Lab Renovation Project Waste and Academic the Misconduct; and

   b.    Retaliation and discrimination against plaintiff because of his disability including not observing or complying with plaintiff's exercising his rights as a disabled person protected

21

under University policy, state and federal law to seek accommodation and creating a hostile work environment.

61.     In earlier suspending plaintiff without pay for four weeks without undertaking any meaningful interactive discussion with plaintiff about his disability and request for accommodation and instead labeling plaintiff's conduct as unprofessional and disruptive, defendants ignored plaintiff's disability.

62.     In terminating plaintiff's employment as aforesaid while his appeal was pending with the Faculty Rights Board, the University avoided and deprived plaintiff David S. Moore of his right to appeal his suspension to the University's Faculty Rights Board, a forum in which he would have the opportunity to have his claims of discrimination, retaliation, mismanagement, waste, noncompliance and academic misconduct publicly aired or otherwise memorialized in a public forum.

63.     On information and belief, defendants have engaged in a pattern and practice of accusing University faculty and academic staff in the University community who have asserted rights under University policy, state and federal law, particularly expressions of concern about proper and lawful expenditure of grants and funds, as individuals engaging in unprofessional and disruptive conduct for the purpose of inappropriately intimidating, disciplining, discharging or otherwise negatively affecting such members of the University community.

### Federal Laws

64.     Under the federal Americans with Disabilities Act of 1990, as amended 2008, 42 U.S.C. Secs. 12,101, *et seq.* ("ADA"), the University is an "employer," defendants Jeffrey Vitter, Steven Warren and Joseph Heppert are "persons," and plaintiff is a "qualified individual" with a "disability."   As such, defendants Vitter, Warren and Heppert are subject to the injunctive relief requirements of the ADA and plaintiff is entitled to the protections of the ADA.

65.     Under the federal Rehabilitation Act of 1973, 29 U.S.C. Secs. 701, *et seq.* ("Rehabilitation Act"), the University is a "university," defendants Jeffrey Vitter, Steven Warren and Joseph Heppert are "persons," and plaintiff is a "qualified individual" with a "disability."   As such, the University is subject to the requirements of the Rehabilitation Act and plaintiff is entitled to the protections of the Rehabilitation Act.

66.     Under the federal False Claims Act, 31 U.S.C. Secs. 3729, *et seq.* ("False Claims Act"), plaintiff is an "employee," the acts of plaintiff regarding the Federal Funds Mismanagement and Noncompliance, MAI Lab Renovation Project Waste and Academic Waste were "lawful" and such acts were "in furtherance of an action" under the federal False Claims Act.  As such, the University is subject to the requirements of the federal False Claims Act and plaintiff is entitled to the protections of the federal False Claims Act.

67.     Under the federal Contractor Protection from Reprisal Act, 41 U.S.C. Secs. 4712, *et seq.* ("Reprisal Act"), the University is a "grantee," both after January 2, 2013 and, upon information and belief, before January 2, 2013, defendants Jeffrey Vitter, Steven Warren and Joseph Heppert are "employees" of the University, and plaintiff is an "employee" of the University,  As such, defendants are subject to the requirements of the Reprisal Act and plaintiff is entitled to the protections of the federal Reprisal Act.

**Count One**
**Americans with Disabilities Act, 42 U.S.C. Secs. 12,101, *et seq.***

For Count One of his Complaint for Disability Discrimination and Retaliation, Whistleblowing Retaliation, Deprivation of Constitutional Rights under Color of State Law, and Common Law Unlawful Termination of Employment, said count asserted against defendants Jeffrey Vitter, Steven Warren and Joseph Heppert for injunctive relief in their official capacities under the federal Americans with Disabilities Act, 42 U.S.C. Secs. 12,101, *et seq.*, plaintiff David S. Moore states as follows:

68.     Plaintiff incorporates by reference the contents of paragraphs 1 through 67 of this complaint as though set forth fully herein.

69.     Plaintiff David S. Moore is a "qualified individual" as defined in the Americans with Disabilities Act, 42 U.S.C. Secs. 12,101, *et seq.* ("ADA") in that he is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position of Assistant Scientist and Director of the MAI Lab.

70.     The University of Kansas is a "covered entity" and an "employer" as defined in the ADA in that it is engaged in an industry affecting commerce that has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

71.     Defendants Jeffrey Vitter, Steven Warren and Joseph Heppert at all times relevant to the claims set forth in this complaint were managerial officials of the University with supervisory authority over plaintiff David S. Moore and who in fact supervised the work of plaintiff David S. Moore as Assistant Scientist and Director of the MAI Lab.

72.     Plaintiff David S. Moore was diagnosed with Attention Deficit Disorder/Attention Deficit Hyperactivity Disorder ("ADD/ADHD") while an employee of defendant University of Kansas and continued to suffer ADD/ADHD through and including the date of his termination of employment by and through the acts of defendants Jeffrey Vitter, Steven Warren and Joseph Heppert as managerial officials of the University.

73.     Plaintiff's ADD/ADHD constituted a "disability" as defined in the ADA in that his ADD/ADHD was a mental impairment that substantially limited one or more major life activities of plaintiff David S. Moore including but not limited to learning, concentrating, thinking, communicating and working and major bodily functions including but not limited to neurological and brain functions.

74.     More particularly, plaintiff's ADD/ADHD affected his ability to concentrate, avoid distractions, get organized, meet deadlines, set priorities, manage time, focus on tasks, speak impulsively

without first fully processing thoughts, observe social norms, obsess and persist in correcting perceived wrongs, and deal with anxiety and restlessness, notwithstanding mitigation with prescription medication, counseling and learned behavioral modifications.

75.     Plaintiff David S. Moore informed University personnel, as aforesaid, of his ADD/ADHD condition.

76.     Plaintiff David S. Moore requested and suggested reasonable accommodations, as aforesaid, of his ADD/ADHD condition.

77.     Notwithstanding plaintiff David S. Moore's requesting and suggesting reasonable accommodations for his ADD/ADHD condition defendants Jeffrey Vitter, Steven Warren and Joseph Heppert as managerial officials of the University refused to extend or even discuss extending any accommodations to plaintiff David S. Moore; failed to engage in an interactive process with plaintiff David S. Moore to develop reasonable accommodations for plaintiff David S. Moore's disability; suspended plaintiff David S. Moore's employment without pay for a period of four weeks; intensified demands upon plaintiff David S. Moore in a manner known to plaintiff David S. Moore's superiors with the University to intensify the conditions of plaintiff David S. Moore's ADD/ADHD disability, thereby creating a hostile work environment; and shortly thereafter terminated plaintiff David S. Moore's employment.

78.     The reasons given by defendants Jeffrey Vitter, Steven Warren and Joseph Heppert as managerial officials of the University for terminating plaintiff David S. Moore's employment were a consideration of the MAI Lab's future and plaintiff's continued employment as not in the best interests of the MAI Lab and the University's Research and Graduate Studies program.

79.     Such reasons were pretextual.  Defendants Jeffrey Vitter, Steven Warren and Joseph Heppert as managerial officials of the University suspended plaintiff's employment; intensified demands upon plaintiff David S. Moore in a manner known to plaintiff David S. Moore's superiors with the

University to intensify the conditions of plaintiff David S. Moore's ADD/ADHD disability, thereby creating a hostile environment; and terminated plaintiff David S. Moore's employment on October 14, 2013, because of his disability and in retaliation for his seeking to exercise his rights as a disabled person under the Americans with Disabilities Act.

80.     On or about December 5, 2013, plaintiff David S. Moore filed a charge of employment discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. Sec. 12,10*1, et seq.*, and the federal Rehabilitation Act, 29 U.S.C. *Sec. 701, et seq.*, with the offices of the Equal Employment Opportunity Commission located in Kansas City, Kansas, dually filed with the offices of the Kansas Human Rights Commission in Topeka, Kansas, alleging that defendant University of Kansas, by and through defendants Jeffrey Vitter, Steven Warren and Joseph Heppert as managerial officials of the University, discriminated against him under such Acts because of his disability, namely, Attention Deficit Disorder/Attention Deficit Hyperactivity Disorder in terms and conditions of employment, specifically, suspension without pay on September 19, 2013; a hostile work environment thereafter; and termination of employment on October 14, 2013 (effective October 18, 2013) without accommodating his disability and otherwise in retaliation for his exercising his rights under the Americans with Disabilities Act, 42 U.S.C. Sec. 12101, et seq.; the federal Rehabilitation Act, 29 U.S.C. *Sec. 701, et seq.*; and the Kansas Act Against Discrimination, K.S.A. Sec. 44-1001, *et seq.*

81.     On or about June 11, 2014, with no action having been taken by the Equal Employment Opportunity Commission or the Kansas Human Rights Commission under plaintiff's dual filing, plaintiff David S. Moore requested a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.

82.     On or about June 19, 2014, plaintiff David S. Moore received from the Equal Employment Opportunity Commission a Notice of Right to Sue letter.

83.     Defendants Jeffrey Vitter, Steven Warren and Joseph Heppert as managerial officials of the University have violated the rights of plaintiff David S. Moore under the Americans with Disabilities Act by refusing to extend or even discuss extending any accommodations to plaintiff David S. Moore for his disability; failing to engage in an interactive process with plaintiff David S. Moore to develop reasonable accommodations for plaintiff David S. Moore's disability; suspending plaintiff David S. Moore's employment without pay for a period of four weeks; intensifying demands upon plaintiff David S. Moore in a manner known to plaintiff David S. Moore's superiors with the University to exacerbate the conditions of plaintiff David S. Moore's ADD/ADHD disability, thereby creating a hostile environment; and shortly thereafter terminating plaintiff David S. Moore's employment on October 14, 2013, and in so doing avoided and deprived plaintiff David S. Moore of his right to appeal his suspension to the University's Faculty Rights Board, a forum in which he would have the opportunity to have his claims of discrimination, retaliation, mismanagement, waste, noncompliance and academic misconduct publicly aired or otherwise memorialized in a public forum.

WHEREFORE, plaintiff David S. Moore requests that judgment be entered in his favor against defendants Jeffrey Vitter, Steven Warren and Joseph Heppert in their official capacities as managerial officials of the University for (a) reinstatement to his position as Assistant Scientist and Director of the Microscopy Analysis and Imaging Laboratory; (b) reasonable attorneys' fees; (c) equitable relief as may be appropriate to eliminate any patterns and practices of discrimination against faculty and academic staff of the University for discrimination in employment based on disabilities as provided under the Americans with Disabilities Act, Sec. 42 U.S.C. Secs. 12,101, *et seq.;* and (d) such other just, appropriate and additional relief as is just and appropriate in the premises.

**Count Two**
**Rehabilitation, Comprehensive Services**
**and Developmental Disabilities Act, 29 U.S.C. Sec. 701,** *et seq.*

For Count Two of his Complaint for Disability Discrimination and Retaliation, Whistleblowing Retaliation, Deprivation of Constitutional Rights under Color of State Law, and Common Law Unlawful Termination of Employment, said count asserted under the federal Rehabilitation, Comprehensive Services and Developmental Disabilities Act, 29 U.S.C. Sec. 701, *et seq.*, *et seq.,* as amended, against defendant University of Kansas, plaintiff David S. Moore states as follows:

84.     Plaintiff incorporates by reference the contents of paragraphs 1 through 83 of this complaint as though set forth fully herein.

85.     Plaintiff David S. Moore is a "qualified individual with a disability" as defined in Rehabilitation, Comprehensive Services and Developmental Disabilities Act, 29 U.S.C. Sec. 701, *et seq.*, as amended ("Rehabilitation Act") in that he is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position of Assistant Scientist and Director of the MAI Lab.

86.     The University of Kansas during plaintiff David S. Moore's employment by the University received, and continues to receive, federal financial assistance for numerous programs and activities conducted by the University of Kansas, including the programs and activities of the Research and Graduate Studies program, including those of its Core Labs and the MAI Lab.

87.     The University of Kansas during plaintiff David S. Moore's employment by the University and continuing to the present day is a college, university, or other postsecondary institution, or a public system of higher education as defined under the Rehabilitation Act.

88.     The operations of the University of Kansas during plaintiff David S. Moore's employment by the University and continuing to the present day are a "program or activity" as defined under the Rehabilitation Act.

28

89.     Plaintiff David S. Moore was diagnosed with ADD/ADHD while an employee of defendant University of Kansas and continued to suffer ADD/ADHD through and including the date of his termination of employment by defendant University of Kansas.

90.     Plaintiff's ADD/ADHD constituted a "disability" as defined in the Rehabilitation Act in that his ADD/ADHD was a mental impairment that substantially limited one or more major life activities of plaintiff David S. Moore including but not limited to learning, concentrating, thinking, communicating and working and major bodily functions including but not limited to neurological and brain functions.

91.     More particularly, plaintiff's ADD/ADHD affected his ability to concentrate, avoid distractions, get organized, meet deadlines, set priorities, manage time, focus on tasks, speak impulsively without first fully processing thoughts, observe social norms, obsess and persist in correcting perceived wrongs, and deal with anxiety and restlessness, notwithstanding mitigation with prescription medication, counseling and learned behavioral modifications.

92.     Plaintiff David S. Moore informed University personnel, as aforesaid, of his ADD/ADHD condition.

93.     Plaintiff David S. Moore requested and suggested reasonable accommodations, as aforesaid, of his ADD/ADHD condition.

94.     Notwithstanding plaintiff David S. Moore's requesting and suggesting reasonable accommodations for his ADD/ADHD condition, the University refused to extend or even discuss extending any accommodations to plaintiff David S. Moore; failed to engage in an interactive process with plaintiff David S. Moore to develop reasonable accommodations for plaintiff David S. Moore's disability; suspended plaintiff David S. Moore's employment without pay for a period of four weeks; intensified demands upon plaintiff David S. Moore in a manner known to plaintiff David S. Moore's superiors with the University to intensify the conditions of plaintiff David S. Moore's ADD/ADHD disability, thereby creating a hostile environment; shortly thereafter terminated plaintiff David S. Moore's

employment on October 14, 2013, and in so doing avoided and deprived plaintiff David S. Moore of his right to appeal his suspension to the University's Faculty Rights Board, a forum in which he would have the opportunity to have his claims of discrimination, retaliation, mismanagement, waste, noncompliance and academic misconduct publicly aired or otherwise memorialized in a public forum.

95.     The reasons given by the University for terminating plaintiff David S. Moore's employment were a consideration of the MAI Lab's future and plaintiff's continued employment as not in the best interests of the MAI Lab and the University's Research and Graduate Studies program.

96.     Such reasons were pretextual.  The University suspended plaintiff's employment, intensified demands upon plaintiff David S. Moore in a manner known to plaintiff David S. Moore's superiors with the University to intensify the conditions of plaintiff David S. Moore's ADD/ADHD disability, thereby creating a hostile environment; and terminated plaintiff David S. Moore's employment on October 14, 2013 because of his disability and in retaliation for his seeking to exercise his rights as a disabled person under the Rehabilitation Act.

97.     On or about December 5, 2013, plaintiff David S. Moore filed a charge of employment discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. Sec. 12,101, *et seq.*, with the offices of the Equal Employment Opportunity Commission located in Kansas City, Kansas, dually filed with the offices of the Kansas Human Rights Commission in Topeka, Kansas, alleging that defendant University of Kansas discriminated against him under such Act because of his disability, namely, Attention Deficit Disorder/Attention Deficit Hyperactivity Disorder in terms and conditions of employment, specifically, suspension without pay on September 19, 2013; a hostile work environment thereafter; and termination of employment on October 14, 2013 (effective October 18, 2013) without accommodating his disability and otherwise in retaliation for his exercising his rights under the Americans with Disabilities Act, 42 U.S.C. Sec. 12101, et seq., the federal Rehabilitation Act, 29 U.S.C. *Sec. 701, et seq.*, and the Kansas Act Against Discrimination, K.S.A. Sec. 44-1001, et seq.

98.     On or about June 11, 2014, with no action having been taken by the Equal Employment Opportunity Commission or the Kansas Human Rights Commission under plaintiff's dual filing, plaintiff David S. Moore requested a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.

99.     On or about June 19, 2014, plaintiff David S. Moore received from the Equal Employment Opportunity Commission a Notice of Right to Sue letter.

100.    The University has violated the rights of plaintiff David S. Moore under the Rehabilitation Act by refusing to extend or even discuss extending any accommodations to plaintiff David S. Moore for his disability; failing to engage in an interactive process with plaintiff David S. Moore to develop reasonable accommodations for plaintiff David S. Moore's disability; suspending plaintiff David S. Moore's employment without pay for a period of four weeks; intensifying demands upon plaintiff David S. Moore in a manner known to plaintiff David S. Moore's superiors with the University to exacerbate the conditions of plaintiff David S. Moore's ADD/ADHD disability, thereby creating a hostile environment; and shortly thereafter terminating plaintiff David S. Moore's employment on October 14, 2013, and in so doing avoiding and depriving plaintiff David S. Moore of his right to appeal his suspension to the University's Faculty Rights Board, a forum in which he would have the opportunity to have his claims of discrimination; retaliation; mismanagement, waste and noncompliance in the use of federal funds; and academic misconduct publicly aired or otherwise memorialized in a public forum.

101.    The acts of the University of Kansas as aforesaid directly and proximately caused substantial damages to plaintiff David S. Moore including but not limited to lost earnings and related benefits of employment in an amount to be determined at trial of this matter.

WHEREFORE, plaintiff David S. Moore requests that judgment be entered in his favor against defendant University of Kansas for (a) reinstatement to his position as Assistant Scientist and Director of the Microscopy Analysis and Imaging Laboratory; (b) back pay from and including October 18, 2013; (c)

interest thereon at the maximum lawful rate; (d) reasonable attorneys' fees; (e) equitable relief as may be appropriate to eliminate any patterns and practices of discrimination against faculty and academic staff of the University for discrimination in employment based on disabilities as provided under the Americans with Disabilities Act, Sec. 42 U.S.C. Secs. 12,101, *et seq.* and (f) such other just, appropriate and additional relief as is just and appropriate in the premises.

**Count Three**
**Enhancement of Contractor Protection**
**from Reprisal for Disclosure of Certain Information Act, 41 U.S.C. Sec. 4712, et seq.**

For Count Three of his Complaint for Disability Discrimination and Retaliation, Whistleblowing Retaliation, Deprivation of Constitutional Rights under Color of State Law and Common Law Unlawful Termination of Employment, said count asserted under the federal Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information Act, 41 U.S.C. Sec. 4712, *et seq.,* against defendant University of Kansas, plaintiff David S. Moore states as follows:

102.    Plaintiff incorporates by reference the contents of paragraphs 1 through 100 of this complaint as though set forth fully herein.

103.    The University at all times relevant to the claims set forth in this complaint was a "contractor, subcontractor or grantee," both after January 2, 2013 and, upon information and belief, before January 2, 2013, of a "federal contract or grant" under the federal Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information Act, 41 U.S.C. Sec. 4712, *et seq.*

104.    Plaintiff David S. Moore at all times relevant to the claims set forth in this complaint was an "employee" of a "contractor, subcontractor or grantee" of a "federal contract or grant" under the federal Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information Act, 41 U.S.C. Sec. 4712, *et seq.*

105.    Each of defendants Jeffrey Vitter, Steven Warren and Joseph Heppert, at all times relevant to the claims set forth in this complaint was "a management official or other employee of a

32

contractor, subcontractor or grantee who has the responsibility to investigate, discover or address misconduct" under the federal Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information Act, 41 U.S.C. Sec. 4712, *et seq.*

106.    The instances of Federal Funds Mismanagement and Noncompliance and the MAI Lab Renovation Project Waste as aforesaid was information that plaintiff David S. Moore reasonably believed was evidence of gross mismanagement or a federal contract or grant; a gross waste of federal funds; an abuse of authority relating to a federal contact or grant; and a violation of law, rule or regulation related to a federal contract or grant.

107.    Plaintiff David S. Moore informed, disclosed and otherwise reported his concerns to defendants Joseph Heppert and Steven Warren about the instances of Federal Funds Mismanagement and Noncompliance and the MAI Lab Renovation Project Waste as aforesaid as gross mismanagement of a federal contract or grant; a gross waste of federal funds; an abuse of authority relating to a federal contact or grant; and a violation of law, rule or regulation related to a federal contract or grant.

108.    The University suspended plaintiff David S. Moore's employment without pay for a period of four weeks; intensified demands upon plaintiff David S. Moore in a manner known to plaintiff David S. Moore's superiors with the University to intensify the conditions of plaintiff David S. Moore's ADD/ADHD disability, thereby creating a hostile work environment; shortly thereafter terminated plaintiff David S. Moore's employment, and in so doing avoiding and depriving plaintiff David S. Moore of his right to appeal his suspension to the University's Faculty Rights Board, a forum in which he would have the opportunity to have his claims of discrimination; retaliation; mismanagement, waste and noncompliance in the use of federal funds; and academic misconduct publicly aired or otherwise memorialized in a public forum.

109.    The acts of the University of Kansas as aforesaid directly and proximately caused substantial damages to plaintiff David S. Moore including but not limited to lost earnings and related benefits of employment in an amount to be determined at trial of this matter.

WHEREFORE, plaintiff David S. Moore requests that judgment be entered in his favor against defendant University of Kansas for (a) reinstatement to his position as Assistant Scientist and Director of the Microscopy Analysis and Imaging Laboratory; (b) back pay from and including October 18, 2013; (c) interest thereon at the maximum lawful rate; (d) reasonable attorneys' fees; (e) equitable relief as appropriate to enjoin and eliminate any University patterns and practices in the future of falsely accusing faculty and academic staff of improper conduct in order to intimidate, discipline, discharge or otherwise negatively affect terms and conditions of employment of University employees reporting, investigating or speaking out regarding suspected mismanagement of federal grants and funds and noncompliance; and (f) such other just, appropriate and additional relief as is just and appropriate in the premises.

### Count Four
### False Claims Act, 31 U.S.C. Sec. 3730, *et seq.*

For Count Four of his Complaint for Disability Discrimination and Retaliation, Whistleblowing Retaliation, Deprivation of Constitutional Rights under Color of State Law, and Common Law Unlawful Termination of Employment, said count asserted under the federal False Claims Act, 31 U.S.C. Sec. 3730, *et seq.* against defendant University of Kansas, plaintiff David S. Moore states as follows:

110.    Plaintiff incorporates by reference the contents of paragraphs 1 through 107 of this complaint as though set forth fully herein.

111.    The instances of Federal Funds Mismanagement and Noncompliance and the MAI Lab Renovation Project Waste as aforesaid caused plaintiff David S. Moore reasonably to believe that the University had permitted the violation of federal laws, rules and regulations for the expenditure and reporting of expenditure of federal funds, resulting in the submission of false or fraudulent claims for

payment or approval, or false records or statements material to a false or fraudulent claim, to fund activities of the University and its Research and Graduate Studies program from federal funds.

112.    Plaintiff David S. Moore look lawful action regarding his concerns about the instances of Federal Funds Mismanagement and Noncompliance and the MAI Lab Renovation Project Waste as aforesaid by investigating what he reasonably believed were violations of federal laws, rules and regulations for the expenditure and reporting of expenditure of federal funds, resulting in the submission of false or fraudulent claims for payment or approval, or false records or statements material to a false or fraudulent claim,  to fund activities of the University and its Research and Graduate Studies program from federal funds, including but not limited to requests for information from the University and informing his superiors of possible Federal Funds Mismanagement and Noncompliance and MAI Lab Renovation Project Waste.

113.    Following plaintiff David S. Moore's seeking information regarding and informing his superiors of suspected the Federal Funds Mismanagement and Non-Compliance and the MAI Lab Renovation Project Waste, the University retaliated against plaintiff David S. Moore by suspending plaintiff David S. Moore's employment without pay for a period of four weeks, intensifying demands upon plaintiff David S. Moore in a manner known to plaintiff David S. Moore's superiors to create a hostile working environment for plaintiff David S. Moore and shortly thereafter terminating plaintiff David S. Moore's employment, and in so doing avoiding and depriving plaintiff David S. Moore of his right to appeal his suspension to the University's Faculty Rights Board, a forum in which he would have the opportunity to have his claims of discrimination; retaliation; mismanagement, waste, noncompliance and academic misconduct publicly aired or otherwise memorialized in a public forum.

114.    The acts of the University of Kansas as aforesaid directly and proximately caused substantial damages to plaintiff David S. Moore including but not limited to lost earnings and related benefits of employment in an amount to be determined at trial of this matter.

Complaint for Disability Discrimination and Retaliation,
Whistleblowing Retaliation,
Deprivation of Constitutional Rights and
Common Law Unlawful Termination of Employment

WHEREFORE, plaintiff David S. Moore requests that judgment be entered in his favor against defendant University of Kansas for (a) reinstatement to his position as Assistant Scientist and Director of the Microscopy Analysis and Imaging Laboratory; (b) lost earnings damages in an amount equal to twice the amount of back pay from and including October 18, 2013; (c) interest thereon at the maximum lawful rate; (d) reasonable attorneys' fees; (e) equitable relief as appropriate to enjoin and eliminate any University patterns and practices in the future to intimidate, discipline, discharge or otherwise negatively affect terms and conditions of employment of University employees reporting, investigating or speaking out regarding suspected mismanagement of federal grants and funds and noncompliance; and (f) such other just, appropriate and additional relief as is just and appropriate in the premises.

**Count Five**
**Civil Rights Act of 1871, as amended, 42 U.S.C. Sec 1983, 1988, *et seq.*,**
**Freedom of Speech and Substantive Due Process**

For Count Five of his Complaint for Disability Discrimination and Retaliation, Whistleblowing Retaliation, Deprivation of Constitutional Rights under Color of State Law, and Common Law Unlawful Termination of Employment, said count asserted under the federal Civil Rights Act of 1871, as amended, 42 U.S.C. Sec 1983, *et seq.,* against defendants Jeffrey S. Vitter, Steven F. Warren and Joseph A. Heppert, the latter three defendants being sued in their individual capacities, plaintiff David S. Moore states as follows:

115.     Plaintiff incorporates by reference the contents of paragraphs 1 through 114 of this complaint as though set forth fully herein.

116.     Plaintiff David S. Moore throughout his employment by the University of Kansas had a right of free speech secured by the United States Constitution and laws to speak out on matters of public concern regarding activities of the University of Kansas and its Research and Graduate Studies program, including compliance with federal laws governing the use of federal grants to the University and other federal funds and the conduct of academicians and other personnel using those and other funds and

programs and facilities using those funds, including speaking out on the Federal Funds Mismanagement and Noncompliance, the MAI Lab Renovation Project Waste and the Academic Conduct as aforesaid.

117. Defendants Vitter, Warren and Heppert, acting under color of state law, including but not limited to the statutes, ordinances, regulations, customs, and usages of the State of Kansas, possessed by virtue of state law and clothed with the authority of state law as a state university and state university personnel supervising the work of plaintiff David S. Moore, subjected and caused to be subjected plaintiff David S. Moore to a deprivation of his constitutional right to speak out on matters of public concern regarding activities of the University of Kansas and its Research and Graduate Studies program including speaking out on the Federal Funds Mismanagement and Noncompliance, the MAI Lab Renovation Project Waste and the Academic Conduct as aforesaid, by subjecting plaintiff David S. Moore to discriminatory and retaliatory actions for his speaking out on such issues including but not limited to unfavorable employment reviews, suspending plaintiff David S. Moore's employment without pay for a period of four weeks, intensifying demands upon plaintiff David S. Moore in a manner known to plaintiff David S. Moore's superiors to create a hostile working environment for plaintiff David S. Moore and shortly thereafter terminating plaintiff David S. Moore's employment, and in so doing avoiding and depriving plaintiff David S. Moore of his right to appeal his suspension to the University's Faculty Rights Board a forum in which he would have the opportunity to have his claims of discrimination; retaliation; mismanagement, waste and noncompliance in the use of federal funds; and academic misconduct publicly aired or otherwise memorialized in a public forum.

118. Defendants Vitter, Warren and Heppert, acting under color of state law, including but not limited to the statutes, ordinances, regulations, customs, and usages of the State of Kansas, possessed by virtue of state law and clothed with the authority of state law as a state university and state university personnel supervising the work of plaintiff David S. Moore, subjected and caused to be subjected plaintiff David S. Moore to a deprivation of his constitutional right to substantive due process simpliciter as acts

that were arbitrary, capricious and without a rational basis because they were taken for reasons not based on considerations of the future of the MAI Lab and a determination that it was in the best interests of the Research and Graduate Studies to terminate plaintiff's employment as stated but instead were for the unrelated and covert reasons of:

      (a)    His disability, namely retaliation and discrimination against plaintiff because of his disability including not observing or complying with plaintiff's exercising his rights as a disabled person protected under University policy, state and federal law to seek accommodation and creating a hostile work environment;

      (b)    His "whistleblowing," namely, retaliation for plaintiff's persistently expressing good faith concerns, protected under University policy, state and federal law, about the Federal Funds Mismanagement and Noncompliance, the MAI Lab Renovation Project Waste the and Academic Misconduct

119.    The acts defendants Vitter, Warren and Heppert as aforesaid in the preceding paragraphs transgressed the clearly established rights of a University employee under federal law, as well as state law and the University's own policies mirroring and repeating such rights, aggravated by their having immediate access to University human resources professionals and legal counsel for professional guidance, to speak out on matters of public concern regarding activities of the University and its Research and Graduate Studies program including the Federal Funds Mismanagement and Noncompliance, the MAI Lab Renovation Project Waste and the Academic Conduct as aforesaid, such rights secured under the following:

      (a)    Federal Statutes

      (i)    Federal Pilot Program for Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information Act, 41 U.S.C. Sec. 4712, *et seq.;*

      (ii)    Federal False Claims Act, 31 U.S.C. Sec. 3730, *et seq.*;

38

(b)    Kansas Statutes

   (i)    Kansas False Claims Act, K.S.A. Secs. 75-7501, *et seq.*;

   (ii)   Kansas Whistleblower Protection Act, Sec. 75-2973;

(c)    University of Kansas Formal Policies

   (i)    "University of Kansas Fraud and Theft Prevention Policy," eff. December 11, 2009;

   (ii)   "University of Kansas Whistleblower Policy: Reporting Suspected Wrongdoing and Protection from Retaliation," eff. December 11, 2009

   (iii)  University Academic Misconduct Policy, University Senate Rules and Regulations, Art. IX, Secs. 9.1.1, *et seq.*

120.    The acts of defendants Vitter, Warren and Heppert directly and proximately caused substantial damages to plaintiff David S. Moore including but not limited to lost earnings and related benefits of employment in an amount to be determined at trial of this matter.

121.    The acts of defendants Vitter, Warren and Heppert as aforesaid were undertaken intentionally and with knowledge of the rights of plaintiff to speak out on matters of public concern regarding activities of the University and its Research and Graduate Studies program including the Federal Funds Mismanagement and Noncompliance, the MAI Lab Renovation Project Waste and the Academic Conduct or, in the alternative, were undertaken with reckless disregard and indifference to the rights of plaintiff to speak out on matters of public concern regarding activities of the University and its Research and Graduate Studies program including the Federal Funds Mismanagement and Noncompliance, the MAI Lab Renovation Project Waste and the Academic Conduct as suspected violations in his place of employment of rules, regulations and laws pertaining to the public health, safety and welfare.

122.    Further, plaintiff David S. Moore is entitled to recover from defendants Vitter, Warren and Heppert his reasonable attorneys' fees incurred in this matter in such amount as may be determined by the Court under the provisions of 42 U.S.C. Sec. 1988.

WHEREFORE, plaintiff David S. Moore requests that judgment be entered in his favor against defendants Jeffery S. Vitter, Steven F. Warren, Joseph A. Heppert, each in their capacities as individuals, for (a) compensatory damages in an amount equivalent to the lost earnings and related benefits of employment sustained by plaintiff David S. Moore in such amount as may be determined at the trial of this matter, (b) interest thereon at the maximum lawful rate, (c) punitive damages, (d) reasonable attorneys' fees, including expert fees, under 42 U.S.C. Sec. 1988; (e) equitable relief as appropriate to enjoin and eliminate any patterns and practices in the future by such individuals to intimidate, discipline, discharge or otherwise negatively affect terms and conditions of employment of University employees reporting or speaking out regarding suspected mismanagement of federal grants and funds and noncompliance; and (f) such other just, appropriate and additional relief as is just and appropriate in the premises.

### Count Six
### Unlawful Termination of Employment;
### Common Law Public Policy Exception to Discharge of At-Will Employee

For Count Six of his Complaint for Disability Discrimination and Retaliation, Whistleblowing Retaliation, Deprivation of Constitutional Rights under Color of State Law, and Common Law Unlawful Termination of Employment, said count asserted under the Kansas common law tort public policy exception to discharge of at-will employee, said count asserted against defendant University of Kansas, plaintiff David S. Moore states as follows:

123.    Plaintiff David S. Moore incorporates by reference the contents of paragraphs 1 through 122 of this complaint as though set forth fully herein.

124.    Plaintiff's expressions of concern about the Federal Funds Mismanagement and Noncompliance, the MAI Lab Renovation Project Waste and the Academic Conduct were made in good faith.

125.    Plaintiff's expressions of concern about on the Federal Funds Mismanagement and Noncompliance, the MAI Lab Renovation Project Waste and the Academic Conduct were based on reasons to suspect violations of rules, regulations and laws pertaining to the public health, safety and welfare.

126.    Defendant University of Kansas had knowledge of plaintiff's expressions of concern about the Federal Funds Mismanagement and Noncompliance, the MAI Lab Renovation Project Waste and the Academic Conduct prior to the suspension of plaintiff's employment without pay on September 19, 2013.

127.    Defendant University of Kansas had knowledge of plaintiff's expressions of concern about the Federal Funds Mismanagement and Noncompliance, the MAI Lab Renovation Project Waste and the Academic Conduct prior to the termination of plaintiff's employment on October 13, 2013.

128.    Defendant University of Kansas had a duty not to suspend, terminate or otherwise interfere with plaintiff's employment as an Assistant Scientist and Director of the MAI Lab based on plaintiff's expressions of concern about the Federal Funds Mismanagement and Noncompliance, the MAI Lab Renovation Project Waste and the Academic Conduct.

129.    Defendant University of Kansas breached its duty not to suspend, terminate or otherwise interfere with plaintiff's employment as an Assistant Scientist and Director of the MAI Lab based on plaintiff's expressions of concern about the Federal Funds Mismanagement and Noncompliance, the MAI Lab Renovation Project Waste and the Academic Conduct by suspending plaintiff's employment without pay for four weeks on September 19, 2013.

41

130.     Defendant University of Kansas breached its duty not to suspend, terminate or otherwise interfere with plaintiff's employment as an Assistant Scientist and Director of the MAI Lab based on plaintiff's expressions of concern about the Federal Funds Mismanagement and Noncompliance, the MAI Lab Renovation Project Waste and the Academic Conduct by intensifying criticisms of plaintiff, which knowingly made plaintiff's execution of his job responsibilities more difficult and aggravated his ADD/ADHD symptoms and corresponding ability to perform his employment responsibilities following plaintiff's suspension without pay on September 19, 2013 and termination of employment on October 13, 2013.

131.     Defendant University of Kansas breached its duty not to suspend, terminate or otherwise interfere with plaintiff's employment as an Assistant Scientist and Director of the MAI Lab based on plaintiff's expressions of concern about the Federal Funds Mismanagement and Noncompliance, the MAI Lab Renovation Project Waste and the Academic Conduct by terminating plaintiff's employment on October 13, 2013.

132.     Defendant University of Kansas' suspension of plaintiff's employment without pay, increasing criticisms thereafter and terminating plaintiff's employment proximately caused damage to plaintiff consisting of lost earnings, pain and suffering.

133.     The acts of the University were undertaken intentionally and with knowledge of the rights of plaintiff to speak out on matters of public concern regarding activities of the University and its Research and Graduate Studies program including the Federal Funds Mismanagement and Noncompliance, the MAI Lab Renovation Project Waste and the Academic Conduct or, in the alternative, were undertaken with reckless disregard and indifference to the rights of plaintiff to speak out on matters of public concern regarding activities of the University and its Research and Graduate Studies program including the Federal Funds Mismanagement and Noncompliance, the MAI Lab Renovation Project

COMPLAINT FOR DISABILITY DISCRIMINATION AND RETALIATION,
WHISTLEBLOWING RETALIATION,
DEPRIVATION OF CONSTITUTIONAL RIGHTS AND
COMMON LAW UNLAWFUL TERMINATION OF EMPLOYMENT

Waste and the Academic Conduct as suspected violations in his place of employment of rules, regulations and laws pertaining to the public health, safety and welfare.

134.    The actions of defendant University of Kansas as aforesaid were committed with the intention of harming plaintiff, or otherwise with reckless disregard for plaintiff's rights and well-being, defendants being fully aware of plaintiff's rights to express his concerns about suspected violations in his place of employment of rules, regulations and laws pertaining to the public health, safety and welfare.

WHEREFORE, plaintiff David S. Moore requests that judgment be entered in his favor against defendant University of Kansas for (a) reinstatement to his position as Assistant Scientist and Director of the Microscopy Analysis and Imaging Laboratory; (b) back pay from and including October 18, 2013; (c) interest thereon at the maximum lawful rate; (d) money damages for pain and suffering, (e) punitive damages, (f) reasonable attorneys' fees; (g) equitable relief as appropriate to enjoin and eliminate any University patterns and practices in the future to intimidate, discipline, discharge or otherwise negatively affect terms and conditions of employment of University employees reporting, investigating or speaking out regarding suspected mismanagement of federal grants and funds and noncompliance; and (h) such other just, appropriate and additional relief as is just and appropriate in the premises.

Respectfully submitted,


_____
/s/ Daniel R. Cofran
Daniel R. Cofran, Esq.
Kansas Supreme Court Enrollment No. 23258

1000 W. 70th St.
Kansas City, Missouri
Phone:  816-363-1218
Email:  dcofan@swbell.net

ATTORNEY FOR PLAINTIFF DAVID S. MOORE, PH. D.

43