**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| DAVID S. MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:14-cv-02420-SAC-KGS |
| | ) | |
| THE UNIVERSITY OF KANSAS, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

The University of Kansas, Dr. Jeffrey S. Vitter, Dr. Steven F. Warren, and Dr. Joseph A. Heppert[1] submit the following memorandum in support of their motion to dismiss.

I.     **NATURE OF THE CASE**

This is an employment dispute which stems from the termination of plaintiff from his position at the University of Kansas ("KU") as an Assistant Scientist and the Director of the Microscopy Analysis and Imaging Laboratory ("MAI Lab"). Plaintiff alleges he was terminated in retaliation for his Attention Deficit Disorder/Attention Deficit Hyperactivity Disorder and for reporting the mismanagement and misuse of and noncompliance with federal grant funds. Defendants deny these allegations and contend Plaintiff was terminated for valid, non-retaliatory reasons.

---

[1] Plaintiff also asserts claims against the University of Kansas Center for Research, Inc. ("KUCR") and Dr. Bernadette Gray-Little, Chancellor of the University of Kansas. Neither KUCR nor Dr. Gray-Little have been served and this memorandum does not waive service of process or answer for them.

Plaintiff alleges seven counts against all defendants. Four counts are alleged against Drs. Vitter, Warren, and Heppert in their official capacities:

1. Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, *et seq.*;

2. Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information Act, 41 U.S.C. § 4712;

3. False Claims Act, 31 U.S.C. § 3730, *et seq.*; and,

4. Common law unlawful termination of employment.

Two counts are asserted against Drs. Vitter, Warren, and Heppert in their individual capacities under 42 U.S.C. § 1983, in which Plaintiff claims violations of his constitutional rights to his:

1. Freedom of speech and his reputational liberty interest; and,

2. Substantive due process.

Defendants Drs. Vitter, Warren, and Heppert seek dismissal of all claims made against them.

Plaintiff purports to assert a claim against KU only as to Count Two, a retaliatory discharge claim under the Rehabilitation Act, 29 U.S.C. § 794.  As to this claim compensatory and punitive damages are not recoverable.  Further, the various official capacity claims asserted by plaintiff are a subterfuge which attempt to avoid the jurisdictional bar of the Eleventh Amendment.  They are, in fact and law, claims against KU which are barred by the Eleventh Amendment.

## II.   STATEMENT OF FACTS

The 116 page amended complaint contains 230 numbered paragraphs.

Plaintiff was employed by KU as an Assistant Scientist and the Director of the MAI Lab from December 1, 2004, until his discharge from employment on October 18, 2013.  ECF 30, ¶ 13.  Plaintiff further alleges he is disabled within the meaning of the ADA.  *Id., ¶* 1.

Drs. Vitter, Warren, and Heppert are alleged by plaintiff to be responsible for oversight of all scientific research at KU; for the Research and Graduate Studies Program; and for management and oversight of the Core Labs and its research for academic purposes and the private sector. *Id.,* ¶¶ 43, 44 and 45.

Plaintiff alleges he developed concerns regarding financial management and accountability for federal grant and contract funds used in the MAI Lab and other Core Labs. *Id.,* ¶ 58  Plaintiff also alleges he developed concerns regarding research misconduct, including plagiarism. *Id.,* ¶ 61. Plaintiff further alleges he developed concerns regarding waste and mismanagement in a construction/renovation project on the MAI Lab. *Id.,* ¶¶ 63-64. Finally, plaintiff alleges in disclosed all the foregoing concerns variously to Drs. Vitter, Warren, and Heppert. *Id.,* ¶¶ 65-71.

Plaintiff alleges he was presented with a proposed four-week suspension as retaliation for the afore-mentioned conduct. *Id.,* ¶¶ 73-74. Plaintiff claims he requested accommodation for his disability, *id.,* ¶ 75, that he was thereafter terminated from employment, *Id.,* ¶ 82, and that his termination was in retaliation for his various protected conduct. *Id.,* ¶ 84.

## III.   ISSUES PRESENTED

1. Plaintiff cannot bring a claim under the Americans with Disabilities Act against KU or Drs. Vitter, Warren, and Heppert;

2. Compensatory and/or punitive damages are not recoverable under the Rehabilitation Act, 29 U.S.C. § 794;

3. Plaintiff's claims under 41 U.S.C. § 4712 are barred by sovereign immunity and a failure to exhaust administrative remedies;

4. Plaintiff's Claims under the False Claims Act (FCA) are barred because the FCA does not authorize suits against states and because the alleged conduct was not action "in furtherance of" an FCA claim;

5. Plaintiff's § 1983 claims related to Freedom of Speech and/or Liberty Interests fail to state a constitutional violation and are further barred by qualified immunity;

6. Plaintiff's Substantive Due Process claims fail to state a constitutional violation and are further barred by qualified immunity;

7. Plaintiff's state law retaliation claim fails because (i) the claim against KU or any individual in his official capacity is barred by Eleventh Amendment Immunity, (ii) plaintiff's exclusive remedy lies in state court under the Kansas Whistleblower Act and, (iii) Kansas law recognizes a retaliation claim only against the employer and not against individual employees or officials of the employer.

## IV.    LEGAL STANDARDS

In ruling on a motion to dismiss under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face. *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. *Iqbal*, 129 S.Ct. at 1950.

## V.    ARGUMENTS AND AUTHORITY

### 1.    Plaintiff cannot bring a claim under the ADA against KU or Drs. Vitter, Warren, and Heppert.

In Count One, plaintiff asserts claims against Drs. Vitter, Warren and Heppert as "managerial officials."  ECF 30, ¶ 133.  The Amended Complaint specifies that plaintiff seeks "prospective injunctive relief in their official capacities for continuing violations" under the ADA. *Id.,* ¶ 131.  As relief, plaintiff seeks (1) reinstatement; (2) costs; including reasonable attorneys' fees; (3) unspecified equitable relief under the ADA; and (4) "such other just, appropriate and additional relief as is just and appropriate in the premises."  ECF 30, p. 90.

The Amended Complaint does not specify whether plaintiff pursues his ADA claims under Title I or Title II but instead cites the entirety of the ADA.  The ADA addresses "discrimination

against persons with disabilities in three major areas of public life:  Title I for employment; Title II covering public services, programs, and activities; and Title III covering public accommodations (*i.e.,* facilities and access thereto). *Tennessee v. Lane*, 541 U.S. 509, 516–17 (2004).  Here, plaintiff's ADA claim is plainly an employment discrimination claim under Title I.  *Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, 693 F.3d 1303, 1309 (10th Cir. 2012) (ADA employment discrimination claims fall under Title I, not Title II).

Eleventh Amendment immunity bars suits against states under Title I of the ADA. *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 364 (2001).  The University of Kansas is an arm of the State of Kansas and is equally entitled to Eleventh Amendment immunity.  *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1195 (10th Cir. 1998).  This immunity extends also to claims for money damages against an individual in his or her official capacity.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (official capacity claim is another way to sue the entity); and *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) (Eleventh Amendment extends to individuals in their official capacity). Thus, the Eleventh Amendment generally bars plaintiff's claims against KU and those against Drs. Vitter, Warren and Heppert in their official capacities. *Pettigrew v. Okla. ex rel. Okla. Dep't of Pub. Safety*, 722 F.3d 1209, 1213 (10th Cir. 2013).

Labeling Drs. Vitter, Warren and Heppert as "managerial officials" does nothing to overcome immunity.  "[M]ere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (internal quotation marks omitted).  When "ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Id.*

To the extent plaintiff seeks monetary damages, any claims against Drs. Vitter, Warren, and Heppert in their individual capacity must be dismissed because they are not covered entities under the ADA.  *Butler v. City of Prairie Vill.*, 172 F.3d 736, 744 (10th Cir. 1999) (the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition).  The anti-discrimination provisions of the ADA apply to a "covered entity."  42 U.S.C.A. § 12112(a).  Under the ADA, a "covered entity" means "an employer, employment agency, labor organization, or joint labor-management committee."  42 U.S.C.A. § 12111(2).  The Amended Complaint expressly acknowledges that plaintiff was employed by the University of Kansas.  ECF 30 ¶ 2.[2]

Moreover, any claim for monetary damages against Drs. Vitter, Warren and Heppert in their official capacities is barred by the Eleventh Amendment.  Here, plaintiff seeks unspecified equitable relief and unspecified "appropriate and additional relief."  ECF 30, p. 90.  To the extent such additional relief includes monetary damages, that claim is barred.

The Amended Complaint tacitly recognizes the constraints imposed by the Eleventh Amendment upon his claims in that he asserts claims for prospective equitable relief, ECF 30 ¶ 131, specifically reinstatement and perhaps equitable relief to proscribe disability discrimination. ECF 30, p. 90. The Eleventh Amendment does not prohibit a suit in federal court to enjoin a state official prospectively from violating federal law. *Meiners v. Univ. of Kan.,* 359 F.3d 1222, 1232 (10th Cir. 2004); *see generally Ex parte Young,* 209 U.S. 123 (1908). "In *Ex Parte Young, the* [Supreme] Court held that the Eleventh Amendment generally will not operate to bar suits so long as they (i) seek only declaratory and injunctive relief rather than monetary damages for alleged

---

[2] The Amended Complaint identified Dr. Vitter as Provost and Executive Vice Chancellor for defendant University of Kansas, ECF 30, ¶ 6; Dr. Warren as Professor of Applied Behavioral Science, Senior Scientist and formerly as Vice Chancellor for Research and Graduate Studies for the University of Kansas, *id.* ¶ 7; and Dr. Heppert as a Professor and Associate Vice Chancellor for Research and Graduate Studies for the University of Kansas, *id.* ¶ 8.

violations of federal law, and (ii) are aimed against state officers acting in their official capacities, rather than against the State itself." *Hill v. Kemp,* 478 F.3d 1236, 1255–56 (10th Cir. 2007). "[T]o come within the *Ex Parte Young* exception, 'a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Rounds v. Clements,* 495 F. App'x 938, 940 (10th Cir. 2012) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002)).

"Reinstatement of employment is a form of prospective equitable relief that is within the doctrine of *Ex Parte Young.*" *Meiners,* 359 F.3d at 1232.  However, "[i]n *Ex Parte Young,* the Supreme Court noted that the state official must have the power to perform the act required in order to overcome the jurisdictional bar of the Eleventh Amendment." *Klein v. Univ. of Kan. Med. Ctr.,* 975 F.Supp. 1408, 1417 (D.Kan. 1997) (citing *Ex Parte Young,* 209 U.S. at 157). In *Klein,* the Court looked to Kansas statutes to determine which state officials possessed the authority to reinstate KUMC employees.  *Id.*   Under K.S.A. 76–714, the chief executive officer of the University of Kansas is the Chancellor.  As the chief executive officer, the Chancellor "shall appoint such employees as are authorized by the board of regents," and those employees "shall serve at the pleasure of the chief executive officer...."  K.S.A. 76–715.  Thus, "the current Chancellor is the only person with the authority to reinstate Klein to his former position if so ordered." *Klein,* 975 F.Supp. at 1417.  The ADA claims against Drs. Vitter, Warren and Heppert must be dismissed as they lack the requisite authority to reinstate plaintiff.

### 2. Compensatory and/or punitive damages are not recoverable under the Rehabilitation Act, 29 U.S.C. § 794.

The Rehabilitation Act, 29 U.S.C. § 794(a), prohibits discrimination in programs receiving Federal financial assistance.  The standards used to determine what constitutes discrimination are set forth in § 794(d) and reference the provisions of the ADA which prohibit retaliation against

persons who have opposed any act or practice made unlawful by [the ADA] "or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]."  42 U.S.C. § 12203(a).

Plaintiff's prayer for relief against the University of Kansas on his claim under the Rehabilitation Act seeks (1) reinstatement; (2) backpay; (3) interest; (4) costs; including reasonable attorneys' fees; (5) unspecified equitable relief; and (6) "such other just, appropriate and additional relief as is just and appropriate in the premises."   To the extent the claim "appropriate and additional relief" includes a claim for compensatory and/or punitive damages, such damages are not recoverable under the Rehabilitation Act.  *Umholtz v. Kansas, Dep't of Soc. & Rehab. Servs.*, 926 F. Supp. 2d 1222, 1231 (D. Kan. 2013).

### 3.    Sovereign immunity bars plaintiff's claim under 41 U.S.C. § 4712; the claim is further barred for failure to exhaust administrative remedies.

Count Three alleges violation of 41 U.S.C. § 4712, the Pilot Program for Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information.   Section 4712 was passed as part of the National Defense Authorization Act for Fiscal Year 2013 and is a four-year pilot program, effective July 1, 2013, to enhance the existing whistleblower protection for contractor employees. 41 U.S.C. § 4712; National Defense Authorization Act for Fiscal Year 2013, PL 112-239, January 2, 2013, 126 Stat 1632.  Section 4712 provides:

> An employee of a contractor, subcontractor, or grantee may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

41 U.S.C.A. § 4712(a)(1).   Paragraph (2) of § 4712 provides the employee is protected from discrimination for disclosures to, among others, a management official or other employee of the contractor, subcontractor, or grantee who has the responsibility to investigate, discover, or address misconduct. § 4712(a)(2)(G).

Here, Plaintiff alleges he reported the mismanagement, waste, and abuse of authority relating to a federal grant to Warren and Heppert, among others, whom he asserts are management officials under Paragraph 2.   ECF 30, ¶¶ 178, 180.   Plaintiff's claim fails because sovereign immunity bars his claims and he has failed to exhaust administrative remedies.

> a.      *Sovereign immunity bars any claims for monetary damage against Drs. Vitter, Warren, and Heppert.*

Sovereign immunity constitutes a bar to the exercise of subject matter jurisdiction.  *Fent v. Oklahoma Water Resources Bd.*, 235 F.3d 558 (10th Cir. 2000).  Under the Eleventh Amendment, sovereign immunity prohibits federal courts from entertaining suits against states brought by their own citizens or citizens of another state without their consent.  *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990).   "Such consent may be found 'only when Congress unequivocally expresses its intention to waive the government's sovereign immunity in the statutory text.'" *Governor of Kansas v. Kempthorne*, 516 F.3d 833, 841 (10th Cir. 2008) (quoting *United States v. Murdock Mach. & Eng'g Co.,* 81 F.3d 922, 930 (10th Cir. 1996)).

There is no unequivocal expression of Congress' intent to waive the government's sovereign immunity in § 4712.  Thus, any § 4712 claims against the state are barred.  As discussed above, sovereign immunity extends to claims for money damages against an individual in his or her official capacity as such claims are just another way to sue the entity. *See Kentucky v. Graham, supra,* 473 U.S. at 165-66.  Thus, as KU employees, the Eleventh Amendment bars Moore's claims against Drs. Vitter, Warren, and Heppert in their official capacities.

> b. *The claim for prospective injunctive or other equitable relief is barred by failure to exhaust administrative remedies under § 4712.*

Plaintiff asserts a § 4712 claim for prospective injunctive relief and seeks reinstatement to his position as Assistant Scientist and Director of the MAI Lab from Dr. Vitter. ECF 30 ¶ 184(b)(a). Plaintiff also seeks equitable relief against all individual defendants

> to enjoin and eliminate certain patterns and practices in the future of falsely accusing faculty and academic staff of improper conduct in order to intimidate, discipline, discharge or otherwise negatively affect terms and conditions of employment of University employees reporting, investigating or speaking out regarding suspected mismanagement of federal grants and funds and noncompliance.

ECF 30, ¶ 184(b)(c).  Presumably, Plaintiff is seeking to enjoin Drs. Vitter, Warren, and Heppert from committing future violations of § 4712.

"[T]he Eleventh Amendment does not prohibit a suit in federal court to enjoin a state official prospectively from violating federal law."  *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004); *see generally Ex parte Young*, 209 U.S. 123 (1908).  As discussed above, "[r]einstatement of employment is a form of prospective equitable relief that is within the doctrine of *Ex parte Young." Id.*  "In *Ex Parte Young,* the Supreme Court noted that the state official must have the power to perform the act required in order to overcome the jurisdictional bar of the Eleventh Amendment."  *Klein,* 975 F. Supp. at 1417.

Plaintiff alleges that the authority to make hiring and firing decisions, including the reinstatement of discharged employees, has been delegated under University policies and procedures to Dr. Vitter. ECF 30, ¶ 42.  Plaintiff does not allege that Drs. Warren and Heppert have the power to "discipline, discharge, or otherwise negatively affect terms and conditions of employment" for any employee, but does allege that they, along with Dr. Vitter, have the

> responsibility to investigate, discover or address misconduct prescribed by federal laws including gross waste; gross mismanagement; abuse of authority; and

> violation of federal laws, rules and regulations regarding federal contract and grant proceeds for use in scientific research, instruments, equipment and staffing in research laboratories of the University, the Research and Graduate Studies program and the KU Center for Research.

ECF 30, ¶¶ 42, 43(d), 44(d).  Even if Dr. Vitter does have the power to reinstate Plaintiff and Drs. Vitter, Warren, and Heppert have the power to eliminate any patterns or practices of violations under § 4712, the claim is still barred by his failure to exhaust administrative remedies under § 4712.

Section 4712 establishes a complaint procedure for employees who believe they have been retaliated against in violation of the statute.  If an employee "believes that he or she has been discharged, demoted, or otherwise discriminated against contrary to the policy," under § 4712, he may submit a complaint with the Inspector General of the agency involved. § 4712(b)(1).  Unless the Inspector General determines the complaint is frivolous, fails to allege a violation of the prohibited conduct, or has been previously addressed in another Federal or State administrative proceeding, the Inspector General must investigate the complaint and, upon completion of the investigation, submit a report of the findings of the investigation to the person, the contractor or grantee concerned, and the head of the agency. *Id.*

No later than 30 days after receiving an Inspector General report, the head of the executive agency must determine whether there is sufficient basis to conclude that the grantee concerned has subjected the complainant to a reprisal prohibited by § 4712 and must either issue an order denying relief or take one of several actions. § 4712(c)(1).  If the head of an executive agency issues an order denying relief under § 4712, or if it has not issued an order within the appropriate amount of time, "the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity against the . . . grantee to seek compensatory damages and other relief available." *Id*. § 4712(c)(2).

No case could be found that addresses the exhaustion of administrative remedies under § 4712. The grammatical construction of this provision supports the notion that administrative remedies must be exhausted prior to filing suit. "[L]inking independent ideas is the job of a coordinating junction like "and." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 131 S. Ct. 1068, 1078, 179 L. Ed. 2d 1 (2011). Here, the use of the conjunctive "and" links the two clauses—exhausting administrative remedies and filing suit—to indicate that one cannot happen without the other. Moreover, to ignore an exhaustion of administrative remedies requirement would render the exhaustion language in the statute superfluous. "[W]e are always hesitant to assume Congress included pointless language in its statutory handiwork. . . . 'It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that ... no clause, sentence, or word shall be superfluous....'" *See Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, *supra*, 693 F.3d at 1307 (internal citation omitted)). Administrative exhaustion is required under § 4712; to hold otherwise would be contrary to principles of statutory construction.

Comparison to other statutes also indicates administrative exhaustion is required under § 4712. The process and language in § 4712 is very similar to the language in the civil whistleblower provision of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A, which requires the exhaustion of administrative remedies before suit may be filed. The Sarbanes-Oxley Act provides that a person who alleges discharge or discrimination "may seek relief . . . by . . . filing a complaint with the Secretary of Labor." 18 U.S.C. § 1514A(b)(1)(A). "If the Secretary has not issued a final decision within 180 days of the filing of the complaint," the person may seek relief by bringing an action at law or equity in the appropriate district court. The District Court of Kansas explained the process under the Sarbanes-Oxley Act as follows:

> Before an employee can assert a cause of action in federal court under the Sarbanes–Oxley Act, he or she must file a complaint with the Occupational Safety and Health

> Administration ("OSHA") and afford OSHA the opportunity to resolve the allegations administratively. 18 U.S.C. § 1514A(b)(1)(A). The administrative complaint must be filed "[w]ithin 90 days after an alleged violation of the Act" and include "a full statement of the acts and omissions, with pertinent dates, which are believed to constitute the violations." *Id.,* § 1514A(b)(2)(D); 29 C.F.R. § 1980.103(b, d). If the employee meets these requirements for a particular violation, and a final administrative decision has not issued within 180 days of the filing, the employee can proceed with an action in federal court based on that violation. 18 U.S.C. § 1514A(b)(1)(B).

*Zhu v. Fed. Hous. Fin. Bd.*, 389 F. Supp. 2d 1253, 1271 (D. Kan. 2005) (internal references omitted). In *Zhu*, the plaintiff did not allege she exhausted her administrative remedies under Sarbanes-Oxley, and the court held it lacked jurisdiction over her claims under the Act. *Id.*

Section 4712 provides a procedure nearly identical to the Sarbanes-Oxley Act. Thus, Plaintiff must exhaust his administrative remedies prior to filing suit. As Plaintiff has not alleged the pursuit of *any* administrative remedies, let alone exhaustion of the administrative remedies set forth in § 4712, this court lacks jurisdiction over his § 4712 claims. See *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) ("plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under the ADEA."); *Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) ("The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), requires that a prisoner exhaust administrative remedies before filing a federal-law action with respect to prison conditions."); *Knopp v. Magaw*, 9 F.3d 1478, 1479 (10th Cir. 1993) (10th Circuit has held when a federal employee "filed his action in district court before 180 days expired from his filing with the EEOC, the district court did not have subject matter jurisdiction to hear his claim.").

In sum, only the claims for prospective injunctive relief and other equitable relief may survive the sovereign immunity bar under the *Ex parte Young* doctrine. Even if they do, the claims still fail because Plaintiff failed to exhaust his administrative remedies under § 4712.

**4. Plaintiff's Claims under the FCA are because the FCA does not authorize suits against the states and because the alleged conduct was not action "in furtherance of" an FCA claim.**

Count Four of the Amended Complaint asserts a retaliation claim against Drs. Vitter, Warren, and Heppert in their official capacities under the FCA's whistleblower provision, 31 U.S.C. § 3730(h).

> The FCA imposes liability on any person who 'knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval,' or 'knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government,' The FCA authorizes individuals to bring qui tam suits on behalf of the government and keep a percentage of any monies recovered.
>
> Since employees will often be in the best position to report frauds perpetrated by their employers, the FCA includes "whistleblower" provisions protecting employees who do so from retaliation.

*McBride v. Peak Wellness Ctr., Inc.*, 688 F.3d 698, 703-04 (10th Cir. 2012) (internal citations omitted). The claim against the defendants fails to state a claim for relief because the FCA does not authorize suits against states and Plaintiff has not alleged that he took action "in furtherance of" a claim under the False Claims Act.

*a. The False Claims Act does not authorize suits against states.*

This Court recently held that § 3730(h) of the FCA does not authorize a retaliation cause of action against states. *Klaassen v. Univ. of Kansas Sch. of Med.*, __ F.Supp.3d __, 2015 WL 437747, at *8 (D. Kan. Feb. 3, 2015). *Klaassen* is the first Kansas District Court case to examine whether the FCA authorizes suits claims against states following 2009 amendments to the FCA. *Klaassen* explained:

> Before the 2009 amendments, § 3730(h) stated that "[a]ny employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment *by his or her employer* ... shall be entitled to all relief necessary to make the employee whole" (emphasis added). The new version deleted the language that limited recovery to

> those discriminated against by "his or her employer." As a result, the current §
> 3730(h) is broader than the pre–2009 version.

*Id.* at *7 (emphasis in original).  Because, however, the amendments did not express "a clear

congressional intent to hold states liable for retaliation under the FCA," the court agreed with

multiple other federal courts and concluded § 3730(h) does not authorize suits against states. *Id.*

The FCA claim against Drs. Vitter, Warren, and Heppert in their official capacities is in

effect a claim against KU, which is an arm of the state.  As discussed above, such an official

capacity suit is barred by the Eleventh Amendment.  Section 3730(h) of the FCA does not provide

for retaliation claims against states, barring any claim against Drs. Vitter, Warren, and Heppert in

their official capacities. *See Klaassen, supra* at *8 (FCA claims against University employees in

their official capacity dismissed because official capacity suits are treated as against the

government entity the defendant represents and § 3730(h) does not provide for retaliation claims

against states).

### b.   *Plaintiff's alleged conduct was not action "in furtherance of" an FCA claim.*

Even if an FCA claim were possible, that claim fails because Plaintiff's alleged conduct

was not "in furtherance" of an FCA claim.  "[A] plaintiff claiming retaliatory discharge under the

FCA 'has the burden of pleading facts which would demonstrate that defendants had been put on

notice that plaintiff was either taking action in furtherance of a private qui tam action or assisting

in an FCA action brought by the government.'" *McBride v. Peak Wellness Ctr., Inc.*, 688 F.3d 698,

704 (10th Cir. 2012).

> Notice may be provided in a number of ways: for example, by informing the
> employer of "illegal activities" that would constitute fraud on the United States,
> *United States ex rel. Marlar v. BWXT Y–12, LLC*, 525 F.3d 439 (6th Cir. 2008); by
> warning the employer of regulatory noncompliance and false reporting of
> information to a government agency, *Wilkins v. St. Louis Hous. Auth., 314 F.3d 927
> (8th Cir. 2002)*; or by explicitly informing the employer of an FCA violation,
> *Eberhardt v. Integrated Design & Constr. Inc.*, 167 F.3d 861, 867 (4th Cir. 1999).

> But merely informing the employer of regulatory violations, without more, does not provide sufficient notice, because doing so gives the employer "no suggestion that [the plaintiff is] going to report such noncompliance to government officials" or bring "her own qui tam action." *Ramseyer*, 90 F.3d at 1523. Whistleblowers "must make clear their intentions of bringing or assisting in an FCA action in order to overcome the presumption that they are merely acting in accordance with their employment obligations." *Id*. at 1523 n. 7.

*Id*. The appropriate inquiry is "whether the actions alleged in the complaint could be reasonably described as an 'investigation' sufficient to put defendants on notice of a possible qui tam action." *U.S. ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir. 1996).

In *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702 (10th Cir. 2006), the plaintiff communicated to her superiors within the company and to an internal fraud and abuse division her belief that violations were occurring.  The district court held that the plaintiff only took actions she claimed were authorized as part of her employment and "failed to allege either that she informed her superiors of her intention to bring an FCA action or that she was going to report [the company's] noncompliance to government officials." *Sikkenga*, 472 F.3d at 729.  The district court also found the plaintiff had not alleged she indicated to the employer she was contemplating a private qui tam action or was assisting in an FCA action brought by the government.  The Tenth Circuit agreed and the plaintiff's FCA whistleblower retaliation claim was dismissed.

The Amended Complaint merely states Plaintiff "continually expressed his concerns . . . to his superiors" or he informed his superiors of mismanagement or noncompliance. ECF 30, ¶¶ 99 (e), 100 (f), 101(g), 102(i), 103(i), 104(f), 105(i), 106(i), 107(f), 108(k), 109(i), 111, 113(c), 115(g), 124, 125.  "Moore took lawful action regarding his concerns about the instances of Federal Funds Mismanagement and Noncompliance and the MAI Lab Renovation Project Waste . . . by investigating what he reasonably believed were violations of federal laws, rules, and regulations.

. . .” ECF 30, ¶ 189.  Plaintiff further alleges, “following plaintiff David S. Moore’s seeking information regarding and informing his superiors of suspected the Federal Funds Mismanagement and Non-Compliance and the MAI Lab Renovation Project Waste, the University and the KU Center for Research retaliated against plaintiff David S. Moore. . . . [sic]” ECF 30, ¶ 190.

Plaintiff does not plead any facts to suggest he sought to pursue a *qui tam* claim, otherwise assist with any government investigation, or that the University knew of any intention to do so. Merely informing the employer of regulatory violations, as Plaintiff alleges, does not provide sufficient notice, and Plaintiff’s claim fails. *McBride*, 688 F.3d at 704.

5. **Plaintiff’s § 1983 claims of violation of his rights to Freedom of Speech and Liberty Interest fail to state a constitutional violation and are barred by qualified immunity.**

Plaintiff appears to assert free speech and liberty interest claims under the First and Fourteenth Amendments.  ECF 30, ¶ 198(a)(i)-(ii).

a. **Plaintiff’s fails to state a claim of a violation of his rights to freedom of speech under the First Amendment.**

Count Five alleges a violation of his rights to freedom of speech in violation of the First Amendment as to Drs. Vitter, Warren and Heppert, each in their individual capacities.  ECF 30, p. 102.  This claim must be dismissed because (1) the Amended Complaint fails to state a claim under § 1983 and the First Amendment upon which relief may be granted and (2) Drs. Vitter, Warren and Heppert are entitled to qualified immunity.

In short, plaintiff’s alleged speech was speech was pursuant to an employee’s official duties and, therefore, not protected by the First Amendment. *Garcetti v. Ceballos*, 547 U.S. 410 (2006). Even if it were arguable as to whether plaintiff’s alleged speech was protected, qualified immunity precludes any claim as the law was not clearly established it would be clear to a reasonable officer

that his conduct was unlawful in the situation n. *Comprehensive Addiction Treatment Ctr. v. Leslea*, 552 F. App'x 812, 815-16 (10th Cir. 2014).

Generally speaking, plaintiff alleges he engaged in protected speech by speaking out on the matters regarding "compliance with federal laws governing the use of federal grants to the University and other federal funds and the conduct of academicians and other personnel using those and other funds and programs and facilities using those funds, including speaking out on the Federal Funds Mismanagement and Noncompliance, the MAI Lab Renovation Project Waste and the Academic Conduct" as more fully described in the Amended Complaint.

The framework for assessing a First Amendment retaliation claim is well established within the Tenth Circuit.  There is the five-step framework established by the Supreme Court in *Garcetti*, *supra* and *Pickering v. Board of Education*, 391 U.S. 563 (1968).  The five steps are:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 745 (10th Cir. 2010) (quotation omitted).  "The first three steps ... are issues of law to be resolved by the district court, while the last two are ordinarily for the trier of fact." *Id.* (internal quotation omitted, citation omitted).  On this motion to dismiss and the extraordinary specificity with which plaintiff has pleaded his claims, this court can determine as a matter of law that plaintiff's alleged speech was made pursuant to plaintiff's official duties and is, therefore, not protected speech under the First Amendment.

i.      *Plaintiff's alleged speech was made pursuant his official duties and, thus, is not protected by the First Amendment.*

Under the *Garcetti/Pickering* analysis, "[i]f the employee speaks pursuant to his official duties, then there is no constitutional protection." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007).  When assessing whether a public employee's speech is within the scope of the employee's official duties, the proper focus is ultimately whether the speech stemmed from and was of the type that the employee was paid to do, regardless of the exact role of the individual or entity to which the employee has chosen to speak.  *Rohrbough*, 596 F.3d at 748.  What speech is pursuant to an employee's official duties is viewed broadly.  *Thomas v. City of Blanchard*, 548 F.3d 1317, 1324 (10th Cir. 2008).

Speech can be within the scope of an employee's official duty even if "the speech concerns an unusual aspect of an employee's job that is not part of his everyday functions." *Brammer-Hoelter,* 492 F.3d at 1203.  In *Lauck v. Campbell County*, 627 F.3d 805 (10th Cir. 2010), the Tenth Circuit examined a constructive discharge claim by a former sheriff's deputy who claimed his assignment from a patrol lead officer to the civil process division amounted to retaliation for, *inter alia*, speech protected by the First Amendment.  One of the instances of "speech" for the retaliation claim was an incident report in which Lauck was critical of the release of a police dog to capture a suspect.  The Tenth Circuit concluded that the deputy's "speech" questioning the manner in which law enforcement duties were carried out was part of the plaintiff's duties as a deputy sheriff and could not serve as a basis for a First Amendment retaliation claim.  627 F.3d at 815.  If speech "reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties." *Brammer–Hoelter*, 492 F.3d at 1203.

There is no question but that plaintiff's alleged speech was speech pursuant to his official duties as Assistant Scientist and the Director of the MAI Lab.  *See, e.g., Renken v. Gregory*, 541

F.3d 769, 773–75 (7th Cir. 2008) (granting summary judgment to a public university because a professor's complaints about "the proper administration of an educational grant fell within the scope of [his] teaching duties"); *Lee v. Kan. State Univ.*, No. 12–cv–2638, 2013 WL 2476702, at *9 (D.Kan. June 7, 2013) (holding that statements from graduate teaching assistant about academic fraud were made "pursuant to her official duties" and thus were not protected by the First Amendment); and *Klaassen, supra* at *25.

Various University policies which are expressly referred to in the Complaint (ECF 30 p. 46), required that plaintiff report known or suspected incidents of fraud, including theft and misappropriation of University Assets and to report and take action with respect to academic or scholarly misconduct—including plagiarism.  The KU Fraud and Theft Prevention Policy states its purpose is:

> To prevent and detect fraud and theft, assign responsibility for implementing appropriate controls to prevent and detect fraud and theft, establish the appropriate reporting mechanisms to be used for notification of known or suspected fraud and theft, and establish the consequences for fraud and theft by employees.

Fraud and Theft Prevention Policy.[3]  That policy applies to "[a]ll University of Kansas employees, customers, vendors, contractors, consultants, or other parties related to the University."  *Id.* Further, the policy directs that all KU employees must comply with applicable state and federal law, Kansas Board of Regents policy, and University policy."  *Id.*  Finally, employees "are

---

[3] Plaintiff expressly refers to this policy in his Amended Complaint at ¶ 100(v)-(vi), ECF 30, ¶ 46.  When considering a Rule 12(b)(6) motion to dismiss, courts generally must confine the record to allegations in the pleadings and exhibits attached to them. Fed.R.Civ.P. 12(d). However, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The KU Fraud and Theft Prevention Policy is publicly available and can be accessed online at http://policy.ku.edu/chancellor/fraudtheftpreventionpolicy.  A copy is provided as Exhibit 1.

responsible for immediately reporting known or suspected incidents of fraud, including theft and misappropriation of University Assets … ."  *Id.*

KU policy on scholarly misconduct, including plagiarism, requires that "[a]nyone having information that leads him/her to believe that a faculty or staff member (or student working in sponsored research) has engaged in scholarly misconduct as defined above should report the matter … ."[4]

The University Handbook for Faculty and Unclassified Staff also imposes a duty upon faculty and staff to take action when they believe academic misconduct has occurred.[5]  The KU Whistleblower Policy likewise required that plaintiff, as a KU employee, report acts that he reasonably believed violated the law or policy by KU or the Board of Regents to the appropriate University official.[6]

In *Klaassen*, it was held that complaints by a professor about alleged mismanagement and misappropriation of grant monies was speech that "reasonably contribute[d] to" the performance of his official duties which were unprotected under *Garcetti*.  *Klaassen, supra* at *18.

All of plaintiff's alleged speech was pursuant to his official duties for which there is no constitutional protection.  *Brammer-Hoelter*, 492 F.3d at 1202.  As a consequence, the Amended Complaint fails to state a violation of a constitutional right.

---

[4] As alleged in the Amended Complaint at ¶ 121, "Article IX of the University Senate Rules and Regulations prohibits "scholarly misconduct" including, specifically plagiarism … ."  As with the Fraud and Theft Prevention Policy, an indisputably authentic copy of the University Senate Rules and Regulations are publicly available and can be accessed online at http://policy.ku.edu/governance/USRR.  A copy is provided herewith as Exhibit 2.

[5] Handbook for Faculty and Other Unclassified Staff, Part IV.D - Scholarly Misconduct, Part III.C.2.  Plaintiff's Amended Complaint repeatedly refers to federal regulations that require the KU Research and Graduate Studies program to prohibit and address research misconduct, including plagiarism.  ECF 30, ¶¶ 116-121.  An indisputably authentic copy of the Handbook for Faulty and Other Unclassified Staff is publicly available at the KU Policy Library at http://www.policy.ku.edu.  A copy is provided herewith as Exhibit 3.

[6] The KU Whistleblower Policy : Reporting Suspected Wrongdoing and Protection from Retaliation, is explicitly referenced in the Amended Complaint, ECF ¶ 198(e)(ii).  An indisputably authentic copy of the Handbook for Faulty and Other Unclassified Staff is publicly available at the KU Policy Library at http://policy.ku.edu/internalaudit/whistleblowerpolicy.  A copy is provided herewith as Exhibit 4.

ii.     *Qualified Immunity*

Alternatively, should the court deem it arguable that plaintiff has alleged a violation of his First Amendment rights to freedom of speech, Drs. Vitter, Warren and Heppert are entitled to qualified immunity.

> Courts may grant qualified immunity because a purported right was not "clearly established" by prior law, without resolving the often more difficult question whether the purported right exists at all. *Reichle v. Howards*, ⸺ U.S. ⸺, ⸺, 132 S.Ct. 2088, 2093 (2012). It is not "clearly established" whether *Garcetti* or *Connick–Pickering* applies to plaintiff's speech. For that reason, qualified immunity protects the Individual Defendants from plaintiff's First Amendment claim if the Court decides plaintiff's speech was not protected under either *Garcetti* or *Connick–Pickering*.

*Klaassen v. Univ. of Kansas Sch. of Med.*, *supra* at *17.  In *Klaasen*, the plaintiff had argued that Fourth and Ninth Circuit cases had held that *Garcetti* did not apply in certain academic situations. *Id.* (citing *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 563–65 (4th Cir. 2011); *Demers v. Austin*, 746 F.3d 402, 415 (9th Cir. 2014)).  Neither *Adam* nor *Demers* applies and, as concluded in *Klaassen, supra* at *18, *Garcetti* controls and plaintiff's First Amendment claim must be dismissed.

**b.     Liberty Interest Claim**

Plaintiff also alleges in Count Five a deprivation of his right to liberty and protection of his reputation, but only in the most cursory fashion.  ECF 30, ¶¶ 204 and 210.

i.     *Plaintiff fails to state a constitutional violation.*

A government employee possesses a liberty interest in protecting his good name and reputation in certain circumstances. *See Darr v. Town of Telluride*, 495 F.3d 1243, 1255 (10th Cir. 2007). If a public employer terminates "an employee based upon a public statement of unfounded charges of dishonesty or immorality that might seriously damage the employee's standing or associations in the community and foreclose the employee's freedom to take advantage of future

employment opportunities, a claim for relief is created." *Melton v. City of Okla. City*, 928 F.2d 920, 927 (10th Cir. 1991).  To determine whether a plaintiff's liberty interest in his good name is infringed, a four-part test applies:

> First, to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee. Second, the statements must be false. Third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities. And fourth, the statements must be published. These elements are not disjunctive, all must be satisfied to demonstrate deprivation of the liberty interest.

*Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994) (citations omitted).  If these conditions are met, the government must afford the plaintiff "an adequate name-clearing hearing." *Id.* at 480.

The Amended Complaint contains only raw references to a right of liberty and protection of reputation that could possibly implicate a liberty interest due process analysis.  In short, the Amended Complaint wholly fails to allege (1) any false statements by Drs. Vitter, Warren and/or Heppert which (2) impugn plaintiff's good name, reputation, honor or integrity (3) made in the course of terminating plaintiff (4) which was published and forecloses other employment opportunities.  As such, the liberty interest due process claim must be dismissed.

Furthermore, the liberty interest claim fails because plaintiff was afforded an opportunity for an adequate name-clearing hearing.  Plaintiff was afforded a right to a hearing under the KJRA and, indeed filed such an action but dismissed it on his own motion.  See ECF 30, ¶¶ 90, 94 (filed KJRA action in Douglas County, then dismissed the same).

### ii.    Qualified Immunity

Alternatively, Drs. Vitter, Warren and Heppert are entitled to qualified immunity as to plaintiff's liberty claim because there is no clearly established law that was cause a reasonable official in their position to have known their conduct somehow implicated a liberty interest.

**6. Plaintiff fails to state a claim of a deprivation of substantive due process upon which relief may be granted: (a) the Amended Complaint fails to state a constitutional violation and (b) defendants are entitled to qualified immunity.**

In Count Six, plaintiff alleges a deprivation of substantive due process as to Drs. Vitter, Warren and Heppert, each in their individual capacities.

**a. Plaintiff fails to state a substantive due process claim.**

"A Fourteenth Amendment substantive due process claim arises when a plaintiff alleges the government deprived him of a fundamental right." *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 749 (10th Cir. 2013). The Amended Complaint specifies the alleged deprivation arises from (i) unfavorable employment reviews, (ii) Plaintiff's four-week suspension, (iii) intensified demands upon plaintiff that created a hostile working environment, and (iv) termination from employment. ECF 30, ¶ 205. The aforementioned conduct, even if it occurred, does not implicate a fundamental right redressible via the substantive due process clause of the Fourteenth Amendment. Liberty interests that warrant redress under § 1983 must be "deeply rooted" in the nation's history and experience. *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997). The claims and allegations herein relate to employment (suspension and termination) and disability discrimination. Neither implicate a right that is part of "the very essence of a scheme of ordered liberty" and inseparably entwined with "'a principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' [Citation omitted.]" *Palko v. Connecticut*, 302 U.S. 319, 325 (1937).

Conduct that falls within a specific amendment is analyzed by reference to the specific constitutional standard which governs that right not under the substantive due process clause. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Courts are, indeed, cautioned against treating the Fourteenth Amendment as "a font of tort law." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S.

748, 768 (2005). It should be observed, however, that plaintiff has clearly *not* attempted to plead deprivation of a property interest in continued employment[7]  nor deprivation of equal protection.

As recently articulated in *Klaassen*:

> A Fourteenth Amendment substantive due process violation arises when a plaintiff alleges the government deprived him of a fundamental right. *Koessel,* 717 F.3d at 749. This framework extends due process protections primarily "to matters relating to marriage, family, procreation, and the right to bodily integrity." *Williams v. Berney,* 519 F.3d 1216, 1220 (10th Cir. 2008) (quoting *Albright v. Oliver,* 510 U.S. 266, 272 (1994)). An action violates substantive due process when it is "arbitrary, capricious, or without rational basis." *Tonkovich* [*v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998)].  Substantive due process claims are not based on violations of state law; instead, they are founded upon "deeply rooted notions of fundamental personal interests derived from the Constitution." *Hennigh v. City of Shawnee,* 155 F.3d 1249, 1256 (10th Cir. 1998) (quoting *Mangels v. Pena,* 789 F.2d 836, 839 (10th Cir. 1986)). The standard for judging these claims is whether the challenged action "shocks the conscience." *Koessel,* 717 F.3d at 749. To satisfy this standard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Tonkovich,* 159 F.3d at 528 (quoting *Uhlrig v. Harder,* 64 F.3d 567, 574 (10th Cir. 1995)).

*Klaassen, supra* at *25.

Assuming that plaintiff's allegations are true, as we must on a motion to dismiss, the alleged conduct of Drs. Vitter, Warren and Heppert do not state a violation of plaintiff's substantive due process rights under the Fourteenth Amendment.  Not only do Plaintiff's claims not fall within "matters relating to marriage, family, procreation, and the right to bodily integrity," *Williams*, 519 F.3d at 1220, they also do not shock the conscious.    The Tenth Circuit has held that an employment injury such as the loss of a job is "not so egregious as to shock the judicial conscious." *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 750 (10th Cir. 2013). Thus, the Count Six should be dismissed as the Amended Complaint fails to state a constitutional violation.

**b.**    **Qualified Immunity**

---

[7] Indeed, it should be noted that plaintiff Moore held an appointment "at the pleasure" of his appointing authority.

Alternatively, Drs. Vitter, Warren and Heppert are entitled to qualified immunity as to plaintiff's substantive due process claim because there is no clearly established law that was cause a reasonable official in their position to have known their conduct "shocks the conscience" and thereby violated plaintiff's substantive due process rights. *See, e.g., Klaassen, supra* at *26 (dismissing substantive due process claims on qualified immunity grounds).

### 7. Plaintiff's claim of common law retaliatory discharge fails to state a claim upon which relief may be granted.

Plaintiff's seventh count asserts a common law claim of retaliatory discharge. Again, the amended complaint specifies this count is against Drs. Vitter, Warren and Heppert for prospective injunctive relief in their official capacities under the Kansas common law tort public policy exception to discharge of at-will employee. ECF 30, ¶ 217. For relief against Drs. Vitter, Warren and Heppert, plaintiff seeks (1) reinstatement; (2) costs; including reasonable attorneys' fees; (3) unspecified equitable relief under the ADA; and (4) "such other just, appropriate and additional relief as is just and appropriate in the premises." ECF 30, p. 115.

The state law claims against Drs. Vitter, Warren and Heppert fail for a variety of reasons, chief among which are 1) the Eleventh Amendment bars the state law claim against KU as well as those against individual defendants in their official capacity; 2) the Kansas Whistleblower Act provides an adequate alternative remedy to plaintiff's common law retaliation claim; and 3) Kansas law recognizes a common law cause of action for retaliatory discharge only against the *employer* and expressly precludes such a claim against individual supervisors or employees.

### a. The Eleventh Amendment bars plaintiff's state law claim against KU and Drs. Vitter, Warren and Heppert.

As discussed above, the Eleventh Amendment bars federal-court jurisdiction over private suits against a state by citizens of the state. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267–68 (1997). "[T]his principle applies as well to state-law claims brought into federal court

under pendent jurisdiction." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). Supplemental jurisdiction under 28 U.S.C. § 1367 does not override the Eleventh Amendment's bar on suing a state in federal court, the Eleventh Amendment generally bars state law claims against KU and individual defendants in their official capacities. *Pettigrew v. Okla. ex rel. Okla. Dep't of Pub. Safety*, 722 F.3d 1209, 1213 (10th Cir. 2013).

**b.**  ***The Kansas Whistleblower Act provides an adequate alternative remedy to Plaintiff's common law retaliation claim.***

Plaintiff's Amended Complaint tacitly recognizes that the Kansas Whistleblower Act applies to his claims. He expressly references the Act, ECF 30 at ¶ 231, then asserts the remedies thereunder are inadequate. This assertion has been addressed and rejected by the Kansas Supreme Court. *Prager v. State, Dep't of Revenue*, 271 Kan. 1, 50, 20 P.3d 39, 71 (2001).

When a state or federal statute provides an adequate alternative remedy for a state common law claim, the state claim is precluded. *Clay v. United Parcel Serv., Inc.*, 983 F. Supp. 2d 1331, 1345 (D. Kan. 2013). The Kansas Whistleblower Act, K.S.A. 75-2973, provides an adequate alternative remedy to Plaintiff thereby precluding his common law claim. Indeed, plaintiff pursued an action under K.S.A. 75-2973 then voluntarily dismissed that action in favor of the instant action. *See*, ECF 30 ¶¶ 90, 94 (filed action in Douglas County, then dismissed upon receipt of right to sue under the ADA from the EEOC).

K.S.A. 75-2935 divides the civil service of the State of Kansas into unclassified and classified services. The unclassified service comprises positions held by state officers or employees who are "chancellor, president, deans, administrative officers, student health service physicians, pharmacists, teaching and research personnel, health care employees and student employees in the institutions under the state board of regents." K.S.A. 75-2935(1)(f).

The Kansas Whistleblower Act provides, in relevant part:

(c) No supervisor or appointing authority of any state agency shall prohibit any employee of the state agency from discussing the operations of the state agency or other matters of public concern, including matters relating to the public health, safety and welfare either specifically or generally, with any member of the legislature or any auditing agency.

(d) No supervisor or appointing authority of any state agency shall:

> (1) Prohibit any employee of the state agency from reporting any violation of state or federal law or rules and regulations to any person, agency or organization; or

> (2) require any such employee to give notice to the supervisor or appointing authority prior to making any such report.

K.S.A. 75-2973. Further, a remedy is provided for employees in the unclassified service:

> Any officer or employee who is in the unclassified service under the Kansas civil service act who alleges that disciplinary action has been taken against such officer or employee in violation of this section may bring an action pursuant to the Kansas judicial review act within 90 days after the occurrence of the alleged violation. The court may award the prevailing party in the action all or a portion of the costs of the action, including reasonable attorney fees and witness fees.

K.S.A. 75-2973(h).

Plaintiff, as research personnel for KU, a Board of Regents institution, was an unclassified civil servant. ECF 30, ¶ 2. Thus, K.S.A. 75-2973(h) provides Plaintiff an adequate statutory remedy for retaliatory discharge and Plaintiff's common law whistleblowing claim should be dismissed for failure to state a claim. *Prager,* 271 Kan. at 50 (affirming dismissal of classified employee's common law whistleblower claim because Kansas Whistleblower Act provided adequate remedy for claimed whistleblowing activities).

> ***c.*** ***Even if plaintiff's exclusive remedy was not under the Kansas Whistleblower Act, Kansas law recognizes a common law cause of action for retaliatory discharge only against the employer and expressly precludes such a claim against individual supervisors or employees of the employer.***

Retaliation claims based on an alleged violation of Kansas public policy may only be brought against an employer and not against the supervisor. *Rebarchek v. Farmers Coop. Elevator*

& *Mercantile Ass'n*, 272 Kan. 546, 562, 35 P.3d 892, 904 (2001) ("We … decline to impose liability for retaliatory discharge of an employee on a supervisor. We conclude that only the employer is liable for retaliatory discharge.").   Several unpublished Kansas Court of Appeals decisions have reinforced that that individual constituents of an entity employer, regardless of their status as supervisory employees of "officials," may not be sued for retaliatory discharge.   *Hart v. U.S.D. #244 Bd. of Educ.*, 327 P.3d 1052, 2014 WL 3020476, at *6 (Kan. Ct. App. 2014); *Busey v. Bd. of Cnty. Comm'rs of Shawnee Cnty.*, 116 P.3d 55, 2005 WL 1805418, at *3 (Kan. Ct. App. 2005) (noting that dismissal of any defendant who was not the plaintiff's employer, including two individually-named defendants, was "unquestionably appropriate"); *Kerns v. City of Dodge City*, 313 P.3d 105, 2013 WL 6164586, at *3 (Kan.Ct.App. Nov.22, 2013) (holding "[o]nly an employer is liable for the common-law tort of retaliatory discharge" in context of Kansas statutory violation).

Plaintiff's state law retaliation claims against Drs. Vetter, Warren and Heppert must be dismissed.

## VI.    CONCLUSION

For all the foregoing reasons, all of plaintiff's claims against Dr. Jeffrey S. Vitter, Dr. Steven F. Warren, and Dr. Joseph A. Heppert must be dismissed with prejudice.

Further, Plaintiff cannot proceed under Counts One, Three, Four, Five, Six, and Seven against KU.   Thus, these counts must be dismissed in their entirety as to KU and Drs. Vitter, Warren and Heppert.

Finally, Plaintiff cannot assert claims against the University of Kansas for compensatory or punitive damages under Count Two.

**FISHER, PATTERSON, SAYLER & SMITH, LLP**
3550 S.W. 5th Street - P. O. Box 949
Topeka, Kansas  66601-0949
Office:  (785) 232-7761; Fax: (785) 232-6604
E-Mail:     dcooper@fisherpatterson.com
                  smorse@fisherpatterson.com


**s/David R. Cooper**
David R. Cooper                         #16690
Sarah A. Morse                         #25431
**ATTORNEYS FOR DEFENDANTS UNIVERSITY OF KANSAS AND DRS. VITTER, WARREN, AND HEPPERT**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing on the 10th day of March, 2015, with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Daniel R. Cofran
Attorney at Law
1000 W. 70th Street
Kansas City, Missouri 64113
dcofran@swbell.net
**ATTORNEYS FOR PLAINTIFF**


**s/David R. Cooper**
112.30413                              David R. Cooper


## INDEX OF EXHIBITS

1.      Fraud and Theft Prevention Policy

2.      University Senate Rules and Regulations (USRR)

3.      Faculty and Unclassified Staff Handbook

4.      Whistleblower Policy