### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS
### AT KANSAS CITY, KANSAS

| | | |
|---|---|---|
| DAVID S. MOORE, Ph.D., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:14-CV-02420-SAC-KGS |
| | ) | |
| vs. | ) | Hon. Sam A. Crow |
| | ) | |
| THE UNIVERSITY OF KANSAS, *et al*., | ) | Hon. K. Gary Sebelius |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S MEMORANDUM
### IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

COMES NOW plaintiff David S. Moore, Ph.D., by and through his attorney, and for his Memorandum in Opposition to Defendants' Motion to Dismiss his First Amended Complaint for Disability Discrimination and Retaliation, Whistleblowing Retaliation, Deprivation of Constitutional Rights and Common Law Unlawful Termination of Employment for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) and for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), states as follows:

### Introduction

1.      This is a disability, whistleblower and 42 U.S.C.A. Sec. 1983 employment discrimination, hostile work environment and retaliation action by David S. Moore, Ph.D., who for eight years was the highly praised and published Director of the University of Kansas Microscopy and Analytical Imaging laboratory ("MAI Lab").  The MAI Lab is a scientific laboratory using $6.0 million in federally funded electron microscopy and related highly sophisticated scientific instruments for conducting complex life sciences and materials research, down to the single atom level, by University faculty, researchers and students.   ECF Doc. No. 30, para. 15. Dr. Moore was employed in the University's unclassified service in an "at will" position.

2.      Dr. Moore's First Amended Complaint is in seven accounts, summarized for the convenience of the Court and counsel as follows:

1

| **First Amended Complaint Summary** | | | |
|---|---|---|---|
| *Count* | *Claim* | *Defendants* | *Relief* |
| One | Americans with Disabilities Act, 42 U.S.C. Secs. 12,101 *et seq.* | Bernadette Gray-Little Jeffrey Vitter Stephan Warren Joseph Heppert | Reinstatement (prospective, non-monetary injunction for continuing wrong) Costs, including Attorneys' Fees Injunction to eliminate pattern and practice regarding other employees Other just, appropriate, etc. relief |
| Two | Rehabilitation and Disabilities Act, 29 U.S.C. Sec. 701, *et seq.*, | University of Kansas KU Center for Research, Inc. | Reinstatement ~~Back Pay Damages plus Interest~~ Costs, including Attorneys' Fees Injunction to eliminate any pattern and practice regarding other employees Other just and appropriate relief |
| Three | Contractor Protection from Reprisal Act 41 U.S.C. Sec. 4712, *et seq.* | KU Center for Research, Inc. Bernadette Gray-Little Jeffrey Vitter Stephan Warren Joseph Heppert | Reinstatement (prospective, non-monetary injunction for continuing wrong) (Individuals only) Back Pay Damages plus Interest (KU Center for Research only) Injunction to eliminate any pattern and practice regarding other employees Costs, including Attorneys' Fees Other just and appropriate relief |
| Four | False Claims Act (Retaliation, not *Qui Tam* at this point) 31 U.S.C. 3730(h) | KU Center for Research, Inc. Bernadette Gray-Little Jeffrey Vitter Stephan Warren Joseph Heppert | Reinstatement (prospective, non-monetary injunction for continuing wrong) (Individuals only) Double Back Pay Damages plus interest (KU Center for Research only) Injunction to eliminate any pattern and practice regarding other employees Costs, including Attorneys' Fees Other just and appropriate relief |
| Five | Civil Rights Act of 1871, 42 U.S.C. Sec. 1983 Free Speech | Jeffrey Vitter Stephan Warren Joseph Heppert | Reinstatement Back Pay Damages plus Interest Punitive Damages Injunction to eliminate any pattern and practice regarding other employees Costs, including Attorneys' Fees Other just and appropriate relief |
| Six | Civil Rights Act of 1871, | Jeffrey Vitter | Reinstatement |

2

| First Amended Complaint Summary | | | |
|---|---|---|---|
| *Count* | *Claim* | *Defendants* | *Relief* |
| | 42 U.S.C. Sec. 1983 Substantive Due Process | Stephan Warren Joseph Heppert | Back Pay Damages plus Interest Punitive Damages Injunction to eliminate any pattern and practice regarding other employees Costs, including Attorneys' Fees Other just and appropriate relief |
| Seven | Kansas Common Law Public Policy Exception to Employment at-Will Doctrine | KU Center for Research, Inc. Bernadette Gray-Little Jeffrey Vitter Stephan Warren Joseph Heppert | Reinstatement Back Pay Damages plus Interest Pain and Suffering Damages Punitive Damages Injunction to eliminate any pattern and practice regarding other employees Costs, including Attorneys' Fees Other just and appropriate relief |

*Summary of Disabilities Claim*

3.      Plaintiff's disability discrimination claims are based the University's suspending him for four weeks without pay for alleged unprofessional conduct and turning in annual self-evaluation reports late and shortly thereafter, while his suspension appeal was pending,[1] firing him without notice, this time claiming his discharge was based on the "future directions of the MAI Lab" and the "best interests" of the University, ECF Doc. No. 30, para. 83, even though the University's after-the-fact, ginned-up 1,400 page Administrative Record contains no references whatsoever to the "future directions of the MAI Lab" and "best interests."  ECF Doc. No. 30, para. 207.

4.      Plaintiff many years before had been diagnosed with Attention Deficit Disorder/Attention Deficit and Hyperactivity Disorder ("ADD/ADHD").  ECF Doc. No. 30, para. 20. He registered with the University's disabilities office and received ADD/ADHD accommodations when he was a student, ECF Doc. No. 30, para. 20, informed his superiors of his ADD/ADHD condition when first employed by the University, ECF Doc. No. 30, paras. 20 and 21, continued to inform his superiors when he became

---

[1] Under the University Senate Rules and Regulations, Sec. 6.4.2., the right to a hearing before the Faculty Rights Board is provided for University personnel in plaintiff's position in the event of censure, suspension, dismissal and leave without pay.  Plaintiff filed an appeal of his suspension, but the University fired him when his hearing was being set and did not afford him a hearing on his dismissal.

Director of the MAI Lab, ECF Doc. No. 30, paras. 27 and 28, and again informed his superiors in writing prior to his suspension, ECF Doc. No. 30, para. 75(b).

5.     Plaintiff explained that his ADD/ADHD condition likely explained what others perceived as unprofessional conduct, as well as his turning in reports late, and requested accommodations, requesting a specific accommodation plan. ECF Doc. No. 30, paras. 69 and 75(c).

6.     The University ignored his request, refused to discuss any accommodations and without further discussion suspended him without pay for four weeks, knowingly intensified work pressures on plaintiff to exacerbate his ADD/ADHD condition, and then fired him while his suspension appeal was pending.  ECF Doc. No. 30, paras. 76, 80 - 82.

7.     The disabilities claims are raised in Counts One (Americans with Disabilities Act), Two (Rehabilitation Act), Five (Sec. 1983 – Free Speech) and Six (Sec. 1983 (Substantive Due Process).

*Summary of Whistleblowing Claims*

8.     Plaintiff's whistleblowing claims extend over the last several years of his employment and cover three categories:

(a)     *Federal Funds Mismanagement and Compliance*.  Failure to comply with federal law in the business office of the Research and Graduate Studies ("RGS") program for all University laboratories, particularly, financial accounting and reporting practices, including internal controls, for the use of federally funded scientific instruments in University laboratories, as required under federal regulations, particularly Office of Management and Budget Circular A-21, "Cost Principles for Educational Institutions."  The First Amended Complaint describes in detail in 18 separate specifications of Federal Funds Mismanagement and Compliance.  ECF Doc. No. 30, para. 98 – 108.  Generally, these include:

(i)     Keeping two sets of books for the Research and Graduate Studies program and laboratories, including *admitted* "laundering" federal and other funds, ECF Doc. No. 30, para. 99 (one specification);

4

(ii)     Fictitious instrument charges in the Research and Graduate Studies laboratories for scientific instruments acquired with federal funds, ECF Doc. No. 30, para. 100 (three specifications).

(iii)    Use and disposition of federally funded scientific instruments in the Research and Graduate Studies laboratories for private commercial purposes without proper charges.  ECF Doc. No. 30, para. 101 (three specifications).

(iv)    Double billing "Facilities and Administration" charges for federal reimbursement in Research and Graduate Studies laboratories, ECF Doc. No. 30, para. 102 (five specifications) ;

(v)     *Ad hoc* instrument use tracking in the Research and Graduate Studies laboratories for scientific instruments acquired with federal funds, ECF Doc. No. 30, para. 103 (one specification);

(vi)    Use of federal funds for ineligible purposes.  ECF Doc. No. 30, para. 104 (one specification)

(vii)   *Ad hoc* accounts receivable collections to account for the use of federal funds in the Research and Graduate Studies laboratories and program, ECF Doc. No. 30, para. 105 (one specification); and

(viii)  *Ad hoc* accounting and internal controls to account for the use of federal funds in the Research and Graduate Studies laboratories and program, ECF Doc. No. 30, para. 106 (one specification); and

(ix)    No Core Lab budgeting collections to account for the use of federal funds in the Research and Graduate Studies laboratories and program, ECF Doc. No. 30, para. 107 (one specification);

(x)     No policies or procedures on commercial use of scientific instruments acquired with federal funds, ECF Doc. No. 30, para. 108 (one specification).

5

(b)      *Research Misconduct – Plagiarism.*  Plagiarism in federally funded research and instrument acquisitions in the University's Research and Graduate Studies Program, in violation of the policies and regulations of Department of Health and Human Services' Office of Research Integrity and the University, amounting to tolerance of plagiarism by the University.  The First Amended Complaint describes in detail four specifications of plagiarism in the Research and Graduate Studies program.  ECF Doc. No. 30, paras. 110 – 115 (four specifications).

(c)      *MAI Lab Renovation Project Waste and Mismanagement.*  The renovation of the MAI Lab, which included the use of federal funds, was improperly planned, designed, scheduled, estimated and bid, producing tremendous cost overruns and late completion.  ECF Doc. No. 30, para. 109.  The First Amended Complaint describes in detail two separate categories of project waste and mismanagement in the MAI Lab Renovation.  ECF Doc. No. 30, para. 109 (two specifications.).

9.      The First Amended Complaint alleges in great detail each expression of concern, plaintiff's advising his superiors of likely violation of federal law, his superiors not taking action, plaintiff's subsequent treatment as a pariah and his eventual suspension and discharge.   Indeed, defendants' Memorandum in Support of Motion Dismiss, describes the First Amended Complaint as pleaded with "extraordinary specificity."  ECF Doc. No. 36, p. 18

10.      Plaintiff's manner of expressing his concerns likely were perceived by his superiors as unprofessional.  ECF Doc. No. 30, para. 69.  Common ADD/ADHD symptoms include persistence correcting perceived wrongs and speaking impulsively and bluntly with supervisory personnel in positions to correct such perceived wrongs and who are otherwise responsible for the efficient, cost effective, ethical and lawful operation of University activities and policies.  ECF Doc. No. 30, para. 69.

11.      Plaintiff's expressions of concern, however, did not constitute misconduct, particularly when compared the conduct of others in a highly competitive academic environment, *including plaintiff's accusers*, who were not disciplined.

6

12.     The whistleblower claims are raised in Counts Three (Contractor Protection from Reprisal Act), Four (False Claims Act), Five (Sec. 1983 – Free Speech), Six (Sec. 1983 (Substantive Due Process) and Seven (Kansas common law public policy exception to employment-at-will doctrine).

*Summary of Defendants*

13.     The defendants are different in the various counts because of differences in relief sought and immunity status under the U. S. Constitution, Eleventh Amendment, and various federal statutes under which Dr. Moore sues.

(a)     *The University of Kansas*.  The University generally is immune from suit in federal court by individuals under the Eleventh Amendment, U. S. Constitution, which provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

However, there are various exceptions to this immunity, one of which is suit for disability discrimination and retaliation under the federal Rehabilitation, Comprehensive Services and Developmental Disabilities Act, 29 U.S.C. Sec. 701*, et seq.* ("Rehabilitation Act").  The University is sued for violation of the Rehabilitation Act under Count Two and no other counts in the First Amended Complaint.

(b)     *The University of Kansas Center for Research, Inc.* ("KU Center for Research").  This is a nonprofit corporation that serves a proprietary function "charged with applying, improving, and increasing the resources of the University of Kansas for research, advanced instruction, and public service."  *University of Kansas Center for Research, Inc. v. The United States of America,* No. 08-2565-JAR-DJW (February 12, 2010).  It also administers the University's Research and Graduate Studies program.  ECF Doc. No. 30, para. 39.  How it actually functions and the scope of its duties are unclear.  Accordingly, discovery is necessary to "flesh out" that information and determine whether it is entitled to Eleventh Amendment immunity as an "arm of the state" under various tests developed in the federal courts.  *See for*

*example United States ex rel. Sikkenga v. Regence Blue Cross Blue Shield of Utah,* 472 F.3d 702, 716 (10th Cir. 2006)(three factor test); *Sturdevant v. Paulsen,* 218 F.3d 1160, 1164 (10th Cir. 2000)(three factor test). *See also Clark v. Tarrant County, Texas*, 798 F.2d 736, 744-745 (5th cir. 1986)(characterized as six factor test). Plaintiff has pleaded, on information and belief, that the KU Center for Research is not an "arm of the state." ECF Doc. No. 30, para. 40.

(c)     There are four individual defendants, University and KU Center for Research administrators and plaintiff's superiors. They are sued in their individual capacities in the Sec. 1983 counts as persons who under color of state law subjected plaintiff to a deprivation of his rights under the U.S. Constitution. They are otherwise sued in their official capacities in the other counts for non-monetary, prospective injunctive relief, namely, reinstatement, for a continuing wrong under *Ex Parte Young,* 209 U.S. 123 (1908).[2] These individuals made up the supervisory "chain of command" for plaintiff.

(i)     *Bernadette Gray-Little.* Dr. Gray-Little was and is the Chancellor of the University with the ultimate authority to hire, fire and reinstate University employees, K.S.A. Sec. 76-714 and 715, and plaintiff has so pleaded. ECF Doc No. 30, para. 41. She is named as a defendant for the sole purpose of affording complete relief, namely, reinstatement. ECF Doc No. 30, Counts One, Three, Four and Seven "Wherefore" relief prayers. Plaintiff does not believe she was not an active participant in the wrongdoing alleged in the seven counts.

(ii)     *Jeffrey Vitter.* Dr. Vitter was and is the Provost and Executive Vice Chancellor for the University. Dr. Vitter has the delegated authority to hire, fire and reinstate University employees, and plaintiff has so pleaded, on information and belief. ECF Doc No. 30, para. 42. He is named as a defendant, in part, for that purpose. In

---

[2] State employees otherwise immune from employment discrimination actions under the Eleventh Amendment can be sued in their official capacities for prospective, non-monetary relief, including reinstatement, to correct a continuing wrong. *Meiners v. University of Kansas*, 359 F.2d 1222, 1232 (10th Cir. 2004).

addition, Dr. Vitter is the University official who by letter suspended plaintiff without four weeks without pay in August 2013. ECF Doc No. 30, para. 76. Dr. Vitter reports to Dr. Gray-Little in the chain of command.

(iii)     *Stephen Warren*.  Dr. Warren was the Vice Chancellor for Research and Graduate Studies for the University.  Dr. Warren is the University official who by letter discharged plaintiff in October 2013.  ECF Doc No. 30, para. 82. Dr. Vitter reported to Dr. Vitter.

(iv)     *Joseph Heppert*.  Dr. Heppert was Associate Vice Chancellor for Research and Graduate Studies for the University.  Dr. Heppert was plaintiff's immediate superior.  ECF Doc No. 30, para. 28.  Dr. Heppert reported to Dr. Warren in the chain of command.

(d)     While not yet pleaded, plaintiff has learned since filing the First Amended Complaint, that Drs. Vitter, Warren and Heppert are the Vice-Chair, President and Vice President, respectively, of the KU Center for Research and members of its Board of Trustees. Throughout plaintiff's employment, particularly in the context of his expressing concerns about the Federal Funds Mismanagement and Noncompliance, MAI Lab Renovation Project Waste and Mismanagement and Research Misconduct – Plagiarism, it was never clear in what capacity Drs. Vitter, Warren and Heppert were acting . . . on behalf of the University or the KU Center for Research.

*Summary of Relief Sought*

14.     Plaintiff in each count sues the defendants, as appropriate to the count, for two categories of relief, separately stated in the prayers for relief:

(a)     The traditional employment discrimination remedies, *e.g.,* reinstatement, back pay, benefits, interest, costs including attorneys' fees, as well as punitive damages in the 42

U.S.C. Sec 1983 counts and pain and suffering in the Kansas common law tort for unlawful discharge in violation of the public purpose exception to the employment at-will doctrine; and

(b)     Injunctive relief more broadly as may be appropriate to enjoin the defendants from any University-wide patterns and practices of discrimination against faculty and academic staff of the University for discrimination in employment based on disabilities and/or whistleblowing under the ADA, the Rehabilitation Act, the Contractor Protection Against Reprisal Act, the False Claims Act and rights under 42 U.S.C. Sec. 1983.

∞

15.     The rules governing motions to dismiss for failure to state c claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) are well-established and most recently were set forth by Judge Murguia of this Court in *Advanced Baseball Academy, LLC v. Google, Inc.,* No. 1402461-CM (March 30, 2015), as follows:

> The court will grant a 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F.Supp.2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id.*

> All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court construes any reasonable inferences from these facts in favor of the plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). In reviewing the sufficiency of a complaint, the court determines whether the plaintiff is entitled to offer evidence to support its claims-not whether the plaintiff will ultimately prevail. *Scheuer v. Rhodes*,  416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

> Where dismissal is improper, a court may still require a more definite statement under Rule 12(e) if a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed.R.Civ.P. 12(e). This is a demanding standard that requires a pleading be so incoherent that it is impossible to identify a "bas[is] for jurisdiction and relief." *Crisler v. Sedgwick Cnty.*, 490 F. App'x 983, 985 (10th Cir. 2012). Where a party can identify the issues in a pleading that require a response, a motion for a more definite statement is generally disfavored because the federal rules provide liberal discovery

mechanisms for filling in any remaining informational gaps. *Resolution Trust Corp. v. Thomas*, 837 F.Supp. 354, 355 (D. Kan. 1993).

16.     Whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868, 77 USLW 4387 (2009). "If the well-pleaded facts contained within a complaint 'do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.*[3]

17.     Plaintiff's factual allegations are highly detailed, far more than more than "labels, conclusions and a formulaic recitation of the elements of a cause of action."  Indeed, defendants have acknowledged "the extraordinary specificity with which plaintiff has pleaded his claims," ECF Doc. No. 36, p. 18.

18.     Defendants' assertion that the plaintiff's First Amended Complaint fails to state a claim upon which relief can be made based on seven separate grounds.  Plaintiff will address these grounds *ad seriatim*.

### Count One:  Plaintiff Has Stated a Claim under the Americans with Disabilities Act Against Drs. Gray-Little, Vitter, Warren and Heppert.

19.     Count One of the First Amended Complaint asserts an employment discrimination claim[4] under the Americans with Disabilities Act, 42 U.S.C. Secs. 12,101, *et seq.,* against four defendants:  Drs. Bernadette-Gray Little, Jeffery Vitter, Stephen Warren and Joseph Heppert in their official capacities for prospective, non-monetary injunctive relief, namely, reinstatement, for employment discrimination and retaliation under *Ex Parte Young*, 209 U.S. 123 (1908).

---

3 Indeed (not that it applies in this case), "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  *Bell Atlantic Corporation v. Twombly*, 550 U.S. at 556, quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

4 Plaintiff's claim is a Title I employment claim.  It is not a Title II public services, programs and activities claim or a Title III public accommodations claim.

20.     Defendants mistakenly assert that plaintiff includes the University of Kansas as a defendant in Count One. ECF Doc. No. 36, p. 4. Plaintiff does not include the University. It is a state agency and is immune to suit in federal court under the Eleventh Amend., U.S. Const. The parties do not disagree on this general point. Because the University is not a named defendant, a motion to dismiss under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction is unnecessary. (State immunity under the Eleventh Amendment is a matter of a federal court's subject matter jurisdiction. *Martin v. State of Kansas*, 190 F.3d 1120, 1126 (10th Cir. 1999)).

21.     As to the four individual defendants, defendants acknowledge that the Eleventh Amendment does not bar suit in federal court to enjoin state officials prospectively from violating federal law, citing *Meiners v. University of Kansas*, 359 F.3d 1222, 1232 (10th Cir. 2004); *Ex Parte Young*, 209 U.S. 123 (1908); *Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007); *Rounds v. Clements*, 495 F.App'x 938, 940 (10th Cir. 2012); and *Verizon Maryland., Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871, 70 USLW 4432 (2002). *See also* Seth A. Horvath, *Disentangling the Eleventh Amendment and the Americans with Disabilities Act: Alternative Remedies for State-Initiated Disability Discrimination Under Title I and Title II*, 2004 ILL.L.REV. 231 (2004).

22.     Defendants also acknowledge "Reinstatement of employment is a form of prospective equitable relief that is within the doctrine of *Ex Parte Young*," citing *Meiners v. University of Kansas*, 359 F.3d 1222, 1232 (10th Cir. 2004). As stated above, para. 13(c)(i) and (ii), Drs. Gray-Little and Vitter are named defendants based on their authority under state law to hire, fire and reinstate. ECF Doc No. 30, paras. 41 and 42. Dr. Warren similarly is named based on, *inter alia,* has apparently having authority to fire since is he is one who by letter fired plaintiff, ECF Doc No. 30, para. 82, (unless defendants want to concede that Dr. Warren did not have authority to fire plaintiff, providing an additional ground that plaintiff's firing was unlawful).

12

23.     In addition, Drs. Gray-Little, Vitter and Warren, as well as Dr. Heppert,[5] are properly named as defendants under plaintiffs' Count One payer for relief at subpart (c) for "equitable relief as may be appropriate to eliminate any patterns and practices of discrimination against faculty and academic staff of the University for discrimination in employment based on disabilities as provided under the Americans with Disabilities Act, Sec. 42 U.S.C. Secs. 12,101, *et seq.,* as may be uncovered during discovery.

24.     To the extent defendants focus on plaintiff's referring to the individual defendants as "managerial" employees in Count One, the term is used in this count in a merely descriptive, not actionable, manner.  "Managerial" has statutory significance in the count under the Contractor Protection from Reprisal Act insofar as covering "a management official . . . who has the responsibility to investigate, discover or address misconduct," 41 U.S.C. Sec. 4712(a)(2)(G), and is simply repeated in the other counts for consistency and description.  Plaintiff does not claim the individual defendants bear liability under Count One merely because they are managerial.  Liability is based on the highly specific factual allegations about their discriminating and retaliating against plaintiff and their corresponding authorities to hire, fire and reinstate, as well as be restrained from any pattern and practice discriminating and retaliating against others employees asserting their rights under the ADA.

**Count Two: Plaintiff Has Stated a Claim**
**under the Rehabilitation Act Against the University**

25.     Defendants assert that plaintiff cannot seek compensatory and punitive damages under Count Two.

26.     Plaintiff does not seek punitive damages under Count Two.  Plaintiff agrees that back pay and other compensatory damages cannot be awarded to a non-federal employee under the Rehabilitation Act and including back pay in the claim was a mistake.

27.     The Count Two prayer for relief will be revised to read with *new language* as follows:

_____

[5] Dr. Heppert apparently does not have the authority to hire, fire and reinstate.

WHEREFORE, plaintiff David S. Moore requests that judgment be entered in his favor against defendants University of Kansas and the University of Kansas Center for Research, Inc. for (a) reinstatement to his position as Assistant Scientist and Director of the Microscopy Analysis and Imaging Laboratory; (b) *all other appropriate relief as may be appropriate under the Rehabilitation, Comprehensive Services and Developmental Disabilities Act, 29 U.S.C. Sec. 701, et seq., as amended;* (c) his costs herein incurred and expended, including reasonable attorneys' fees, (d) equitable relief as may be appropriate to eliminate any patterns and practices of discrimination against faculty and academic staff of the University for discrimination in employment based on disabilities as provided under the *Rehabilitation, Comprehensive Services and Developmental Disabilities Act, 29 U.S.C. Sec. 701, et seq., as amended,* and (e) such other just, appropriate and additional relief as is just and appropriate in the premises.

28.     To the extent defendants refer to plaintiff's prayer for relief concluding with the familiar request for "such other just, appropriate and additional relief as is just and appropriate in the premises," plaintiff states he is not seeking compensatory or punitive damages.

**Count Three:  Plaintiff Has Stated a Claim
under the Contractor Protection from Reprisal Act
Against Defendants KU Center for Research, Gray-Little, Vitter, Warren and Heppert**

29.     Defendants claim Eleventh Amendment immunity bars a claim under against defendants Warren and Heppert for monetary relief under the federal Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information Act, 41 U.S.C. Sec. 4712, *et seq.*

30.     Count Three is asserted against all four individual defendants and the separate KU Center for Research, Inc. non-profit corporation regarding numerous federal grants to the University and the KU Center for Research from the National Science Foundation, the National Institutes of Health and the Public Health Service.[6]  The University is not named as a defendant.  It is immune under the Eleventh Amendment.

*The Contractor Protection from Reprisal Act*

31.     The Contractor Protection from Reprisal Act is a relatively new whistleblower statute, passed on January 2, 2013, and effective on July 1, 2013.  Before this Act, federal whistleblower

---

[6] Defendants state Count Four relates to "a federal grant to Warren and Heppert." ECM Doc. No. 36, p. 9.  This is incorrect.  It covers all grants to the University from the National Science Foundation, the National Institutes of Health and the Public Health Service, the proceeds of which were used in University Core Labs and used to purchase scientific instruments in Core Labs.  ECF Doc. No. 30, for example paras. 38, 39, 46, 104(a), 121, 150, 151, 153, 175 and 176.

14

protection was limited to federal employees, *see for example,* the federal Whistleblower Protection Act of 1989 and Whistleblower Protection Enhancement Act of 2012, codified in various sections of Title 5, United States Code.

32.     The Contractor Protection from Reprisal Act extended whistleblower protection beyond federal employees, specifically, to employees of federal grant recipients and contractors.  The Act is a "pilot" Act.  It will expire in four years at which time it presumably will be evaluated.____ 41  U.S.C.  Sec. 4712(i).

33.     Under the Act:

An employee of a contractor, subcontractor, or grantee may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract . . . or grant.

41 U.S.C. Sec. 4712(a)(1).

34.     Further, persons covered by the Act include "[a] management official or other employee of the contractor, subcontractor, or grantee who has the responsibility to investigate, discover, or address misconduct."  41 U.S.C. Sec. 4712(a)(2)(G).

35.     As to relief, the Act provides for the recovery of the following:

[R]reinstate[ment] of the person to the position that the person held before the reprisal, together with compensatory damages (including back pay), employment benefits, and other terms and conditions of employment that would apply to the person in that position if the reprisal had not been taken; and

[A]n amount equal to the aggregate amount of all costs and expenses (including attorneys' fees and expert witnesses' fees) that were reasonably incurred by the complainant.

41 U.S.C. Sec. 4712(c)(1)(B) and (C).

*The Separate KU Center for Research, Inc.*
*Non-Profit Corporation Is a Proper "Non-Arm-of-the-State" Defendant*

36.    Both the University and the KU Center for Research, are subject to suit under the Contractor Protection from Reprisal Act as a "contractor, subcontractor or grantee" of federal funds, 41 U.S.C. Sec. 4712(a)(1).  While the University is immune under the Eleventh Amendment and is not a named defendant, the KU Center for Research, Inc. is explicitly and carefully pleaded as a recipient of grants in its own right as a "non-arm-of-the-state" entity, as follows:

> The KU Center for Research is a contractor, subcontractor or grantee of federal contracts and grants in that is has been the recipient, custodian or administrator of numerous federal grants from the Public Health Service, the National Institutes of Health and the National Science Foundation, and has been and/or continues to be a contracting party with the Public Health Service, the National Institutes of Health and the National Science Foundation for significant funds in the hundreds of millions of dollars used to conduct scientific research, including the purchase of scientific instruments and compensation of scientific personnel to operate such instruments in Core Labs in the University, the Research and Graduate Studies program or otherwise has been the agent of the University for the administration and operation of the Core Labs and the University's Research and Graduate Studies program.

> The KU Center for Research is an independent, separate entity from the University and the State of Kansas.  On information and belief, it is not an "arm of the state" in that, *inter alia,* it derives significant sums for its operation from sources other than the University, it operates autonomously from the University, it has the right to sue and be sued in its own name and it owns property in its own name.

ECF Doc. No. 30, para. 39 and 40.

37.    Accordingly, in all counts in which the KU Center for Research is a named defendant, it is named (a) in its own right as a recipient of federal funds and (b) as an agent of the University whose scope of authority includes, *inter alia,* (i) the administration of the University's Research and Graduate Studies program as well as (ii) "applying, improving, and increasing the resources of the University, *University of Kansas Center for Research, Inc. v. United States of America*, No. 2565-JAR-DJW (D.Kan.) Feb. 12, 2010).  ECF Doc. No. 30, Count Three paras. 151, 153, 155, 166, 170, 171, 176, 182 and 183; Count Four paras. 186, 188, 189, 190, 191 and 192; and Count Seven paras. 216, 220, 221, 222, 223, 224, 225, 226, 227, 228 and 229.

16

38.      An agent is liable for its wrongful acts both outside and within the scope of its agency. RESTATEMENT (THIRD) OF AGENCY, Sec. 7.01 (2006). *Wells v. Hansen*, 97 Kan. 305, 311, 154 P. 1033 (1916)("For a misfeasance done by an agent, in the line of his agency, both the principal and the agent are liable.")

39.      Discovery will flesh out whether the KU Center for Research is or is not an "arm of the state" under various tests for determining whether a non-profit corporation or other entity affiliated with a state agency is or is not an "arm of the state" entitled to immunity. *United States ex rel. Sikkenga*, 472 F.2d 702, 718 (10th Cir. 2006)(two part test); *Sturdevant v. Paulsen,* 718 F.3d 1160, ____1164-1171 (10th Cir. 2000)(two-part test); *United States ex rel. King v. University of Texas Health Science Center-Houston,* No. 12-20795, (5th Cir. 2013)(characterized as six-part test).   At his point, plaintiff has properly pleaded that the KU Center for Research is not an arm of the state and is entitled to conduct discovery on the status of the KU Center for Research

*The Individual Defendants Are Proper "Ex Parte Young" Defendants*

40.      Each of the four individual defendants is subject to the Contractor Protection from Reprisal Act as "a management official or other employee of the contractor, subcontractor, or grantee who has the responsibility to investigate, discover, or address misconduct."   41 U.S.C. Sec. 4712(a)(2)(G).

41.      However, just as with and as stated above regarding the ADA claim against individual defendants, they are not sued for monetary relief.  Plaintiff's Contractor Protection from Reprisal Act claim is an *Ex Parte Young* claim against the individuals in their official capacities for non-monetary, prospective injunctive relief, namely, reinstatement, for a continuing wrong.  ECF Doc. No. 30, para. 174.

42.      Accordingly, plaintiff incorporates herein by reference para. 13(c) of this memorandum outlining why the four individual defendants are subject to suit for both (a) non-monetary, prospective injunctive relief for reinstatement for a continuing wrong based on their actual and purported authorities to hire, fire and reinstate as well as (b) "equitable relief as appropriate to enjoin and eliminate any patterns

17

and practices in the future of falsely accusing faculty and academic staff of improper conduct in order to intimidate, discipline, discharge or otherwise negatively affect terms and conditions of employment of University employees reporting, investigating or speaking out regarding suspected mismanagement of federal grants and funds and noncompliance"

*Plaintiff Has Not Failed to Exhaust Administrative Remedies*

43.     The Contractor Protection from Reprisal Act provides an administrative remedy, and states that a discriminated party "*may*" file an administrative complaint with the Office of Inspector General of the federal agency providing the federal funds in question.  41 U.S.C. Sec. 4712(b)(1).

44.     As defendants acknowledge, there are no reported decisions under the Act addressing whether the administrative remedy is mandatory or directory.  ECF Doc. No. 36, p. 12.  Plaintiff agrees.

45.     However, as a matter of statutory construction, the statute gives the agency's office of inspector general, in the event an administrative complaint is filed, the option not to investigate a complaint if the complaint "has previously been addressed in another Federal or State judicial or administrative proceeding initiated by the complainant."  41 U.S.C. 4712(a)(b)(1).  Neither Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e-2, *et seq.,* or the Sarbanes-Oxley Act of 2002, 18 U.S.C. Sec. 1514A, which have mandatory exhaustion requirements, have this provision.  *Parker v. housing Authority of Kansas City, Kansas,* 996 F.3d 311 (10th Cir. 1993)(Title VII); *Zhu v. Federal Housing Finance Board,* 389 F.Supp.2d 1253, 1271 (D.Kan. 2005)(Sarbanes-Oxley)

46.     While not pleaded in the First Amended Complaint, counsel for plaintiff offers the following information for the court's and counsel's consideration:

(a)     A service copy of the Joint Administrative Complaint was provided to the University's in-house counsel on that date.

(b)     The Federal Funds Mismanagement and Noncompliance, MAI Lab Renovation Project Waste and Mismanagement and Research Misconduct - Plagiarism allegations set forth in the First Amended Complaint used to support the counts for Contractor Protection Against

18

Reprisal, False Claims Act, Sec. 1983 Free Speech, Sec. 1983 Substantive Due Process and Kansas Common Law Public Policy Exception to Employment at Will Doctrine are based on those, very nearly identically, to those in the Joint Administrative Complaint.

(c)     Under the Contractor Protection from Reprisal Act, if the head of the agency does not issue an order denying relief or otherwise has not issued any order within 210 days after submission of the administrative complaint, a plaintiff may pursue its action in federal court. The 210 days in this case will expire on July 1, 2015, just under three months away.

(d)     Counsel for plaintiff has corresponded with the Offices of Inspector General of the National Science Foundation and the Department of Health and Human Services (of which the National Institutes of Health and the Public Health Service are part) regarding the status of the Joint Administrative Complaint.  In that regard:

(i)     *National Science Foundation Complaint.*  An investigator with the Office of Inspector General of the National Science Foundation advised counsel for plaintiff two weeks ago, on March 23, 2015, that the administrative complaint has been closed out based on lack of jurisdiction under the Act because, in the investigator's view, any grants or cooperative agreements within the scope of the administrative complaint ante-date the Act's July 1, 2013 effective date.  Plaintiff remained employed until October 18, 2013. Plaintiff does not necessarily agree with the investigator's reasoning and is evaluating alternatives with plaintiff at this point.  However, the complaint has been referred for review to the National Science Foundation's Office of Audit.  A copy of the determination is being electronically filed contemporaneously herewith as Exhibit A. The Director of the National Science Foundation has not yet issued an order.

(ii)     *National Institutes of Health and Public Health Service.*  An investigator with the Office of Inspector General of the Department of Health and Human Services advised counsel for plaintiff on February 25, 2015, that his office was declining to

19

investigate the complaint because "the matter has been previously addressed in another federal or state judicial or administrative proceeding initiated by the complainant," referring to this civil action.  A copy of the determination is being electronically filed contemporaneously herewith as Exhibit B.  Plaintiff does not necessarily agree with the investigator's reasoning and is evaluating alternatives with plaintiff at this point.  However, it would appear that, upon the Director of the Department of Health and Human Services issuing an order confirming the investigator's opinion, plaintiff will have exhausted his administrative remedy.

47.    Plaintiff suggests that the Court stay any action on Count Three for violation of the Contractor Protection Against Reprisal Act until the two agencies have clarified and officially ruled on their investigations.  *United States ex rel. Foulds v. Texas Tech University,* 980 F.Supp. 864, 866 (N.D.Tex. 1997)(False Claims Act *qui tam* count for fraudulent physician billing stayed, not dismissed on defendants' motion to dismiss, pending completion of audit by Office of Inspector General regarding same physician billing under Medicare and Medicaid).

### Count Four:  Plaintiff Has Stated a Claim under the False Claims Act

48.    Plaintiff asserts a claim under retaliation provision the False Claims Act which, of course, makes it unlawful knowingly to present or cause to be presented a false or fraudulent claim for payment or approval to the federal government.  31 U.S.C. Sec. 3729.  The *qui tam* provisions of the Act permit private parties to sue for violation of the Act and recover a civil action award equal to 15% to 30% of the amount of the proven claim.  31 U.S.C. Sec. 3730.  Plaintiff at this point is not pursuing a *qui tam* claim under the False Claims Act.

49.    The companion retaliation provision of the False Claims Act, 31 U.S.C. Sec. 3730(h), added in 1986, amended in 2009 and 2010, pursuant to which plaintiff asserts his claim, provides in pertinent part:

Any employee . . .  shall be entitled to all relief necessary to make that employee . . .  whole, if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

Relief . . . shall include reinstatement with the same seniority status that employee . . . would have had but for the discrimination, two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

31 U.S.C. Sec. 3730(h)

50.    Whistleblower laws, including particularly U.S.C. Sec. 3730(h), are to be interpreted broadly.  *Clemes v. Del Norte County Unified School District*, 843 F.Supp. 583, 595 (N.D.Cal. 1994) *citing Neal v. Honeywell, Inc.*, 826 F.Supp. 266, 270 (N.D.Ill. 1993); *McKenzie v. BellSouth Telecom, Inc.*, 219 F.3d 508, 514-515 (6th Cir. 2000); *Neal v. Honeywell, Inc.*, 826 F.Supp. 266, 271 (N.D.Ill. 1993)("[F]ederal whistleblower protection laws are to be broadly construed to cover internal whistleblowers, even where the specific conduct at issue does not fall within a literal reading of the statute.")

51.    To state a claim for relief under retaliation provision of the False Claims Act, a plaintiff must show "(1) she engaged in 'protected activity' under the statute; (2) Defendant knew that she engaged in the protected activity; and (3) Defendant discharged or otherwise discriminated against her because of the protected activity.  *Tabor v. Michigan Orthopaedic Institute,* No. 14-10920, Opinion and Order, Dec. 5, 2014 (E.D.Mich. 2014); *Yuhasz v. Brush Wellman, Inc.* 341 F.3d 559, 566 (6th Cir. 2003) and *Thomas v. ITT Education Systems, Inc.*, 517 F.App'x. 259, 262 (5th Cir. 2013).

52.    "Protected activity" under the statute is disjunctive and consists of "lawful acts done by the employee . . . in furtherance of an action under this section [31 U.S.C. Sec. 3730] or other efforts to stop or more violations of this subsection."  *Tabor supra.*

53.    A plaintiff in a False Claims Act retaliation action does not need to be aware of False Claims Act or even know of its existence.  It is enough if plaintiff's actions to investigate what he or she

21

sees a submitting a false claim to the government involves matters which are "or reasonably could be calculated to be" viable claims under the False Claims Act. *United States ex rel. Hooper v. Anton,* 91 F.3d 1261, 1269 (9th Cir. 1996), *cert. denied,* 519 U.S. 1115 (1997). *United States ex rel. Eberhardt v. Integrated Design and Construction, Inc.*, 167 F.3d 861, 867 (___ 4th Cir. 1999). It is sufficient if plaintiff's actions were "directed at exposing fraud against the government." *Luckey v. Baxter Healthcare Corp.*, 2 F.Supp.2d 1034, 1050-1052 (N.D.Ill. 1998). Similarly, action in furtherance of a claim applies to "investigation into matters which could legitimately lead to litigation." *Wilkins ex rel. United States v. State of Ohio*, 885 F.Supp. 1055, 1065 (S.D. Ohio 1995) *citing Neal v. Honeywell, Inc.*, 33 F.3d 860 (7th Cir. 1994). *See also United States ex rel. Satalich v. City of Los Angeles*, 160 F.Supp.2d 1092, 1108 (C.D.Cal. 2001)("matters which were calculated or reasonably could lead to a viable FCA action" are sufficient).

54.     In addition, a retaliation claim can be maintained even if no False Claims Act action is ultimately successful or even filed. *Neal v. Honeywell, Inc.,* 33 F.3d 860, 864-65 (7th Cir.1994); *Robertson v. Bell Helicopter Textron, Inc*., 32 F.3d 948, 951 (5th Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995); *Clemes v. Del Norte County Unified School District,* 843 F.Supp. 583, 595-596 (N.D.Cal.1994).

55.     Defendants cite decisions stating "protected activity" under the statute must rise to the level of putting the employer on "notice" (the second element of the cause of action is the employer's knowledge of the protected activity) that gives the employer the "'suggestion that [the plaintiff is]going to report such noncompliance to government officials' or bring 'her own *qui tam* action,'" and that "Whistleblowers 'must make clear their intentions of brining or assisting in an FCA action . . . . [citations omitted],'"citing a summary judgment decision, *McBride v. Peak Wellness Center, Inc.*, 688 F.3d 698, 704 (10th Cir. 20120.

56.     However the *McBride* decisions and those cited in *McBride* antedate the important 2009 and 2010 amendments to the 31 U.S.C. Sec. 3730(h) retaliation provision that significantly broadened

22

what constitutes "protected activity" and the corresponding "notice" to the employer. When *McBride* and

the decisions cited therein were decided, 31 U.S.C. Sec. 3730(h) was litigation oriented and more

narrowly provided, in pertinent part:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any
> other manner discriminated against in the terms and conditions of employment by his or
> her *employer because of lawful acts done by the employee on behalf of the employee or
> others in furtherance of an action under this section, including investigation for,
> initiation of, testimony for, or assistance in an action filed or to be filed under this
> section*, shall be entitled to all relief necessary to make the employee whole.

[Emphasis added.]

57.     Congress intentionally broadened the operative "protected activity" language in 2009 as

part of the Fraud Enforcement and Recovery Act of 2009 ("FERA") (and again in 2010 as part of the

Dodd-Frank Wall Street Reform and Consumer Protection Act) (a) to delete the litigation steps list,

namely, "investigation for, initiation of, testimony for, or assistance in an action filed or to be filed" and

(b) to add "or other efforts to stop 1 or more violations of this subchapter." *United States ex rel. Tien v.*

*Computer Sciences Corporation,* No. 11-cv-0852 (KBJ)(D.D.C. 2014)("The FERA amendments both

removed this list and added the more general statement that not only acts done "in furtherance of" an FCA

action, but also "other efforts to stop one or more violations under this subchapter" are protected under

the retaliation provision). *See also Manfield v. Alutiiq International Solutions, Inc.*, 851 F.Supp.2d 196,

202, n.8 (D.Me. 2012); *Halasa v. ITT Education Services, Inc.* 2011 WL 4036516, No. 10-cv-437-WTL-

MJD, *4 (S.D.Ind. Sept. 12, 2011); and *Bell v. Dean*, 2010 WL 2976752, No. 09-cv-1082-WKW, *1-2

(M.D.Ala. July 27, 2010).

58.     Decisions under the broadened version of the retaliation provision make it clear Congress

intended the "or other efforts to stop 1 or more violations of this subchapter" to mean something and hold

that internally reporting to a supervisor meets the "protected activity" requirement.  According to the

court in *Manfield v. Alutiiq International Solutions, Inc.*, 851 F.Supp.2d 196 (D.Me. 2012), the court

stated:

23

> Post-FERA, lawful acts done "in furtherance of other efforts to stop" a violation of the FCA are protected conduct. Just as an employee's internal complaints which relate to an FCA violation would be considered "conduct that reasonably could lead to a viable FCA action" under *Karvelas*, 360 F.3d at 236, they would also naturally fall within the ambit of an "effort to stop" a violation under the amended section 3730(h).
>
> *     *     *
>
> To state a claim for retaliation the Plaintiff need only allege circumstances that support a potential fraud.

*Manfield*, 851 F.Supp.2d at 202, 203. Accord: *United States ex rel. Helfer v. Associated Anesthesiologists of Springfield, Ltd.,* No. 10-3076, C.D.Ill. August 25, 2014)("Congress amended [Sec. 3730(h)] in 2009 to protect employees [from] discharge for engaging in conduct 'in furtherance of' - not only an FCA action - but 'other efforts to stop 1 or more violations' of the FCA");

59.     In *Manfield*, an anesthesiologist sued his clinic employer when he was discharge due to his expressing concerns that clinic billing practices violated Medicare regulations. The anesthesiologist alleged that the employer was concerned that the anesthesiologist's contacting Medicare administrators with questions about the practice might "raise suspicions" and that the billing practice would "jeopardize the employer's federal funding," just as plaintiff Moore's employer warned him that his complaints might cause an audit and risk loss of federal funding or draw an audit. ECF Doc. No. 30, para. 97. This sufficiently alleged notice to the employer. According to the court, the anesthesiologist put the employer on notice and "these actions gave the defendant employer sufficient notice under the FCA," *citing Fanslow v. Chicago Manufacturing Center, Inc.,* 384 F.3d 469, 479 (7th Cir. 2004).

60.     As to notice to the employer, the second element of a retaliation cause of action, according to the *Manfield* court, "Under the new statute . . . the act of internal reporting itself suffices as both the effort to stop the FCA violation and the notice to the employer that the employee is engaged in a protected activity." *Manfield*, 851 F.Supp.2d at 204. Accord:

61.     In addition, even under the pre-FERA provision, an employee is "not required to use the 'magic words' of 'illegal' and 'unlawful' to put his employer on notice of his investigation." *Fanslow v.*

24

*Chicago Manufacturing Center, Inc.,* 384 F.3d 469, 484 (7th Cir. 2004)(a pre-2009 amendment decision). "[O]nce an employee expresses concerns about the likelihood of fraud to an employer, the notice requirement is met." *Eberhardt v. Integrated Design and Construction, Inc.,* 167 F.3d 861, 868-869 and n.2 (4th Cir. 1999)( a pre-2009 amendment decision).

*Plaintiff Has Properly Alleged Acts*
*in Furtherance of a False Claims Act Claim*
*or Efforts to Stop Violations of the Act*

62.     Plaintiff has properly pleaded acts "in furtherance of an action under this section" and "other efforts to stop 1 or more violations of this subchapter," whether applying the original 1986 version of 31 U.S.C. Sec. 3730(h) or the broader version following the 2009 and 2010 amendments.

63.     Plaintiff has pleaded in detail his actions in furtherance of stopping 18, not just one or more, violations of the False Claims Act and otherwise in furtherance of an action under the False Claims, Act, ECF Doc. No. 30, paras. 98 – 109, and caps those very specific allegations with the following:

> Plaintiff David S. Moore look lawful actions regarding his concerns about the instances of Federal Funds Mismanagement and Noncompliance and the MAI Lab Renovation Project Waste as aforesaid by investigating what he reasonably believed were violations of federal laws, rules and regulations for the expenditure and reporting of expenditure of federal funds, resulting in the submission of false or fraudulent claims for payment or approval, or false records or statements material to a false or fraudulent claim, to fund activities of the University, the KU Center for Research and its Research and Graduate Studies program from federal funds, including but not limited to requests for information from the University and the KU Center for Research and informing his superiors of possible Federal Funds Mismanagement and Noncompliance and MAI Lab Renovation Project Waste in violation of federal law.

ECF Doc. No. 30, para. 189.

64.     Defendants claim plaintiff has not properly alleged communicating these violations of law to his superiors.  Contrary to defendants' assertion and even though the "magic words" are not required, plaintiff has specifically pleaded his informing his superiors about the Federal Funds Mismanagement and Noncompliance and MAI Lab Renovation Waste and Abuse as "violations of federal law, federal grant conditions and federal cooperative agreements."  In that regard:

25

(a)      In his "Facts Common to All Counts," plaintiff specifically has pleaded that the 18 different individually alleged "Specifications of Federal Funds Mismanagement and Noncompliance and MAI Lab Renovation Waste and Abuse" each "violated and continue[d] to violate federal law, federal grant conditions and federal contract conditions."  *See for example* ECF Doc. No. 30, paras. 99(d), 100(d), 101(d)(iv)(1), 101(e), 102(g), 103(g), 104(d), 104(f), 105(g), 106(g), 107(d), 108(i), 109(g), ,

(i)      *See also* ECF Doc. No. 30, para. 101(b)(iii)("Plaintiff expressed his concerns to Dr. Heppert that selling the nuclear magnetic resonance spectrometer to the private company as proposed would violate federal law");

(ii)      *See also* ECF Doc. No. 30, para; 101(g)("Plaintiff informed his immediate superior, Dr. Heppert, of his good faith and reasonable belief that use of the aforesaid instruments would be unlawful uses and dispositions of federally funded instruments.");

(iii)      *See also* ECF Doc. No. 30, para. 104(f)("Plaintiff expressed his concern to his superior, Dr. Heppert particularly, the use of the $178,000 savings to purchase an unrelated small angle x-ray crystallography system . . . would have violated federal law, federal grant conditions and federal contract conditions").

(b)      Similarly, in the same "Facts Common to All Counts" allegations, plaintiff specifically has pleaded that he communicated and disclosed the individually pleaded specifications of Federal Funds Mismanagement and Noncompliance and MAI Lab Renovation Waste and Abuse to his superiors.  *See for example* ECF Doc. No. 30, paras. 99(e), 100(a)(iv), 100(b)(ii), 100(f), 101(b(iii), 101(d)(iv), 102(i), 103(i), 104(f), 105(i), 106(i), 107(f), 108(k), 109(i).

65.      In the Count Three allegations for his claim the Contractor Protection from Reprisals Act, which incorporates by reference all of the preceding allegations of Federal Funds Mismanagement and

Noncompliance and MAI Lab Renovation Waste and Abuse and, further,  which are incorporated by reference in the Count Three allegations for retaliation in violation of the False Claims Act, plaintiff specifically pleads:

> Plaintiff David S. Moore informed, disclosed and otherwise reported his concerns to defendants Joseph Heppert and Steven Warren about the instances of Federal Funds Mismanagement and Noncompliance, Academic Misconduct – Plagiarism, and MAI Lab Renovation Waste and Abuse as aforesaid as . . . a violation of law, rule or regulation related to a federal grant or contract."

ECF Doc. No. 30, para. 180.

66.     In addition, plaintiff specifically pleads in the Count Three False Claims Act retaliation claim:

> Plaintiff David S. Moore look lawful actions regarding his concerns about the instances of Federal Funds Mismanagement and Noncompliance and the MAI Lab Renovation Project Waste as aforesaid . . . including but not limited to . . . *informing his superiors of possible Federal Funds Mismanagement and Noncompliance and MAI Lab Renovation Project Waste in violation of federal law.*

ECF Doc. No. 30, para. 189 (Emphasis added.)

> *Defendants KU Center for Research, Gray-Little, Vitter, Warren and Heppert*
> *Are Proper "Ex Parte Young" Defendants Under the False Claims Act*

67.     Defendants assert that a False Claims Act cannot be asserted against the University, based on the Eleventh Amendment.  Plaintiff does not disagree.  Plaintiff has not sued the University.

68.     Plaintiff's instead claim is asserted against the non-profit corporation KU Center for Research and the same four individual administrators, namely, Drs. Gray-Little, Vitter, Warren and Heppert.

> *KU Center for Research Is Pleaded as a Proper Defendant*

69.     The KU Center for Research is sued as a recipient of federal funds and as the "non-arm-of-the-state" administrator of the Research and Graduate Studies program, both in its own capacity and as the agent of the University administering the Research and Graduate Studies program.

70.     As stated above, in all counts in which the KU Center for Research is a named defendant, it is named (a) in its own right as a recipient of federal funds and (b) as an agent of the University whose

scope of authority includes, *inter alia,* the administration of the University's Research and Graduate Studies program.  ECF Doc. No. 30, Count Three paras. 151, 153, 155, 166, 170, 171, 176, 182 and 183; Count Four paras. 186, 188, 189, 190, 191 and 192; Count Seven paras. 216, 220, 221, 222, 223, 224, 225, 226, 227, 228 and 229.

71.     The University's Eleventh Amendment immunity as an agency of the state is a matter of subject matter jurisdiction unique to the University, *Martin v. State of Kansas*, 190 F.3d 1120, 1126 (10th Cir. 1999), not a matter of defense under substantive law that extends to other defendants in this action unless they have their own immunity.  *United States ex rel. Satalich v. City of Los Angeles*, 160 F.Supp.2d 1092, 1108 (False Claims Act defendants alleged to have conspired with city to defraud federal government "not cloaked with the municipal immunity enjoyed by the City").

*Drs. Gray-Little, Vitter, Warren and Heppert*
*Are Pleaded as Proper Defendants*

72.     Drs. Gray-Little, Vitter, Warren and Heppert. are sued in the False Claims Act retaliation claim for non-monetary, prospective injunctive relief for a continuing wrong, namely, reinstatement, as well as to enjoin any University-wide patterns and practices of discrimination against faculty and academic staff of the University for retaliation in employment based on whistleblowing protected under the False Claims Act.

73.     These defendants are properly named in the False Claims count for the same *Ex Parte Young* reasons as they are named in the ADA, Rehabilitation Act and Contractor Protection Against Reprisal Act.  Accordingly, plaintiff incorporates herein by reference para. 13(c) of this Memorandum.

74.     Defendants claim the individual administrators cannot be named a False Claims Act retaliation claim defendants citing *Klaassen v. University of Kansas School of Medicine*, Case No. 13-CV-2561-DDC-KGS, United States District Court of the District of Kansas, Memorandum and Order, Feb. 3, 2015.  ECF Doc. No. 36, p. 15.  Defendants' reliance is misplaced.  The University administrators in *Klaassen* were sued in their official and individual capacities for a large range of monetary damages

28

including back pay, front pay, lost benefits, lost raises, lost salary, lost career and business opportunities, and mental and emotional anguish and distress. *See* Amended Complaint. ECF Doc. No. 66, *Klaassen v. University of Kansas School of Medicine*, Case No. 13-CV-2561-DDC-KGS, United States District Court of the District of Kansas.

75.     The individual administrator defendants in this action are sued for non-monetary, prospective injunctive relief for continuing wrongs as in *Ex Parte Young.* Federal courts consistently hold that Sec. 3730(h) False Claims Action retaliation claims against individual defendants for prospective, non-monetary relief to correct continuing wrongs are appropriate. *Wilkins ex rel. United States v. State of Ohio*, 885 F.Supp. 1055, 1067 (S.D.Ohio 1995) *citing Thiokol Corp. v. Department of Treasury*, 987 F.2d 376, 382 (6th Cir. 1993); *Huang v. Rector and Visitors of the University of Virginia*, No. 3:11-CV-00050 (W.D.Va. 2011)(False Claims Act claim stated against university administrators in official capacities for reinstatement and recovery of front pay) citing *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 n.10, 109 S.Ct. 2304, 105 L.Ed.2d 45, 57 USLW 4677 (1989) quoting *Kentucky v. Graham*, 473 U.S. 159, 167, n.14,    505 S.Ct. 3099, 87 L.Ed.2d 114, 53 USLW 4966 (1985); *Bell v. Dean*, Case No. 2:09-CV-1082-WKW [WO], (M.D.Ala. May 4, 2010)

### Count Five:  Plaintiff Has Stated
### a Freedom of Speech Deprivation Claim under 42 U.S.C. Sec. 1983.

76.     Defendants assert two grounds for their claim that plaintiff has not stated a claim;

(a)     *Employee Speech.*   First, defendants claim his expressions of concern about Federal Funds Mismanagement and Noncompliance; MAI Lab Renovation Project Waste and Mismanagement and Research Misconduct – Plagiarism were unprotected because they were made pursuant to his official duties as a state employee, *i.e.,* they were "employee speech," not "public speech," the first inquiry in a *Garcetti/Pickering*[7] evaluation of a free speech claim by state employee.

---

[7] *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) and *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

(b)     *Qualified Immunity.* Second, defendants claim qualified immunity, namely, that reasonable university administrators would not know that it was clearly established under the U. S. Constitution and federal statutes, looking to 10th Circuit decisions, that is it unlawful to retaliate against a state employee for expressing concerns on matters of public concern.

77.     Plaintiff has anticipated the defenses and properly pleaded (a) plaintiff's scope of duties to make his speech "public speech" as opposed to "employee speech" and (b) a reasonable university administrator's understanding that it is clearly established that an employee in plaintiff's position had the right to speak out.

*Plaintiff's Expressions of Concern Were Not*
*Within the Scope of His Official Duties*

78.     A five-part, progressive analysis is employed in the *Garcetti/Pickering* analysis of free speech claims asserted by government employees, aptly summarized in *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192 (10th Cir. 2007), in pertinent part, as follows:

> First, the court must determine whether the employee speaks "pursuant to [his] official duties." *Garcetti,* 126 S.Ct. at 1960; *see also Mills,* 452 F.3d at 647 ("*Garcetti* ... holds that before asking whether the subject-matter of particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking 'as a citizen'...."). If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech "simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Garcetti,* 126 S.Ct. at 1960.

> Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern. *See Green v. Bd. of County Commr's,*472 F.3d 794, , 798 (10th Cir.2007)

> 492 F.3d 1203 *Mills,* 452 F.3d at 647-48. If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends.

> Third, if the employee speaks as a citizen on a matter of public concern, the court must determine "whether the employee's interest in commenting on the issue outweighs the interest of the state as employer." *Casey v. W. Las Vegas Indep. Sch. Dist.,*473 F.3d 1323, 1327 (10th Cir.2007).

> Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a "substantial factor or a motivating factor in [a] detrimental employment decision." *Lybrook,* 232 F.3d at 1338 (internal quotation marks omitted).

30

Finally, if the employee establishes that his speech was such a factor, "the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech." *Id.* at 1339 (internal quotation marks omitted).

The first three steps are to be resolved by the district court, while the last two are ordinarily for the trier of fact.  *See Cragg v. City of Osawatomie,* 143, F.3d 1343, 1346 (10th Cir.1998).

*Brammer-Hoelter*, 492 F.3d at 1202-1203.

79.　　Defendants at this point challenge only the first part of the analysis, namely, whether plaintiff's various expressions of concern were within the scope of his official duties.

80.　　The First Amended Complaint addresses plaintiffs' scope of duties in detail, listing what his duties ere and were not.  Plaintiff ran a lab.  Plaintiff was not responsible for financial accounting, reporting or internal controls in the Research and Graduate Studies Program.  Plaintiff's expressions of concern were about federal law compliance practices in the business office of the Research and Graduate Studies program for all University laboratories, particularly, the financial accounting and reporting practices, including internal controls for the use of federally funded scientific instruments in University laboratories, as required under federal regulations, particularly Office of Management and Budget Circular A-21.

81.　　The First Amended Complaint includes detailed factual allegations, which on a motion to dismiss must be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868, 77 USLW 4387, outlining what plaintiff's duties were and were not.  More specifically, the First Amended Complaint, ECF Doc. No. 30, at paras. 16 and 17, states in detail:

16.  Plaintiff's duties as Director of the MAI Lab included the following:

　　a.  Overseeing operation of the MAI Lab including fiduciary responsibilities and report preparation for the MAI Lab;

　　b.  Maintenance and daily operation of MAI Lab equipment;

　　c.  Overseeing training of MAI Lab equipment users;

　　d.  Seeking external funding for the MAI Lab;

e.  Collaborating and/or assisting researchers in measurements and methods development;

f.  Acquiring and developing image analysis software;

g.  Overseeing continued modernization of the facility;

h.  Establishing research collaborations with faculty and students; and

i.  Disseminating research findings through publications and presentations.

17.  Plaintiff's duties as Director of the MAI Lab did not include:

a.  Developing, operating, maintaining or reporting insufficiencies, irregularities or violations in accounting systems, internal controls, policies and procedures or applicable laws for the accurate and regular tracking and timely reporting of items of income, expense, billing and accounts receivable collection for the MAI Lab, other Core Labs or the Research and Graduate Studies Program, nor were such matters subject to plaintiff's control;

b.   Developing, operating, maintaining or reporting insufficiencies, irregularities or violations in accounting systems, internal controls, policies and procedures or applicable laws for associating the use of specific scientific equipment acquired with federal funds with specific federal research grants and cooperative agreements as well as private sector research projects for the MAI Lab, other Core Labs or the Research and Graduate Studies Program, nor were such matters subject to plaintiff's control;

c.  Developing, operating, maintaining or reporting insufficiencies, irregularities or violations in accounting systems, internal controls, policies and procedures or applicable laws for assuring that proper charges were made to private sector companies using scientific equipment acquired with federal funds in the MAI Lab, other Core Labs or the Research and Graduate Studies Program, nor were such matters subject to plaintiff's control;

d.  Developing, operating, maintaining or reporting insufficiencies, irregularities or violations in accounting systems, internal controls, policies and procedures or applicable laws for preventing the booking of time for the use of Core Lab scientific instruments without actually using the instruments in order to avoid the return of unused federal research grant and cooperative agreement funds upon the expiration of such grants and cooperative agreements for the MAI Lab, other Core Labs or the Research and Graduate Studies Program, nor were such matters subject to plaintiff's control;

e.  Developing, operating, maintaining or reporting insufficiencies, irregularities or violations in accounting systems, internal controls, policies and procedures or applicable laws for preventing charges for overhead and administration to the MAI Lab, other Core Labs or the Research and Graduate Studies Program for federal grant or cooperative agreement work in excess of or not in compliance with charges for Facilities and Administration as provided by federal regulations, including but not

32

limited to the United States Office of Management and Budget Circular A-21, nor were such matters subject to plaintiff's control;

 f. Developing, operating, maintaining or reporting insufficiencies, irregularities or violations in accounting systems, internal controls, policies and procedures or applicable laws for preventing the use of federal grant or cooperative agreement funds for purposes not allowed under such federal grants or cooperative agreements in the MAI Lab, other Core Labs or the Research and Graduate Studies Program, nor were such matters subject to plaintiff's control;

 g. Developing, operating, maintaining or reporting insufficiencies, irregularities or violations in accounting systems, internal controls, policies and procedures or applicable laws for the timely and on-budget completion of physical renovations and improvements for the MAI Lab, other Core Labs or the Research and Graduate Studies Program facilities, nor were such matters subject to plaintiff's control;

 h. Developing, operating, maintaining or reporting insufficiencies, irregularities or violations in accounting systems, internal controls, policies and procedures or applicable laws in the University's Research and Graduate Studies program for preventing or otherwise controlling plagiarism in scholarly research writings and otherwise discouraging toleration of plagiarism in scholarly research writings, nor were such matters subject to plaintiff's control; or

 i. Supervising University employees or researchers other than the two-person staff working in the MAI Lab.

82. Indeed, then Vice-Chancellor Warren belittled plaintiff's duties during his only meeting with plaintiff to discuss his concerns when Warren told plaintiff that he [plaintiff'] "was of so little importance to his [Warren's] job" that Warren refused to "read all those little emails you sent" about the Federal Funds Mismanagement and Noncompliance, MAI Lab Renovation Project Waste and Mismanagement and Research Misconduct - Plagiarism. ECF Doc. No. 30, para. 129.

83. Courts do not apply the "official duties" step in *Garcetti/Pickering* in a formulaic manner. It is highly fact specific. Courts "must take a practical view of all the facts and circumstances surrounding the speech and the employment relationship." *Brammer-Hoelter*, 492 F.3d at 1204, *citing Garcetti*, 126 S.Ct. at 1961.

84. Courts look askance at employers using broad grievance or other workforce-wide personnel policies and procedures to expand an individual employee's official duties. "We reject . . . the suggestion that employers can restrict employee's rights by creating excessively broad job descriptions,"

33

*Garcetti*, 126 S.Ct. at 1957, *cited in Brammer-Hoelter*, 492 F.3d at 1204, rejecting a charter school's claim that its grievance policy expanded teachers' official duties.

85.      In addition, regarding workforce-wide personnel policies and procedures as defining an employee's official duties, courts take the required "practical approach" and recognize the illusory nature of these policies can sometimes take when repeated concerns expressed by employees are ignored and the employee "loses faith" in the employer and take his or her concerns to third parties. *Case v. West Las Vegas Independent School District,* 473 F.3d 1323 (10th Cir. 2007)(CEO of Head Start program took complaint of governing board's violations of open meetings laws to state attorney general upon loss of faith in unresponsive board, not is scope of official duties).

86.      In *Thomas v. City of Blanchard*, 548 F.3d 1317 (10th Cir. 2008), a city building code took his unheeded complaints to a state authority about the mayor issuing improper permits and was fired.  His complaint specifically recited that in doing so he was not "fulfilling any requirement of his job [n]or acting pursuant to a directive imposed by his job description, assigned duties or a directive from a supervising official." *Thomas,* 4548 F.3d at 1322.  The court reversed summary judgment in favor of the employer and, regarding the first *Garcetti/Pickering* step, stated:

> Mr. Thomas was not hired to detect fraud in connection with the issuance of certificates of occupancy.  He was hired to inspect houses. . . . Mr. Thomas' act went well beyond his official responsibilities.  No one could say he was 'commissioned' by the city to report suspected wrongdoing to the OSBI [Oklahoma State Bureau of Investigation].

*Thomas*, 548 F.3d at 1324.

87.      An employer can't have it both ways by using grievance and similar policies to expand the scope of an employee's official duties as a "shield," but then be unresponsive to grievances under those policies and conveniently use the policies as a "sword" to defeat a frustrated employee's grievances as unprotected "employee speech."

88.      Indeed, plaintiff has extensively pleaded that defendants ignored his repeated expressions of concern about the RGS business office's compliance with federally required financial accounting and

34

reporting practices, including internal controls for the use of federally funded scientific instruments in University laboratories.  ECF Doc. No. 30, paras. 67, 72, 99(g), 100(g), 101(h), 102(j), 103(j), 104(g), 105(j), 106(j), 107(g), 108(l), 109(j) and 128.  Indeed, defendants' ignoring these expressions of concern belies that they were within plaintiff's scope of duties.  As stated above, plaintiff specifically has pleaded, ECF Doc. No. 30, para. 129, that Dr. Warren, then the Vice Chancellor for Research and Graduate Studies and the man who fired plaintiff, told plaintiff that he [plaintiff'] "was of so little importance to his [Warren's] job" that Warren refused to "read all those little emails you sent" about the Federal Funds Mismanagement and Noncompliance, MAI Lab Renovation Project Waste and Mismanagement and Research Misconduct - Plagiarism.  Defendants can't have it both ways.

89.     Determinations of a state employees official duties under a *Garcetti/Pickering* are highly fact specific.  The decisions cited by defendants are on motions for summary judgment after the acts relevant to official duties had been developed, not motions to dismiss for failure to state a claim in which all facts properly pleaded are accepted as true.

90.     In addition, plaintiff has pleaded that he was so discouraged, that he ultimately took his ignored concerns to outside parties, namely, representatives of the Kauffman Foundation, a highly respected University funder in Kansas City that plaintiff believed would expect better conduct, the Federal Bureau of Investigation and the Kansas City Star, a regional newspaper.  ECF Doc. No. 30, para. 72(a), (b) and (c).

*Qualified Privilege*

91.     Defendants have raised qualified privilege.  In that regard, discretionary acts by government officials acting in their individual capacity under color of state law are protected unless the act in question (a) violated a constitutional or statutory right, (b) the right was clearly established at the time of the challenged act and (c) the right was sufficiently clear that a reasonable government official in the defendant's position would understand that his or her act violated the clearly established right.  *Casey v. West Las Vegas Independent School District*, 473 F.3d 1323, 1327 (10th Cir. 2007); *Chavez-Rodriguez*

35

*v. City of Santa Fe*, 596 F.3d 708, 713 (10th Cir. 2010); *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1202 (10th Cir. 2007).

92.     Plaintiff has pleaded a constitutional right, namely, freedom of speech, under the Fourteenth and First Amendments, U.S. Const.  ECF Doc. No. 30, para. 198(a).

93.     Plaintiff has also pleaded corresponding federal statutory rights existing at the time, namely, the rights to speak out and not be punished, under the anti-retaliation provisions of the Contractor Protection from Reprisal Act, 41 U.S.C. Secs. 4712, *et seq.;* and the False Claims Act, 31 U.S.C. Sec. 3730(h).  ECF Doc. No. 30, para. 198(b).

94.     The right of a public employee not to be disciplined or fired for exercising free speech on matters of public concern was clearly established in the 10th Circuit.  In *Walter v. Morton*, 33 F.3d 1240 (10th Cir. 1994), a police officer was fired after conducting his own investigation of illegal activities by the chief of police and so advising the chief of police, the state's attorney general and the state's bureau of investigation.  In the ensuing Sec. 1983 action for violation of the officer's First Amendment rights, the 10th Circuit affirmed the district court's denial of the police chief's (and a town council trustee's) claim of qualified privilege on a summary judgment motion, holding that the investigation and reports were clearly established First Amendment constitutional rights.

> 'When the content of the speech focuses on disclosing public officials' malfeasance or wrongdoing, it is likely to be considered a matter of public concern.  *Schalk v. Gallemore*, 906 F.2d 491, 495 (10th Cir. 1990)(relying on *Wulf v. City of Wichita*, 883 F.2d 842, 857 (10th Cir. 1989)).   Therefore, Mr. Walter's speech regarding Chief Morton's professional misconduct is protected under the First Amendment.

> 'It is clearly established that a State my not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech.  *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987).  Mr. Walter alleges he was discharged because he reported criminal activities of the Chief of Police.  If he was discharged in retaliation to his report, this would constitute a violation of a clearly established constitutional right.

*Walter,* 33 F.3d at 1243.

95.    "Speech concerning potential illegal conduct by government officials is inherently a matter of public concern," *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1206 (10th Cir. 2007).  The right to speak out, including particularly to third parties, as plaintiff did to an important funder, the FBI and an area newspaper, ECF Doc. No. 30, para. 72(a), (b) and (c), long has been "clearly established" in the 10th Circuit.  According to the 10th Circuit in *Casey v. West Las Vegas Independent School District*, 473 F.3d 1323, 1333-1334 (10th Cir. 2007):

> It has long been established law in this circuit that when a public employee speaks as a citizen on matters of public concern to outside entities despite the absence of any job-related reason to do so, the employer may not take retaliatory action.  *See Paradis v. Montrose Memorial Hospital*, 157 F.3d 815, 818-819 (10th Cir. 1998)(holding that the law in this area has been clearly established at least since our 1990 decision in *Schalk*).  *See also Considine [v. Board of County Commissioners]*, 910 F.2d [695] at 700 [(10th Cir 1990)], establishing, as of 1990, that where an employee communicates "his concerns directly to persons outside the normal chain of command" and the employee's job does not involve doing so, the speech in protected by the First Amendment."

*Casey,* 473 F.3d at 1333-1334 (10th Cir. 2007)(Head Start director complains about open meetings act violations to state attorney general protected.  Case remanded for additional evidence on scope of duties).

96.    Plaintiff has pleaded that his right to speak out as outlined in the First Amended Complaint was clearly established at the time, ECF Doc. No. 30, para. 198, including under decisions of the 10th Circuit, ECF Doc. No. 30, para. 198(c), and that reasonable administrators in defendants' shoes would have known this. ECF Doc. No. 30, para. 198.  Specifically, plaintiff has pleaded:

> The acts defendants Vitter, Warren and Heppert as aforesaid in the preceding paragraphs transgressed the clearly established rights of a University employee under federal law, as well as state law and the University's own policies mirroring and repeating such federal rights, aggravated by their having immediate access to University human resources professionals and legal counsel for professional guidance, to speak out on matters of public concern regarding activities of the University and its Research and Graduate Studies program including the Federal Funds Mismanagement and Noncompliance, the MAI Lab Renovation Project Waste and the Academic Conduct as aforesaid, such rights secured under the following [citations omitted].

> [Paragraph omitted]

> The acts of defendants Vitter, Warren and Heppert as aforesaid were undertaken intentionally and with knowledge of the clearly established rights of plaintiff to speak out on matters of public concern regarding activities of the University, the KU Center for Research and the Research and Graduate Studies program including the Federal Funds

Mismanagement and Noncompliance, the MAI Lab Renovation Project Waste and the Academic Conduct . . . .

ECF Doc. No. 30, paras. 198 and 200.

97.     Plaintiff has also pleaded that the individual defendants were high-level university administrators, namely, Provost/Executive Vice Chancellor, Vice Chancellor and Associate Vice Chancellor, who in those shoes certainly would or should know it was improper to retaliate against a whistleblower. ECF Doc No. 30, para. 13(c)(ii), (iii) and (iv),

98.     Plaintiff has also pleaded, at ECF Doc. No. 30, para. 198(e)(ii), that the University itself promulgated its own University-wide whistleblowing retaliation policy parroting the federal law, of which reasonable upper-level university administrators in Vitter's, Warren's and Heppert's shoes surely would have or should have known.  *See* "University of Kansas Whistleblower Policy: Reporting Suspected Wrongdoing and Protection from Retaliation," eff. December 11, 2009, prohibiting retaliation against whistleblowers..

**Count Six:  Plaintiff Has Stated
a Substantive Due Process Claim under 42 U.S.C. Sec. 1983.**

99.     Defendants correctly state that government employees possess a constitutional liberty interest in protecting their reputations and good name, *Darr v. Town of Telluride*, 495 F.3d 1243, 1255 (10th Cir. 2007), but claim plaintiff was afforded the right to a hearing to clear his name.  This is only partially addresses plaintiff's due process claim.

100.     There are two forms or "strands" of substantive due process claims and plaintiff has pleaded both in Count Six, namely, (a) deprivation of liberty substantive due process, ECF Doc. No. 30, paras. 205, 210 and 129, and (b) due process simpliciter for acts that are so arbitrary, unreasonable and without rational basis that they "shock the conscience," ECF Doc. No. 30, paras. 206, 207, 208.

101.     The Tenth Circuit summarized the two forms or "strands" in *Seegmiller v. Laverkin City*, 528 F.3d 762 (10th Cir. 2008), a police officer discipline decision.  Its summary is thorough and warrants repeating at length:

38

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const., amend. 14, § 1.  As the Supreme Court has explained, the Due Process Clause "guarantees more than fair process." *Washington v. Glucksberg*, 521 U.S. 702, 719, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). The Clause "cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them."  *County of Sacramento v. Lewis*, 523 U.S. 833, 840, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quotation omitted).  In its substantive mode, the Fourteenth Amendment provides protection against arbitrary and oppressive government action, even when taken to further a legitimate governmental objective. *Id*. at 845-46, 118 S.Ct. 1708.

The Supreme Court has described two strands of the substantive due process doctrine. One strand protects an individual's fundamental liberty interests, while the other protects against the exercise of governmental power that shocks the conscience. *See Chavez*, 538 U.S. at 787, 123 S.Ct. 1994 (Stevens, J., concurring in part and dissenting in part)("The Due Process Clause of the Fourteenth Amendment protects individuals against state action that either 'shocks the conscience,' or interferes with [fundamental] rights 'implicit in the concept of ordered liberty'" (citations omitted)).

A fundamental right or liberty interest is one that is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Chavez v. Martinez*, 538 U.S. 760, 775, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003).  Without these rights, "neither liberty nor justice would exist." *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937).  Because of their importance, fundamental liberty interests are preciously guarded.  "[T]he Fourteenth Amendment forbids the government to infringe fundamental liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Glucksberg*, 521 U.S. at 721, 117 S.Ct. 2302 (internal quotations and ellipsis omitted).

Conduct that shocks the judicial conscience, on the other hand, is deliberate government action that is "arbitrary" and "unrestrained by the established principles of private right and distributive justice."  *Lewis*, 523 U.S. at 846, 118 S.Ct. 1708 (quoting *Hurtado v. California*, 110 U.S. 516, 527, 4 S.Ct. 111, 28 L.Ed. 232 (1884)).  This strand of substantive due process is concerned with preventing government officials from "abusing their power, or employing it as an instrument of oppression." *Id*. (internal marks omitted).  Not all governmental conduct is covered, however, as "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id*.

By satisfying either the "fundamental right" or the "shocks the conscience" standards, a plaintiff states a valid substantive due process claim under the Fourteenth Amendment.

*Seegmiller,* 528 F.3d at 766-767.

### Substantive Due Process - Liberty

102.    Substantive due process claims based on deprivation of liberty frequently arise in public

employee discipline and discharge actions, recognizing two different interests entitled to protection:

"The concept of liberty recognizes two particular interests of a public employee: 1) the protection of his good name, reputation, honor and integrity, and 2) his freedom to take advantage of other employment opportunities."

*Weathers v. West Yuma County School District*, 530 F.2d 1335, 1338 (10th Cir. 1976) quoting *Lipp v. Board of Education*, 470 F.2d 802 (7th Cir. 1972). Accord *Powers v. Mancos School District RE-6*, 539 F.2d 38, 42 (10th Cir. 1976).

103.     To make out a liberty substantive due process claim based on the protection of a one's "good name, reputation, honor and integrity" a plaintiff needs to show his dismissal "resulted in the publication of information which was false and stigmatizing," *Sipes v. United States*, 744 F.2d 1418, 1421 (10th Cir. 1984), and, more specifically:

"a public employee must now (1) show that he was stigmatized in connection with an alternation of her legal status as an employee, (2) allege that the stigma arose from substantially false characterizations of the employee or her conduct, and (3) demonstrate that the damaging characterizations were made public through channels other than the litigation initiated by the employee."

*Id.* quoting "Developments in the Law – Public Employment," 97 HARV.L.REV. 1161, 1789 (1984). See also *Tonkovich v. Kansas Board of Regents*, 159 F.3d. 504, 526 (10th cir. 1998); and *McCarty v. City of Bartlesville*, 246 F.3d 681, _____ (10th Cir. 2001).

104.     Plaintiff has pleaded deprivation of a liberty substantive due process claim based on protection of his good name, reputation, honor and integrity, ECF Doc. No. 30, para. 204, 205 and 210.

105.     To the extent plaintiff would have been entitled to a "name clearing hearing" as defendants suggest, plaintiff was no afforded a name clearing hearing and has so pleaded.

(a)     First, while he appealed his suspension to the Faculty Rights Board, the University avoided that hearing by firing him days before the University was to file its answer and have the appeal hearing scheduled. ECF Doc. No. 30, para. 87.

(b)     Second, when plaintiff thereafter timely sought judicial review before the District Court of Douglas County, the University invoked provisions of Kansas law prohibiting discovery and requiring submission of his case solely on the basis of an after-the-fact; judge, jury and executioner Administrative Record unilaterally prepared by the University setting forth only the

University's "cherry picked" side of the case.  This is explained more fully below in the Count

VII discussion below which plaintiff incorporates herein by reference.

*Substantive Due Process Simpliciter*

106.    The second form of substantive due process, also known as substantive due process

"simpliciter"[8] or "shocks the conscience" substantive due process, is recognized by the United States

Supreme Court:

> The second type of substantive due process violation is "official misconduct, which
> although not infringing on a fundamental right, is so literally 'conscience shocking,'
> hence oppressive, as to rise to the level of a substantive due process violation." *Howard
> v. Grinage*. 82 F.3d 1343, 1349 (6th Cir. 1996).  There is no bright-line test for when
> conduct meets this standard; it depends on the facts of the case. *Bowers v. City of Flint,*
> 325 F.3d 758, 767 (6th Cir. 2003).  But, the Supreme Court has said that "conduct
> intended to injure in some way unjustifiable by any governmental interest is the sort of
> official action most likely to rise to the conscience shocking level."   *County of
> Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

*Tanney v. Boles*, 400 F.Supp.2d at 1041.

107.    For example, in *Fitzpatrick v. Meyer*, 809 F.Supp. 1299, 1303-1304 (S.D. Ohio 1992),

*vacated other grounds*, 7 F.3d 233 (6th Cir. 1993)(vacated based on qualified immunity), the court held

that state officials' seizing the records of a group home for mentally disabled children without a court

warrant, order or exception regarding an alleged sexual assault upon a resident "shocked the conscience"

and supported a Sec. 1983 substantive due process simpliciter claim.

108.    Plaintiff has alleged a continuous course of arbitrary and capricious actions without

rational basis by defendants Vitter, Warren and Heppert to ignore and frustrate plaintiff's rights as a

disabled person and whistleblower *at every turn* that together "shock the conscience," including, for

example:

> (a)    Consistently ignoring plaintiff's reasonable and good faith expressions of
>
> concern over several years about financial accounting, waste and plagiarism problems, the
>
> accounting problems later apparently found by a third party consultant to have been well-founded

---

8  Defined as "in or by itself."    Merriam-Webster  On-Line  Dictionary,  http://www.merriam-
webster.com/dictionary/simpliciter, accessed April 6, 2015.

and addressed. .  ECF Doc. No. 30, paras. 67, 72, 96, 99(g), 100(g), 101(h), 102(j), 103(j), 104(g), 105(j), 106(j), 107(g), 108(l), 109(j) and 128.

(b)     When finally meeting with plaintiff to discuss his concerns, admitting that his various emails hadn't even been read because plaintiff "was of so little importance to his [Dr. Warren's] job" that Warren refused to "read all those little emails you sent," ECF Doc. No. 30, para. 129;

(c)     Absolutely ignoring plaintiff's request for accommodation for his disability and immediately imposing suspension without pay with *no discussion whatsoever*, let alone the mandatory interactive process required by federal law and the University's own policy, ECF Doc. No. 30, para. 96;

(d)     Knowingly (Dr. Warren was a Ph.D. psychologist) increasing the workload and pressures on plaintiff to exploit his known ADD/ADHD psychological vulnerability in order to exacerbate his ADD/ADHD condition.  *See Washington v. Illinois Department of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005).  ECF Doc. No. 30, para. 80;

(e)     Firing plaintiff while his suspension appeal was pending right before his hearing with the Faculty Rights Board was to be scheduled, depriving him of his right under University policies and procedures, University Senate Rules and Regulations, Sec. 6.4.2, to be heard by his peers, ECF Doc. No. 30, para. 87; and

(f)     Using an after-the-fact; cherry-picked; one-side-only; judge, jury and executioner 1,400 page Administrative Record to justify the suspension and firing when plaintiff sought judicial review in state court, ECF Doc. No. 30, para. 207.

109.     The preceding are examples of which plaintiff is aware.  This kind of conduct generally is marked by concealment of other acts directed toward plaintiff of which he is not aware.  Plaintiff has stated a claim and is entitled to discover the nature and extent of defendants' acts.

110.    As to defendants' assertion of qualified immunity, plaintiff incorporates by reference the preceding paragraphs of this memorandum discussing qualified immunity.  The two substantive due process claims are based on the same clearly established rights of a public employee not to be retaliated against for speaking out on matters of public concern of which high-level university administrators would be aware, but violate substantive due process because of (a) plaintiff's liberty interests in protecting his good name and reputation and (b) the extremely aggressive, indeed vicious, manner in which defendants went after plaintiff.

111.    As to both his substantive due process claims (liberty substantive due process and substantive due process simpliciter) plaintiff acknowledges that his allegations are not as detailed in the other counts.  Plaintiff would welcome the opportunity, if the Court desires, to make his substantive due process claims more definite and certain.

**Count Seven:  Plaintiff Has Stated a Claim for Relief
under the Kansas Common Law Public Policy Exception
to the Employment at Will Doctrine**

112.    Plaintiff asserts this claim against the KU Center for Research, Inc. and the individual defendants Drs. Vitter, Warren and Heppert.

(a)    As to the KU Center for Research, the University's "non-arm-of-the-state" agent for administering the Research and Graduate Studies program, plaintiff seeks back pay, interest, pain and suffering damages, costs in including attorneys' fees and injunctive relief to eliminate any patterns and practices in the future to intimidate, discipline, discharge or otherwise negatively affect terms and conditions of University employees for reporting and speaking out on mismanagement of federal grants and funds and noncompliance.

(i)    As stated above, plaintiff has alleged the status of the KU Center for Research as acting on its own account and as the agent for the University administering the Research and Graduate Studies program.  Discovery will clarify its authority to act on its own account and as an agent.  Of course, an agent is liable to a third party for its

43

tortious or other wrongful acts within the actual or apparent scope of the agency. RESTATEMENT (THIRD) OF AGENCY, Sec. 7.01 (2006). *Wells v. Hansen*, 97 Kan. 305, 311, 154 P. 1033 (1916)("For a misfeasance done by an agent, in the line of his agency, both the principal and the agent are liable.")

(b)    As to Drs. Gray-Little, Vitter, Warren, Heppert, plaintiff seeks *Ex Parte Young* reinstatement, costs including attorneys fees and injunctive relief to eliminate any patterns and practices in the future to intimidate, discipline, discharge or otherwise negatively affect terms and conditions of University employees for reporting and speaking out on mismanagement of federal grants and funds and noncompliance.

113.    Kansas recognizes the common law public policy tort exception to the employment at-will doctrine, *Murphy v. City of Topeka,* Kan.App.2d 488, 630 P.2d 186 (1981); *Palmer v. Brown,* 242 Kan. 893, 752 P.2d 685 (Kan. 1988)(error to dismiss for failure to state a claim; recognizes common law cause of action for internal or external whistleblowing); *see also Connelly v. State of Kansas*, 271 Kan. 944, 968, 970, 974, 26 P.3d 1246 (2001).

114.    Under the "alternative remedies doctrine," "state common law remedies are not available when statutory law provides an adequate remedy to redress plaintiff's injuries." *Rupp v. Purolator Corporation*, 790 F.Supp.2d 1069, 1072 (D.Kan. 1992), citing *Polson v. Davis*, 895 F.2d 705, 709 (10th Cir. 1990). Defendants claim the Kansas Whistleblower Act, K.S.A. Sec. 75-2973, provides an adequate alternative remedy, ECF Doc. No. 36, p. 27, and, therefore, claim the common law claim cannot be asserted.

115.    The Kansas Whistleblower Act does not provide an adequate remedy for University employees in plaintiff's position and circumstance because as applied (a) plaintiff has never had a hearing on his suspension or his discharge at the University level and (b) the Act requires use of the Kansas Judicial Review Act, K.S.A. Secs. 77-601, *et seq.,* which does not *in any material aspect* apply to the University.

44

116.     The Kansas Administrative Procedure Act, K.S.A. Secs. 77-501, and the Kansas Judicial Review Act, K.S.A. Secs. 77-601, *et seq.,* work in tandem to provide the framework for the review of state administrative agency actions, including state employee disciplinary actions and dismissal.

(a)     The Administrative Procedure Act sets forth an elaborate due process regimen including alternative dispute resolution, notice, representation by legal counsel, pre-conference hearings, discovery, dispositive and non-dispositive motions and briefing, hearings on the record, cross-examination of accusers and reconsideration.  K.S.A. Secs. 77-513 – 77-537.

(b)     The companion Judicial Review Act provides for a *certiorari* type review of the agency's Administrative Record developed under the Administrative Procedure Act which, accordingly, does not provide for discovery; limits new issues, K.S.A. Secs. 77-617 - 619; and subjects the agency action to reversal or remand only if, for example, the agency record shows its ruling is not supported by substantial evidence on the record as a whole; is unconstitutional; is beyond the agency's jurisdiction; or erroneously interprets or applies the law.  K.S.A. Sec. 77-621.

117.     This regimen might very well have provided plaintiff with an adequate remedy regarding both his disability and whistleblowing claims, but as written, it does not.  While the Judicial Review Act's *certiorari*-type proceeding and limitations applies to the University, the Administrative Procedure Act and its many procedural features and protections does not apply to the University,[9] thereby depriving plaintiff of any hearing at the administrative level, leaving a University employee before the reviewing court conducting a *certiorari* proceeding based on a "judge, jury and executioner" Administrative Record

---

[9] The Kansas Judicial Review Act "applies to all agencies and all proceedings for judicial review . . . not specifically exempted by statute from the provisions of [the] act."  K.S.A. Sec. 77-603(a).  The University of Kansas, a state agency, K.S.A. Secs. 76-711(a) and 76-712, is not exempted from the Act, therefore the Judicial Review Act applies to the University.

However, the Kansas Administrative Procedure Act "applies only to the extent that other statutes expressly provide that the provisions of this act govern proceedings under those statutes."  K.S.A. Sec. 77-503(a).  No Kansas statute makes the Administrative Procedure Act applicable to the University of Kansas, therefore it does not apply to the University.

prepared by the University and cherry-picked with evidence favorable only to the University.  ECF Doc. No. 30, para. 94 and 231.

118.    Nonetheless, plaintiff did file a state court action under the Judicial Review Act and included a claim under the Kansas Whistleblower Act, *Moore v. University of Kansas,* Case No. 2013-CV-00535, District Court of Douglas County, Kansas, filed November 13, 2013, but plaintiff was not successful persuading the University to agree to discovery on its underlying conduct.  Accordingly, plaintiff voluntarily dismissed the matter on August 7, 2014 as a useless remedy and opting instead to go to federal court on the claims presented in the First Amended Complaint, including the common law public policy exception to the employment at will doctrine.  ECF Doc. No. 30, para. 94 and 231.

119.    This case is the "flip side" of *Prager v. State of Kansas*, 271 Kan. 2, 20 P.3d 39 (2001) in which the Kansas Supreme Court concluded a discharged whistleblower  employed by the state could not assert a claim under the common law public policy exception to the employment at-will doctrine because he had an adequate statutory remedy as a "permanent status" state employee in the classified civil service under the Kansas Whistleblower Act, K.S.A. Sec. 75-2973, because of its many procedural rights, *e.g.,* ADR, representation by counsel, discovery, hearing on the record, before the state civil service board[10] under the Kansas Administrative Procedure Act.

120.    The court in *Prager* decided the discharged whistleblower had an adequate statutory remedy with the Kansas Civil Service Board because the "extensive procedures" under Kansas Administrative Procedure Act, K.S.A. Secs. 77-501, *et seq.,* for example, "representation by counsel, filing of pleadings, issuing of subpoenas, discovery, presentation of evidence and arguments in a hearing, reconsideration, and ultimately filing appeals, *Prager,* 20 P.3d at 49, which, as explained above, *do not apply to plaintiff's whistleblower claim* because the University is not subject to the Kansas Administrative Procedure Act.

---

[10] Under the Kansas Whistleblower Act, "permanent status" state employees like Mr. Prager seek relief under the Kansas Civil Service Act.  K.S.A. Sec. 75-2973(f), while state employees in the "unclassified service" like plaintiff Dr. Moore are required to proceed under the Judicial Review Act.  K.S.A. Sec. 75-2973(h).

121.     In addition, the court in *Connelly v. State of* Kansas, 271 Kan. 944, 955, 26 P.3d 1246 (Kan. 2001) limited the holding in *Prager* to state employees with "permanent" status.  Plaintiff was not a permanent status state employee.

## Conclusion

122.     Accordingly, plaintiff submits that he has carefully drawn his complaint to assert his claims against the proper parties for the proper relief as required by the Eleventh Amendment, U.S. Const. to withstand defendants' motion under Fed.R.Civ.P. 12(b)(1), and otherwise has pleaded his claims with "extraordinary specificity" to withstand the motion under Fed.R.Civ.P. 12(b)(6).

123.     To the extent the Court feels plaintiff's allegations require additional factual detail, plaintiff respectfully requests the opportunity to make his complaint more definite and certain. Fed.R.Civ.P. 12(e).

Respectfully submitted,

<u>          /s/ Daniel R. Cofran          </u>
Daniel R. Cofran, Esq.
Kansas Supreme Court Enrollment No. 23258

1000 W. 70th St.
Kansas City, Missouri
Phone:  816-363-1218
Email:  dcofan@swbell.net

ATTORNEY FOR PLAINTIFF DAVID S. MOORE, PH. D.

## Certificate of Service

The undersigned hereby certifies that copies of the above and foregoing Memorandum in Opposition to Motion to Dismiss First Amended Complaint were mailed by first class mail, postage prepaid; facsimile;  hand delivery; electronic mail; and/or CM/ECF electronic filing, as indicated, this 7th day of April, 2015, to:

David R. Cooper, Esq.                    (By CM/ECF Electronic Filing)
Sarah A. Morse, Esq.                    (By CM/ECF Electronic Filing)
Fisher, Patterson, Sayler & Smith, L.L.P.
3550 SW 5th Street
P.O. Box 949

Topeka, Kansas  66601-0949
Attorneys for defendants University of Kansas,
Jeffrey S. Vitter, Steven F. Warren and Joseph P. Heppert.


_____/s/ Daniel R. Cofran_____
                Daniel R. Cofran