**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

DAVID S. MOORE,                                   )
                                                  )
                              Plaintiff,          )
                                                  )
              v.                                  )          Case No. 2:14-cv-02420-SAC-KGS
                                                  )
THE UNIVERSITY OF KANSAS, ET AL.,                 )
                                                  )
                              Defendants.         )

---

# REPLY IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS

The University of Kansas, Dr. Jeffrey S. Vitter, Dr. Steven F. Warren, and Dr. Joseph A Heppert submit the following reply in support of their motion to dismiss. Plaintiff filed a supplemented and restated memorandum in opposition to the motion to dismiss the first amended complaint on April 28, 2015. ECF 48. This reply addresses the arguments set forth in that memorandum.

### 1. Moore's claims and arguments against KUCR and Dr. Bernadette Gray-Little are not relevant to this motion to dismiss.

Throughout Moore's response, he argues the validity of various claims asserted against KUCR and Dr. Bernadette Gray-Little. ECF 48, ¶¶ 10, 21-23, 30, 36-40, 68-73, 112. At the time the motion to dismiss was filed, neither KUCR nor Dr. Gray-Little had been served. ECF 36, p. 1. The motion to dismiss did not waive service or answer for either KUCR or Dr. Gray-Little. Thus, Moore's arguments regarding the application of his claims to KUCR and Dr. Gray-Little are

irrelevant to the determination of the issues presented in this motion to dismiss. Timely responsive pleadings will be filed for KUCR and Dr. Gray-Little, and this reply does not answer for those defendants.

**2. Moore concedes Dr. Heppert is not a proper defendant in his Americans with Disabilities Act claim and does not provide any authority to establish Drs. Warren or Vitter are proper defendants under *Ex parte Young*.**

With respect to his Americans with Disabilities Act ("ADA") claim, Moore apparently concedes that claims for monetary damages against Drs. Vitter, Warren, and Heppert are not available as he does not address this issue in his response. Moore also concedes that Dr. Heppert does not have the authority to hire, fire, and reinstate Moore and, therefore, is not a proper defendant under *Ex parte Young*, 209 U.S. at 157. Moore contends that Dr. Warren has the authority to fire, but does not contend that he also has the authority to reinstate him. ECF 48, ¶ 22. Moore does not provide any authority or support to contradict the holding in *Klein v. Univ. of Kan. Med. Ctr.*, 975 F.Supp. 1408, 1417 (D.Kan. 1997), that the Chancellor is the only person with authority to reinstate Moore. See ECF 36, p. 7. Because Drs. Warren, Vitter, and Heppert do not have the authority to reinstate Moore, the ADA claims against them for prospective injunctive relief must be dismissed.

**3. Moore concedes punitive and compensatory damages under the Rehabilitation Act are not available.**

Plaintiff concedes he is unable to seek punitive or compensatory damages under the Rehabilitation Act, 29 U.S.C. § 794. Plaintiff indicates his prayer for relief under Count Two will be revised, however, he has not sought leave to amend the Complaint.

**4. Moore cannot seek to exhaust administrative remedies under the Contractor Protection from Reprisal Act after filing suit. Further, Moore's claims all encompass conduct that pre-dates the effective date of § 4712.**

With regard to the claim under 41 U.S.C. § 4712, Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information Act against Drs. Vitter, Warren, and Heppert, Moore argues he has not failed to exhaust administrative remedies. Moore does not, however, address the arguments (1) that sovereign immunity bars the claims for monetary damages against Drs. Vitter, Warren, and Heppert or (2) that the claims for reinstatement as to Drs. Vitter, Warren, and Heppert are improper. Moore instead addresses the issue of exhaustion of administrative remedies.

There seems to be no dispute that any claim for monetary damages against Drs. Vitter, Warren, and Heppert must be dismissed or that Drs. Warren and Heppert are not proper parties for Moore's reinstatement claim.

Moore points to the administrative complaints he filed with the National Science Foundation and the Department of Health and Human Services and notes that "upon the Director of the Department of Health and Human Services issuing an order confirming the investigator's opinion, plaintiff will have exhausted his administrative remedy." ECF 48, ¶ 46(d)(ii). Moore's administrative efforts are not contained in his Amended Complaint and therefore may not be considered in the motion to dismiss. *See Cnty. of Santa Fe, N.M. v. Pub. Serv. Co. of New Mexico*, 311 F.3d 1031, 1035 (10th Cir. 2002) ("In deciding a Rule 12(b)(6) motion, a federal court may only consider facts alleged within the complaint.").

As noted in the defendants' motion to dismiss, the exhaustion of administrative remedies is a *prerequisite* to suit. See ECF 35, p. 13. In discussing another federal statute, the Tenth Circuit has held,

> as a general rule, a premature 'complaint cannot be cured through amendment, but instead, plaintiff must file a new suit.' Allowing claimants generally to bring suit under the [statute] before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and impose an unnecessary burden on the judicial system.

*Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999). See also *Sandlin v. Roche Labs., Inc.*, 268 Kan. 79, 88, 991 P.2d 883, 889 (1999) (plaintiff cannot be said to have exhausted an administrative remedy by purposely interrupting the administrative process.). Because Moore failed to exhaust his administrative remedies before filing suit, a stay of the proceedings would be improper because this court lacks jurisdiction. Moore's claim should be dismissed.

The reasons provided by the National Science Foundation for declining to investigate Moore's administrative complaint show yet another reason why Moore's claim should be dismissed. The National Science Foundation closed the administrative investigation based on lack of jurisdiction under the Contractor Protection from Reprisal Act because any grants or cooperative agreements within the scope of the administrative complaint ante-date the Act's July 1, 2013 effective date. ECF 48, ¶ 46(d)(i). To retroactively apply a statute, the statute must have "articulated and clear statements on retroactivity." *DeVargas v. Mason & Hanger-Silas Mason Co.*, 911 F.2d 1377, 1387 (10th Cir. 1990).

Section 4712 does not contain any language to indicate Congress intended it to be applied retroactively. The temporary duration of the statute also suggests a finding against retroactive application. *See* § 4712(i). Moore's Amended Complaint fails to allege facts demonstrating that any grant or cooperative agreement upon which he bases his claims post-date the June 1, 2013, effective date of the Act. Moore fails to show that § 4712 is applicable to his claims, and they should be dismissed.

**5.  Moore's False Claims Act claim against the state officers is prohibited by the statutory language, and *Ex parte Young* is inapplicable.**

Moore argues the individual defendants are properly named under his False Claims Act ("FCA"), 31 U.S.C. § 3730, claim for non-monetary, prospective injunctive relief for the reasons set forth in *Ex parte Young,* 209 U.S. 123 (1908). ECF 48, ¶¶ 72-73. Moore's response wholly ignores the argument and authorities that the FCA does not authorize a claim against the state or against individuals.

Section 3730(h) does not authorize suits against the state. *Klaassen v. Univ. of Kansas Sch. of Med.*, ___ F.Supp.3d ___, No. 13-CV-2561-DDC-KGS, 2015 WL 437747 (D. Kan. Feb. 3, 2015). Because there was "no dispute" in *Klaassen* about whether the defendants were arms of the state, the court had to first consider "whether § 3730(h) creates a cause of action against states." *Id.* at *5. The court held, "[t]he Supreme Court has indicated that a federal court, when confronted with the question of whether a statute authorizes suits against states, should decide the statutory question before deciding whether the Eleventh Amendment bars the claim." *Id.* at *5. Because the court determined the statute did not authorize suits against the state, it did not reach the issue of whether Eleventh Amendment immunity barred the claim. *Id.* at *5-*6. Thus, issue of whether a state may be sued under § 3730(h) is a statutory analysis, not a question of sovereign immunity and *Ex parte Young* is not applicable.

The cases cited by Moore as support are extra-jurisdictional decisions and predate the decision in *Klaassen*. The cases address whether official-capacity claims for injunctive relief may be pursued under the theory of sovereign immunity or other reasons and do not include analysis of whether the statute itself provides for such relief. *Wilkins ex rel. U.S. v. State of Ohio,* 885 F. Supp. 1055, 1067 (S.D. Ohio 1995) (claim for injunctive relief not dismissed under sovereign immunity, but no discussion of whether § 3730(h) authorized such a claim); *Weihua Huang v.*

*Rector & Visitors of Univ. of Virginia*, No. 3:11-CV-00050, 2011 WL 6329755, at *8 (W.D. Va. Dec. 19, 2011) (Official capacity claim for prospective relief not dismissed because there were not sufficient facts in the amended complaint to determine whether plaintiff's rejection of defendant's offer to reinstate precludes claim for reinstatement); *Bell v. Dean*, No. 2:09-CV-1082-WKW(WO), 2010 WL 1856086, at *4 (M.D. Ala. May 4, 2010) (Claim for injunctive relief not dismissed under sovereign immunity, but no discussion of whether § 3730(h) authorized such a claim.). Because this court has held § 3730(h) does not authorize suits against the state at all and Moore's claims against Drs. Vitter, Warren, and Heppert in their official capacity is treated as a claim against the University, the exception identified in *Ex parte Young* is irrelevant and cannot be used to enforce the statute.

Even if an *Ex parte Young* analysis were applied, Moore's claim would still fail. To come within the *Ex parte Young* exception, the first analysis is "whether the complaint alleges an ongoing violation of federal law." *Rounds v. Clements*, 495 F. App'x 938, 940 (10th Cir. 2012) quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)); *see also* Doc. 36, p. 6-7. Moore does not allege an ongoing violation of federal law because § 3730(h) does not authorize suits against the state.

In *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, (1996), the United States Supreme Court held that "where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young*." In *Seminole Tribe of Florida*, the Court did not apply "the narrow exception to the Eleventh Amendment provided by the *Ex Parte Young* doctrine" to enforce the statute because Congress had enacted a remedial scheme specifically designed to enforce the right. *Id.* at 1133. The court

held, "the fact that Congress chose to impose upon the State a liability that is significantly more limited than would be the liability imposed upon the state officer under *Ex parte Young* strongly indicates that Congress had no wish to create the latter under [the statute]." *Id.* Similarly, § 3730(h) provides a remedy for the enforcement of the FCA which includes certain limitations of enforcement against the states.

The conclusion that the FCA is not an available remedy against Drs. Warren, Vitter, and Heppert is bolstered by another decision from this court which held, "the 2009 amendment to § 3730(h) was not intended to provide for individual liability and, that, consistent with the way in which the vast majority of courts resolved the issue prior to the amendment, § 3730(h) does not contemplate individual liability for FCA whistleblower retaliation." *Lipka v. Advantage Health Grp., Inc.*, No. 13-CV-2223, 2013 WL 5304013, at *12 (D. Kan. Sept. 20, 2013). *See also Klaassen, supra* at *27 (FCA claims against individual defendants dismissed.). In *Lipka*, this court examined the impact of the 2009 amendment to § 3730(h) of the FCA which expanded protection from "employees" to "employees, contractors and agents" and eliminated the word "employer." *Id.*; FRAUD ENFORCEMENT AND RECOVERY ACT OF 2009 (FERA), PL 111-21, May 20, 2009, 123 Stat 1617. In *Lipka,* this court found persuasive cases which held that by removing the word "employer" Congress did not intend to extend liability to non-employers. *Id.* at *10-*11.

This court held it "cannot improve on the analysis provided" in three cases from other jurisdictions, and cited them with approval. *Lipka* at *12. One court explained,

> [T]he removal of the term 'employer' by the 2009 amendment to § 3730(h) was a device to accommodate the broader group of potential plaintiffs who are in employee type roles but who may not technically be employees and the broader group of potential defendants who are in employer type roles but may not technically be employers. There is no indication in the revised statutory language of the 2009 amendments or in the legislative history that indicates a Congressional intent to broaden the scope of § 3730(h) to include potential defendants who have no employer type relationship with plaintiffs.

*Id.* at *11 (citing *U.S. ex rel. Abou-Hussein v. Sci. Applications Int'l Corp.*, No. CIV.A. 2:09-1858-RMG, 2012 WL 6892716, at *3 (D.S.C. May 3, 2012) *aff'd,* 475 F. App'x 851 (4th Cir. 2012)). The second court held that language in a Senate Report "clearly supported the conclusion that the removal of the word 'employer' was not intended to 'grant a federal right of action against anyone and everyone.'" *Id.* (citing *Howell v. Town of Ball,* 2012 WL 6680364, *2 (W.D.La. Dec.21, 2012)). The final court relied on a House Report and held:

> Congress intended for the amendment to "broaden protections for whistleblowers by expanding the False Claims Act's anti-retaliation provision to cover any retaliation against those who planned to file an action (but did not), people related to or associated with relators, and contract workers and others who are not technically 'employees.' " H.R.Rep. No. 111–97, at 14 (2009). The Report contains no similar statement of intent to expand the scope of liability to include individuals. Where Congress expressly stated its intent to expand the definition of a whistleblower and added specific language to effectuate that intent, it strains common sense to read Congress's silence in the same sentence of the statute as effectuating an unexpressed intent to expand the class of defendants subject to liability under the statute.
>
> This is particularly true in light of the aforementioned presumption that Congress was aware that courts had uniformly rejected individual liability under section 3730(h). Thus, if plaintiff is correct, Congress overturned this line of authority by negative implication. That seems unlikely given that Congress could have simply replaced "employer" with "any person." Indeed, Congress has used that phrase in several anti-retaliation statutes. That Congress chose not to use that phrase ... makes it more likely that Congress deleted the word "employer" not to provide for individual liability but to avoid confusion in cases involving a "contractor or agent" rather than an "employee."

*Id.* *11-12 (citing *Aryai v. Forfeiture Support Associates, LLC*, 012 U.S. Dist. LEXIS 125227, at *27 (S.D.N.Y. Aug. 27, 2012)).

Based on these three decisions, the *Lipka* court dismissed the plaintiff's FCA retaliation claim against the individual defendants. *Id.* at *12. *Lipka* was then cited with approval by the District Court of the District of Columbia in a FCA suit against a University and individually named University officials. In *Frett v. Howard Univ.*, No. CV 13-551 (RJL), 2014 WL 939499

(D.D.C. Mar. 10, 2014) a consultant hired by Howard University filed suit against the University, the University's President, Board of Trustees, and the Chairman of the Board of Trustees' Audit and Legal Committee and alleged violations under the FCA. The court noted the plaintiff had identified only one employer when she identified herself in the Complaint as "a former employee of *Howard University*." *Id.* at *82 (emphasis in original). Citing *Lipka*, the court held that the University, as the plaintiff's former employer, is the only proper FCA defendant. *Id.* at *86.

In another suit against Howard University, the court held any claim against the plaintiff's former supervisor in his official capacity "necessarily merges with the claim against Howard." *Yesudian ex rel. U.S. v. Howard Univ.*, 270 F.3d 969, 972 (D.C. Cir. 2001). Because the jury had rejected the plaintiff's § 3730(h) claim against Howard, no judgment contradicting that finding could be entered and the supervisor could not be liable under a § 3730(h) claim.

Moore similarly alleges he was employed by only one employer. In his Amended Complaint, he asserts, "Plaintiff was employed by defendant University of Kansas. . . ." ECF 30, ¶ 2. Thus, under *Lipka*, the University of Kansas is the only proper FCA defendant. Even so, any claim against Drs. Vitter, Warren, and Heppert in their official capacities would necessarily merge with a claim against the University. As set forth in the defendants' memorandum in support of their motion to dismiss, the University is an arm of the state and the FCA does not authorize a retaliation cause of action against states. *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1195 (10th Cir. 1998). *See also Klaassen*, *supra* at *7.

Even if the principles of *Ex parte Young* do permit Moore's claims to go forward, the claim may only be asserted against the Chancellor, who has the authority to reinstate Moore. See ECF 35, p. 7. The claims against Drs. Vitter, Warren, and Heppert must be dismissed as they lack the requisite authority to reinstate the plaintiff.

**6. If the False Claim Act claims permitted claims against the state or against individuals, the complaint fails to allege the defendants had been appropriately notified of Moore's FCA efforts.**

In response to defendants' contention that his alleged conduct was not action "in furtherance of" an FCA claim, Moore asserts the decision cited by defendants as support, *McBride v. Peak Wellness Ctr., Inc.*, 688 F.3d 698, 704 (10th Cir. 2012), antedates 2009 and 2010 amendments to the § 3730(h) retaliation section which he alleges broadened what constitutes "protected activity" and the corresponding "notice" to the employer. ECF 48, ¶ 56. "[T]he 10th Circuit's decision in *McBride* [, however,] is from 2012, long after the amendment had taken effect. Thus, there is no reason to believe that the standard announced in *McBride* is in any way outdated." *Randazzo v. CH2M Hill, Inc.*, No. 13-CV-03276-MSK-KLM, 2014 WL 4697131, at *4 (D. Colo. Sept. 22, 2014) *appeal filed,* No. 14-1457 (10th Cir. Nov. 3, 2014).

This court has continued to apply *McBride* in cases after the 2009 and 2010 amendments. In *Lipka v. Advantage Health Grp., Inc.*, No. 13-CV-2223, 2013 WL 5304013, at *3 (D. Kan. Sept. 20, 2013), this court quoted *McBride*:

> a plaintiff claiming retaliatory discharge under the FCA "has the burden of pleading facts which would demonstrate that defendants had been put on notice that plaintiff was either taking action in furtherance of a private qui tam action or assisting in an FCA action brought by the government." *Id.* Notice may be provided in a number of ways, including, by way of example, informing the employer of "illegal activities" that would constitute fraud on the United States; warning the employer of regulatory noncompliance and false reporting of information to a government agency; or explicitly informing the employer of an FCA violation. *Id.*

The court held that while the plaintiff need not "make clear her intentions to bring or assist in an FCA action," the plaintiff successfully "pleaded facts which would demonstrate that defendants had notice that plaintiff was taking action in furtherance of a private qui tam action." The plaintiff in *Lipka* specifically told the defendants "that she was notifying defendants 'of their illegal and fraudulent practices regarding [Clinical Laboratory Improvement Amendments of 1988 ("CLIA")]

due to her previous lawsuit filed pursuant to the FCA'—a lawsuit that, according to plaintiff's complaint, concerned the same CLIA issue." *Id.* at *5. While the Amended Complaint alleges Moore raised concerns of illegal or fraudulent activity, there is no contention he informed defendants he believed there was a violation of the FCA as the plaintiff in *Lipka* did.

To the extent any standards may have changed with the amendment of § 3730(h), the amendment applies only to conduct on or after May 20, 2009. "The amendment applies to conduct on or after May 20, 2009, *see* Pub.L. No. 111–21, § 4(f), 123 Stat. 1617, 1624–25 (2009)." *Lipka*, *supra* at *10. *See also U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1304, fn. 5 (11th Cir. 2010). Moore alleges he identified certain suspected federal funds mismanagement and noncompliance in 2006-2008 and in some instances, "throughout the years plaintiff was a Director of the MAI Lab," which was from December 1, 2004, until October 18, 2013. Amended Complaint, ¶¶ 13, 103, 107, 108. Any action upon which Moore bases his claim for relief under the FCA which occurred prior to the May 20, 2009, amendment date must comply with the pre-amendment, *McBride* standards.

### 7. Moore does not demonstrate that his statements were not part of his official duties and his freedom of speech claim fails.

Moore argues his statements were not made under his official duties because an employer cannot "restrict employee's rights by creating excessively broad job descriptions." ECF 48, ¶ 84 *quoting Brammer-Hoelter v. Twin Peaks Charter Acad.,* 492 F.3d 1192, 1204 (10th Cir. 2007) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 416, (2006)). In *Brammer-Hoelter*, the record indicated "Plaintiffs were encouraged to present their views to improve the [employer]" through a grievance procedure which stated "the Board of Directors, Administrator, and instructional and support staff . . . welcome constructive criticism and input motivated by a sincere desire to enhance the Academy's educational program, improve its working conditions, or provide additional

opportunities for parental involvement." *Id.* at 1199, 1204. The court held, "we cannot deem such a generalized grievance policy to be an official duty." *Id.*

Here, defendants do not rely upon an "excessively broad job description" or a generalized grievance policy to bring Moore's comments under his official duties. Rather, very specific policies which apply to University employees indicate that Moore's alleged speech was pursuant to his official duties. The KU Fraud and Theft Prevention Policy specifically requires employees to report known or suspected incidents of fraud, theft, and misappropriation of University Assets. *See* ECF 35, pp. 20-21.

In *Thomas v. City of Blanchard*, 548 F.3d 1317, 1322 (10th Cir. 2008), another case cited by Moore for support, the plaintiff was not "fulfilling any requirements of his job or acting pursuant to a directive imposed by his job description, assigned duties or a directive from a supervising official." *Id.* at 1322. Moore, however, was. Moore had been specifically "commissioned" by the University through the Fraud and Theft Prevention Policy, the Handbook, and the KU Whistleblower Policy to report suspected violations of law. *Id.*, at 1323 (citing *Garcetti*, 547 U.S. 410, 421-22).

Plaintiff seems to suggest that *Casey v. W. Las Vegas Indep. Sch. Dist.,* 473 F.3d 1323, (10th Cir. 2007) addresses the Tenth Circuit's approach to "workforce-wide personnel policies." ECF 48, ¶ 85. *Casey* does not address any specific workplace policy but relies on the plaintiff's representation of her job duties. *Id.* at 1329. Many of the plaintiff's statements in *Casey* were made within the scope of her duties, even some which she made to the federal or state authorities after she "lost faith" in her employer, fell within the scope of her official duties. *Id.*

Plaintiff also argues the cases cited by defendants were decided on motions for summary judgment rather than motions to dismiss. ECF 48, ¶ 36. This statement is inaccurate and there is

no authority to preclude a decision on a freedom of speech claim at the motion to dismiss stage. *See Lee v. Kansas State Univ.*, No. 12-CV-2638-JAR-DJW, 2013 WL 2476702, at *9 (D. Kan. June 7, 2013) cited at ECF 36, p. 20 (Plaintiff's freedom of speech claim dismissed on motion to dismiss). *See also Heublein v. Wefald*, 784 F. Supp. 2d 1186, 1199 (D. Kan. 2011) (same).

Moore attempts to distract from the fact that he made statements to his supervisors in the course of his official duties by noting he made reports to the Kauffman Foundation, the Federal Bureau of Investigation, and the *Kansas City Star*. ECF, ¶ 90. *Casey* and *Thomas* also involve plaintiffs who reported concerns or belief of illegal activity to outside authority. *See Casey, supra* at 1333 (plaintiff notified federal authorities and state attorney general) and *Thomas*, *supra* at 1321 (plaintiff notified Oklahoma State Bureau of Investigation). In both of these cases, the plaintiffs were able to directly connect their reports to these outside agencies as a "motivating" factor in the plaintiffs' termination.

Moore, however, does not allege facts to support a claim that he was retaliated against because of his reports to the Kauffman Foundation, the Federal Bureau of Investigation, or the *Kansas City Star*. The Amended Complaint alleges Moore's communication with the Kauffman Foundation had been provided to the Kansas University Endowment Association and then to Dr. Weir "who became irate and apparently in April 2013 demanded that plaintiff David S. Moore be discharged." ECF 30, ¶ 73. Moore does not allege, however, that Dr. Weir had any involvement in his termination. Moore does allege that "Plaintiff's superior's accusations of unprofessional and disruptive behavior then escalated over the balance of 2013, leading to plaintiff's suspension in September 2013 and discharge in October 2013." ECF 30, ¶ 73. The complaint does not allege any facts to suggest a connection between these two occurrences to suggest causation. Further, Moore

does not allege facts to suggest defendants even knew of his statements to the Federal Bureau of Investigation or the *Kansas City Star*.

    **8.  Defendants are entitled to qualified immunity on Moore's freedom of speech claim because he does not demonstrate any right violated was "clearly established."**

    When the defendants assert a qualified immunity defense, a plaintiff must satisfy a two-pronged test to avoid dismissal. Qualified immunity shields federal and state officials from money damages unless a plaintiff establishes (1) that the official violated a statutory or constitutional right and (2) that right was "clearly established" at the time of the challenged conduct.

*Klaassen, supra* at *14. Even if Moore can satisfy the first prong and demonstrate that his speech was constitutionally protected, he cannot show that the right was "clearly established."

    Moore frames his response to the defendants' qualified immunity defense around the issue of whether his speech is a matter of public concern or whether the defendants knew it was improper to retaliate against a whistleblower. ECF 48, ¶¶ 93 98. The proper issue to be determined is whether the statements made by the plaintiff were clearly outside scope of his duties, therefore making his right "clearly established." *See Klaassen, supra* at *14-*19. Just as in *Klaassen*, "[b]ecause a "reasonable officer" could conclude, based on the state of the law, that the *Garcetti* test applied to plaintiff's speech, the Individual Defendants are entitled to qualified immunity on plaintiff's First Amendment retaliation claim." *Id.* at *19.

    **9.  Moore does not identify any authority to establish that the defendants' actions "shock the conscious" and his due process claim fails.**

    With respect to his liberty interest due process claim, Moore admits his allegations are "not as detailed" and fails to identify any specific facts in the amended complaint to satisfy the required elements set forth in *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994). ECF 48, p. 43; ECF 36, p. 23. Moore again points only to conclusory allegations which are insufficient to support his claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Moore also fails to address any authority which would indicate an ordinary workplace dispute involving administrative and personnel decisions "shocks the conscious." "The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood*, 426 U.S. 341, 350 (1976). Nothing in Moore's response identifies actions that rise to the high level of outrageousness to qualify as "conscious shocking." *See Klaassen, supra* at *26 (events surrounding termination of plaintiff and termination hearing does not "shock the conscious.").

Moore attempts to refute the defendants' qualified immunity defense by arguing the applicable clearly established right is Moore's right not to be retaliated against for speaking out on matters of public concern. ECF 48, 110. This right has no relationship to any due process claim asserted by Moore. Because Moore does not identify a clearly established law that would cause a reasonable official in their position to have known their conduct implicated a liberty interest, the defendants are entitled to qualified immunity.

### 10. Moore's state law claims against Drs. Vitter, Warren, and Heppert are barred by the Eleventh Amendment and the Kansas Whistleblower Act's provision for review under the Kansas Judicial Review Act is an adequate remedy.

Moore does not address the defendants' arguments that the Eleventh Amendment bars his state law claim against KU and Drs. Vitter, Warren, and Heppert. Instead, Moore argues the Kansas Judicial Review Act ("KJRA") does not provide an adequate remedy because it is based upon the Administrative Record "prepared by the University and cherry-picked with evidence favorable only to the University." ECF 48, ¶ 117. The Administrative Record, however, was made in accordance with K.S.A. 77-620 of KJRA. Further, K.S.A. 77-620(f) provides, "the court may require or permit subsequent corrections or additions to the record." Moore could have moved to supplement the record, but chose not to.

The Kansas Court of Appeals has held KJRA "provides a full and adequate remedy" to challenge an administrative decision. *Bicknell v. Jordan*, 321 P.3d 37, 2014 WL 1302634 (Kan. Ct. App. 2014) (unpublished decision). Moore's decision to voluntarily dismiss his district court case under KJRA does not establish that KJRA is inadequate.

## CONCLUSION

Moore concedes he cannot assert claims against the University for compensatory or punitive damages under Count Two and those claims must be dismissed. Count Two asserts claims only against KU and KUCR (the claims against KUCR will be the subject of a separate motion to dismiss).

As set forth in defendants' opening brief, ECF 36, and for the reasons set forth above, all claims under Counts One, Three, Four, Five, Six, and Seven against KU and Drs. Vitter, Warren, must be dismissed in their entirety.

FISHER, PATTERSON, SAYLER & SMITH, LLP
3550 S.W. 5th Street - P. O. Box 949
Topeka, Kansas  66601-0949
Office:  (785) 232-7761; Fax: (785) 232-6604
E-Mail:      dcooper@fisherpatterson.com
                  smorse@fisherpatterson.com


s/David R. Cooper
_____
David R. Cooper                          #16690
Sarah A. Morse                          #25431
ATTORNEYS FOR DEFENDANTS

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed the foregoing on the 5th day of May, 2015, with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Daniel R. Cofran
Attorney at Law
1000 W. 70th Street
Kansas City, Missouri 64113
dcofran@swbell.net
**ATTORNEYS FOR PLAINTIFF**

**s/David R. Cooper**

David R. Cooper

112.30413