IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DAVID S. MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:14-cv-02420-SAC-KGS |
| ) | |
| THE UNIVERSITY OF KANSAS, ET AL., ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY THE UNIVERSITY OF KANSAS CENTER FOR RESEARCH

The University of Kansas Center for Research ("KUCR") submits the following memorandum in support of its motion to dismiss pursuant to F.R.Civ.P. 12(b)(1) and (6).

## I.   NATURE OF THE CASE

This is an employment dispute which stems from the termination of Plaintiff from his position at the University of Kansas ("KU") as an Assistant Scientist and the Director of the Microscopy Analysis and Imaging Laboratory ("MAI Lab"). Plaintiff alleges he was terminated in retaliation for his Attention Deficit Disorder/Attention Deficit Hyperactivity Disorder and for reporting the mismanagement and misuse of and noncompliance with federal grant funds. Defendants deny these allegations and contend Plaintiff was terminated for valid, non-retaliatory reasons.

KUCR must be dismissed from this matter entirely. KUCR is an arm of the state entitled to Eleventh Amendment immunity coextensive with the immunity afforded KU. Further, Plaintiff was never an employee of KUCR and cannot pursue his various employment claims against KUCR.

KUCR is a not-for-profit research foundation that operates for the benefit of the University under the administrative jurisdiction of the KU Office of Research and Graduate Studies ("RGS"). KUCR was incorporated in 1962 to develop and administer sponsored programs in engineering and related interdisciplinary areas at KU. KUCR is responsible for submitting proposals for external support of research, instructional, and service projects. Furthermore, KUCR helps research investigators by negotiating contracts, providing proposal and post-award services, administering compliance oversight, managing and constructing research facilities, and handling financial services, including investment of corporation resources.

Plaintiff alleges seven counts in his Amended Complaint, of which four are alleged against KUCR:

1. Rehabilitation and Disabilities Act, 29 U.S.C. § 701, *et seq.*;

2. Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information Act, 41 U.S.C. § 4712 ("Reprisal Act" or "§ 4712");

3. False Claims Act ("FCA"), 31 U.S.C. § 3730, *et seq.*; and,

4. Common law unlawful termination of employment.

KUCR seeks dismissal of all claims made against it. KUCR also seeks dismissal of any claim for monetary damages under the Rehabilitation Act claim.

**II.    STATEMENT OF FACTS**

1. KUCR's purpose is "to promote scientific and education development by encouraging, fostering, and conducting scholarly investigations and industrial and other types of research at the University of Kansas by the faculty, staff, and students thereof, and those associated therewith . . . ." (Exhibit A, Restated Articles, Art. *Second*, KU 24.)

2. All KUCR assets and earnings are to be used exclusively for these purposes. (Exhibit B, Amendments to Articles, KU 42.)

3. The Board of Directors, Executive Leadership, and Executive Committee are controlled by KU employees. (Exhibit C, KUCR Bylaws [2006] Article III, § 1, KU 45.)

4. KUCR must comply with KU personnel policies and consult with KU's HR/EO office and the University General Counsel as necessary for managing employee misconduct. (Exhibit D, KU and KUCR Employee Services Agreement, KU 49.)

5. KU provides KUCR with the services of University employees. (KU and KUCR Employee Services Agreement, KU 49.)

6. KU is the employer of each employee who provides services to KUCR. (KU and KUCR Employee Services Agreement, KU 50.)

7. KUCR is a "KU-affiliated organization." (Exhibit E, KU-KUCR Affiliation Agreement, ¶ 6, KU 62.)

8. KUCR must be audited according to Board of Regents policy and those results must be provided for distribution to the Board. Results of audits of KUCR must be provided to the Board of Regents and financial reports must be made available to KU and officials. (KU-KUCR Affiliation Agreement, ¶ 5, KU 62.)

9. KUCR's books and records must be treated as open records and KUCR must comply with Kansas Open Records Act and Kansas Open Meetings Act requirements. (KU-KUCR Affiliation Agreement (2004), §§ 5-6, KU 62.)

10. The KU-KUCR Affiliation Agreement also contemplates that KUCR would be subject to the limitations of the Tort Claims Act. (KU-KUCR Affiliation Agreement (2004), § 8.)

11. Plaintiff does not allege anywhere in the Amended Complaint that he was an employee of KUCR. Rather, plaintiff alleges he was an employee of the University of Kansas. ECF 30, ¶ 1(a)-(b), ¶ 2 ("Plaintiff was employed by defendant University of Kansas as . . ."), ¶ 13 ("Plaintiff David S. Moore, Ph.D. was employed by the University as an Assistant Scientist. . ."), ¶ 19 ("employed by the University as a pre-doctoral research assistant"), and ¶ 24 ("employed by the University as a post-doctoral research associate.").

12. The fiscal year for Kansas and the University runs from first day of July in each year and closes on the thirtieth day of June next succeeding.  K.S.A. 75-3002. The year in which June 30 falls determines the fiscal year (for example, fiscal year 2013 began July 1, 2012 and ended June 30, 2013).

13. All federal grants and contracts upon which plaintiff bases his claims were awarded prior to July 1, 2013. *See* ECF 30, ¶ 99 ("summer of 2013"); ¶ 100 (meeting on May 15, 2013; concerns by plaintiff submitted in writing July 8, 2013; as of July 25, 2013, grant funds were approaching expiration date); ¶ 101 (Solid State Nuclear Magnetic Resonance grants dating to 2010); ¶ 102 (facilities and administration charges, dating to July 2011 discussed during meeting in April 2013); ¶ 104 (2012 National Science Foundation purchase); ¶ 105 (accounts receivable collection, April 10, 2012 email); ¶ 106 (discussing dates September 2012 to January 2013); ¶ 108 (dates 2009 to spring/summer 2013); ¶ 109 (renovation of MAI lab approved NSF award in 2012).

### III.     STATEMENT OF ISSUES

1. **KUCR is an arm of the state entitled to sovereign immunity under the Eleventh Amendment. Sovereign immunity bars Plaintiff's claims against KUCR.**

2. **Plaintiff was not an employee of KUCR and cannot assert his various employment claims against KUCR.**

3.  **Compensatory and punitive damages are not recoverable under the Rehabilitation Act, 29 U.S.C. § 794.**

4.  **Section 4712 of the Reprisal Act is not applicable to Moore's claims and is further barred by the failure to exhaust administrative remedies.**

5.  **The statutory text of the FCA does not permit claims against KUCR as an arm of the state and Moore has not alleged his actions were done "in furtherance of" an FCA claim or that defendants were appropriately notified of his FCA efforts.**

IV.   **STANDARD OF REVIEW**

**Motion to Dismiss for lack of subject matter jurisdiction.**

A motion to dismiss for lack of subject matter jurisdiction is made under Rule 12(b)(1). Generally, a Rule 12(b)(1) motion to dismiss takes one of two forms: a facial attack or a factual attack. "First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir.1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990)).  "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*. at 1003 (citing *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325).  *And see Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir.2003) (citing *Holt,* 46 F.3d at 1003).  Here, KUCR makes both a facial and factual attack on this Court's subject matter jurisdiction.

The documents submitted allow the Court to address the limited matter of whether KUCR is, factually, an arm of the state.

**Motion to Dismiss for failure to state a claim.**

In ruling on a motion to dismiss under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face. *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. *Iqbal*, 129 S.Ct. at 1950.

## V. ARGUMENTS AND AUTHORITY

1. **KUCR is an arm of the State entitled to sovereign immunity under the Eleventh Amendment. Sovereign immunity bars Plaintiff's claims against KUCR.**

Moore's claims against KUCR are barred by sovereign immunity. Sovereign immunity constitutes a bar to the exercise of subject matter jurisdiction. *Fent v. Oklahoma Water Resources Bd.*, 235 F.3d 558 (10th Cir. 2000). Under the Eleventh Amendment, sovereign immunity prohibits federal courts from entertaining suits against states brought by their own citizens or citizens of another state without their consent. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). "Such consent may be found 'only when Congress unequivocally expresses its intention to waive the government's sovereign immunity in the statutory text.'" *Governor of Kansas v. Kempthorne*, 516 F.3d 833, 841 (10th Cir. 2008) (quoting *United States v. Murdock Mach. & Eng'g Co.,* 81 F.3d 922, 930 (10th Cir. 1996)). This rule extends to state agencies functioning as an arm of the state. *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 280 (1977); *Ambus v. Granite Bd. of Educ.*, 975 F.2d 1555, 1559 (10th Cir. 1992) ("Eleventh Amendment immunity extends to state agencies that act as arms of the state.").

    *a. Arm of the state doctrine.*

University affiliated non-profit corporations are arms of the state. The arm of the state doctrine is traditionally used to bestow sovereign immunity on entities created by state governments that operate as alter egos or instrumentalities of the states. *Kansas State Univ. v. Prince*, 673 F. Supp. 2d 1287, 1298 (D. Kan. 2009) (internal citation omitted).

> The test in the Tenth Circuit for determining whether an entity constitutes an "arm of the state" is well established.
>
>> We look to four primary factors in determining whether an entity constitutes an "arm of the state." *Mt. Healthy* [*v. Doyle*], 429 U.S. [274] at 280, 97 S.Ct. 568 [50 L.Ed.2d 471 (1977) ]. First, we assess the character ascribed to the entity under state law. Simply stated, we conduct a formalistic survey of state law to ascertain whether the entity is identified as an agency of the state. *See Sturdevant,* 218 F.3d at 1164, 1166. Second, we consider the autonomy accorded the entity under state law. This determination hinges upon the degree of control the state exercises over the entity. *See id.* at 1162, 1164, 1166. Third, we study the entity's finances. Here, we look to the amount of state funding the entity receives and consider whether the entity has the ability to issue bonds or levy taxes on its own behalf. *See id.* Fourth, we ask whether the entity in question is concerned primarily with local or state affairs. In answering this question, we examine the agency's function, composition, and purpose. *See id.* at 1166, 1168–69.

*Id.* (quoting *Steadfast Ins. Co. v. Agricultural Ins. Co.,* 507 F.3d 1250, 1253 (10th Cir.2007)).

In *Prince*, this court used the "arm of the state" analysis to determine whether removal to federal court solely on the basis of diversity jurisdiction was appropriate based on the presence of the Intercollegiate Athletic Council of Kansas State University, Inc. ("IAC") in the lawsuit. First, in assessing the character ascribed to the IAC, the court noted IAC was a not for profit corporation. *Prince*, 673 F.Supp.2d at 1299. Further, while Kansas statutes do not mention IAC by name or designate it as a State agency, K.S.A. 76-721 authorizes the University to substantially control a state agency or a private corporation with which it contracts for a purpose related to its operation or function. *Id.* at 1300. K.S.A. 76-721 provides:

> The board of regents, or any state educational institution with the approval of the board of regents, may enter into contracts with any party ... including ... any agency of ... any state or with any ... corporation if the purpose of such contract is related to the operation or function of such board or institution. If such contract is with a corporation whose operations are substantially controlled by the board or any state educational institution, such contract shall provide that the books and records of such corporation shall be public records and shall require an annual audit ...

*Id.* The *Prince* court held, "the legislature thus contemplated that a State University could 'substantially control' a corporation whose purpose is related to the university's function." *Id.* The court concluded IAC is a corporation whose operations are substantially controlled by Kansas State University ("KSU"). *Id.* at 1301.

Second, various factors indicated IAC's lack of autonomy. *Id.* at 1301-02. For example, agreements between KSU and IAC showed that IAC was subject to the rules, regulations, and administrative policies of KSU. *Id.* at 1302. Voting members of IAC were composed of KSU employees, alumni, students, and faculty. *Id.* Additionally, by-laws established that voting members of the IAC are appointed by the President of KSU. *Id.* The court noted, "that all of IAC's decisionmakers are appointed and may be removed solely by KSU's President . . . point[s] toward state control." *Id.* at 1303. Also important to the autonomy evaluation was that IAC's records are maintained in accordance with Kansas Open Records Act and IAC's meetings are conducted in accordance with the Kansas Open Meetings Act. *Id.* Because the State of Kansas, through KSU, exercised "significant supervision and control over IAC's internal and external affairs," IAC was far from autonomous and pointed toward arm of the state status. *Id.*

Third, although IAC has independent fundraising ability and a judgment against IAC would not be paid out of the state's treasury, which cut against it being an arm of the state, those points were not dispositive of the analysis. *Id.* at 1304. Finally, the court held the IAC was not primarily concerned with local matters and the fourth factor pointed towards arm of the state

status for IAC. *Id.* at 1305. In support, the court cited a Fourth Circuit case which held "[h]igher education is an area of quintessential state concern and a traditional state governmental function." *Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 265 (4th Cir. 2005). Ultimately, the court determined it need not reach the question of whether IAC is in fact an arm or instrumentality of the State to determine diversity of jurisdiction because there was at least a colorable claim against KSU, thereby destroying diversity jurisdiction. *Id.* at 1305- 1306.

An organization similar to KUCR was examined in Attorney General Opinion 95-115. Kan. Atty. Gen. Op. No. 95-115, 1995 WL 708238. There, Attorney General Stovall considered whether the K-State Research Foundation ("KSURF") was a governmental entity for the purpose of the Kansas Tort Claims Act. The Attorney General opined that KSURF was a governmental entity by applying a three-part test. First, KSURF was created by a governmental entity, Kansas State University. *Id.* at *1. Further, entities created by other governmental entities have been deemed within the scope of the tort claims act. *Id.* Second, the sole purpose of KSURF is to promote and work on behalf of a governmental entity. *Id.* at *2. The agreement between KSURF and the University indicated that KSURF was established to "promote, encourage and aid research at the University and to provide the means, methods, and agencies by which inventions and discoveries at the University may be patented, commercialized, or otherwise disposed of for the benefits of the University and its faculty, staff, alumni and students...."*Id.* Finally, Kansas State University and the state of Kansas maintained a significant degree of control over KSURF because:

1) The agreement between the university and KSURF defines KSURF as the "exclusive agent" of the university.

2) Management of KSURF is by its board of directors which includes, among others, a member of the state board of regents, an alumnus appointed by the board of directors of the alumni association of Kansas state university, the

> president of the university, the vice provost for research, and the university attorney.
>
> 3) All revenues generated by KSURF (other than the 15% that goes to inventors or creators) is paid to, and thereby controlled by, the university.
>
> 4) In order for KSURF to enter into contracts with third parties, the agreement must be approved by the department head, dean of the college, and the vice provost for research.
>
> 5) KSURF must provide financial reports to the Kansas board of regents.
>
> 6) The "Agreement" itself states the intention of the parties that KSURF is an instrumentality of the university and subject to the provisions of the Kansas tort claims act.

*Id.* at *2 - *3. For these reasons, the attorney general opined that KSURF is a governmental entity for purposes of the tort claims act. *Id.* at *3.

While the analysis of whether KSURF is a government entity was performed under a test developed to determine whether KSURF fell within the scope of the tort claims act, the analysis is instructive. The factors considered by the Attorney General have significant overlap with the Tenth Circuit arm of the state analysis and KSURF and KUCR are very similar organizations.

  b. *KUCR is an arm of the state.*

Under the Tenth Circuit test, KUCR has many of the same attributes that made the IAC and KSURF arms of the state. First, as discussed in *Prince*, Kansas law authorizes KU to substantially control a state agency or a private corporation with which it contracts for a purpose related to its operation or function. Although KUCR is not named a state agency by Kansas statute, it was created by KU, a governmental entity.

KUCR was created by KU. KUCR's articles of incorporation reflect that it was created "to promote scientific and educational development by encouraging, fostering and conducting scholarly investigations and industrial and other types of research at the University of Kansas."

(Restated Articles, Art. *Second*.) All KUCR assets and earnings are to be used exclusively for those purposes. (Amendments to Articles, at 2.) The Board of Directors, Executive Leadership, and Executive Committee are controlled by KU employees. (KUCR Bylaws [2006] Article III, § 1.) The Affiliation Agreement between KU and KUCR requires KUCR to be audited according to Board of Regents policy and that those results be provided for distribution to the Board. (Affiliation Agreement (2004), § 5.) It also requires KUCR's books and records be treated as open records and that KUCR comply with the Kansas Open Meetings and Open Records Acts. (*Id.* §§ 5-6.) The Agreement also contemplates that KUCR would be subject to the limitations of the Tort Claims Act. (*Id.*, § 8.) KUCR has very little autonomy in that KUCR must comply with KU personnel policies and consult with KU's HR/EO office and the University General Counsel as necessary for managing employee misconduct.

In sum, KUCR is a corporation substantially controlled by KU. KU dictates the operation of KUCR as KUCR's management is controlled by KU employees and through mandated compliance with KU personnel policies and the Open Records Act. KUCR's finances are committed to the University as all assets and earnings are to be used exclusively for promoting scientific and educational development at the University. Finally, KUCR is primarily concerned with state affairs. KUCR's purpose is nearly identical to KSURF's. As noted in *Prince*, "[h]igher education is an area of quintessential state concern." KUCR solely serves the scientific and educational endeavors of KU and is led and managed by state officials.

All factors of the Tenth Circuit test point to KUCR as an arm of the state. Because KUCR is an arm of the state, it is entitled to sovereign immunity and Moore's Reprisal Act, False Claims Act, and state law retaliation claims are barred.

### 2. **Plaintiff was not an employee of KUCR and cannot assert his state law retaliation, FCA, Reprisal Act, and Rehabilitation Act claims against KUCR.**

In addition to the sovereign immunity bar to suit, Plaintiff also fails to state a claim against KUCR with respect to his state law retaliation, FCA, Reprisal Act, and Rehabilitation Act claims. Each of these claims require an employer/employee relationship. Plaintiff does not allege he is an employee of KUCR, but instead alleges he is an employee of KU.

Retaliation claims based on an alleged violation of Kansas public policy may only be brought against an employer. *Rebarchek v. Farmers Coop. Elevator & Mercantile Ass'n*, 272 Kan. 546, 562, 35 P.3d 892, 904 (2001) ("We conclude that only the employer is liable for retaliatory discharge."). Several unpublished Kansas Court of Appeals decisions have reinforced that that individual constituents of an entity employer may not be sued for retaliatory discharge. *Hart v. U.S.D. #244 Bd. of Educ.*, 327 P.3d 1052, 2014 WL 3020476, at *6 (Kan. Ct. App. 2014); *Busey v. Bd. of Cnty. Comm'rs of Shawnee Cnty.*, 116 P.3d 55, 2005 WL 1805418, at *3 (Kan. Ct. App. 2005) (noting that dismissal of any defendant who was not the plaintiff's employer was "unquestionably appropriate"); *Kerns v. City of Dodge City,* 313 P.3d 105, 2013 WL 6164586, at *3 (Kan.Ct.App. Nov.22, 2013) (holding "[o]nly an employer is liable for the common-law tort of retaliatory discharge" in context of Kansas statutory violation).

An FCA retaliation claim can also only be against an "employer." KUCR refers to and incorporates co-defendants Drs. Vitter, Warren, and Heppert's arguments and authority at ECF 51, pp.7-9 on this issue. While the discussion in ECF 51 focuses on whether individual defendants may be liable under the FCA, the principles also apply to entity defendants. Congress did not intend to extend liability to non-employers with the adoption of the 2009 amendments to the FCA, and potential defendants must have an "employer type relationship with plaintiffs." *Lipka v. Advantage Health Grp., Inc.*, No. 13-CV-2223, 2013 WL 5304013 at *10-*11 (D.Kan. Sept. 20, 2013).

Similarly, § 4712 of the Reprisal Act and the Rehabilitation Act require the plaintiff be an employee to come under the statute's protection. Section 4712 provides:

> An *employee* of a contractor, subcontractor, or grantee may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing . . . information that the *employee* reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health and or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

41 U.S.C. § 4712(a)(1) (emphasis added). A plaintiff must also be an employee to bring a discrimination suit under the Rehabilitation Act. *Ramsey v. Principi*, 284 F. App'x 548, 549 (10th Cir. 2008) (unpublished) *citing* 29 U.S.C. § 794(d); 42 U.S.C. § 12111(4).

Plaintiff's Amended Complaint alleges Moore was employed by the University of Kansas. ECF 30, ¶ 2, 13. Moore never alleges he was employed by KUCR. As KUCR was not Moore's employer, it is not subject to liability to a state law retaliation, FCA, or § 4712 claim. Plaintiff's state law retaliation claims against KUCR must be dismissed.

3. **Compensatory and punitive damages are not recoverable under the Rehabilitation Act, 29 U.S.C. § 794.**

In his response to co-defendants KU and Drs. Vitter, Warren, and Heppert's motion to dismiss, Moore conceded punitive and compensatory damages under the Rehabilitation Act are not available. ECF 48, ¶ 26. KUCR refers to and incorporates here co-defendants KU and Drs. Vitter, Warren, and Heppert's arguments regarding Moore's Rehabilitation Act claims set forth at ECF 36, pp. 7-8 and ECF 51, p. 2.

4. **Section 4712 is inapplicable to plaintiff's claim and is further barred for failure to exhaust administrative remedies.**

Count Three alleges violation of 41 U.S.C. § 4712, the Pilot Program for Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information. Section 4712 was

passed as part of the National Defense Authorization Act for Fiscal Year 2013 and is a four-year pilot program, effective July 1, 2013, to enhance the existing whistleblower protection for contractor employees. 41 U.S.C. § 4712; National Defense Authorization Act for Fiscal Year 2013, PL 112-239, January 2, 2013, 126 Stat 1632.  Section 4712 provides:

> An employee of a contractor, subcontractor, or grantee may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

41 U.S.C.A. § 4712(a)(1). Paragraph (2) of § 4712 provides the employee is protected from discrimination for disclosures to, among others, a management official or other employee of the contractor, subcontractor, or grantee who has the responsibility to investigate, discover, or address misconduct. § 4712(a)(2)(G).

Even if Moore's 41 U.S.C. § 4712 claim is not barred by sovereign immunity or the fact Moore is not an employee of KUCR, § 4712 is inapplicable to Moore's claim and is further barred for failure to exhaust administrative remedies.

> a. *Section 4712 is inapplicable to plaintiff's claims.*

The pilot program established in § 4712 is effective only beginning July 1, 2013, 41 U.S.C. § 4712(i),[1] and applies only to contracts and grants awarded or modified after July 1, 2013. *See* PL 112-239, § 828, January 2, 2013, 126 Stat 1632. Section 4712 was part of the National Defense Authorization Act for Fiscal Year 2013. PL 112-239, January 2, 2013, 126 Stat. 1632. At § 828(a)

---

[1] "Duration of section.--This section shall be in effect for the four-year period beginning on the date that is 180 days after the date the enactment of this section." 41 U.S.C. § 4712(i).  The effective date of the enactment was January 2, 2013.  126 Stat. 1837.  180 days following January 2, 2013, is July 1, 2013.

of that Act, Congress enacted 41 U.S.C. § 4712 as codified.[2] Section 828(b) of the Act specifies the scope and effective date of the pilot program as follows:

> (b) EFFECTIVE DATE.—
>
>> (1) IN GENERAL.—The amendments made by subsection (a) shall take effect on the date that is 180 days after the date of the enactment of this Act, and shall, during the period *section 4712* of title 41, United States Code, as added by such subsection, is in effect, *apply to*—
>>
>>> (A) *all contracts and grants awarded <u>on or after such date</u>*;
>>>
>>> (B) all task orders entered on or after such date pursuant to contracts awarded before, on, or after such date; and
>>>
>>> (C) *all contracts awarded before such date <u>that are modified to include a contract clause providing for the applicability of such amendments</u>*.
>>
>> (2) REVISION OF FEDERAL ACQUISITION REGULATION.—Not later than 180 days after the date of the enactment of this Act, the Federal Acquisition Regulation shall be revised to implement the requirements arising under the amendments made by this section.
>>
>> (3) INCLUSION OF CONTRACT CLAUSE IN CONTRACTS AWARDED BEFORE EFFECTIVE DATE.—At the time of any major modification to a contract that was awarded before the date that is 180 days after the date of the enactment of this Act, the head of the contracting agency shall make best efforts to include in the contract a contract clause providing for the applicability of the amendments made by this section to the contract.

*Id.* (emphasis added).[3]

The allegations within the amended complaint, for the most part, fail to specify the year any grant or contract was awarded. The amended complaint does not allege that *any* grant or contract was modified. To the extent the year of award for any contract or grant can be divined

---

[2] PL 112-239 § 828(a) provides:
    (a) WHISTLEBLOWER PROTECTIONS.—
    (1) IN GENERAL.—Chapter 47 of title 41, United States Code, is amended by adding at the end the following new section:
    [Text of 41 U.S.C. § 4712[

[3] The effective date established in § 828(b) was not codified into § 4712.  The effective date established in the public law controls even if it is not codified, unless it is later repealed. *Patten v. United States*, 116 F.3d 1029, 1033 n.3 (4th Cir. 1997).

from the amended complaint, it is clear that they pre-date July 1, 2013. Therefore, they predate the effective date of § 4712 and the pilot program therein is wholly inapplicable to plaintiff's claims.

    *b. Moore has failed to exhaust his administrative remedies under § 4712.*

Moore has failed to exhaust his administrative remedies under § 4712. KUCR refers to and incorporates here co-defendants Drs. Vitter, Warren, and Heppert's arguments regarding the exhaustion of administrative remedies set forth at ECF 36, pp. 11-13 and ECF 51, pp. 3-4. Because Moore failed to exhaust his administrative remedies before filing suit, this court lacks jurisdiction and Moore's claim should must be dismissed.

 **5. The statutory text of the FCA does not permit claims against KUCR as an arm of the state and plaintiff has not alleged his actions were done "in furtherance of" an FCA claim or that defendants were appropriately notified of Moore's FCA efforts.**

Regardless of sovereign immunity, KUCR is also not subject to liability under the statutory text of the FCA. This court recently held that the statutory language of § 3730(h) of the FCA does not authorize a retaliation cause of action against states. *Klaassen v. Univ. of Kansas Sch. Of Med.*, ___ F.Supp.3d ___, 2015 WL 437747, at *8 (D.Kan. Feb. 3, 2015). *Klaassen* is the first Kansas District Court case to examine whether the FCA authorizes claims against states following the 2009 amendments to the FCA. In *Klaassen*, it was undisputed that the three institutional defendants were "arms of the State." *Id.* at *5. A post-2009 amendment case analyzing whether an entity is an arm of the state under the FCA could not be located. Because, however, the application of § 3730(h) pre- and post-2009 amendments is the same with regards to whether the FCA permits suites against the states, a pre-amendment decision on the issue remains applicable.

Prior to the 2009 amendments, the Tenth Circuit considered whether Associated Regional and University Pathologists, a laboratory entirely owned and operated by, and located at the University of Utah Medical Center, was an arm of the state and therefore not subject to liability under the FCA. *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 716 (10th Cir. 2006). In *Sikkenga*, the Tenth Circuit discussed *Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 787-88 (2000), in which the Supreme Court held the FCA did not subject a State (or state agency) to liability under the pre-2009 FCA, and *Cook Cnty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119 (2003), in which the Supreme Court held municipal corporations are "persons" amenable to *qui tam* actions under the False Claims Act (FCA). The Tenth Circuit noted the distinction made between the holdings in *Stevens* and *Chandler* "mimics that made by the Court in the Eleventh Amendment context, where it explained: 'the bar of the Eleventh Amendment to suits in federal courts extends to States and state officials in appropriate circumstances, but does not extend to counties and similar municipal corporations.'" *Sikkenga*, 472 F.3d at 717 (citations omitted). "[T]o draw this statutory distinction under the FCA, courts have used the Eleventh Amendment's arm-of-the-state doctrine to decide if 'entities created by state governments ... operate as alter egos or instrumentalities of the states.'" *Id.* (citations omitted). The Tenth Circuit concluded, "[b]ecause of the 'virtual coincidence of scope' between the FCA and Eleventh Amendment inquiries, we conclude that the appropriate approach to determine if a state-related entity is subject to liability under the FCA is to apply Eleventh Amendment arm-of-the-state analysis." *Id.* at 718 (internal citation omitted). Thus, whether the FCA applies to KUCR depends on whether KUCR is an arm of the state.

As discussed above, KUCR is an arm of the state. Defendants refer to and incorporate those arguments here. As an arm of the state, KUCR may not be sued under the FCA, and Moore's claim fails.

Additionally, Plaintiff's claim is barred because his complaint fails to allege his action was taken in furtherance of an FCA claim or that the defendants had been appropriately notified of Moore's FCA efforts. KUCR refers to and incorporates here codefendants Drs. Vitter, Warren, and Heppert's arguments and authority on this issue set forth at ECF 36, pp. 15-17 and ECF 51, pp. 10 -11.

## CONCLUSION

For all the foregoing reasons, plaintiff's Rehabilitation Act, Reprisal Act, FCA, and common law unlawful termination claims against KUCR must be dismissed with prejudice.

**FISHER, PATTERSON, SAYLER & SMITH, LLP**
3550 S.W. 5th Street - P. O. Box 949
Topeka, Kansas  66601-0949
Office:  (785) 232-7761; Fax: (785) 232-6604
E-Mail:    dcooper@fisherpatterson.com
               smorse@fisherpatterson.com


**s/David R. Cooper**
David R. Cooper                              #16690
Sarah A. Morse                              #25431
**ATTORNEYS FOR DEFENDANTS**

## **CERTIFICATE OF SERVICE**

  I hereby certify that I electronically filed the foregoing on the 28th day of May, 2015, with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Daniel R. Cofran
Attorney at Law
1000 W. 70th Street
Kansas City, Missouri 64113
dcofran@swbell.net
**ATTORNEYS FOR PLAINTIFF**

                **s/David R. Cooper**
112.30413               David R. Cooper