IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

DAVID S. MOORE, Ph.D,

                Plaintiff,

    Vs.                              No.  14-2420-SAC

UNIVERSITY OF KANSAS, et al.,

                Defendants.

MEMORANDUM AND ORDER

The case comes before the court on the motion to dismiss filed by the defendants Joseph A. Heppert, University of Kansas, Jeffrey S. Vitter, and Steven Warren. (Dk. 35). This action arises from plaintiff David S. Moore's suspension, allegations of a hostile work environment, and eventual termination from the position of Assistant Scientist and Director of the Microscopy Analysis and Imaging Laboratory ("MAI Lab") at the University of Kansas ("KU"). In his 116-page complaint that contains 231 numbered paragraphs, Moore alleges the violations of his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12,101, *et seq.* (Count One) for discrimination based on his disability and retaliation for exercising his disability rights; the Rehabilitation, Comprehensive Services and Developmental Disabilities Act ("Rehabilitation Act"), 29 U.S.C. § 701, *et seq.* (Count Two) for discrimination based on his disability and retaliation for

1

exercising his disability rights; National Defense Authorization Act, Pilot Program for Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information ("NDAA"), 41 U.S.C. § 4712, *et seq.*, (Count Three) for being a whistleblower in disclosing mismanagement, waste, abuses and non-compliance with federal grants and contracts; False Claims Act, ("FCA"), 31 U.S.C. § 3730, *et seq.*, (Count Four) for being a whistleblower in investigating and requesting information reasonably believed to evidence fraud and mismanagement of federal grants and contracts; Federal Civil Rights Act, 42 U.S.C. § 1983 (Count Five) for sustaining adverse employment action in retaliation for speaking on matters of public concern protected by the First Amendment, namely the violation of federal laws governing the federal funds; Federal Civil Rights Act, 42 U.S.C. § 1983, (Count Six) for sustaining adverse employment in violation of his constitutional right to substantive due process; and the whistleblower exception for retaliatory discharge to the Kansas common-law policy on employment at will (Count Seven) for being a whistleblower and disclosing what he reasonably believed were violations of law and KU policy.

The individual defendants, Heppert, Vitter and Warren, are sued in their official capacities for prospective injunctive relief in four counts: ADA (Count One), NDAA (Count Three), FCA (Count Four), and Kansas common law retaliatory discharge action (Count Seven). They are sued in their individual capacities for money damages and injunctive relief on the two §

2

1983 counts (Counts Five and Six). The plaintiff names KU as a defendant only in Count Two--the Rehabilitation Act and seeks reinstatement, back pay and other equitable relief.

**BRIEF SUMMARY OF FACTUAL ALLEGATIONS**

KU employed Moore as an assistant scientist and director of the MAI Lab on its Lawrence Campus from December 1, 2004, until he was discharged on October 18, 2013. Moore alleges his action arises from KU suspending him for four weeks without pay in September of 2013 for "disruptive" and "unprofessional" behavior and then terminating him the next month when his appeal of the suspension was still pending.

Both as a student at KU and an employee in different departments, Moore informed his advisors and superiors that he had been diagnosed with Attention Deficit Disorder/Attention Deficit and Hyperactivity Disorder ("ADD/ADHD"). And upon his employment at the MAI Lab, Moore told his superiors/supervisors at the MAI Lab about the ADD/ADHD diagnosis. Moore alleges he has experienced symptoms consistent with this diagnosis and has managed them with medications, counseling, and behavioral management skills and learning. The plaintiff asserts his ADD/ADHD may explain his behavior that others label as unprofessional and that KU refused to discuss or make work accommodations for his condition but only increased the work which exacerbated his condition. The plaintiff incorporates his disability allegations into count one (ADA), count two (Rehabilitation Act), and counts

3

five and six (42 U.S.C. § 1983—First Amendment and Substantive Due Process).

For his whistleblowing claims, the plaintiff alleges that he had made "long-standing and repeated expressions of concern about the Federal Funds Waste and Mismanagement, MAI Lab Renovation Project Waste and Mismanagement and Research Misconduct-Plagiarism," and his concerns "were not welcomed by his superiors," but they were "tolerated." (Dk. 30, ¶ 65). He apparently expressed his concerns in memoranda, emails and meetings over a period of years without them being addressed as he expected. "[F]rustrated with his superiors' refusal to even consider, let alone take action, regarding his concerns about . . ." these areas, the plaintiff in April of 2013 went "outside the University . . . , and communicated" his concerns to a significant funder of the medical research program, the Federal Bureau of Investigation, and the *Kansas City Star*. *Id.* at ¶ 72. The plaintiff brings his whistleblower allegations in count three (NDAA), count four (FCA), counts five and six (42 U.S.C. § 1983—First Amendment and Substantive Due Process), and count seven (state retaliatory discharge).

The three individual defendants moving for dismissal, as named and identified in the amended complaint, are Dr. Jeffrey Vitter, KU's Provost and Executive Vice Chancellor for KU; Dr. Stephen Warren, KU's Vice Chancellor for Research and Graduate Studies; and Dr. Joseph Heppert, KU's Associate Vice Chancellor for Research and Graduate Studies.

4

**STANDARDS GOVERNING RULE 12(B)(6) MOTION**

In deciding a Rule 12(b)(6) motion, a court accepts as true "all well-pleaded factual allegations in a complaint and view[s] these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010). This duty to accept a complaint's allegations as true is tempered by the principle that "mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As recently clarified by the Supreme Court, the standard under 12(b)(6) is that to withstand a motion to dismiss, "'a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face.'" *Al–Owhali v. Holder*, 687 F.3d 1236, 1239 (10th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Thus, "a plaintiff must offer sufficient factual allegations to 'raise a right to relief above the speculative level.'" *Kansas Penn Gaming*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 555). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). It follows then that if the "complaint pleads facts that are 'merely consistent with' a defendant's liability it 'stops

5

short of the line between possibility and plausibility of 'entitlement to relief.'"
*Id*. "'A claim has facial plausibility when the [pleaded] factual content . . .
allows the court to draw the reasonable inference that the defendant is liable
for the misconduct alleged.'" *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172,
1178 (10th Cir. 2012). "Thus, in ruling on a motion to dismiss, a court
should disregard all conclusory statements of law and consider whether the
remaining specific factual allegations, if assumed to be true, plausibly
suggest the defendant is liable." *Kansas Penn Gaming*, 656 F.3d at 1214.

**ADA-Count One—Official Capacity Claims--Individual Defendants**

It is well established that official capacity "claims for back pay,
monetary damages, and retroactive declaratory relief are barred by the
Eleventh Amendment." *Meiners v. University of Kansas*, 359 F.3d 1222,
1232 (10th Cir. 2004). At the same time, "[i]n *Ex parte Young*, [209 U.S.
123 (1908)], the Court held that the Eleventh Amendment generally will not
operate to bar suits so long as they (i) seek only declaratory and injunctive
relief rather than monetary damages for alleged violations of federal law,
and (ii) are aimed against state officers acting in their official capacities,
rather than against the State itself." *Hill v. Kemp*, 478 F.3d 1236, 1255-56
(10th Cir. 2007), *cert. denied*, 552 U.S. 1096 (2008). The plaintiff believes
count one comes within these terms as count one is a suit against the
individual state officers, "Drs. Bernadette-Gray Little, Jeffery Vitter, Stephen
Warren and Joseph Heppert in their official capacities for prospective, non-

6

monetary injunctive relief, namely, reinstatement, for employment

discrimination and retaliation." (Dk. 48, p. 12).

The twist here comes in how the defendants argue for the court to

apply this holding:

> The continuing violation exception to Eleventh Amendment immunity is without limitations. In *Ex Parte Young*, the Supreme Court noted that the state official must have the power to perform the act required in order to overcome the jurisdictional bar of the Eleventh Amendment. *Ex Parte Young*, 209 U.S. at 157, 28 S.Ct. at 452–53. None of the individuals that Klein has sued has the power to provide him with the relief he seeks—reinstatement. The Medical Center is part of the University of Kansas. Under K.S.A. § 76–714, the chief executive officer of the University is the Chancellor. The Chancellor serves "at the pleasure of" the Kansas Board of Regents. K.S.A. § 76–714. As chief executive officer, the Chancellor appoints all employees of the University, and those employees serve at the pleasure of the Chancellor. K.S.A. § 76–715. The court concludes that the current Chancellor is the only person with the authority to reinstate Klein to his former position if so ordered. Therefore, Klein's claims for injunctive relief against the individual defendants in their official capacities are dismissed.

*Klein v. University of Kansas Medical Center*, 975 F. Supp. 1408, 1417 (D.

Kan. 1997). Applying *Klein* here means the KU "Chancellor is the only person

with the authority to reinstate" Moore, and the other individual defendants

must be dismissed for not having the authority to reinstate the plaintiff. *Id.*

The plaintiff counters first with the amended complaint's allegation

that, "on information and belief, Dr. Gray-Little's authority to make hiring

and firing decisions, including reinstatement of discharged employees, has

been delegated under University policies and procedures to Dr. Vitter." (Dk.

30, ¶ 42). With regard to the defendant Warren, the plaintiff points to the

allegation that Warren signed the plaintiff's termination letter. (Dk. 30, ¶ 82). As for all three individual defendants, including Heppert, the plaintiff says count one properly names all three based on that count's general prayer for "(c) equitable relief as may be appropriate to eliminate any patterns and practices of discrimination against faculty and academic staff of the University . . . ." (Dk. 30, p. 90).

In reply, the defendants argue the plaintiff apparently concedes Heppert lacks the authority to reinstate. They also summarily restate their position that they are not proper defendants unless they possess the authority to reinstate, and they do not address the plaintiff's other points.

This issue was recently addressed in *Klaassen v. University of Kansas School of Medicine*, ---F. Supp.3d---, 2015 WL 437747 (D. Kan. Feb. 3, 2015), *clarified on reconsideration on other grounds*, 2015 WL 2400773 (D. Kan. May 15, 2015), with the court holding that the KU "Chancellor had delegated authority to make KUMC faculty appointments to the Executive Vice Chancellor" making the Executive Vice Chancellor "a proper defendant who can provide prospective relief." 2015 WL 437747 at *13. Moore similarly alleges here that the KU Chancellor delegated reinstatement authority to Vitter who is identified as the Executive Vice Chancellor. Based on the complaint's allegations and the parties' arguments, Vitter remains a properly named defendant. The amended complaint does not allege or provide any legal or factual bases for inferring that Warren has the authority to reinstate

8

Moore. Nor does the complaint allege any such authority resting with Heppert. The court fails to see how the defendants Warren and Heppert should remain as defendants to this count on a claim for reinstatement. Warren and Heppert have not offered any arguments for the plaintiff's alternative claim of other "equitable relief . . . to eliminate any patterns and practices of discrimination." (Dk. 30, p. 90). The court finds that Warren and Heppert are not proper parties on a claim of reinstatement, and the motion to dismiss is otherwise denied.

**Rehabilitation Act—Count Two--Defendant KU**

The plaintiff concedes that punitive damages and compensatory damages are unavailable under the Rehabilitation Act. The plaintiff agrees his prayer for relief on this count should state, "all other appropriate relief as may be appropriate under" the Rehabilitation. Thus, the plaintiff is not seeking and is not entitled to recover compensatory or punitive damages on count two.

**NDAA--Count Three-- Official Capacity Claims--Individual Defendants**

Count three alleges a violation of 41 U.S.C. § 4712 under the NDAA. Effective 180 days after January 2, 2013, for a four-year period, this NDAA amendment entitled the "Pilot Program for Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information" provides for enhanced whistleblower protection for federal contractor employees:

An employee of a contractor, subcontractor, or grantee may not be

9

> discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

41 U.S.C. § 4712(a)(1). Persons covered by this provision include, "a management official or other employee of the contractor, subcontractor, or grantee who has the responsibility to investigate, discover, or address misconduct." § 4712(a)(2). On this count, the plaintiff seeks to recover money damages/back pay and equitable relief "to enjoin and eliminate any patterns and practices  . . . of falsely accusing faculty and academic staff of improper conduct in order to intimidate, discipline, discharge . . . ." (Dk. 30, p. 98).

The defendants contend first the claim of money damages is foreclosed as Congress did not waive the state's sovereign immunity in § 4712. The plaintiff concedes he is not suing the individual defendants for monetary relief and is bringing only *Ex Parte Young* claims against them for "non-monetary, prospective injunctive relief, namely, reinstatement for a continuing wrong." (Dk. 48, ¶ 41). The parties are at odds over the defendant's second argument that seeks to bar the plaintiff's claim for failure to exhaust his administrative remedies under § 4712.

The defendants look at the plain terms of § 4712(c)(2) as requiring

10

the exhaustion of administrative remedies before an aggrieved employee

may bring a de novo action of law:

**(c) Remedy and enforcement authority.**

 . . . .

> **(2) Exhaustion of remedies.** If the head of an executive agency
> issues an order denying relief under paragraph (1) or has not issued
> an order within 210 days after the submission of a complaint under
> subsection (b), or in the case of an extension of time under paragraph
> (b)(2)(B), not later than 30 days after the expiration of the extension
> of time, and there is no showing that such delay is due to the bad faith
> of the complainant, the complainant shall be deemed to have
> exhausted all administrative remedies with respect to the complaint,
> and the complainant may bring a de novo action at law or equity
> against the contractor or grantee to seek compensatory damages and
> other relief available under this section in the appropriate district court
> of the United States, which shall have jurisdiction over such an action
> without regard to the amount in controversy. Such an action shall, at
> the request of either party to the action, be tried by the court with a
> jury. An action under this paragraph may not be brought more than
> two years after the date on which remedies are deemed to have been
> exhausted.

41 U.S.C. § 4712(c). As summarized by the defendants, subsection (b)

establishes a complaint procedure that begins with the employee submitting

a complaint "to the Inspector General of the executive agency involved." §

4712(b)(1). Within 180 days, but subject to agreed extensions, the

Inspector General is to either determine that the complaint is frivolous, fails

to state a violation, or has been addressed in another proceeding, or

investigate the complaint and submit a report of its findings to complainant,

contractor, and the head of the agency. § 4712(b). Upon receiving this

report, the agency head has 30 days to decide if there is a "sufficient basis

to conclude that" retaliation has occurred. § 4712(c)(1). At this point, the

11

above quoted provision clarifies that the complainant "shall be deemed to have exhausted all administrative remedies with respect to the complaint" and "may bring a de novo action" if the agency head has issued an order denying relief or if the time for the agency head to issue an order has expired. § 4712(c)(2).

The defendants argue that § 4712(c)(2) plainly links exhaustion of administrative remedies with the bringing of the action:  "the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, **and** the complainant may bring a de novo action at law or equity against the contractor or grantee . . . ." (bolding added).  Arguing the exhaustion requirement is plain on the face of the statute, the defendants ask the court to enforce the statute as written. The defendants note the similarity between § 4712 and the civil whistleblower provision of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, which has been interpreted by the courts to have an exhaustion of administrative remedy requirement. *Zhu v. Fed. Hous. Fin. Bd.*, 389 F. Supp. 2d 1253, 1272 (D. Kan. 2005) (Because the "plaintiff does not allege that she exhausted her administrative remedies under Sarbanes-Oxley," the court "lacks jurisdiction over her claims under 18 U.S.C. § 1514A.")

In response, the plaintiff argues against reading § 4712 as imposing an exhaustion requirement because the statute reads that a complaint "may submit a complaint to the Inspector General" and because the Inspector

12

General may decline to investigate a complaint if it has been addressed in a prior state or federal proceeding. While conceding his amended complaint contains no allegations on exhaustion, he states that he did file a complaint with the "Offices of Inspectors General of the National Science Foundation and the United States Department of Health and Human Services by certified mail, return receipt requested, on December 1, 2014." (Dk. 48, p. 19). He notes that the 210 days expires on July 1, 2015 and summarizes conversations his counsel has had with the two Offices of Inspectors General. The plaintiff asks the court to stay action on this claim pending a final investigation ruling by the offices.

The defendants reply that the plaintiff has not alleged exhaustion and that facts not alleged in the complaint may not be considered in a Rule 12(b)(6) motion. The defendants argue a new ground for dismissal based on reasons given to the plaintiff's counsel in his conversations with one Office of Inspector General.

The court agrees with the defendants that § 4712 is properly read to require the complainant to exhaust administrative remedies in the described ways prior to filing an action. The federal regulation implementing the NDAA statutory remedies is consistent with the defendants' interpretation:

> (b) Complainant's right to go to court. If the head of the agency issues an order denying relief or has not issued an order . . ., and there is no showing that such delay is due to the bad faith of the complainant—
>> (1) The complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint; and

13

(2) The complainant may bring a de novo action at law . . . . 48 C.F.R. 3.908-6 (2013). The relevant parallel language between § 4712 and whistleblower provision of Sarbanes-Oxley supports reading the former as imposing a statutory requirement of exhaustion. *Cf. Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 668-669 (4th Cir. 2015) ("By statute, a Sarbanes-Oxley Act whistleblower cannot go straight to court."). Just as Judge Vratil said in *Zhu*, "[t]his exhaustion requirement is jurisdictional." *JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 705, 710 (E.D. Va. 2007); *see Mart v. Forest River, Inc.*, 854 F. Supp. 2d 588, 599 (N.D. Ind. 2012). This reading is consistent with the express terms of § 4712(c)(2) which require first exhaustion of "administrative remedies with respect to the complaint" and which then permit "bring[ing] a de novo action at law . . . in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy." Moreover, the NDAA provisions mirror those in the Defense Contractor Whistleblower Protection Act, 10 U.S.C. § 2409, which have been interpreted as having an exhaustion requirement of a jurisdictional character. *Manion v. Spectrum Healthcare Resources*, 966 F. Supp. 2d 561, 565 (E.D.N.C. 2013).

Because exhaustion is a jurisdictional requirement, the court should treat the defendants' motion here as brought under Rule 12(b)(1) seeking dismissal for lack of subject matter jurisdiction. *See Sizova v. Nat. Institute*

14

*of Standards & Technology*, 282 F.3d 1320, 1325 (10th Cir. 2002) ("a failure to file an administrative charge at all, . . ., is a jurisdictional bar."). Rule 12(b)(1) motions are typically either facial attacks on the sufficiency of jurisdictional allegations or factual attacks on the accuracy of those allegations. *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir.1995). A facial attack questions the sufficiency of the allegations in the complaint as they relate to subject matter jurisdiction. *See Holt*, 46 F.3d at 1002. In reviewing a facial attack on the complaint, the court must accept all allegations in the complaint as true. *Id.* The defendants' motion is a facial attack pointing to the absence of exhaustion allegations.

The plaintiff concedes he has not alleged exhaustion but offers that he has presented proper administrative complaints which should be administratively closed soon. The Tenth Circuit has held:

> We recognize that "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 830, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). But like most rules, "this one is susceptible to exceptions." Id. One such exception arises when a district court allows an amendment by the parties to cure an exhaustion problem—the precise situation in *Diaz*, 426 U.S. at 75, 96 S.Ct. 1883; *Duplan v. Harper*, 188 F.3d 1195, 1199–1200 (10th Cir.1999); and here.

*Mires v. U.S.*, 466 F.3d 1208, 1212 (10th Cir. 2006). There are circumstances here to justify an exception. This is a newer statute without any direct precedent on the issue of exhaustion. The plaintiff is currently working to satisfy the exhaustion requirement. Thus, the court will give the

15

plaintiff some reasonable time to cure this pleading deficiency. The plaintiff will have 20 days from this order to file either an amended claim with curative allegations for this exhaustion requirement or a report as to the status of the administrative proceedings with an estimate on when curative allegations may be offered. As for the defendants' latest argument for dismissal of this claim first raised in their reply brief, the court will not address it.

**FCA-Count Four-Suits Against States—"In Furtherance Of"**

The defendants seek dismissal on two grounds, that the FCA does not authorize suits against states and that the plaintiff has not alleged he took any action in furtherance of an FCA claim. Their first argument is summarily rejected, because it over-reads the holding in *Klaassen v. University of Kansas School of Medicine*, ---F. Supp.3d---, 2015 WL 437747 (D. Kan. Feb. 3, 2015). The district court held that 31 U.S.C. § 3730(h) does not authorize an FCA suit against the state or its agencies relying on the Supreme Court's analysis in *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989), and *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000), and citing decisions from other courts "that have concluded that subsection 3730(h) does not reflect the requisite congressional intent to waive state sovereign immunity." 2015 WL 437747 at *6-*7. The defendants want this holding to bar the plaintiff's official capacity suits for injunctive relief. The holding in *Klaaseen*, however, must be framed within this understanding:

16

States enjoy sovereign immunity from suit under the Eleventh Amendment. *See Va. Office for Prot. & Advocacy v. Stewart*, ––– U.S. ––––, 131 S.Ct. 1632, 1637, 179 L.Ed.2d 675 (2011); *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) ("This withdrawal of jurisdiction effectively confers an immunity from suit. Thus, this Court has consistently held that an unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." (quotations omitted)).

But Eleventh Amendment immunity is not absolute. *See Port Authority Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990). There are three exceptions. First, a state may consent to suit in federal court. *Id.* Second, Congress may abrogate a state's sovereign immunity by appropriate legislation when it acts under Section 5 of the Fourteenth Amendment. *See Va. Office for Prot. & Advocacy*, 131 S.Ct. at 1638 & n. 2. Finally, under *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief. *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002).

*Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012).

Thus, the holding in *Klaassen* discusses the second of the three exceptions and does not speak to the third exception. The defendants mistakenly argue that an official capacity action for prospective relief is a suit against the state for purposes of the Eleventh Amendment and sovereign immunity. (Dk. 36, p. 15). Clearly, the law is to the contrary:

However, a suit against a state official in his or her official capacity seeking prospective injunctive relief is not considered a suit against the state for Eleventh Amendment purposes. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' ") (quoting *Kentucky*, 473 U.S. at

17

167 n. 14, 105 S.Ct. 3099); *ANR Pipeline v. Lafaver*, 150 F.3d 1178, 1188 & n. 10 (10th Cir.1998).

*Branson v. School Dist. RE-82 v. Romer*, 161 F.3d 619, 631-32 (10th Cir. 1998), *cert. denied*, 526 U.S. 1068 (1999).  Thus, FCA official-capacity claims for prospective relief are not barred by state sovereign immunity. *See, e.g.*, *Bell v. Dean*, 2010 WL 1856086, at *4 (M.D. Ala. May 4, 2010); *Wilkins ex rel. United States v. State of Ohio*, 885 F. Supp. 1055, 1067 (S.D. Ohio 1995), *aff'd*, 145 F.3d 1333 (6th Cir. 1998) (Table). The defendants raise new arguments in their reply brief against the *Ex parte Young* exception, specifically that the plaintiff has not alleged an ongoing violation of federal law and that only the Chancellor has the authority to provide the injunctive relief sought. The court will not address these arguments, as they were first raised against this count in the defendants' reply brief.

The second of the defendants' original two arguments is that the plaintiff's alleged protected activity was not done "in furtherance" of an FCA claim. The FCA provides at § 3730(h)(1) that, "any employee" who "is discharged, demoted, suspended, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee in furtherance of an action under this section or other efforts to stop one or more violations of" the Act may bring suit. Thus, "[a]n employee need not actually file a qui tam action to qualify for whistleblower protection." *McBride v. Peak Wellness Center, Inc.*, 688

18

F.3d 698, 704 (10th Cir. 2012).

In arguing that the plaintiff's allegations do not meet the "in furtherance" requirement, the defendants rely on the following propositions found in Tenth Circuit case law. The plaintiff employee has the burden of alleging facts that show his employer "'had been put on notice that [the employee] was either taking action in furtherance of a private qui tam action or assisting in an FCA action brought by the government.'" *McBride v. Peak Wellness Center, Inc.*, 688 F.3d at 704 (quoting *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir. 1996). Notice may be accomplished in different ways, from "informing the employer of illegal activities that would constitute fraud on the United States," to "warning the employer of regulatory noncompliance and false reporting of information to a government agency," and to "explicitly informing the employer of an FCA violation." *McBride*, 688 F.3d at 704 (internal quotation marks and citations omitted). The notice is insufficient if it "merely inform[s] the employer of regulatory violations, without more, . . . because doing so gives the employer no suggestion that [the plaintiff is] going to report such noncompliance to government officials or bring her own qui tam action. *Id.* (internal quotation marks and citations omitted).

The defendants insist the plaintiff's amended complaint does not meet the *McBride/Ramseyer* standards. The amended complaint's relevant allegations span more than 50 pages and address fraud, misconduct and

mismanagement, noncompliance, waste, fictitious billing, violations of the law and plagiarism. From that, the defendants characterize the plaintiff as having "merely" alleged that he "'continually expressed his concerns . . . to his superiors' or he informed his superiors of mismanagement or noncompliance," that he lawfully investigated what he reasonably believed was violations, and that he suffered retaliation after making his investigation and informing his superiors of the suspected mismanagement and noncompliance. (Dk. 36, pp. 16-17). These allegations, according to the defendants, are insufficient because the plaintiff has not alleged that he intended to make a *qui tam* claim or to assist with a government investigation or that University knew the plaintiff had any such intention. (Dk. 36, p. 17).

The plaintiff argues the *McBride/Ramseyer* precedent predates the 2009 and 2010 amendments to § 3730(h) which he contends have broadened the scope of "protected activity" and relaxed the "notice" to the employer. The plaintiff argues the prior definition of protected activity was litigation oriented, while the current definition is not so oriented but is expanded to include "other efforts to stop 1 or more violations." *See* 31 U.S.C. § 3730(h) (2009 amendment history). This amendment became effective on May 20, 2009. *Id*. A fair reading of the amendment certainly shows the circle of protected activity has been extended from just acting in furtherance of or assisting a FCA action to encompass "other efforts to stop"

20

a FCA violation. The amendment seems to sweep within its scope all conduct, complaints and reports intended to stop a FCA violation. After taking a broad look at the amended complaint, which is all that the defendants' motion justifies, the court is satisfied for now that the plaintiff's allegations meet the FCA pleading requirements for protected activity under either definition.

It should be noted first that the amended complaint does plead many of the plaintiff's communications in the form of conclusions or conclusory characterizations, as in, "expressions of concern." *See Randazzo v. CH2M Hill, Inc.*, 2014 WL 4697131, at *5 (D. Colo. 2014), *appeal pending*, (10th Cir. Nov. 3, 2014). The amended complaint here, however, accompanies these "expressions of concern" with a context based on what the plaintiff had observed or investigated and what the plaintiff had regarded as a violation of law based on illegal or fraudulent conduct. The sheer possibility of a gap between what was said and what was observed does not detract from plausibility of the plaintiff's allegations here. Moreover, there are instances where the amended complaint does provide more detail on the communications, "[p]laintiff informed his immediate superior, Dr. Heppert, of his good faith and reasonable belief that use of the aforesaid instruments would be unlawful uses and dispositions of federally funded instruments." (Dk. 54, ¶ 101(g).

The court's reasons for now denying the defendants' motion are as

21

follows. Because the defendants' motion relies on a bird's eye view of the amended complaint, the court questions whether the motion even offers a serviceable framework for deciding its merits. Assuming it does, the court is satisfied with what it sees from this view. The court does not read and apply the pre-2009 amendment standard found in *McBride/Ramseyer* as have the defendants. Some of the analysis found in *McBride* is suggestive of a heightened standard in which the employee threatens an FCA action. The court, however, reads this decision as reviewing a summary judgment order as distinct from the Rule 12(b)(6) stage here in which the plaintiff's allegations need only permit a reasonable inference of facts to support this element of protected activity/notice. *See Lipka v. Advantage Health Group, Inc.*, 2013 WL 5304013 at *5 n. 4 (D. Kan. 2013). The Tenth Circuit also looks at this heightened language as the employees' way of making "'clear their intention of bringing or assisting in an FCA action in order to overcome the presumption that they are merely acting in accordance with their employment obligations.'" *McBride*, 688 F.3d at 704 (quoting *Ramseyer*, 90 F.3d at 1523 n. 7); *see U.S. ex rel. Sikkenga v. Regence Bluecross*, 472 F.3d 702, 729 (10th Cir. 2006). The defendants do not argue such a justification for this heightened standard here. *See Lipka v. Advantage Health Group, Inc.*, 2013 WL 5304013 at *5-*6. It is enough for the plaintiff to allege now that he:

identif[ied]particular conduct to the employer that could constitute a

22

false claim and clearly inform[ed] the employer of . . . [his] belief that such conduct is both unlawful and a fraud against the United States (as opposed to merely being inconsistent with corporate policy—i.e. "regulatory violations" that *McBride* deems insufficient).

*Randazzo*, 2014 WL 4697131, at *4; *see also Lipka v. Advantage Health Group, Inc.*, 2013 WL 5304013 at *5 (reasonable inference arises from allegations that the employee complained of illegal actions and also warned them of incurring civil and criminal liability). At this time, the court finds that the plaintiff has sufficiently pleaded facts as to demonstrate the defendants had the requisite notice.

### § 1983-Count Five-Freedom of Speech and Liberty

Count five alleges the following First Amendment right:

to speak out on matters of public concern regarding activities of the University of Kansas, the KU Center for Research and the Research and Graduate Studies program, including compliance with federal laws governing the use of federal grants to the University and other federal funds and the conduct of academicians and other personnel using those and other funds and programs and facilities using those funds, including speaking out on the Federal Funds Mismanagement and Noncompliance, the MAI lab Renovation Project Waste and the Academic Conduct as aforesaid.

 (Dk. 30 ¶ 195). The defendants seek dismissal arguing the plaintiff's alleged speech was pursuant to or part of his official duties and, therefore, is not protected public speech. Alternatively, the defendants argue for qualified immunity.

In *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568 (1968), the Court provided "the framework for

23

analyzing whether the employee's interest or the government's interest should prevail in cases where the government seeks to curtail the speech of its employees." *Lane v. Franks*, 134 S. Ct. 2369, 2377 (2014). This means balancing the employee's interests as a citizen to comment on public issues and the state employer's interest for promoting public service efficiency. *Id.* The Court in *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006), held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  Thus, there are five elements to the test governing public employees' retaliation claims for exercising their right to speak, and the first element is "whether the speech was made pursuant to an employee's official duties." *Seifert v. Unified Government of Wyandotte County/Kansas* City, 779 F.3d 1141, 1151 (10th Cir. 2015) (internal quotation marks and citation omitted). This element is one of the issues of law "resolved by the district court." *Rohrbough v. University of Colorado Hosp. Auth.*, 596 F.3d 741, 745 (10th Cir. 2010) (internal quotation marks and citation omitted). The defendants commend the court to resolve that element now from the detailed allegations found in the first amended complaint.

According to the defendants, "[t]here is no question but that plaintiff's alleged speech was speech pursuant to his official duties as Assistant Scientist and the Director of the MAI Lab." (Dk. 36, p. 19). Their

24

memoranda, however, do not describe any pleaded official duties unique to those positions with a scope that would include such speech. Instead, the defendants cite general university policies that are mentioned in the amended complaint and argue they "required that plaintiff report known or suspected incidents of fraud, including theft and misappropriation of University Assets and to report and take action with respect to academic or scholarly misconduct—including plagiarism." (Dk. 36, p. 20). The policies also direct all employees to comply with applicable state and federal law and various policies and makes employees "responsible for immediately reporting known or suspected incidents of fraud, including theft and misappropriation of University Assets." *Id.* at p. 21. The defendants also cite a recent federal court decision from this district for its holding that a professor's complaints of mismanagement or misappropriation of grant funds was unprotected speech because it contributed to the professor's performance of official duties.

The plaintiff defends by pointing to his amended complaint and two detailed paragraphs that spell out what were and were not his duties as Director of the MAI lab. (Dk. 30, ¶¶ 16 and 17). The plaintiff denies that his job duties included responsibility "for financial accounting, reporting or internal controls in the Research and Graduate Studies program. (Dk. 48, p. 31). As for defendants' using the university's general personnel policies, the plaintiff cites decisions which have looked askance when employers have

25

used broad job description or workforce-wide policies to restrict an

employee's speech rights. Alternatively, the plaintiff argues the defendants

cannot use the policies as a sword and a shield in that his actual reporting

under the policy was ignored by his superiors and his emails went unread, so

he ultimately disclosed his concerns to outside parties which included a

major private contributor, the FBI and a newspaper.

In looking at this element after *Garcetti*, the Tenth Circuit has "taken a

broad view of the meaning of speech that is pursuant to an employee's

official duties." *Thomas v. City of Blanchard,* 548 F.3d 1317, 1324 (10th Cir.

2008) (quotations omitted). The *Thomas* decision offers a useful summary of

the governing propositions most relevant to the issues here:

> The question under *Garcetti* is not whether the speech was made
> during the employee's work hours, or whether it concerned the subject
> matter of his employment. *See id.* at 421, 126 S.Ct. 1951. Merely
> because an employee's speech was made at work and about work does
> not necessarily remove that employee's speech from the ambit of
> constitutional protection. *See Brammer–Hoelter*, 492 F.3d at 1204.
> Rather, it is whether the speech was made pursuant to the employee's
> job duties or, in other words, whether the speech was "commissioned"
> by the employer. *Garcetti*, 547 U.S. at 421–22, 126 S.Ct. 1951. In
> addressing that question, the Supreme Court deliberately refrained
> from defining a "comprehensive framework for defining the scope of an
> employee's duties." *Id.* at 424, 126 S.Ct. 1951. It instead emphasized
> that the inquiry was "a practical one," and that a court cannot simply
> read off an employee's duties from a job description because "formal
> job descriptions often bear little resemblance to the duties an
> employee actually is expected to perform." *Id.* at 424–25, 126 S.Ct.
> 1951.
> . . . .
> . . . In *Brammer-Hoelter*, we stated that "speech may be made
> pursuant to an employee's official duties even if it deals with activities
> that the employee is not expressly required to perform. 492 F.3d

26

> 1192, 1203.  .  .  . Indeed, in *Brammer-Hoelter*, we held that if speech
> "reasonably contributes to or facilitates the employee's performance of
> the official duty, the speech is made pursuant to the employee's
> official duties." *Id.* at 1203 (citing *Williams v. Dallas Indep. Sch. Dist.*,
> 480 F.3d 689, 693 (5th Cir. 2007)) (per curiam). *See also Green v.
> Bd. of County Comm'rs*, 472 F.3d 794, 801 (10th Cir. 2007) (Green's
> activities not protected because they "stemmed from and were the
> type of activities that she was paid to do").

548 F.3d at 1323-24. On whether an employee's job duties include

reporting and filing complaints and grievances, the Circuit in *Brammer-*

*Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192 (10th Cir. 2007),

also observed:

> Although the record indicates that Plaintiffs were encouraged to
> present their views to improve the Academy and did so in the form of
> complaints and grievances to the Board, we cannot deem such a
> generalized grievance policy to be an official duty without eviscerating
> *Garcetti* and the general constitutional principle that "public employees
> do not surrender all their First Amendment rights by reason of their
> employment." 126 S.Ct. at 1957; *see id.* at 1961 ("We reject ... the
> suggestion that employers can restrict employees' rights by creating
> excessively broad job descriptions.").

492 F.3d at 1204.

The defendants' approach is overbroad. It fails to lay out the matters

that need to be linked up. It does not group the plaintiff's alleged speech by

occasion, content and audience. It does not analyze how the general

university policies are implicated by these particular instances of speech.

Finally, it does not point to the duties and responsibilities with the plaintiff's

position, as formally described or actually performed, under which such

speech would fall. Instead, the defendant stands on a general university

27

policy for reporting fraud and mismanagement and acknowledges it applies
to all KU employees, customers, vendors, contractors and all university-
related parties. On its face, the defendants' approach would dispense with
evaluating job duties and performance whenever a public institution had a
general policy for reporting fraud and mismanagement. The defendants offer
the court no authority for this approach which would preclude all First
Amendment retaliation claims for any speech arguably within this reporting
policy's broad scope regardless of the employee's job duties or performance.
The precedent they cite stands for taking a different approach. Specifically,
the court in *Klaassen* grouped the plaintiff's alleged protected statements,
noted that all statements were made internally to colleagues or officials, and
then described the plaintiff's work duties and performance:

> Plaintiff alleges that he 'applied for and received, as a principal
> investigator, an average of three NIH grants per year over the course
> of his career' and that his 'financial compensation from KUMC was
> directly tied to his ability to successfully obtain NIH grants as a
> [principal investigator].' Doc. 101-1 at ¶¶ 25, 27. For those reasons,
> plaintiff had an active interest in ensuring proper grant administration,
> proper use of KUMC funds, and prudent governance at KUMC. Those
> things affected his ability to keep receiving NIH grants, and thus
> plaintiff's statements 'reasonably contribute[d] to' the performance of
> his official duties. *Garcetti* does not protect them.

2015 WL 437747 at *18. The arguments and facts are simply not before the
court at this time for it to make this analysis now. *Cf. Renken v. Gregory*,
541 F.3d 769, 774 (7th Cir. 2008) (College professor's comments about the
University's misuse of grant funds was speech as a faculty member,

28

"because administering the grant as a PI [principal investigator] fell within the teaching and service duties that he was employed to perform."); *Klaassen*, 2015 WL 437747 at *18 (Medical school professor's comments on mismanagement of grant money were made pursuant to official duties as all statements were internal and "as principal investigator, plaintiff had supervisory and technical authority over several grants, so he had an interest in seeing that grant funds were used properly."). Simply put, the court is not in a position at this time to determine as a matter of law whether all instances and occasions of the plaintiff's speech alleged in the amended complaint were made pursuant to the plaintiff's official duties. Having determined that it cannot apply *Garcetti* at this time, the court need not take up the qualified immunity argument. The defendants' reply brief recasts their qualified immunity argument, and this new argument will not be taken up.

### § 1983-Counts Five/Six-Liberty Interest/Substantive Due Process

Count five includes an allegation that the plaintiff was denied "his constitutional right to substantive due process simpliciter as acts that were arbitrary, capricious and without a rational basis" were also taken for discriminatory reasons related to his disability and for retaliatory reasons related to his disability and whistleblowing activity. (Dk. 30, ¶ 197). This very same allegation is found in count six. (Dk. 30, ¶ 206). The plaintiff apparently regards his substantive due process claims as pleaded principally

in count six. He explains his allegations as bringing two forms of substantive

due process:  "(a) deprivation of liberty substantive due process, ECF No.

30, paras. 205, 210 and 129, and (b) due process simpliciter for acts that

are so arbitrary, unreasonable and without rational basis that they 'shock

the conscience,' ECF No. 30, paras. 206, 207 and 208." (Dk. 48, p. 39).

 As to the deprivation of liberty claim, the defendants argue the plaintiff

has failed to allege the following elements for such a claim:  (a) defendants

made false statements, (b) which impugned the plaintiff's good name,

reputation, honor or integrity, (c) which were made in course of termination

or must foreclose other employment, and (d) which were published.  The

defendants also argue that the plaintiff was provided the opportunity for a

name-clearing hearing under the Kansas Judicial Review Act ("KJRA") but

that he dismissed this action on his motion. (Dk. 30, ¶ 94). As to the

substantive due process for denial of a fundamental right or shocking official

misconduct, the defendants argue for dismissal because the plaintiff's claims

do not involve matters relating to marriage, family, procreation or bodily

integrity and do not allege circumstances so egregious as to shock the

judicial conscious.

 For the liberty claim, the plaintiff summarily stands on the allegations

in ¶¶ 204, 205, and 210, and denies that he was afforded a name clearing

hearing and relies on his allegations in count seven. On his other substantive

due process claim, the plaintiff cites allegations found in his amended

30

complaint that his superiors ignored his whistleblowing reports, belittled his concerns, ignored his request for disability accommodation, increased his workload as to exacerbate his condition, terminated him while his suspension appeal was pending, and presented a "cherry-picked" record for judicial review. (Dk. 48, pp. 42-43). The plaintiff stands on these allegations as sufficient to claim the defendants' arbitrary and capricious actions were so egregious as to shock the conscience "at every turn." (Dk. 48, ¶ 108).   The plaintiff admits his allegations on these substantive due process claims are not as detailed as his other claims and would welcome the chance to make these claims more definite and certain.

A person's liberty interest is infringed when the government:  "(1) . . . makes a statement that impugns the good name, reputation, honor, or integrity of the employee; (2) the statement is false; (3) the statement is made during the course of termination and forecloses other employment opportunities; and (4) the statement is published, in other words disclosed publically." *McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014). Count six fails to allege a statement made during the course of termination that was false and that was disclosed publically. The court is reluctant to give the plaintiff another opportunity to amend his complaint to make his claim "more definite and certain." (Dk. 48, p. 44). Despite the already unusual length and detail to his amended complaint, the plaintiff points to nothing in it that suggests he will be able to plead these elements. It presently alleges, at

31

most, that the defendants "branded plaintiff . . . by discharging the plaintiff before his concerns could be spread upon the record before his peers in a Faculty Rights Board hearing." (Dk. 30, ¶ 210). Moreover, the plaintiff alleges his termination letter stated the reasons for his discharge were "considerations of the future of the MAI Lab" and "a determination that it was in the best interest of the Research and Graduate Studies program." (Dk. 30, ¶ 207). Based on the vagueness which he has alleged these matters, as well as, the innocuous contents of the termination letter, the court fails to see the plaintiff's optimism for alleging a liberty interest claim. *See Fox-Rivera v. Colorado Dept. of Public Health & Environment*, ---Fed. Appx. ---, 2015 WL 1840915 at *2-*3 (10th Cir. Apr. 23, 2105). The court dismisses this claim, but it will be subject to the plaintiff filing a separate motion for leave to amend.

"The Due Process Clause of the Fourteenth Amendment protects individuals against state action that either shocks the conscience, or interferes with fundamental rights implicit in the concept of ordered liberty." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008) (internal quotation marks and citations omitted). The Tenth Circuit has held that, "[a] public employee with a property interest in continued employment has a substantive-due-process right not to be terminated for arbitrary or capricious reasons." *Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1257 (10th Cir. 2007). The plaintiff here does not allege a property interest. While

32

the Tenth Circuit has "not determined whether public employment is a fundamental liberty interest protected by substantive due process, *Potts v. Davis County*, 551 F.3d 1188, 1193 n. 1 (10th Cir.2009)," the plaintiff here does not assert and identify an alternative fundamental liberty interest claim but argues only that the defendants' conduct shocks the conscience. *See Koessel v. Sublette County Sheriff's Dept.*, 717 F.3d 736, 749-750 (10th Cir. 2013). The plaintiff has not argued or alleged anything that demonstrates a fundamental liberty interest being denied here.

In a case where a plaintiff deputy sheriff had been terminated because of "concerns about the lingering effects of a stroke he suffered" and then had sued the sheriff's department for ADA violations, breach of contract and § 1983 violations of procedural and substantive due process, the Tenth Circuit gave this summary of the "shock the conscience" law:

> To show the Defendants' conduct is conscience shocking, Koessel must prove a government actor abused his or her authority or "employ[ed] it as an instrument of oppression" in a manner that shocks the conscience. *Williams [v. Berney]*, 519 F.3d [1216] at 1220 [(10th Cir. 2008)] The Supreme Court has stated there is "no calibrated yard stick" for assessing whether conduct is conscience shocking, but that it depends on the circumstances of each case. *County of Sacramento v. Lewis*, 523 U.S. 833, 847, 850, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Substantive due process prohibits "only the most egregious official conduct." *Seegmiller*, 528 F.3d at 767. Even most intentionally inflicted injuries caused by misuse of government authority will not meet this standard. *Ward v. Anderson*, 494 F.3d 929, 937–38 (10th Cir.2007); *see also Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 787–88, No. 11–6194, 2013 WL 1730882, at *20 (10th Cir. April 23, 2013) (teacher conduct did not meet standard of "brutal and inhumane abuse of official power" to make out substantive due process claim).
> Whether an action was an abuse of authority depends on several

33

> "non-exhaustive factors," such as: (1) the harm results from
> misconduct by a government official; (2) the official has some
> authority over the victim; (3) the official abuses that authority; (4) the
> misconduct exceeds run-of-the-mill negligent conduct, and is
> intentional or reckless; and (5) the injury suffered is so egregious or
> outrageous that it shocks the conscience. *Williams*, 519 F.3d at 1224
> (discussing excessive force claim).

*Koessel v. Sublette County Sheriff's Dept.*, 717 F.3d at 750. The Tenth

Circuit also noted "the employment injury suffered—the loss of a job—was

not so egregious as to shock the judicial conscience." *Id.* "To satisfy this

standard, a plaintiff must do more than show that the government actor

intentionally or recklessly caused injury to the plaintiff by abusing or

misusing government power." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d

504, 528 (10th Cir. 1998). The issue whether specific conduct "shocks the

conscience" is a question of law for the Court. *See Perez v. Unified Gov't of

Wyandotte Cnty./Kansas City, Kan.*, 432 F.3d 1163, 1168 n. 4 (10th Cir.

2005), *cert. denied*, 548 U.S. (2006).

"The doctrine of qualified immunity shields government officials from

liability, . . . , when 'their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have

known.'" *McDonald*, 769 F.3d at 1215 (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982)). "In resolving a motion to dismiss based on qualified

immunity, a court must consider whether the facts that a plaintiff has

alleged . . . make out a violation of a constitutional right," and "whether the

right at issue was clearly established at the time of defendant's alleged

34

misconduct." *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)). "For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Brammer–Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Clearly this standard does not require a precise factual analogy to pre-existing law; however, the plaintiff must demonstrate that the unlawfulness of the conduct was apparent in light of pre-existing law." *Id.* (internal quotation marks and citation omitted). Pre-existing law is "either a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts. *Id.*

The plaintiff has not come forward with any authority amounting to "pre-existing law" that has recognized employment actions and consequences similar to this case as being "so egregious that they 'shock the conscience.'" *Klaassen*, 2015 WL at 437747 at *26. Having failed to establish the contours of a substantive due process right under the alleged circumstances here, the court dismisses this claim against the individual defendants in their individual capacities based on qualified immunity.

**State Common-law Retaliatory Discharge—Count Seven**

Sued in their official capacities for prospective injunctive relief on this count, the defendants repeat their Eleventh Amendment arguments, seek to

apply the alternative remedies doctrine to the Kansas Whistleblower Act, K.S.A. 75-2973, and ask the court to follow the Kansas case law precluding a supervisor's liability for the retaliatory discharge tort. The court's Eleventh Amendment rulings on count one are the court's rulings on this count as well. While discussing the alternative remedies doctrine at length, the plaintiff does address or contest the defendants' last issue of supervisory liability.

The recent *Klaassen* decision summarizes the Kansas Supreme Court's holding in *Rebarchek v. Farmers Coop. Elevator*, 272 Kan. 546, 35 P.3d 892 (2001) ("only the employer is liable for retaliatory discharge"), and the different constructions of that holding by the federal courts in this district, *Ruisinger v. HNB Corp.*, 2012 WL 3758656 (D. Kan. Aug 29, 2012) (*Rebarchek* holding applies "only when the firing supervisor lacks a role in the corporation beyond his managerial position"), and *Ragsdale v. Amsted Rail Co., Inc.*, 2013 WL 6729788 (D. Kan. Dec. 19, 2013) (the "status of the supervisor is 'irrelevant'" in applying *Rebarchek*). 2015 WL 437747 at *29. This court concurs with the reasoning in *Klaassen* and "follows *Ragsdale* and decides that the Kansas Supreme Court would recognize a common law cause of action for retaliatory discharge against only an employer." *Id.* at 30. Because the plaintiff has not alleged that the three individual movants were his employer, the court concludes the plaintiff has failed to state a claim for retaliatory discharge against the movants.

36

IT IS THEREFORE ORDERED that the motion to dismiss (Dk. 35) filed by the defendants Joseph A. Heppert, University of Kansas, Jeffrey S. Vitter, and Steven Warren is granted in part and denied in part, as hereby summarized, Count One:  the defendants Warren and Heppert are dismissed from a claim of relief for reinstatement, and the motion is otherwise denied; Count Two:  the claim for relief does not include compensatory or punitive damages; Count Three:  the claim for relief against the movants is limited to non-monetary, prospective injunctive relief, and the plaintiff will have 20 days from this order to file either an amended complaint that alleges exhaustion of administrative remedies or a report on the status of the pending administrative proceedings; Count Four:  the motion is denied; Count Five:  the motion is denied on the First Amendment claim; Counts Five/Six:  on the substantive due process claim for deprivation of liberty, the motion is granted but subject to the plaintiff filing a separate motion for leave to amend, and on the substantive due process simpliciter claim, the motion is granted; Count Seven:  the motion is granted.

Dated this 28th day of July of 2015, Topeka, Kansas.


s/Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge