**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

DAVID S. MOORE,                                   )
                                                  )
                              Plaintiff,          )
                                                  )
         v.                                       )         Case No. 2:14-cv-02420-SAC-KGS
                                                  )
THE UNIVERSITY OF KANSAS, ET AL.,                 )
                                                  )
                              Defendants.         )

---

# MEMORANDUM IN SUPPORT OF UNIVERSITY OF KANSAS CENTER FOR RESEARCH'S MOTION FOR SUMMARY JUDGMENT

Defendant, the University of Kansas Center for Research ("KUCR"), brings this motion before the Court seeking an order affirming its status as an "arm of the state" entitled to immunity under the Eleventh Amendment of the United States Constitution. The Eleventh Amendment immunity defense is being raised by KUCR in response to the claims made by the Plaintiff, David S. Moore, arising out of the termination of his employment as the Director of the Microscopy and Analytical Imaging Laboratory ("MAI Lab") at the University of Kansas' Lawrence Campus.

KUCR previously raised its Eleventh Amendment immunity defense in its Motion to Dismiss (Doc. 61). In ruling on that motion, the Court found that certain factual issues remained unresolved, and granted the Plaintiff the opportunity to conduct discovery on the Eleventh Amendment. The parties have now completed the discovery on this issue, and KUCR renews its request for an order finding that it is entitled to Eleventh Amendment immunity.[1]

---

[1] In its motion to dismiss, KUCR also moved for dismissal of all claims against it on the basis that Plaintiff was not an employee of KUCR, and, therefore, could not maintain an action for wrongful termination against it. In response to this motion, Plaintiff amended his complaint to assert that he was a "borrowed servant" of KUCR, and that this

## I.      NATURE OF THE CASE

This is an employment discrimination/wrongful termination case brought by the Plaintiff against the University of Kansas, KUCR, as well as four individual employees, or former employees, of the University of Kansas – Bernadette Gray-Little, Jeffrey S. Vitter, Steven F. Warren, and Joseph A. Heppert. Plaintiff has raised six counts in his Second Amended Complaint, four of those claims were alleged against KUCR, including:

1.      Count One – violations of the Americans with Disabilities Act, 42 U.S.C. § 12,101, *et seq.*;

2.      Count Two – violations of the Rehabilitation, Comprehensive Services and Developmental Disabilities Act, 29 U.S.C. § 701, *et seq.*;

3.      Count Three – violations of the Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information Act, 41 U.S.C. § 4712, *et seq.*; and

4.      Count Four – violations of the False Claims Act, 31 U.S.C. § 3730, *et seq.*

Count Three was dismissed by the Court in its December 17, 2015 Memorandum and Order (Doc. 109), based on Plaintiff's failure to exhaust his administrative remedies, leaving only Counts One, Two, and Four applicable to KUCR.

As will be demonstrated below, KUCR is an arm of the State of Kansas entitled to immunity from suit under the Eleventh Amendment to the United States Constitution. Based on that immunity, Plaintiff is barred from bringing a claim for monetary damages in federal court against KUCR, and KUCR respectfully requests the Court enter an order granting it judgment as a matter of law on that issue.

---

provides a proper basis for bringing a retaliatory discharge claim against it. Although KUCR believes there is no merit to Plaintiff's revised claim, KUCR has elected not to present the matter back before the Court at this time due to the fact that there has been no discovery conducted on this issue (discovery on all matters other than Eleventh Amendment immunity were stayed until February 1, 2016). KUCR does intend on raising that defense in a properly supported motion for summary judgment once full discovery has been completed, and will limit this motion for summary judgment to the issue of Eleventh Amendment immunity.

## II.      STATEMENT OF FACTS

KUCR submits the following statement of facts in support of its motion for summary judgment:

1.      KUCR is a not for profit corporation organized under the laws of the State of Kansas. (Exhibit A, Restated Articles of Incorporation, KU 24)

2.      KUCR's purpose is "to promote scientific and education development by encouraging, fostering, and conducting scholarly investigations and industrial and other types of research at the University of Kansas by the faculty, staff, and students thereof, and those associated therewith . . . ." (Exhibit A, Restated Articles, Art. Second, KU 24)

3.      All KUCR assets and earnings are to be used exclusively for these purposes. (Exhibit B, Amendments to Articles, KU 42)

4.      KUCR is a tool for the University of Kansas that is used to hold all of the federal grants and contracts pertaining to sponsored research for the University of Kansas.[2] (Exhibit C, Diane Goddard Depo. 11:18-22)

5.      KUCR was originally formed by the University of Kansas Dean of Engineering to support engineering research. (Exhibit C, Goddard Depo. 37:15-18)

6.      When Robert Hemenway became Chancellor of the University of Kansas, he wanted to expand the purview of KUCR so that all sponsored research could use that tool. (Exhibit C, Goddard Depo. 37:18-22)

7.      The Board of Directors of KUCR is controlled by University of Kansas employees. (Exhibit D, KUCR Bylaws [2006] Article III, § 1, KU 45)

---

[2] The term "sponsored research," as used in this case, means research that is sponsored by an entity outside of the University of Kansas, including state or federal agencies, private corporations, and private or public foundations. (Exhibit C, Goddard Depo. 46:6-21)

8.      The Executive Committee Officers are all employees of the University of Kansas. (Exhibit E, KUCR 2015 Board of Trustees Executive Committee, KU 001698; Exhibit D, KUCR Bylaws [2006] Article III, § 1, KU 45)

9.      Thirteen of the sixteen members of the Executive Committee to the Board of Directors of KUCR are employees of the University of Kansas. (Exhibit E, KUCR 2015 Board of Trustees Executive Committee, KU 001698)

10.     KUCR must comply with KU personnel policies and consult with KU's HR/EO office and the University General Counsel as necessary for managing employee misconduct. (Exhibit F, KU and KUCR Employee Services Agreement, KU 49)

11.     KUCR has no employees. (Exhibit C, Goddard Depo. 11:21-22)

12.     KU provides KUCR with the services of University employees. (Exhibit F, KU and KUCR Employee Services Agreement, KU 49.)

13.     KU is the employer of each employee who provides services to KUCR. (Exhibit F, KU and KUCR Employee Services Agreement, KU 50.)

14.     KUCR is a "KU-affiliated organization." (Exhibit G, KU-KUCR Affiliation Agreement, ¶ 6, KU 62.)

15.     KUCR must be audited according to Board of Regents policy and those results must be provided for distribution to the Board. Results of audits of KUCR must be provided to the Board of Regents and financial reports must be made available to KU and officials. (Exhibit G, KU-KUCR Affiliation Agreement, ¶ 5, KU 62)

16.     KUCR's books and records must be treated as open records and KUCR must comply with Kansas Open Records Act and Kansas Open Meetings Act requirements. (Exhibit G, KU-KUCR Affiliation Agreement (2004), §§ 5-6, KU 62)

17.     The KU-KUCR Affiliation Agreement also contemplates that KUCR would be subject to the protections and limitations of the Tort Claims Act. (Exhibit G, KU-KUCR Affiliation Agreement (2004), § 8)

18.     KUCR's annual financial statements are blended together with the University of Kansas' financial statements, which are then sent to the State of Kansas to be blended into the State's financial statements. (Exhibit C, Goddard Depo. 12:14-18)

19.     When the University is awarded a grant through KUCR, a portion of the grant is designated for direct costs such as chemicals, laboratory costs, and outside vendors. In addition a portion of the grant is designated for indirect costs, which are referred to as the Facilities and Administrative Rate, or F&A. (Exhibit C, Goddard Depo. 26:19-27:10)

20.     For the fiscal year ending June 30, 2015, KUCR had total income of approximately $152,000,000. Of this amount approximately $140,000,000 was received through research grants or awards, either by way of direct research income or F&A revenue. The remaining sources of income for KUCR included from payments made to KUCR from the University of Kansas service centers (approximately 3%), royalties on intellectual property generated by the University of Kansas (approximately 4%), and other miscellaneous income such as investment income, donations of equipment, and contributions (approximately 2% combined). (Exhibit H, KUCR Financial Statement for FY 2015, KU 000505)

21.     For the fiscal year ending June 30, 2014, KUCR had total income of approximately $163,600,000. Of this amount approximately $151,000,000 was received through research grants or awards, either by way of direct research income or F&A revenue. The remaining sources of income for KUCR included from payments made to KUCR from the University of Kansas service centers (approximately 3%), royalties on intellectual property generated by the University of

Kansas (approximately 3%), and other miscellaneous income such as investment income, donations of equipment, and contributions (approximately 2% combined). (Exhibit H, KUCR Financial Statement for FY 2015, KU 000506)

22.     The president of the KUCR Board of Directors is the Chancellor of the University of Kansas. (Exhibit C, Goddard Depo. 12:11-12)

23.     The vice-president of the KUCR Board of Directors is the Provost of the University of Kansas. (Exhibit C, Goddard Depo. 12:12-13)

24.     The secretary/treasurer of the KUCR Board of Directors is the Vice Provost for Administration and Finance for the University of Kansas. (Exhibit C, Goddard Depo. 12:13-14; 13:1-2)

25.     The president of KUCR is the Vice Chancellor for Research of the University of Kansas. (Exhibit C, Goddard Depo. 11:23-24)

26.     All purchases made using money that is on deposit with KUCR must be processed through the University of Kansas' purchasing department. (Exhibit C, Goddard Depo. 73:22-74:8)

27.     When applications for federal grants are made, they are submitted by KUCR on behalf of the University of Kansas. (Exhibit C, Goddard Depo. 19:16-22)

28.     The University of Kansas treats KUCR the same as it does any other University department when it comes to paying for central services such as computing or maintenance. (Exhibit C, Goddard Depo. 113:11-114:9)

29.     KUCR is required to follow the same rules for purchasing as all other University of Kansas departments, including complying with the University of Kansas' rules which were promulgated pursuant to a delegation of authority by the State Board of Regents. (Exhibit C, Goddard Depo. 115:18-25)

30.     KUCR is required to comply with the University of Kansas' policy on capital finance. (Exhibit C, Goddard Depo. 118:8-11)

31.     KUCR financed the construction of two research facilities, the Multidisciplinary Research Building and the Structural Biology Center, for the University of Kansas by issuing revenue bonds through the Kansas Development Finance Authority. (Exhibit C, Goddard Depo. 34:21-35:4; 120:17-25)

32.     KUCR was not able to issue its own bonds to finance the construction of these buildings, and was required to work through the Kansas Development Finance Authority, which acted as a conduit issuer. (Exhibit I, Theresa Gordzica Depo. 35:8-24)

33.     The University of Kansas is ultimately responsible for the debt on all bonds that have been issued by KUCR. (Exhibit C, Goddard Depo. 121:5-17; Exhibit J, First Amendment to Affiliation Agreement at ¶ 5, KU 69)

34.     F&A funds are unrestricted funds provided to universities to pay for the indirect costs associated through the grant activity. (Exhibit C, Goddard Depo. 30:23-31:3)

35.     Some universities elect to put F&A funds for things like their central computer center or their library. (Exhibit C, Goddard Depo. 31:3-6)

36.     The University of Kansas has chosen to reinvest the F&A funds it receives back into research functions through the Vice Chancellor for Research. (Exhibit C, Goddard Depo. 31:6-10)

37.     When F&A funds are received, they are placed on deposit with KUCR. A small percent goes back to the principal investigator ("PI") and a small percentage goes back to the department, with the remaining funds left on deposit in the KUCR bank account to be reinvested in research functions. (Exhibit C, Goddard Depo. 30:5-32:16)

38. Although F&A funds are held in the KUCR bank account, the University of Kansas controls how that money is spent and they have decided to reinvest all F&A into research under the control of the Vice Chancellor for Research. (Exhibit C, Goddard Depo. 30:5-13)

39. When F&A funds are reinvested back into research functions, the University of Kansas Vice Chancellor for Research reinvests the funds, not KUCR. (Exhibit C, Goddard Depo. 31:8-10)

40. The F&A funds that are retained to be reinvested in research functions are generally allocated for start-up funds, grant matching requirements, administrative support in research centers, and to cover debt service. (Exhibit C, Goddard Depo. 32:23-33:4)

41. The F&A funds that are allocated to "start-up" are combined with state money to provide assistance to new research faculty members who need funds for such things as lab renovations, equipment purchases, and research assistants in order to become productive. (Exhibit C, Goddard Depo. 33:13-34:3)

42. The F&A funds used for grant matching requirements are used to satisfy requirements in grants from many federal agencies that require some sort of matching funds be used for the purchase of equipment. (Exhibit C, Goddard Depo. 34:7-14)

43. The F&A funds used for debt service are used to make annual bond payments on bonds that were issued to build two research center buildings. (Exhibit C, Goddard Depo. 34:20-35:5)

44. Although funds held in the KUCR bank account are used to make the annual payments on the bonds issued to build the Multidisciplinary Research Building and the Structural Biology Center, the buildings themselves are an asset of the University of Kansas. (Exhibit I, Gordzica Depo. 26:13-21)

III.    **STANDARD FOR MOTION FOR SUMMARY JUDGMENT**

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." *Fulghum v. Embarq Corp.*, 938 F. Supp. 2d 1090 (D. Kan. 2013) (citing Fed. R. Civ. P. 56(a)). The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citing *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004)). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Id.* (citing *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004)). To meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim. *Id.*

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial." *Id.* (citing *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005)). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* (citing *Alder v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Conclusory allegations alone cannot defeat a properly supported motion for summary judgment. *Id.* (citing *Alder v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

IV.    **ARGUMENTS AND AUTHORITIES**

KUCR brings this motion for summary judgment seeking an order from the Court affirming that KUCR is an arm of the state entitled to immunity under the Eleventh Amendment of the United States Constitution. This matter was previously brought before the Court in KUCR's motion to dismiss (Doc. 61). In considering the motion to dismiss, the Court found that certain factual issues

remained, and granted Plaintiff the opportunity to conduct discovery on that issue. The parties have completed discovery on this issue and, as set forth more fully below, KUCR respectfully requests the Court enter an order granting it summary judgment on the issue of whether it is entitled to Eleventh Amendment immunity from suit in this case.

The Eleventh Amendment, as interpreted by the Supreme Court, operates as "a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state." *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013). "While state sovereign immunity serves the important function of shielding state treasuries and thus preserving the States' ability to govern in accordance with the will of their citizens, the doctrine's central purpose is to accord the States the respect owed them as joint sovereigns." *Fed. Mar. Comm'n v. S. Carolina State Ports Auth.*, 535 U.S. 743, 765 (2002) (internal quotations and citations omitted).

The test for determining whether an entity constitutes an arm of the state for Eleventh Amendment immunity purposes is well established in the Tenth Circuit. Generally, the Court examines two areas:

> "[T]he court first examines the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state. Second, the court examines the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing. The governmental entity is immune from suit if the money judgment sought is to be satisfied out of the state treasury."

*Sturdevant v. Paulsen*, 218 F.3d at 1164 (quoting *Watson v. University of Utah Med. Ctr.*, 75 F.3d 569, 574-75 (10th Cir. 1992)). In making the arm of the state determination, the Tenth Circuit has considered four primary factions that are relevant to the analysis, including: (1) the character ascribed to the entity under state law; (2) the autonomy accorded the entity under state law; (3) the entity's finances, including the amount of state funding the entity receives and whether it has the ability to issue bonds or levy taxes on its own behalf; and (4) whether the entity in question is

concerned primarily with local or state affairs. *Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007). In making this determination, the Court is to examine the entity's function, composition, and purpose. *Id.* No one factor is to be given undue weight, but rather all factors are to be considered co-equal in the immunity analysis. *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233 (3rd Cir. 2005) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430-31 (1997).

The Tenth Circuit has cautioned against engaging in too formalistic of a review of the issue, noting that "[b]ecause of the open-ended nature of the arm-of-the-state analysis, it is easy to become caught up in the minutiae of state law . . . . These details, however, must not eclipse a fundamental distinction that emerges from *Mt. Healthy* and the cases that follow it – between alter egos or instrumentalities of states on one hand, and political subdivisions such as cities and counties on the other." *Sturdevant*, 218 F.3d at 1170.

As noted above, the Court has previously addressed the issue now before it, albeit in regard to a motion to dismiss rather than a motion for summary judgment. In ruling on the motion to dismiss, the Court adopted the analytical framework it used in *Kansas State University v. Prince*, 673 F.Supp.2d 1287 (D. Kan. 2009). Therefore, KUCR will address the issue utilizing that same legal framework.

### A.    Characterization under state law

The first factor the Court must consider when analyzing whether KUCR is an arm of the state how the entity is characterized under state law. In reviewing this factor, the Court considers how KUCR is characterized in relevant state statutes, regulations, constitutional provisions or state court decisions. *Prince*, 673 F. Supp. 2d at 1299.

The Court addressed this factor in length in its previous order on this issue. Upon reviewing relevant state statutes and policies in light of the facts disclosed by KUCR's bylaws, KUCR's articles of incorporation, and the Affiliation Agreement between KUCR and the University of Kansas, the Court concluded that KUCR is a corporation substantially controlled by the University of Kansas. The Court also found that KUCR's actions in "contracting for the operation and management of scientific research facilities at KU is 'an essential governmental function in matters of public necessity.'" *Moore v. University of Kansas*, ___ F. Supp. 3d ____, 2015 WL 5010087 at *8 (D. Kan. 2015) (quoting K.S.A. 76-778). Based on these findings, the Court concluded that "[t]he manner in which state law addresses KUCR's function and role is an important consideration and favors finding it to be an arm of the State." *Id.*

KUCR does not believe that any the discovery on this issue has revealed any additional facts which are relevant to the Court's analysis of this first factor. Rather than restate the analysis relied upon by the Court in reaching its conclusion here, KUCR simply asks that the Court adopt its prior findings and conclusions on this factor.

### B.     Degree of Autonomy

The second factor the Court must consider is the degree of autonomy from the state KUCR enjoys. The facts in this case clearly show that KUCR enjoys no autonomy, and is entirely controlled by the University of Kansas. Although a stand-alone not-for-profit corporation, KUCR's sole mission is to serve as a tool of the University. In ruling on KUCR's motion to dismiss, the Court conducted a lengthy analysis of the relationship between KUCR and the University, examining KUCR's articles of incorporation, bylaws, its affiliation agreement with the University of Kansas, and its public financial records. *Moore*, 2015 WL 5010087 at *8-10. KUCR

believes the Court correctly analyzed the appropriate records in this case in determining the degree of autonomy of KUCR, and asks the Court to adopt its prior findings and conclusions on this issue.[3]

The soundness of the Court's prior decision on the degree of autonomy factor is supported by reviewing other cases involving attempts by entities to claim arm-of-the-state Eleventh Amendment immunity. For example, in *U.S. ex rel Sikkenga v. Regence BlueCross BlueShield of Utah*, 472 F.3d 702 (10th Cir. 2012), the Tenth Circuit Court of Appeals applied the test for arm-of-the-state Eleventh Amendment immunity to a hospital laboratory that was a separate business entity wholly owned by the University of Utah.[4] Ultimately, the Tenth Circuit found that the laboratory was not an arm of the state, relying, in part, on the fact that the laboratory had a significant degree of autonomy from the university. In making this finding, the Circuit noted numerous facts concerning the level of autonomy enjoyed by the laboratory, including:

1.    Although the laboratory claimed its operations were limited to those that offered a "substantial and valuable educational or research experience for registered students and faculty," its actual business operations were much broader than that and were not limited geographically or by the type of testing services the laboratory performed.

2.    The laboratory engaged in nationwide activity as a commercial laboratory, being licensed in nine states and marketed itself in all fifty.

3.    In addition to performing laboratory operations for the University of Utah Medical Center, the laboratory also provided testing for third parties, with seventy-six percent of the laboratory's fiscal year 1998 revenue being derived from testing provided to other hospitals.

---

[3] One issue that was raised in the prior proceedings before the Court was whether ex officio members of the KUCR Board of Directors were entitled to vote on corporate matters. *Moore*, 2015 WL 5010087 at *10, n. 1. Although the Court did not find that issue to be of concern previously, KUCR would point out that the matter was clarified in Diane Goddard's deposition, in which she indicated that ex officio members of the Board of Directors do, in fact, have full voting rights. Goddard Depo. 113:1-9. Therefore, the is no question that KUCR is controlled by the University of Kansas, as over 50% of the voting members of both the Board of Directors and the Executive Committee are University personnel.

[4] Although the precise issue in *Sikkenga* was whether the laboratory could be held liable for damages under the False Claims Act, the court noted that the analysis of that issue is identical to the analysis of whether an entity is entitled to arm-of-the-state Eleventh Amendment immunity. *See Sikkenga*, 472 F.3d at 718.

4.    Rather than providing services through an informal operating scheme or inter-departmental agreement, the Medical Center routinely entered into commercial contracts with the laboratory to provide services.

5.    The laboratory had approximately 1,215 employees, of which only ten percent were pathologists, residents and fellows, or laboratory science students. The bulk of the laboratory's employees worked in laboratory operations, administrative positions, sales and marketing, customer services, and handling and logistics.

6.    The day-to-day operations of the laboratory were independent of the University of Utah Medical Center. Although the chairman of the laboratory's board of directors reported through a chain of command that reached the University President, the University President's role was only to provide "strategic oversight."

*Sikkenga*, 472 F.3d at 718-20. Ultimately, the Circuit found that "when we evaluate the entire relationship between [the laboratory] and the University, [the laboratory] retains substantial autonomy in its operations, and operates with little, if any guidance or interference from the University or the state." *Id.* at 720-21. *See also Lucero v. New Mexico Lottery*, No. Civ. 07-499, 2008 WL 7467977 (D.N.M. 2008) (declining to extent arm-of-the-state immunity to the New Mexico Lottery because, in part, "the legislature has provided the [defendant] with a sufficiently high level of autonomy to indicate a level of state involvement in the [defendant's] day-to-day activities that is insufficient to confer Eleventh Amendment immunity upon it.").

Comparing the defendant in *Sikkenga* to KUCR clearly illustrates the dependent nature of KUCR and the fact that it has little, if any, autonomy. None of the issues highlighted by the Circuit in *Sikkenga* are present in this case. KUCR does not provide services for any entity other than the University of Kansas and does not market itself as a commercial entity. KUCR does not utilize commercial contracts to perform services with the University of Kansas, but rather relies upon the more informal affiliation agreement and related contracts to outline the services it will perform on behalf of the University. KUCR has no employees – every individual doing work on behalf of KUCR is an employee of the University of Kansas. Finally, the day to day operations of KUCR

are directly controlled by the University as evidenced by the fact that each of the officers of the Executive Committee are University personnel, including: the Chair (Chancellor of the University), Vice Chair (Provost of the University), President (Vice Chancellor for Research of the University), Vice Presidents (Associate Vice Chancellors of Research & Graduate Studies of the University), Secretary-Treasurer (Vice Provost Administration & Finance of the University) and an ex officio officer (Chief Financial Officer of the University). In fact, of the 16 members of the KUCR Executive Committee, 13 members are University of Kansas employees. Where the Circuit had little difficulty finding that the defendant in *Sikkenga* "retain[ed] substantial autonomy in its operations, and operate[d] with little, if any guidance or interference from the University or the state," the exact opposite is clear in this case. KUCR operates directly under the constant and complete control of the University of Kansas.

The second factor the Court must consider – the degree of autonomy enjoyed by KUCR – clearly weighs strongly in favor of finding that KUCR is an arm of the state, and entitled to Eleventh Amendment immunity. Therefore, the Court should adopt its prior findings and conclusions on this issue.

### C.    KUCR's Finances

The third factor for the Court's consideration involves KUCR's finances. In *Steadfast*, the Tenth Circuit indicated that in analyzing this factor, the Court should "look to the amount of state funding the entity receives and consider whether the entity has the ability to issue bonds or levy taxes on its own behalf." *Steadfast*, 507 F.3d at 1253. In other words, the Court's analysis should focus on "the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing." *Sikkenga*, 472 F.3d at 718 (*citing Sturdevant*, 218 F.3d at 1164). The focus on whether or not an entity is financially independent from the state has been an

important consideration for courts across the country as well. *See, e.g. Pele v. Pennsylvania Higher Educ. Assistance Agency*, ___ Fed. Appx. ___, 2015 WL 6162942 at *1 (4th Cir. Oct. 21, 2015) (denying arm-of-the-state immunity because, *inter alia*, the defendant "is financially independent from the [state] and supports itself with revenues generated through [defendant's] commercial financial-services activities"); *Peirick v. Indiana University-Purdue University Indianapolis Athletics Dept.*, 510 F.3d 681, 695-96 (7th Cir. 2007) (noting that "[i]n deciding whether an entity as an agency of the state, the most important factor is 'the extent of the entity's financial autonomy from the state." (quoting *Kashani v. Purdue University*, 813 F.2d 843 (7th Cir. 1987)); and *Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309, 1315 (11th Cir. 2003) (denying Eleventh Amendment immunity to a port authority, in part, because it is "financially self-sufficient, generates its own revenues, and pays its own debts.").

Although KUCR does not receive direct funding from the Kansas state treasury, its finances are entirely dependent on the University of Kansas. KUCR operates almost exclusively on income received through sponsored research activities conducted by the University of Kansas. For the fiscal year ending June 30, 2015, KUCR had total income of approximately $152,000,000. Of that amount, approximately $140,000,000 was received through research grants or awards, either by way of direct research income or F&A revenue. This shows that over 92% of KUCR's income for 2015 was received directly through sponsored research activities conducted by the University of Kansas. The small amount of remaining income is derived from payments made to KUCR from the University of Kansas service centers (approximately 3%), royalties on intellectual property generated by the University of Kansas (approximately 4%), and other miscellaneous income such as investment income, donations of equipment, and contributions (approximately 2% combined). In FY 2014, KUCR's total income was approximately $163,600,000, of which

approximately $151,000 – or 93% - was derived directly from sponsored research activities conducted by the University of Kansas. The remaining sources of income were essentially the same as in 2014.

Once again, a comparison to the facts in *Sikkenga* illustrate the importance of this factor in analyzing the arm-of-the-state immunity to be afforded a separate entity with ties to a recognized arm of the state, such as a state university. In *Sikkenga*, the Tenth Circuit not that the laboratory in question had a history of "complex, intertwined relationships for funding capital improvement projects" with the University of Utah, much like KUCR has had with the University of Kansas. Similarly, the Tenth Circuit noted that the laboratory's financial statements are audited by independent accountants and subsequently included in the financial statements of the University of Utah, again much like the relationship between KUCR and the University of Kansas.

However, the similarities between the two cases stops there. In *Sikkenga*, the Tenth Circuit then noted that:

> Nevertheless, it is clear that since 1989, [the laboratory] has been self-sustaining, generating operating funds and profit through its commercial activity. It is equally clear that [the laboratory]'s substantial surplus flows to the University rather than vice-versa. When, as here, an entity is privatized and is structured to achieve financial independence from the state entity which owns it, we will not disregard its structure merely because the state retains proprietorial title to its asset. From our review of the record, we conclude that [the laboratory] was designed to be not only self-sustaining, but a commercial "profit center" for the University Medical Center.

*Sikkenga*, 472 F.3d at 721. The Court, in this case, is faced with the polar opposite of the situation that presented itself in *Sikkenga* on this important issue. KUCR is not, and by its very nature and purpose cannot, be self-sustaining. KUCR does not generate operating funds and profit through any sort of commercial activity separate from the services it provides directly to the University of Kansas. Unlike the laboratory in *Sikkenga*, KUCR is not, in any way, "an entity privatized and structured to achieve financial independence from the state entity which owns it . . . ." Rather,

KUCR is designed and operated as a financial tool whose sole purpose is to service the University of Kansas' research efforts and assist in administering sponsored research grant funds.

Although KUCR believes that the analysis of its finances under the framework utilized by the Tenth Circuit in *Sikkenga* points in favor of KUCR being an arm of the state, there were certain issues raised by the Court in its prior decision in this matter that KUCR will address.

One of the issues raised previously concerned the revenue bonds that KUCR used to finance the construction of research facilities at the University of Kansas. KUCR did not have the authority to issue the bonds by itself, but instead was required to work through the Kansas Development Finance Authority. In addition, although K.S.A. 65-783(i) indicates that the state is not liable for the repayments of the bonds, the University of Kansas is contractually liable to repay the debt on those bonds pursuant to its amended affiliation agreement with KUCR. In addition, the source of the funds to repay the bond debt is the F&A payments received by KUCR in connection with the sponsored research conducted by the University of Kansas. The F&A funds are moneys paid to the University, through KUCR, to offset indirect costs associated with the University's research activity. The University of Kansas has elected to reinvest those F&A funds into its research activities (including the building of research facilities through the issues of the bonds issued by KUCR). Therefore, the ultimate responsibility for the repayment of the bonds, and the funds used to make the ongoing debt payments, lies with the University of Kansas.

Another issue the Court considered when analyzing the third factor of the arm-of-the-state analysis was whether the State of Kansas would be liable for any judgment rendered against KUCR. Although the factors involving the degree of state funding received and the governmental unit's ability to issue bonds and levy taxes on its own behalf "overlap somewhat with the question of whether a judgment against the [defendant] would be paid out of the state treasury . . .

uncertainty as to liability does not preclude consideration of other aspects of the financial relationship between state and entity . . . to provide guidance in applying [the] arm-of-the-state analysis." *Sturdevant*, 218 F.3d at 1171. Therefore, although K.S.A. 76-734 provides that the State of Kansas is not liable for the debts of KUCR – the Court is to go beyond this fact and analyze the financial structure of KUCR in determining whether it operates as an arm of the state.

Finally, the Court addressed the fact that the affiliation agreement between the University and KUCR provides that the University will retain liability for its faculty and staff, as well as for its agents and employees with liability for both subject to Kansas Tort Claims Act limitations. On the other hand, KUCR is required to purchase liability insurance to cover its operations. The fact that the University of Kansas has agreed to maintain liability for all of the actions taken by its employees who are providing services to KUCR directly impacts the question of potential liability in this case. Plaintiff was an employee of the University of Kansas, and was terminated from that employment through the decisions and actions of other University of Kansas employees acting in the scope of their University employment. Therefore, in the event Plaintiff ultimately prevails on his claims in this case, the University would be contractually responsible for any judgment rendered against KUCR – just as the University is contractually liable to repay the bond debt in the event KUCR is unable to do so. Although Kansas statutes may not impose liability directly on the University of Kansas for potential debts against KUCR, the affiliation agreement between the two parties clearly does. With regard to the fact that KUCR is required to maintain insurance, it is unclear whether such insurance would be applicable in this case given the nature of the claims.

In addition, any tort liability that could be imposed on individuals performing functions on behalf of KUCR would fall the Kansas Tort Claims Act. With limited exceptions, The Kansas Tort Claims Act imposes liability on a governmental entity for wrongful acts or omissions of its

employees when an employee is acting within the scope of his employment. K.S.A. 75-6109. Again, KUCR has no employees. Any individual engaging in conduct related to activities of KUCR would be an employee of the University of Kansas. Therefore, liability imposed on any individual in this case, would be the financial responsibility of the University of Kansas through the Kansas Tort Claims Act.

When reviewing the financial structure of KUCR, it is clear that it functions as an arm of the state. Although the State of Kansas is not statutorily directly liable for debts of KUCR, the University of Kansas is contractually liable to KUCR for any debts arising out of the actions of University employees, as well as for the debts associated with the bonds issued by KUCR to build research facilities on the University's campus. In addition, KUCR is clearly not a financially independent entity drawing revenue from commercial activities or other outside interests. Instead, KUCR's operations are financed almost exclusively by grant money awarded to the University of Kansas through grants and applications that KUCR submits on behalf of the University. Based on this analysis, it is clear that the financial considerations point in favor of KUCR being found to be an arm of the state.

### D.    State or Local Concern

The final factor to be considered by the Court in analyzing whether KUCR is primarily concerned with state affairs as opposed to matters of local concern. As noted by the Court in ruling on the motion to dismiss, KUCR's Articles of Incorporation show that it was organized for the sole purpose of "meeting the object to 'promote scientific and educational development by encouraging, fostering and conducting scholarly investigations and industrial and other types of research at The University of Kansas by the faculty, staff and students thereof, and those associated therewith.'" *Moore*, 2015 WL 5010087 at *11. In addition, it is unquestioned that the performance

of scientific research at the state educational institutions is "deemed 'essential to promote the economic development of' Kansas." *Id.* (citing K.S.A. 76-778(a)(1)). Therefore, it is clear that KUCR's activities are entirely focused on matters of state concern, as opposed to local concern.

In its previous ruling, the Court did, however, question the weight to be given to this factor because the factor seems oriented to distinguish between levels of governmental entities and not to discerning whether a corporate entity is functioning as an alter ego or instrumentality of the state. Defendants respectfully submit that this factor is, in fact, extremely relevant to the arm-of-the-state analysis currently before the Court. The ultimate issue the Court must determine is whether KUCR should be considered an instrumentality or alter ego of the state – particularly the University of Kansas. KUCR's sole purpose and sole function is the furtherance of a matter that has been deemed "essential to promote the economic development of" Kansas. The fact that KUCR's sole purpose is to assist the University of Kansas (a well-established arm of the state) in furthering a matter deemed "essential" to the State of Kansas, is a strong indicator that KUCR is an instrumentality of the state and should be found to be an arm of the state entitled to Eleventh Amendment immunity.

### E.     Other Considerations

KUCR respectfully submits that all of the factors the Court must consider point to the fact that KUCR, as an instrumentality of the University of Kansas, is an arm of the state and entitled to Eleventh Amendment immunity. However, in the event the Court were to find that one or more factors point in the opposite direction, KUCR submits the following additional considerations strongly support a finding that KUCR is an arm of the state.

As the Court noted in its initial order on this matter, when the factors outlined above point in different directions, "the Eleventh Amendment's twin reasons remain our prime guide." *Hess v.*

*Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 47 (1994).  Those twin reasons are that the federal court judgments not deplete the state treasury and that the "dignity" of the states be preserved. *Id.* In making this analysis, the Tenth Circuit has provided further guidance, reminding district courts that, "[b]ecause of the open-ended nature of the arm-of-the-state analysis, it is easy to become caught up in the minutiae of state law . . . . These details, however, must not eclipse a fundamental distinction that emerges from *Mt. Healthy* and the cases that follow it – between alter egos or instrumentalities of states on one hand, and political subdivisions such as cities and counties on the other." *Sturdevant*, 218 F.3d at 1170. In other words, when analyzing whether an entity should be considered an arm of the state, the Court must not lose sight of the forest for the trees.

Applying these considerations in this case, it is clear that KUCR should be considered an "instrumentality of the state" and entitled to Eleventh Amendment immunity. KUCR exists for one purpose, to administer research grants awarded to the University of Kansas. KUCR has no employees and is operated and controlled by University of Kansas personnel. All of KUCR's finances and purchasing are managed through the University's financial system and purchasing process. KUCR submits grant applications on behalf of the University, and all funds received by KUCR are used solely to further the research mission of the University. Although KUCR a separate legal entity under Kansas law, it is not a stand-alone entity that could survive without the University of Kansas. In every conceivable way, KUCR is simply a tool – or instrumentality – of the University of Kansas that is used to further the University's research mission and goals.

Although judgments rendered against KUCR may theoretically be paid out of its cash reserves, as opposed to being paid directly from the State treasury, it is important to recognize that those cash reserves are made up almost entirely from grant funds awarded to the University of

Kansas through KUCR. Although the University of Kansas has the discretion to use those funds to cover any general overhead costs associated with the grant process, such as using it to fund the University's library or central computer system, the University of Kansas has elected to reinvest those funds into research. Therefore, to the extent any judgment has to be paid by KUCR, the money for said judgment would come directly from funds utilized by the University for its research purposes.

When viewing KUCR's purpose, structure, governance, and financing as a whole, it is abundantly clear that KUCR serves as an arm of the University of Kansas, and thus an arm of the state.

## V.       CONCLUSION

For the reasons set forth above, the University of Kansas Center for Research, Inc. respectfully requests that the Court enter an order affirming its status as an arm of the state, and finding that the Eleventh Amendment of the United States Constitution affords it immunity from any claim for monetary damages in this case. As the uncontroverted facts show, KUCR, in both its design and function, is merely a tool utilized by the University of Kansas to administer sponsored research conducted by the University. Therefore, KUCR is entitled to summary judgment on this issue.

**FISHER, PATTERSON, SAYLER & SMITH, LLP**
3550 S.W. 5th Street
Topeka, Kansas  66606
Office:  (785) 232-7761 | Fax: (785) 232-6604
E-Mail:      dcooper@fisherpatterson.com
                   kgrauberger@fisherpatterson.com


**s/Kevin J. Grauberger**
David R. Cooper                                    #16690
Kevin J. Grauberger                              #18763
**ATTORNEYS FOR DEFENDANTS**


## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing on the 25th day of March, 2016, with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Daniel R. Cofran
Attorney at Law
1000 W. 70th Street
Kansas City, Missouri 64113
dcofran@swbell.net
**ATTORNEYS FOR PLAINTIFF**

and a chamber's copy (paper copy, pursuant to Judge Crow's Standing Order Pertaining to CM/ECF) was hand delivered to:

Honorable Sam A. Crow
U. S. District Senior Judge
UNITED STATES DISTRICT COURT
444 SE Quincy Street, Suite 430
Topeka, Kansas  66683


**s/Kevin J. Grauberger**
112.30413                                    Kevin J. Grauberger

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

DAVID S. MOORE,                               )
                                              )
                              Plaintiff,      )
                                              )
              v.                              )        Case No. 2:14-cv-02420-SAC-KGS
                                              )
THE UNIVERSITY OF KANSAS, ET AL.,             )
                                              )
                              Defendants.     )

**INDEX OF EXHIBITS IN SUPPORT OF DEFENDANT UNIVERSITY OF KANSAS
CENTER FOR RESEARCH'S MOTION FOR SUMMARY JUDGMENT**

| Exh. No. | Description | Page Nos. |
|---|---|---|
| A | Restated Articles, Art. Second, KU 24 | |
| B | Amendments to Articles, KU 42 | |
| C | Diane Goddard Deposition Excerpts | 1, 11-13, 19, 26-27, 30-35, 46, 37, 73-74, 113-115, 118, 120-121 |
| D | KUCR Bylaws [2006] Article III, § 1, KU 45 | |
| E | KUCR 2015 Board of Trustees Executive Committee, KU 001698 | |
| F | KU and KUCR Employee Services Agreement, KU 49 | |
| G | KU-KUCR Affiliation Agreement, ¶ 6, KU 62 | |
| H | KUCR Financial Statement for FY 2015 | |
| I | Theresa Gordzica Deposition Excerpts | 1, 26, 35 |
| J | First Amendment to Affiliation Agreement at ¶5, KU 69 | |