**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS**
**AT KANSAS CITY, KANSAS**

| | | |
|---|---|---|
| DAVID S. MOORE, Ph.D., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:14-CV-02420-SAC-KGS |
| | ) | |
| vs. | ) | Hon. Sam A. Crow |
| | ) | |
| THE UNIVERSITY OF KANSAS, *et al*., | ) | Hon. K. Gary Sebelius |
| | ) | |
| Defendants. | ) | |

*Filed Electronically CM/ECF*

**PLAINTIFF'S MOTION TO AMEND SCHEDULING ORDER**
**TO TAKE MORE THAN FIFTEEN DEPOSITIONS**

COMES NOW plaintiff David S. Moore, Ph.D., by and through his attorney, and herewith moves that the Court Amend the original Scheduling Order (ECF No. 21) in this cause to allow him to take more than fifteen depositions as set forth in the original *Scheduling Order* (ECF No. 21). In support of this motion, plaintiff states as follows:

**Statement of Facts**

1. This is a disability, whistleblower and 42 U.S.C.A. Sec. 1983 employment discrimination, hostile work environment and retaliation action by David S. Moore, Ph.D., who for eight years was the Director of the University of Kansas Microscopy and Analytical Imaging laboratory ("MAI Lab") against the University of Kansas ("University"), the University of Kansas Center for Research, Inc. ("Center for Research") and three of Dr. Moore's superiors arising from his suspension and discharge.

2. While plaintiff is a life-long Attention Deficit Hyperactivity Disorder ("ADHD") sufferer, he has managed his disorder to the point that he became a highly regarded and published scientist at the University and the Center for Research as the Director of the MAI Lab, a highly sophisticated electron microscopy and spectrometry facility serving and conducting life sciences and materials research for over 700 registered scientists.

3. The facts in this case are complicated and focus on the last five years (2008 – 2013) of plaintiff's 17-year employment as a scientist with the University and the Center for Research.

1

4. The University and the Center for Research suspended plaintiff in September 2013 without pay for four weeks and fired him the following month, while his appeal to a University board was pending, based on allegations on unprofessional conduct and communications, disruptive behavior, outbursts, inappropriate misconduct, late submission of materials and failure to use proper contracting forms, allegedly documented by a 1,421 page, six volume "Agency Record" [1] including five years of emails and other documents from or referring to 47 University and other persons prepared after the fact to justify the University's and the Center's actions.

5. Plaintiff's highly detailed 131-page *Second Amended Complaint for Disability Discrimination and Retaliation, Whistleblowing Retaliation and Deprivation of Constitutional Rights* (ECF No. 90) is in six counts under the federal Americans with Disabilities Act, 42, U.S.C. Secs. 12,101, *et seq*. (Count One); the federal Rehabilitation, Comprehensive Services and Developmental Disabilities Act, 29 U.S.C. Sec. 701, *et seq.* (Count Two); the federal Pilot Program for Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information under the National Defense Authorization Act for Fiscal Year 2013, 41 U.S.C. Sec. 4712 (Count Three); the federal False Claims Act, 41 U.S.C. 3730(h) (Count Four); and the federal Civil Rights Act, 42 U.S.C. Sec. 1983 (Counts Five and Six).

6. Plaintiff's *Second Amended Complaint* (ECF No. 90) lists and describes in detail over 28 separate specifications of University and Center for Research misconduct and violations of law in five whistleblower categories, namely: Federal Funds Mismanagement,[2] Plagiarism,[3] Laboratory Renovations Mismanagement,[4] Research Bias[5] and Diversion of Scientific Instrument Funds[6] that he over the years

---

[1] The *Agency Record* was submitted after the fact as part of plaintiff's state court action for, *inter alia*, judicial review of his suspension and discharge under the Kansas Judicial Review Act, K.S.A. Secs. 77-601, *et seq.,* in the action *David S. Moore, Ph.D. v. University of Kansas, et al.,* Case No. 2013-CV-00535, District Court of Douglas County, Kansas. This case was voluntarily dismissed without prejudice in order to pursue more complete claims in this Court after receiving a notice-of-right-to-sue letter from the EEOC.

[2] Eighteen specifications, *see Second Amended Complaint* (ECF No. 90), paras. 114 - 123.

[3] Four specifications, *see Second Amended Complaint* (ECF No. 90), paras. 127 - 131.

[4] Two specifications, *see Second Amended Complaint* (ECF No. 90), para. 125.

[5] Three specifications, *see Second Amended Complaint* (ECF No. 90), paras. 146 - 148.

[6] One specification, *see Second Amended Complaint* (ECF No. 90), paras 149 - 152.

repeatedly raised with his unresponsive superiors supporting his claims of whistleblowing retaliation and pretext for his suspension and discipline.

7.   The parties are limited to 15 depositions each under the original *Scheduling Order* (ECF No. 21).

8.   Plaintiff proposes taking 47 depositions, over half of which, however, *viz.*, 32, are short "occurrence witness"[7] depositions (.5 to 1.0 hour each that can be taken several at a time). The remaining 15 depositions are consistent with the limitation set forth in the original *Scheduling Order* (ECF No. 21), *viz.,* 15 depositions two to seven hours long of individual defendants, non-party mid-level University and Center for Research managers, and non-party mid-level University and Center for Research professionals.

9.   Plaintiff has shared with defendants a draft of *Plaintiff's Deposition Plan* for the 47 witnesses and how to he wishes to schedule them within the June 1, 2015 through August 31, 2016 time frame for taking depositions as set forth in the parties' *Joint Proposed Second Amended Scheduling Order* (ECF No. 159) filed contemporaneously with this *Motion to Amend Scheduling Order Take More than Fifteen Depositions.* Other than the full day depositions of two individual defendants, most of the depositions, ranging from .5 to 2.0 hours each (plus four at 4.0 hours each), can be combined into half-day sittings.  *See Plaintiff's Deposition Plan*, attached hereto as Exhibit A.

## Question Presented

10.   Whether there is good cause to increase the number of depositions plaintiff may take from 15 to 47.  Fed.R.Civ.P. 16(b)(4).

## Argument

11.   A scheduling order "may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4).  Most decisions addressing amendments to scheduling orders deal with requests to

---

[7] For example, persons attending meetings or being in conversations at or in which plaintiff is accused of acting unprofessionally and meetings at which plaintiff raised his concerns about Federal Funds Mismanagement, *e.g.,* "who said what and when and how did he or she conduct himself or herself?"

3

extend discovery deadlines, a situation somewhat different than a request to increase the permitted number of depositions.

12. In the former category, courts in this district look to the "diligence" of the party seeking the amendment, a showing of "good faith" and a "reasonable basis" for not meeting a deadline, together with the observation that "lack of prejudice" to the non-moving party is not a proper factor. *Auto Club Family Insurance Company v. Allgood*, Case No. 11-2079-GLR (D.Kan., December 2, 2011).

13. Courts also look to the "complexity" of a case. *MGPI Processing, Inc. v. Penford Corporation*, Case No. 14-2634-CM-GLR (D. Kan., January 21, 2016).

14. While not a civil scheduling order decision, the Court in *United States v. Albright*, 115 F.Supp.2d 1271 (D.Kan. 2000), reviewed "good cause" determinations in a variety of contexts and noted, *inter alia*, that "good cause" factors include a "valid reason," a "good faith, substantial reason," and the "diligence" of the moving party. "Good cause" cannot be based on "simple mistake, inadvertence, or neglect." *Id.* at 1274 – 1275.

15. Plaintiff's request is made in good faith and is for substantial reasons as detailed below. This is a complicated case, indeed, made so by defendants' 1,421 page *Agency Record* referring to 47 University, Center for Research and other persons allegedly with knowledge or otherwise involved with the conduct offered in support of the suspension and termination decisions.

16. Plaintiff has culled his 65-person Rule 26(a) *List of Persons Who May Have Discoverable Information* down to 47 persons and has further broken that list down into 15 "Employment Relationship Witnesses" with 2.0 to 7.0 hour depositions, consistent with the original *Scheduling Order* (ECF No. 21) and much shorter "Occurrence Witness" depositions of only .5 to 1.0 hour each that can be taken several at a time.

17. Plaintiff's request is timely. The court at the January 16, 2015 scheduling conference set the deposition limit at 15 per party, but indicated the question could be revisited once the parties got into discovery. The parties are just now beginning discovery on the merits, having spent an extended period

of time first dealing with Eleventh Amendment immunity motion practice, immunity discovery and now renewed immunity motion practice following discovery on the threshold immunity question. Plaintiff's counsel has studied the 1,421 page *Agency Record* and other materials closely, together with interviewing plaintiff, and is comfortable that he has identified the most important persons to be examined under oath and for how long in order for plaintiff to have a full and fair hearing of his claims.

18.     The facts and long time period for the record supporting the *Second Amended Complaint* (ECF No. 90), for both (a) asserting plaintiff's disability and whistleblower claims and (b) refuting defendants' allegations of unprofessional and disruptive conduct, late report submission, failure to use correct contacting forms, etc. are extensive, making a total fifteen depositions insufficient.

19.     The *List of Individuals Likely to Have Discoverable Information* in *Plaintiff's Initial Rule 26(a) Disclosures* identifies 65 persons with discoverable information. Most of these persons, *viz.,* 47 (72%) are from the University's own 1,421 page, six-volume after-the-fact *Agency Record* submitted to plaintiff as its record justifying plaintiff's suspension and discharge. The other 18 persons, *not* included by the University in the *Agency Record*, include persons supporting plaintiff's positions in this action.

20.     Plaintiff's 47 persons to be deposed have been divided into "Employment Relationship Witnesses" (15 persons) and "Occurrence Witnesses" (32 persons), as set forth the in the following paragraphs:

*Employment Relationship Witnesses*

21.     Fifteen "Employment Relationship" Witnesses covering the employer-employee relationship and events primarily over the last five years of plaintiff's tenure as Director of the MAI Lab, including identifying information, projected deposition length and whether they are in the *Agency Record*[8] set forth on the table on the following page.

---

[8] Identified as "Yes" in the "Adm Record" column.

5

| Plaintiff's Deposition Plan ||||||||
| Employment Relationship Witnesses ||||||||
| No. | First | Last | Organization | Affiliation | Subject | Dep. Hrs. | Adm Record |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 1 | Joseph | Heppert, Ph.D.  Δ | Univ Kansas | Research & Grad Studies | All Issues | 7.0 | Yes |
| 2 | Steven | Warren, Ph.D.  Δ | Univ Kansas | On Leave | All Issues | 7.0 | Yes |
| 3 | Representative | Huron Consulting Grp | Huron Consulting Grp | Bus. Consultant to Center | Federal Funds Mismanagement | 4.0 | |
| 4 | Mark | Reynolds | Univ Kansas | College Liberal Arts & Science | Federal Funds Mismanagement | 4.0 | Yes |
| 5 | Linda | Sadler | Univ Kansas | Research & Grad Studies | Federal Funds Mismanagement | 4.0 | Yes |
| 6 | Scott | Weir, Ph.D. | Univ Kansas | Pharm, Toxic & Therapeutics | Plagiarism; Nonpayment for Services | 4.0 | Yes |
| 7 | Defendants ADHD Expert If Any | | Unknown | Unknown | ADHD | 2.0 | |
| 8 | Jeffrey | Vitter, Ph.D.  Δ | Univ Kansas | Office of Provost | All Issues | 2.0 | Yes |
| 9 | Elizabeth | Bennett-Monroe | Univ Kansas | Research & Grad Studies | Federal Funds Mismanagement | 2.0 | Yes |
| 10 | Katrina | Yoakum | Univ Kansas | Research & Grad Studies | Federal Funds Mismanagement | 2.0 | Yes |
| 11 | Heather | Shinogle | Univ Kansas | Microscopy Anal & Imag Lab | Funds Mismanagement; Peer Relationships | 2.0 | Yes |
| 12 | Deb | Mitra | Univ Kansas | Research & Grad Studies | Funds Mismanagement; Updated Billing | 2.0 | Yes |
| 13 | George | Wilson, Ph.D. | Retired KU | Research & Grad Studies | Knowledge of ADHD | 2.0 | Yes |
| 14 | Mark | Reiske | Univ Kansas | Design & Const Mgt | Lab Renovation Mismanagement | 2.0 | Yes |
| 15 | Sitta | Sittampalam, Ph.D. | NIH | Natl Ctr Adv Trans Sci | Plagiarism; Nonpayment for Services | 2.0 | Yes |

(a)     Two full-day (7.0 hours) depositions are projected for the following:

(i)     *Defendants Drs. Heppert and Warren* (Nos. 1 and 2), are plaintiff's immediate superiors. They are the two principal actors in his suspension and discharge who dealt with plaintiff extensively over the years in question. They are knowledgeable about all issues in the case.

(b)     Half-day (4.0 hours) depositions are projected for the following:

(i)     *The Huron Consulting Group, Inc.* (No. 3) is a national business consulting firm that reviewed the business and federal grant administration practices of the Center for Research and, on information and belief, identified the same or similar Federal Funds Mismanagement problems as plaintiff had persistently raised, demonstrating the reasonableness of plaintiff's financial administration concerns. *See for example Second Amended Complaint*, paras. 112. This will be a Rule 30(b)(6) deposition.

(ii)     *Mark Reynolds* (No. 4) was controller for the Center for Research until 2012. Mr. Reynolds was responsible for maintaining "two sets of books" in the Center for Research, supporting what one employee described as amounting to "money laundering" and who admitted that the business office of the Center for Research had not provided the financial services Core Labs like plaintiff's were to receive and were paying

6

for, just as plaintiff had persistently raised with his superiors over the years. Mr. Reynolds and plaintiff met and otherwise communicated with each other numerous times. *See for example Second Amended Complaint*, paras. 115 and 121.

(iii)   *Linda Sadler* (No. 5) was an administrator in the Center for Research business office. She became its chief financial officer in 2012. Ms. Sadler has knowledge about the "two sets of books," Federal Funds Mismanagement and other accounting mismanagement problems plaintiff raised, as well as plaintiff's and others' submission of updated billing rates for scientific equipment in Core Labs. Ms. Sadler and plaintiff met and otherwise communicated with each other numerous times. *See for example Second Amended Complaint*, paras. 115, 118, 121 and 122.

(iv)   *Scott Weir* (No. 6) was a principal in the University's and the Center for Research's Commercialized Medical Research effort to make money from University and Center biomedical research. Research for much of this was done in plaintiff's MAI Lab. Plaintiff had disagreements with Dr. Weir about not his paying for work, plagiarism and related matters, resulting in Dr. Weir's publicly criticizing plaintiff and reportedly trying to get plaintiff fired. *See for example Second Amended Complaint*, paras. 81, 82, 128 and 140.

22.   Two-hour depositions are projected for the following:

(i)   *Jeffery Vitter* (No. 8) was the University's Provost and Executive Vice Chancellor at the time. Drs. Heppert and Warren reported to Dr. Vitter. Dr. Vitter suspended Dr. Moore for four weeks without pay in September 2013, presumably based on information provided by Drs. Heppert and Warren. Depending on Drs. Heppert's and Warren's testimony about Dr. Vitter's involvement with the suspension and firing, plaintiff expects that Dr. Vitter's deposition will not take a full day and, accordingly, projects this to be a two-hour deposition.

7

    (ii) *Elizabeth Bennett-Monroe* (No. 9) was a business/administration liaison for the Core Labs like the MAI Lab from the Center for Research. Dr. Moore and other Core Lab experts were openly critical of Ms. Bennett-Moore's time being diverted and her not providing the services she was supposed to and how her position was funded, two of Dr. Moore's whistleblowing complaints. *See for example Second Amended Complaint*, paras. 118 and 121.

    (iii) *Katrina Yocum* (No. 10) was Comptroller for the University and is knowledgeable about University and Center for Research federal funding as to which plaintiff's concerns about the Federal Funds Mismanagement are based. At one point plaintiff had to take his unanswered concerns about the Federal Funds Mismanagement to Ms. Yocum, drawing the ire of Drs. Heppert and Warren, according to the *Agency Record.*

    (iv) *Heather Shinogle* (No. 11) was plaintiff's assistant in the MAI Lab and has knowledge about, *inter alia*, plaintiff's relationships with lab users, peers and superiors; conduct of other lab users; financial accounting problems with the Center for Research; problems with the Center for Research updating billing rates for lab instruments; contracting procedures; MAI Lab renovation mismanagement; and related matters.

    (v) *Deb Mitra* (No. 12) was a fiscal analyst with the business office of the Center for Research. She is knowledgeable about the "two sets of books," Federal Funds Mismanagement and other accounting mismanagement plaintiff raised, as well as plaintiff's and others' submission of updated billing rates for scientific equipment in Core Labs.

    (vi) *George Wilson, Ph.D.* (No. 13) was plaintiff's supervisor from 2005, when plaintiff became Director of the MAI Lab, until 2010 when supervisory authority

changed over the year to Dr. Heppert. Dr. Wilson is knowledgeable about the quality of plaintiff's work, his ADHD, relationships with peers, financial administration problems with the Center for Research and use of laboratory instruments.

(vii)   *Mark Reiske* (No. 14) was a principal contact with the University's Office of Design and Construction Management, particularly for the MAI Lab Renovation. Mr. Reiske is knowledge about plaintiff's expressions of concern about MAI Lab Renovation Mismanagement.

(viii)   *Sitta Sittampalam, Ph.D.* (No. 15) was a deputy to Dr. Weir in the Commercialized Medical Research program. Dr. Sittampalam is knowledgeable about the University's and the Center for Research's Commercialized Medical Research program, research for much of which was done in plaintiff's MAI Lab and with whom plaintiff had disagreements about not paying for work, plagiarism and related matters. *See for example Second Amended Complaint*, paras. 81, 82, 128 and 140.

(ix)   *Defendants' AHD Expert Witness* (No. 7) if any. In the event defendants retain an expert to testify about plaintiff's ADHD or ADHD generally, plaintiff will need to depose their expert.

*Occurrence Witnesses*

23.   Plaintiff plans 32 short, *e.g.,* .5 to 1.0 hour each, "Occurrence Witness" depositions of persons who were in meetings or otherwise witnessed specific events in or at which:

(a)   Defendants claim plaintiff acted unprofessionally, turned in materials late, didn't follow contracting procedures, etc.;

(b)   Plaintiff informed persons of his ADHD condition; or

(c)   Plaintiff's claims regarding Federal Funds Mismanagement, Plagiarism, Laboratory Renovations Mismanagement, Research Bias and Diversion of Scientific Instrument

9

Funds or otherwise refute defendants' reasons for suspending and firing him were discussed or are persons with knowledge of such issues.

24.     These are primarily "who said what, when, where and how" and "how did he or she comport himself or herself" depositions. While these are the kinds of witnesses plaintiff otherwise would interview and from whom he would secure statements, all but seven are "represented persons" as University/Center for Research employees and, therefore, plaintiff and counsel cannot contact them informally. In addition, at least three of these persons are now in distant parts of the United States and plaintiff will need to take their evidence depositions. The following table lists these persons.

| Plaintiff's Deposition Plan | | | | | | |
|---|---|---|---|---|---|---|
| *Occurrence Witnesses* | | | | | | |
| No. | First | Last | Organization Affiliation | Affiliation | Subject | Dep. Hrs. | Adm Record |
| 16 | Representative | Inst. Oppor & Access | Univ Kansas | Inst. Oppor & Access | ADHD Knowledge | 1.0 | |
| 17 | Eli | Michaelis, Ph.D. | Univ Kansas | Higuchi Biosciences Ctr | ADHD Knowledge | 1.0 | |
| 18 | Anand | Ramanathan | Univ Kansas | Ctr Env Beneficial Catalysis | Bala Subramanium Incident | 1.0 | |
| 19 | Bala | Subramaniam, Ph.D. | Univ Kansas | Ctr Env Beneficial Catalysis | Bala Subramanium Incident | 1.0 | Yes |
| 20 | Jen | Haaga Taylor | Univ Kansas | Research & Grad Studies | Contracting | 1.0 | Yes |
| 21 | Julie | Nagel | Univ Kansas | Research & Grad Studies | Contracting; Funds Mismanagement | 1.0 | Yes |
| 22 | Corey | Berkland, Ph.D. | Univ Kansas | Chem Pet Eng & Pharma Chem | Failure to record instrument use | 1.0 | Yes |
| 23 | Rodolpho | Torres, Ph.D. | Univ Kansas | Research & Grad Studies | False Instrument Booking Inquiry; Unprofess | 1.0 | Yes |
| 24 | Dewey | Barrich | Glaxo-Smith-Kline | Former KU NMR Lab Director | False Instrument Booking; Unprofessional C | 1.0 | Yes |
| 25 | Janet | Good | Univ Kansas | Research & Grad Studies | False Instrument Booking; Unprofessional C | 1.0 | Yes |
| 26 | Todd | Williams, Ph.D. | Univ Kansas | Molecular Structures Group | False Instrument Booking; Unprofessional C | 1.0 | Yes |
| 27 | Susan | Sloop | Higuchi Bioscience | Former employee | Federal Funds Mismanagement | 1.0 | |
| 28 | Prem | Thapa | Univ Kansas | Microscopy Anal & Imag Lab | Peer Relationships; Gamblin Incident | 1.0 | Yes |
| 29 | Gerry | Lushington, Ph.D. | | Former KU Scientist | Plagiarism | 1.0 | Yes |
| 30 | Kristi | Neufeld, Ph.D. | Univ Kansas Med Ctr | Univ Kansas Cancer Ctr | Plagiarism | 1.0 | Yes |
| 31 | Nick | Stevens | Univ Kansas | Shared Services Ctr Admin | Problems with ITT Cooperation | 1.0 | Yes |
| 32 | Christopher | Gamblin, Ph.D. | Univ Kansas | Molecular Bioscience | Unprofessional Conduct | 1.0 | Yes |
| 33 | Bob | Hanzlik | Univ Kansas | Center of Biomedical Researc | Unprofessional Conduct; Lab Management | 1.0 | Yes |
| 34 | Scott | Hefty | Univ Kansas | Molecular Biosciences | Unprofessional Conduct; Lab Management | 1.0 | Yes |
| 35 | Vicky | Corbin | Clemson Univ | Biological Sciences | ADHD Knowledge | 0.5 | |
| 36 | Robert | Dunn, Ph.D. | Univ Kansas | Dept Chemistry | ADHD Knowledge | 0.5 | |
| 37 | Eric | Elsinghorst | Univ Kansas Med Ctr | Molecular Biotechnology | ADHD Knowledge | 0.5 | |
| 38 | Robert | Ward, Ph.D. | Univ Kansas | Molecular Bioscience | ADHD Knowledge | 0.5 | |
| 39 | Annbanandam | Asokan | Univ Kansas | Bio Nuclear Mag Res Lab | False Instrument Booking; Unprofessional C | 0.5 | |
| 40 | Victor | Day, Ph.D. | Univ Kansas | X-Ray Crystal Lab | False Instrument Booking; Unprofessional C | 0.5 | |
| 41 | Phil | Gao, Ph.D. | Univ Kansas | Protein Production Lab | False Instrument Booking; Unprofessional C | 0.5 | Yes |
| 42 | Scott | Lovell, Ph.D. | Univ Kansas | PXR Group | False Instrument Booking; Unprofessional C | 0.5 | Yes |
| 43 | Anu | Purta, Ph.D. | Univ Kansas | High Throughput Screeng Lab | False Instrument Booking; Unprofessional C | 0.5 | Yes |
| 44 | Ken | Ratzlaff, Ph.D. | Univ Kansas | Instrument Design Lab | False Instrument Booking; Unprofessional C | 0.5 | Yes |
| 45 | Aaron | Smalter, Ph.D. | Federal Reserve Bank | Former Lab Director | False Instrument Booking; Unprofessional C | 0.5 | |
| 46 | Rick | McMullen, Ph.D. | Univ Arkansas | Computer Science | Problems with ITT Cooperation | 0.5 | |
| 47 | Heppert Secretar | Teresa Kopsa? | Univ Kansas | Research & Grad Studies | Unprofessional Conduct | 0.5 | |

**Fed.R.Civ.P. 37(a) and D. Kan. Rule 37.3**
**"Duty to Confer" Certification**

25.     Plaintiff hereby certifies that the undersigned legal counsel has conferred with legal counsel for the defendants about this request, specifically, as part of the parties' conferring to submit to the Court a joint proposed scheduling order amending the discovery and trial preparation schedule in this case. In that regard:

10

(a) The undersigned on Wednesday, March 23, 2016, submitted to legal counsel for defendants an email summary of proposed discovery and trial preparation date amendments to the scheduling order in this case, attaching a revision to plaintiff's Rule 26(a) *List of Persons Who May Have Discoverable Information* of 65 persons, identifying 47 persons to be deposed, including reasons for their being deposed, deposition durations and a scheduling methodology;

(b) The undersigned on Thursday, March 24, 2016, submitted to legal counsel for defendants by email a draft *Joint Proposed Second Amended Scheduling Order* with the same dates and reasons for plaintiff to take the 47 depositions, attaching *Plaintiff's Deposition Plan,* attached as Exhibit A, for the depositions of the 47 persons;

(c) Counsel for defendants telephoned the undersigned on Friday, March 25, 2016 and advised that the various dates in the draft *Joint Proposed Second Amended Scheduling Order* were agreeable to defendants but that he did not know whether at this point in time defendants would agree to plaintiff's taking 47 depositions, to which the undersigned agreed to strike the reference to the 47 depositions and instead separately prepare and submit to the Court a motion to take more than the fifteen depositions allowed under the original scheduling order (this motion); and

(d) Counsel for the undersigned so revised the draft *Joint Proposed Second Amended Scheduling Order* this morning, March 28, 2016 and emailed it to legal counsel the same morning, to which counsel for defendants emailed approval this afternoon, but adding a request that the date for defendants' disclosure of experts be extended from March 31, 2016 to April 30, 2016, to which the undersigned agreed.

Respectfully submitted,

/s/ Daniel R. Cofran
Daniel R. Cofran, Esq.
Kansas Supreme Court Enrollment No. 23258

1000 W. 70th St.
Kansas City, Missouri

Phone:  816-363-1218
Email:   dcofan@swbell.net

ATTORNEY FOR PLAINTIFF DAVID S. MOORE, PH.D.

### Certificate of Service

The undersigned hereby certifies that copies of the above and foregoing *Plaintiff's Motion to Amend Scheduling Order to Take More than Fifteen Depositions* were mailed by first class mail, postage prepaid; or sent by facsimile; hand delivery; electronic mail and/or filing with the Court's EM/ECF electronic filing system, as indicated, this 28th day of March, 2016, to:

David R. Cooper, Esq.                            (By the Court's EM/ECF electronic filing system)
Kevin J. Grauberger, Esq.                      (By CM/ECF Electronic Filing)
Fisher, Patterson, Sayler & Smith, L.L.P.
3550 SW 5th Street
P.O. Box 949
Topeka, Kansas  66601-0949
Attorneys for defendants University of Kansas, University of Kansas Center for Research, Inc., Bernadette Gray-Little, Jeffrey S. Vitter, Steven F. Warren and Joseph P. Heppert.

       /s/ Daniel R. Cofran
       Daniel R. Cofran