**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS
AT KANSAS CITY, KANSAS**

| | | |
|---|---|---|
| DAVID S. MOORE, Ph.D., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:14-CV-02420-SAC-KGS |
| | ) | |
| vs. | ) | Hon. Sam A. Crow |
| | ) | |
| THE UNIVERSITY OF KANSAS, *et al*., | ) | Hon. K. Gary Sebelius |
| | ) | |
| Defendants. | ) | |

**Filed
Electronically
CM/ECF**

**PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
"ARM OF THE STATE" MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.**

COMES NOW plaintiff David S. Moore, Ph.D., by and through his attorney, and for his memorandum opposing the *Motion for Summary Judgment of Defendant University of Kansas Center for Research, Inc.* (ECF. No. 156) and responding to the *Memorandum in Support of University of Kansas Center for Research's Motion for Summary Judgment* (ECF No. 157) based upon the position that defendant University of Kansas Center for Research, Inc. is an "arm of the state" immune to suit in a federal court for money damages under the Eleventh Amendment, U.S. Const., states as follows:

**Nature of the Matter before the Court**

1.      This is a disability, whistleblower and 42 U.S.C.A. Sec. 1983 employment discrimination, hostile work environment and retaliation action by David S. Moore, Ph.D., who for eight years was the Director of the University of Kansas Microscopy and Analytical Imaging laboratory ("MAI Lab") against the University of Kansas ("University"), the University of Kansas Center for Research, Inc. ("KUCR") and three of Dr. Moore's superiors arising from his suspension and discharge.

2.      KUCR has filed a motion for summary judgment claiming it is immune to suit for money damages in a federal court as an "arm of the state" of the State of Kansas under the Eleventh Amendment, U.S. Const.

3.      KUCR earlier filed an "arm of the state" *Motion to Dismiss [of] The University of Kansas Center for Research* (ECF No. 61) based on, *inter alia,* a failure to state a claim and lack of subject matter

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

1

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

jurisdiction based on the Eleventh Amendment.  The Court denied the motion, without prejudice, *Memorandum and Order* (ECF No. 83), based on the need for more factual information to be developed through discovery on this question.

4.     This discovery has been completed with the exception of *Plaintiff's Certified Motion to Overrule Attorney-Client Privilege Objections, Compel Production of Documents by University of Kansas and University of Kansas Center for Research, Inc. and Award Attorneys' Fees* (ECF No. 151). The Court on April 29, 2016 entered its *Order to Show Cause* (ECF No. 183) directing plaintiff to demonstrate why the motion to dismiss should not be denied as untimely.  Plaintiff has until May 20, 2016 to file his response to the show case order and the matter as of this writing remains unresolved.  In the event this motion results in documents being produced relevant to the "arm of the state" question, plaintiff may seek leave to supplement this legal memorandum, subject, of course, to the Court's approval.

5.     In a nutshell, KUCR has not met is burden of proof as both a summary judgment movant and as a party claiming "arm of the state" Eleventh Amendment Immunity.  KUCR meets only one of the "arm of the state" factors, namely, the University controls KUCR.  It falls short on all other factors. KUCR is not authorized or even referred to in state statutes.  The State of Kansas is not liable for its debts, the most important and determinative factor.  It is financially strong and independent of the state, with revenues averaging over $250 million a year, overwhelmingly from the federal government, and a net worth (net assets) of over $40.00 million.  It receives no state appropriations.  It derives less than 3% of its total revenues from state agencies for which it performs fee-for-service sponsored research.  KUCR has offered no evidence how the state's "dignity" will be offended if it is not an "arm of the state."

6.     Indeed, far from being an "arm of the state" and, if anything, in offense to the dignity of the state, KUCR was formed *to be apart from and to distance itself from the state*, specifically to avoid state statutory requirements for depositing sponsored research dollars with the state and, instead, keep its hundreds of millions in revenues and assets out of the hands of the state.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

2

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

7.      There is nothing illegal or wrong with a university-controlled corporation conducting and holding sponsored research revenues and assets to exclude state control of its funds.  Indeed, KUCR has been quite successful and plaintiff is proud to have contributed to that success.  But if it wishes to do so, it cannot accept all the benefits, *e.g.,* freeing itself from state law requirements, but avoid the burdens, *e.g.,* following basic employment discrimination laws.

### Statements of Material Facts

*Defendant's Statement of Material Facts*
*and Plaintiff's Responses*

No. 1.   KUCR is a not for profit corporation organized under the laws of the State of Kansas. (Exhibit A, Restated Articles of Incorporation, KU 24).

*Plaintiff's Response*: Admitted.

No. 2   KUCR's purpose is "to promote scientific and education development by encouraging, fostering, and conducting scholarly investigations and industrial and other types of research at the University of Kansas by the faculty, staff, and students thereof, and those associated therewith . . . ." (Exhibit A, Restated Articles, Art. Second, KU 24).

*Plaintiff's Response*: Admitted.

No. 3.  All KUCR assets and earnings are to be used exclusively for these purposes. (Exhibit B, Amendments to Articles, KU 42).

*Plaintiff's Response*: Admitted.

No. 4.  KUCR is a tool for the University of Kansas that is used to hold all of the federal grants and contracts pertaining to sponsored research for the University of Kansas.[1] (Exhibit C, Diane Goddard Depo. 11:18-22).

*Plaintiff's Response*:  Plaintiff admits that Ms. Goddard and the University see KUCR as a "tool," but this subjective and conclusory characterization constitutes legal argument and is not proper for statement of facts in a motion for summary judgment.

---

[1] The term "sponsored research," as used in this case, means research that is sponsored by an entity outside of the University of Kansas, including state or federal agencies, private corporations, and private or public foundations. (Exhibit C, Goddard Depo. 46:6-21)

**No. 5**.  KUCR was originally formed by the University of Kansas Dean of Engineering to support engineering research. (Exhibit C, Goddard Depo. 37:15-18).

*Plaintiff's Response*:  Admitted.

**No. 6**.  When Robert Hemenway became Chancellor of the University of Kansas, he wanted to expand the purview of KUCR so that all sponsored research could use that tool. (Exhibit C, Goddard Depo. 37:18-22).

*Plaintiff's Response:*  Admitted, but use of the word "tool" is a subjective and conclusory characterization, constitutes legal argument and is not proper for statement of facts in a motion for summary judgment.

No. 7.  The Board of Directors of KUCR is controlled by University of Kansas employees. (Exhibit D, KUCR Bylaws [2006] Article III, § 1, KU 45).

*Plaintiff's Response:*  Plaintiff admits that the bylaws require that the Board of Trustees of KUCR, its governing body, have "an approximately equal number of University and non-University members" and that from time to time there has been one more University member of the Board of Trustees than non-University members of the Board of Trustees.

No. 8.  The Executive Committee Officers are all employees of the University of Kansas. (Exhibit E, KUCR 2015 Board of Trustees Executive Committee, KU 001698; Exhibit D, KUCR Bylaws [2006] Article III, § 1, KU 45).

*Plaintiff's Response:*  Plaintiff admits that under the KUCR bylaws, the Executive Committee is to be composed of ten members, of which at least eight of whom *ex officio* must be University administrators or faculty.

No. 9.  Thirteen of the sixteen members of the Executive Committee to the Board of Directors of KUCR are employees of the University of Kansas. (Exhibit E, KUCR 2015 Board of Trustees Executive Committee, KU 001698).

*Plaintiff's Response*:  Admitted.

No. 10.  KUCR must comply with KU personnel policies and consult with KU's HR/EO office and the University General Counsel as necessary for managing employee misconduct. (Exhibit F, KU and KUCR Employee Services Agreement, KU 49).

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

4

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-cv-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

*Plaintiff's Response:*  Plaintiff admits that under the Employee Services Agreement, not state statutes, KUCR's management of any alleged employee misconduct occurring during a period of services provided to KUCR shall be subject o appropriate University personnel policies in consultation with the Lawrence HT/EO officer as the University General Counsel Office, as necessary.

No 11.  KUCR has no employees. (Exhibit C, Goddard Depo. 11:21-22).

*Plaintiff's Response*:  Denied.  KUCR uses "borrowed servants" under the Employee Services Agreement.  *See also* "Plaintiff's Additional Statement of Facts Not in Dispute," incorporated herein by reference.

No. 12.  KU provides KUCR with the services of University employees. (Exhibit F, KU and KUCR Employee Services Agreement, KU 49.).

*Plaintiff's Response:*  Admitted, as provided in Sec. 1(a) of the Employee Services Agreement.  *See also* "Plaintiff's Additional Statement of Facts Not in Dispute," incorporated herein by reference.

No. 13.  KU is the employer of each employee who provides services to KUCR. (Exhibit F, KU and KUCR Employee Services Agreement, KU 50).

*Plaintiff's Response:*  This is a conclusion of law, not a statement of fact.  However, to move this matter along, plaintiff states that such persons, as "borrowed servants," are employees of both the University and KUCR.  *See also Plaintiff's Additional Statement of Facts Not in Dispute,* incorporated herein by reference.

No. 14.  KUCR is a "KU-affiliated organization." (Exhibit G, KU-KUCR Affiliation Agreement, ¶ 6, KU 62.)

*Plaintiff's Response:*  This is a conclusion of law, not a statement of fact.   However, to move this matter along, plaintiff states that KUCR appears to be a "university controlled affiliated corporation" under Board Policy Manual, Ch. II, Pt. D, "Affiliated Corporations, Sec. 7(a)(i)(1), of the Kansas Board of Regents, copy attached as Exhibit QQ.

No. 15.  KUCR must be audited according to Board of Regents policy and those results must be provided for distribution to the Board. Results of audits of KUCR must be provided to the Board of Regents and financial reports must be made available to KU and officials. (Exhibit G, KU-KUCR Affiliation Agreement, ¶ 5, KU 62).

*Plaintiff's Response:*  Admitted, but this requirement is based on the Affiliation Agreement, not state statutes.

No. 16.  KUCR's books and records must be treated as open records and KUCR must comply with Kansas Open Records Act and Kansas Open Meetings Act requirements. (Exhibit G, KU-KUCR Affiliation Agreement (2004), §§ 5-6, KU 62).

       *Plaintiff's Response:*  Admitted, but this requirement is based on the Affiliation Agreement, not state statutes.

No. 17.  The KU-KUCR Affiliation Agreement also contemplates that KUCR would be subject to the protections and limitations of the Tort Claims Act. (Exhibit G, KU-KUCR Affiliation Agreement (2004), § 8).

       *Plaintiff's Response:*  This is a legal conclusion, not a fact.  In any event, this is denied. The status of KUCR under the Affiliation Agreement with respect to the Kansas Tort Claims Act is not clear.  *See* Plaintiff's *Statement of Additional Facts Not in Dispute*, incorporated herein by reference.

No. 18.  KUCR's annual financial statements are blended together with the University of Kansas' financial statements, which are then sent to the State of Kansas to be blended into the State's financial statements. (Exhibit C, Goddard Depo. 12:14-18).

       *Plaintiff's Response:*  Plaintiff admits that KUCR's annual financial statements are included in the University of Kansas' financial statements, which are then sent to the State of Kansas to be included in the State's financial statements.  Plaintiff is not clear on the meaning of "blended" as used in this context or otherwise.

No. 19.  When the University is awarded a grant through KUCR, a portion of the grant is designated for direct costs such as chemicals, laboratory costs, and outside vendors. In addition a portion of the grant is designated for indirect costs, which are referred to as the Facilities and Administrative Rate, or F&A. (Exhibit C, Goddard Depo. 26:19-27:10).

       *Plaintiff's Response:*  Plaintiff admits that grants are awarded to KUCR, rarely to KUCR and the University jointly and never to the University solely, and that a portion of the grant is designated for direct costs such as chemicals, laboratory costs, and outside vendors and, in addition, a portion of the grant is designated for indirect costs, which are referred to as a Facilities and Administration reimbursement or F&A reimbursement.

No. 20.  For the fiscal year ending June 30, 2015, KUCR had total income of approximately $152,000,000. Of this amount approximately $140,000,000 was received through research grants or awards, either by way of direct research income or F&A revenue. The remaining sources of income for

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

6

DAVID S. MOORE, PH.D. v. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

KUCR included from payments made to KUCR from the University of Kansas service centers (approximately 3%), royalties on intellectual property generated by the University of Kansas (approximately 4%), and other miscellaneous income such as investment income, donations of equipment, and contributions (approximately 2% combined). (Exhibit H, KUCR Financial Statement for FY 2015, KU 000505).

> *Plaintiff's Response:* Plaintiff admits that the KUCR "Statement of Activities" as set forth in its annual "Financial Statements" dated October 1, 2015 prepared by Crowe Chezik LLP recite the dollar amounts and percentages stated, but the combined percentage of the miscellaneous income such as investment income, donations of equipment, and contributions is less than 1.0 percent.

No. 21.  For the fiscal year ending June 30, 2014, KUCR had total income of approximately $163,600,000. Of this amount approximately $151,000,000 was received through research grants or awards, either by way of direct research income or F&A revenue. The remaining sources of income for KUCR included from payments made to KUCR from the University of Kansas service centers (approximately 3%), royalties on intellectual property generated by the University of Kansas (approximately 3%), and other miscellaneous income such as investment income, donations of equipment, and contributions (approximately 2% combined). (Exhibit H, KUCR Financial Statement for FY 2015, KU 000506).

> *Plaintiff's Response:* Plaintiff admits that the KUCR "Statement of Activities" as set forth in its annual "Financial Statements" dated October 1, 2015 prepared by Crowe Chezik LLP recite the dollar amounts and percentages stated.

No. 22.  The president of the KUCR Board of Directors is the Chancellor of the University of Kansas. (Exhibit C, Goddard Depo. 12:11-12).

> *Plaintiff's Response:* Denied.  The President of the KUCR Board of Trustees *ex officio* is the University's Vice Provost for Research (Lawrence Campus), according to the November 9, 2009 KUCR Bylaws, Bates Page Nos. KU 002022 – KU 002023.  In the event there is a later or amended version of the bylaws with different provisions, plaintiff will amend this response.

No. 23.  The vice-president of the KUCR Board of Directors is the Provost of the University of Kansas. (Exhibit C, Goddard Depo. 12:12-13).

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

7

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

*Plaintiff's Response:* Denied. The Vice-President of the KUCR Board of Trustees *ex officio* is the University's Associate Vice Provost for Research (Lawrence Campus), according to the November 9, 2009 KUCR Bylaws, Bates Page Nos. KU 002022 – KU 002023. In the event there is a later or amended version of the bylaws with different provisions, plaintiff will amend this response.

No. 24. The secretary/treasurer of the KUCR Board of Directors is the Vice Provost for Administration and Finance for the University of Kansas. (Exhibit C, Goddard Depo. 12:13-14; 13:1-2).

*Plaintiff's Response:* Admitted, as an *ex officio* appointment, but the title according to the November 9, 2009 KUCR Bylaws, Bates Page Nos. KU 002022 – KU 002023, is Vice Provost of Finance of the University (Lawrence Campus).

No. 25. The president of KUCR is the Vice Chancellor for Research of the University of Kansas. (Exhibit C, Goddard Depo. 11:23-24).

*Plaintiff's Response:* Admitted, as an *ex officio* appointment, but the title according to the November 9, 2009 KUCR Bylaws, Bates Page Nos. KU 002022 – KU 002023, is Vice Provost for Research (Lawrence Campus).

No. 26. All purchases made using money that is on deposit with KUCR must be processed through the University of Kansas' purchasing department. (Exhibit C, Goddard Depo. 73:22-74:8).

*Plaintiff's Response:* Admitted, but "must" is too strong a word; this is not a requirement of state law. It is done as a matter of "visibility" and "good business practice" according to Ms. Goddard and, for federally funded projects, as a matter of federal regulation. "It's not the state rules." *See* Goddard Deposition, KUCR Secretary/Treasurer, pp. 73:16 – 74:8, 117:21 – 117:24, 115: 18 – 116:15.

No. 27. When applications for federal grants are made, they are submitted by KUCR on behalf of the University of Kansas. (Exhibit C, Goddard Depo. 19:16-22).

*Plaintiff's Response:* Denied. The matter calls for a legal conclusion. However, to move the matter along, plaintiff states that under the Affiliation Agreement, which speaks for itself, KUCR is to "manage and administer all sponsored grants and contracts, including federal sponsored research grants, for the KU Lawrence and Edwards campuses" and is to "provide appropriate accounting and purchasing procedures for investigators," as well as such additional services as set forth in the Affiliation Agreement. These duties do not include submission of grant applications. KUCR does this in its own capacity.

No. 28. The University of Kansas treats KUCR the same as it does any other University department when it comes to paying for central services such as computing or maintenance. (Exhibit C, Goddard Depo. 113:11-114:9).

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

8

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

*Plaintiff's Response:* Admitted, but again, this is not a requirement of state law. This is done as a matter of "visibility" and "good business practice" according to Ms. Goddard and, for federally funded projects, as a matter of federal regulation. "[T]hey're not the state rules." *See* Goddard Deposition, pp. 73:16 – 74:8, 117:21 – 117:24, 115: 18 – 116:15).

No. 29.  KUCR is required to follow the same rules for purchasing as all other University of Kansas departments, including complying with the University of Kansas' rules which were promulgated pursuant to a delegation of authority by the State Board of Regents. (Exhibit C, Goddard Depo. 115:18-25).

*Plaintiff's Response:* Admitted, but again, this is not a requirement of state law. This is done as a matter of "visibility" and "good business practice" according to Ms. Goddard and, for federally funded projects, as a matter of federal regulation. "[T]hey're not the state rules." *See* Goddard Deposition, pp. 73:16 – 74:8, 117:21 – 117:24, 115: 18 – 116:15).

No. 30.  KUCR is required to comply with the University of Kansas' policy on capital finance. (Exhibit C, Goddard Depo. 118:8-11).

*Plaintiff's Response:* Admitted, but again, this is not a requirement of state law. This is done as a matter of "visibility" and "good business practice" according to Ms. Goddard and, for federally funded projects, as a matter of federal regulation. "[T]hey're are not the state rules." *See* Goddard Deposition, pp. 73:16 – 74:8, 117:21 – 117:24, 115: 18 – 116:15).

No. 31.  KUCR financed the construction of two research facilities, the Multidisciplinary Research Building and the Structural Biology Center, for the University of Kansas by issuing revenue bonds through the Kansas Development Finance Authority. (Exhibit C, Goddard Depo. 34:21-35:4; 120:17-25).

*Plaintiff's Response*:  Plaintiff admits that KUCR financed the construction of the Multidisciplinary Research Building and the Structural Biology Center and that they are titled in the University's name. *See* Gordzica Deposition, University Chief Financial Officer, pp. 26:13 – 26:21.

No. 32.  KUCR was not able to issue its own bonds to finance the construction of these buildings, and was required to work through the Kansas Development Finance Authority, which acted as a conduit issuer. (Exhibit I, Theresa Gordzica Depo. 35:8-24).

*Plaintiff's Response:* Denied. KUCR has authority to issue bonds under its Restated Articles of Incorporation. However, in order to get a lower interest rate, KUCR went through the Kansas Development Finance Authority as a conduit which could issue tax exempt bonds with lower interest rates, according to Ms. Gordzica. Ms. Gorzicka testified:

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF                                              9
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

I don't know that the corporation can legally sell bonds on its own without having a conduit issuer to sell tax exempt bonds, which these would be for the most part.   Gordzica Deposition, University Chief Financial Officer, pp. 35:14 – 35:24

No. 33.  The University of Kansas is ultimately responsible for the debt on all bonds that have been issued by KUCR. (Exhibit C, Goddard Depo. 121:5-17; Exhibit J, First Amendment to Affiliation Agreement at ¶ 5, KU 69).

*Plaintiff's Response:*  Denied.  According to the "First Amendment to Affiliation Agreement," Sec. 5, "University Payment Obligation," by way of short summary, the University agreed to fund debt service payments to the extent KUCR was unable to do so on an annual basis, but without acceleration of the full principal due.  The "First Amendment to Affiliation Agreement" speaks for itself on this point.  Plaintiff does not know if other entities were responsible for the debt, ultimately or otherwise, whether as credit enhancers or otherwise.  Further, plaintiff does not know if KUCR issued bonded debt in addition to that for the Multidisciplinary Research Building and the Structural Biology Center.

No. 34.  F&A funds are unrestricted funds provided to universities to pay for the indirect costs associated through the grant activity. (Exhibit C, Goddard Depo. 30:23-31:3).

*Plaintiff's Response:*  Plaintiff states that F & A reimbursements are funds paid to universities *as well as non-profit corporations* under the Bayh–Dole Act a/k/a Patent and Trademark Law Amendments Act, Pub. L. 96-517, December 12, 1980, to reimburse for indirect costs associated with Sponsored Research grant activity, at least with respect to federal grants.

No. 35.  Some universities elect to put F&A funds for things like their central computer center or their library. (Exhibit C, Goddard Depo. 31:3-6).

*Plaintiff's Response:*  Admitted, in that plaintiff has no reason to doubt the accuracy of Ms. Goddard's statement.

No. 36.  The University of Kansas has chosen to reinvest the F&A funds it receives back into research functions through the Vice Chancellor for Research. (Exhibit C, Goddard Depo. 31:6-10).

*Plaintiff's Response:*  Plaintiff states that the University and KUCR have determined to reinvest F & A funds back into research funds.  Plaintiff denies that the University receives any F & A funds from grantors.  *"It stays in the corporate [KUCR] bank account."  See* Goddard Deposition, KUCR Secretary/Treasurer, p. 30:13.  Such funds remain with KUCR other than *small* amounts (4% to 6%) remitted to researchers and their departments doing the research in question as well as to the University for small internal research projects, laboratory start–ups for new faculty and matching funds for new scientific equipment.  *See* Goddard Deposition, KUCR Secretary/Treasurer, pp. 31:8 – 34:18; and Gordzica Deposition, University Chief Financial Officer, pp. 31:1 – 32:10.  In addition, to the extent administrators make decisions, they do so "wearing hats" as both University administrators and as KUCR corporate officers or directors.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

10

DAVID S. MOORE, PH.D. v. UNIVERSITY OF KANSAS, ET AL. CASE NO. 2:14-CV-02420-SAC-KGS UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

*See for example* Goddard Deposition, KUCR Secretary Treasurer, p. 73:20 – 74:1, 126:1 – 126:7).

No. 37.  When F&A funds are received, they are placed on deposit with KUCR. A small percent goes back to the principal investigator ("PI") and a small percentage goes back to the department, with the remaining funds left on deposit in the KUCR bank account to be reinvested in research functions. (Exhibit C, Goddard Depo. 30:5-32:16).

*Plaintiff's Response:*  Admitted.  *See* Plaintiff's Response to para. 36, incorporated herein by reference.

No. 38.  Although F&A funds are held in the KUCR bank account, the University of Kansas controls how that money is spent and they have decided to reinvest all F&A into research under the control of the Vice Chancellor for Research. (Exhibit C, Goddard Depo. 30:5-13).

*Plaintiff's Response:*  Denied.  The decisions are made by both University and KUCR officials.  *See* Plaintiff's Response to para. 36, incorporated herein by reference.

No. 39.  When F&A funds are reinvested back into research functions, the University of Kansas Vice Chancellor for Research reinvests the funds, not KUCR. (Exhibit C, Goddard Depo. 31:8-10).

*Plaintiff's Response:*  Denied.  The decisions are made by both University and KUCR officials.  *See* Plaintiff's Response to para. 36, incorporated herein by reference.

No. 40.  The F&A funds that are retained to be reinvested in research functions are generally allocated for start-up funds, grant matching requirements, administrative support in research centers, and to cover debt service. (Exhibit C, Goddard Depo. 32:23-33:4).

*Plaintiff's Response:*  Denied.  The decisions are made by both University and KUCR officials.  *See* Plaintiff's Response to para. 36, incorporated herein by reference.  In addition, while small amounts (4% to 6%) are provided to the University for start-up funds and grant matching requirements amounts for administrative support in research centers, funds to cover debt service remain with KUCR.  *See* Goddard Deposition, KUCR Secretary Treasurer, pp. 49:19 – 50:25.

No. 41.  The F&A funds that are allocated to "start-up" are combined with state money to provide assistance to new research faculty members who need funds for such things as lab renovations, equipment purchases, and research assistants in order to become productive. (Exhibit C, Goddard Depo. 33:13-34:3).

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

11

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

*Plaintiff's Response:*  Admitted, but again, these are small amounts, *e.g.,* 4% to 6%.  *See* Plaintiff's Response to para. 36, incorporated herein by reference.

No. 42.  The F&A funds used for grant matching requirements are used to satisfy requirements in grants from many federal agencies that require some sort of matching funds be used for the purchase of equipment. (Exhibit C, Goddard Depo. 34:7-14).

*Plaintiff's Response:*  Admitted, but again, these are small amounts, *e.g.,* 4% to 6%.  *See* Plaintiff's Response to para. 36, incorporated herein by reference.

No. 43.  The F&A funds used for debt service are used to make annual bond payments on bonds that were issued to build two research center buildings. (Exhibit C, Goddard Depo. 34:20-35:5).

*Plaintiff's Response:*  Admitted.  More specifically and as stated above, F & A funds used for debt service are retained by KUCR as the obligor under the bonds and remitted to bond holders by KUCR, they are not remitted to the University.  *See* Plaintiff's Response to para. 36, incorporated herein by reference.

No. 44.  Although funds held in the KUCR bank account are used to make the annual payments on the bonds issued to build the Multidisciplinary Research Building and the Structural Biology Center, the buildings themselves are an asset of the University of Kansas. (Exhibit I, Gordzica Depo. 26:13-21).

*Plaintiff's Response:*  Admitted.  More specifically, state law requires that buildings built on state or university land with the use of Kansas Development Finance Authority bonds be titled in the name of the state or the university.  This does not apply to other buildings of KUCR.

☙

*Plaintiff's Statement of Material Facts*
*as to Which there Is a Material Dispute*

8.     While not strictly a fact and not a factor used for "arm of the state" determinations, whether KUCR has employees in light of the fact that under the Employee Services Agreement, attached as Exhibit S, it uses University employees as "borrowed servants."  *See* KUCR "Statement of Facts" paras. 11 - 13, *Memorandum in Support of University of Kansas Center for Research's Motion for Summary Judgment,* ECF No. 157.

Plaintiff's Legal Memorandum in Opposition to                              David S. Moore, Ph.D. v. University of Kansas, et al.
Motion for Summary Judgment of                                                                           Case No. 2:14-cv-02420-SAC-KGS
University of Kansas Center for Research, Inc.                                   United States District Court, District of Kansas

12

9.      Whether and to the extent the University is awarded any Sponsored Research grants.  *See* KUCR "Statement of Facts," paras. 19 and 27, *Memorandum in Support of University of Kansas Center for Research's Motion for Summary Judgment,* ECF No. 157.

10.     While not strictly a matter of fact, whether KUCR cannot issue bonds on its own behalf. *See* KUCR "Statement of Facts," para. 32, *Memorandum in Support of University of Kansas Center for Research's Motion for Summary Judgment,* ECF No. 157.

11.     Whether the University is ultimately responsible for the debt on <u>all</u> bonds issued by KUCR.  *See* KUCR "Statement of Facts," para. 33, *Memorandum in Support of University of Kansas Center for Research's Motion for Summary Judgment,* ECF No. 157.

12.     Whether the University or KUCR controls how KUCR funds are spent.  *See* KUCR "Statement of Facts," paras. 36, 38 and 39, *Memorandum in Support of University of Kansas Center for Research's Motion for Summary Judgment,* ECF No. 157.

13.     Whether the University or KUCR reinvests KUCR's funds in research functions.  *See* KUCR "Statement of Facts," para. 39, *Memorandum in Support of University of Kansas Center for Research's Motion for Summary Judgment,* ECF No. 157.

*Plaintiff's Additional Statement of Material Facts*

<u>Sponsored Research</u>

14.     Scientific research conducted at or in connection with public state colleges and universities in the United States can be either (a) funded by the university itself, *e.g.,* annual state appropriations, tuition and fees or charitable gifts ("Internal") or funded by outside sources including the federal government, *e.g.,* National Science Foundation, state government, *e.g.,* State of Kansas Department of Transportation; local government, *e.g.,* Douglas County, Kansas; private corporations, *e.g.* Ford Motor Corporation, corporate foundations, *e.g.*, Ford Foundation; or private foundations, Robert Wood Johnson Foundation ("Sponsored Research").  *See generally* Deposition of Dianne Goddard,

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

13

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

KUCR Secretary/Treasurer, January 22, 2016, ("Goddard Deposition") pp. 46:2 - 46:21, attached as Exhibit A.

KUCR Formation

15.    The University of Kansas wished to take advantage of federal patent laws and in the mid-1990's negotiated for KUCR, a pre-existing non-profit corporation formed in 1962 to assist the University's School of Engineering, to take over all University Sponsored Research.  *See* Goddard Deposition, KUCR Secretary/Treasurer, pp. 37:15 – 38:19, copy attached as Exhibit A.

16.    The University and KUCR decided to go the non-profit corporation route for conducting Sponsored Research in order to "combine corporate flexibility with state stability.  *See* Minutes of Annual Meeting of KUCR Board of Trustees, December 1, 1999, attached Power Point® presentation, Slide 4 (lengthy exhibit, reader is directed to Bates Page No. KU-000740), attached as Exhibit B.

17.    KUCR was formed and is used to keep Sponsored Research funds separate from the state, specifically, "beyond the reach of the Kansas legislature and the executive when it comes to sweeping funds to bolster the State General Fund."  *See* Email from David R Cooper, legal counsel for defendant KUCR, to Daniel R. Cofran, legal counsel for plaintiff, December 7, 2015, copy attached hereto as Exhibit C.[2]

18.    In addition, KUCR was formed in order to have "corporate flexibility" not to follow all state regulations a state agency or entity otherwise would be bound to follow, for example, state regulations for purchasing, constructing buildings, travel allowances, disposition of surplus property, borrowing and insurance coverage.  According to Diane Goddard, KUCR Secretary/Treasurer:

---

[2] Otherwise, Sponsored Research Funds, particularly Facilities and Administration overhead reimbursement funds if received by the University would be required to be deposited with the state under K.S.A. Sec. 753:

> **Same; sponsored research overhead fund; disposition and expenditure of moneys received as overhead costs; interest earnings on funds**. (a) There is hereby established in the state treasury a sponsored research overhead fund for each state educational institution [a defined term, K.S.A. Sec. 752, including the "University of Kansas"]
>
> (b)  All moneys received by a state educational institution as overhead costs on sponsored research projects *shall* be deposited to the credit of the sponsored research overhead fund. (Emphasis added.)

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF                                      14
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

DAVID S. MOORE, PH.D. v. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

     (a)    *Construction of Buildings.*  KUCR can construct buildings much faster and more efficiently on its own as opposed to having to follow state construction regulations.

> If we can build a building that is bonded through the corporation and it sits on endowment [University of Kansas Endowment Association, Inc.] land while it's being built, we can build it much more quickly because we're not having – state still has to do the code review but they don't have to be involved in every single decision while the building is being made.  They still have to do the fire code and the building code all that.

> [Text omitted]

> It's why we did the multi-disciplinary center.  We used that mechanism because we needed to build it in 18 months.  Can't do that when it's being funded on the state side.

*See* Goddard Deposition, KUCR Secretary/Treasurer, p. 122:7 – 122:24, attached as Exhibit A.

     (b)    *Purchasing - Sole Source.*  In addition, for purchasing. "everything had to flow through state purchasing, through state administration and whatever they call themselves, A & R."  KUCR didn't want "to follow state purchasing and procurement policies."  Further:

> And it was extremely onerous for the PI's who would write into their grants they needed a specific piece of equipment – and this is just an example:  I need a microscope and it has to be this microscope because of these reasons.  And Topeka would want us to take a low bid microscope that didn't meet those specifications.

> Corporate flexibility, having the money on deposit with – through the corporation, not on deposit with the state, allowed us to be much more nimble.  We still had control over the money so we still used good purchasing guidance, but we could be much more nimble for the PI's.

*See* Goddard Deposition, KUCR Secretary/Treasurer, pp. 72:21 – 73:10, attached as Exhibit A.[3]

     (c)    *Purchasing – Not State Controlled.*  Instead of having to follow state purchasing and procurement procedures, KUCR follows the "federal acquisition regulations" and purchases go through the University's financial system for purposes of "visibility" to Ms. Goddard as the

---

[3] "PI" is an abbreviation for "Principal Investigator."   A Principal Investigator is a title to the lead scientist or researcher on a research project.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

15

DAVID S. MOORE, PH.D. v. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

KUCR Secretary/Treasurer.  *See* Goddard Deposition, KUCR Secretary/Treasurer, pp. 73:16 - 74:8, attached as Exhibit A.

        (d)     *Travel.*  Similarly, KUCR uses the federal travel reimbursement regulations which include, for example, a "higher mileage reimbursement," not the state travel reimbursement regulations.  *See* Goddard Deposition, KUCR Secretary/Treasurer, p. 74:9 – 74:19, attached as Exhibit A.

        (e)     *Surplus Property.*  In addition, in the event a scientific instrument purchased with KUCR funds no longer is needed, it can be sold or otherwise disposed of without complying with state policies on disposition of surplus property.  *See* Goddard Deposition, KUCR Secretary/Treasurer, p. 115:6 – 115:17, attached as Exhibit A.

        (f)     *Purchasing, cont'd.*  Generally, if federal regulations are not involved, KUCR follows the University's purchasing and procurement policies, not the state's.  The board of regents permits university' to develop their own purchasing and procurement policies.

> Now, on the purchasing side, quite honestly, we have been delegated – all of the regents [universities and colleges governed by the Kansas Board of Regents] have been delegated purchasing authority, and so we don't follow the same rules as the state does for any of our [KUCR's] money.  We write our own policies. And I do require any money that's on deposit with KUCR to follow those same purchasing rules, but *they're not the state rules*.

*See* Goddard Deposition, KUCR Secretary/Treasurer, p. 115:18 – 115:25, attached as Exhibit A (emphasis supplied).

        (a)     *Seller Financed Borrowing.*  KUCR can borrow money or finance instrument purchases on its own.  A researcher is able to acquire a scientific instrument on a seller-financed basis without complying with state regulations.  While there is a review and approval policy, it's used as a matter of "good business practice," not a state regulation covering seller-financed purchases. .  *See* Goddard Deposition, KUCR Secretary Treasurer, pp. 116:16 – 117:24, attached as Exhibit A.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO              DAVID S. MOORE, PH.D. v. UNIVERSITY OF KANSAS, ET AL.
MOTION FOR SUMMARY JUDGMENT OF      16      CASE NO. 2:14-CV-02420-SAC-KGS
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.         UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

(b)     *Liability Insurance.*  KUCR maintains a general liability insurance policy, but it does so as a matter of business prudence, not because it is a state regulation requirement.  *See* Goddard Deposition, KUCR Secretary/Treasurer, p. 129:4 – 129:15, attached as Exhibit A.

<u>KUCR Sponsored Research Activities</u>

19.     Grant applications to government entities are submitted in the name of KUCR as the applicant, not the University and, if awarded, KUCR, not the University is the awardee.  "Occasionally" a grant-making agency may want both KUCR and the University to be awardees, but this is not common.  *See* Goddard Deposition, KUCR Secretary/Treasurer, pp. 19:16 – 21:20, 22:23 – 23:1, attached as Exhibit A.

20.     In the event of Sponsored Research done under contract with a private sector corporation, the contract would be between the corporation and KUCR, not the University as a party to the contract.  *See* Deposition of Jennifer Tucker, former contracting officer for Kansas University Center for Technology Commercialization ("KUCTC"), January 28, 2016 ("Tucker Deposition"), p. 17:18 – 18:8, copy attached as Exhibit D.[4]

21.     The basic working arrangement ultimately agreed upon by the University and KUCR for Sponsored Research was for KUCR to use University research and administrative employees to apply for, accept and conduct Sponsored Research grants and contracts, followed by KUCR's securing patents for patentable discoveries generated by Sponsored Research and then generating income from the patents by assigning, *i.e.,* selling, or licensing the patents to private business or other entities using the patented discoveries to develop new products, processes and technologies.  This income generation process is referred to as "Technology Transfer."  *See generally* Goddard Deposition, KUCR Secretary/Treasurer, pp. 60:22 – 61:2, copy attached as Exhibit A.

22.     Patent remuneration can be corporate stock, for example, stock in start-up companies spun off to develop the commercial potential of technology and patents generated by KUCR's technology

---

[4] The contract may have referred to KUCR as "an affiliate" of the University.  *See* Deposition of Jennifer Tucker, former contracting officer for University of Kansas Center for Technology, Inc., January 28, 2016, pp. 17:18 – 18:8.

Plaintiff's Legal Memorandum in Opposition to
Motion for Summary Judgment of
University of Kansas Center for Research, Inc.

17

David S. Moore, Ph.D. v. University of Kansas, et al.
Case No. 2:14-cv-02420-SAC-KGS
United States District Court, District of Kansas

commercialization work.[5]   The stock was held by KUCR, not the University, until the technology commercialization function was transferred from KUCR to KUCTC in 2008.  *See* Deposition of Julie Nagel, Interim President of KUCTC, February 29, 2016 ("Nagel Deposition"), p. 35:24 – 37:4, copy attached as Exhibit F.  *See also* "Resolution of Transfer of KUCR Equity Positions to the KU Center for Technology Commercialization (KUCTC)," Exhibit 33 in Nagel Deposition, copy of resolution attached hereto as Exhibit E.

23.     The funding for Sponsored Research grants and contracts from outside sources such as federal agencies takes the form of reimbursement to the researching entity, as frequently as monthly, for its (a) *direct costs*, *e.g.,* out-of-pocket salaries and wages for scientists and assistants to scientists, as well as actual purchase prices or rental costs of scientific equipment (generally referred to as "Direct Costs") and *indirect costs* for overhead including buildings, equipment, facilities and administration, generally referred to as "Indirect Costs" or, in the case of federal agencies, "Facilities and Administration" costs, or "F & A" for short).  ."  *See* Goddard Deposition, KUCR Secretary/Treasurer, pp. 29:11 – 30:4, attached as Exhibit A; and *Deposition of Theresa Gordzica,* University Chief Financial Officer, January 22, 2016 ("Gordzicka Deposition"), pp. 11:1 – 11:17, attached as Exhibit G.

24.     The full Facilities and Administration reimbursement is retained by KUCR and stays in its corporate bank account.  None goes to the University.  Portions of the Facilities and Administration reimbursement are remitted to the researcher and his or her department, plus a "small amount" for the University's chancellor and provost for research activities.  S*ee Gordzica Deposition,* University Chief Financial Officer, pp. 31:7 – 31:17, 51:14 – 52:9, attached as Exhibit G.

25.     The Facilities and Administration reimbursement amount is a percentage, *e.g*., 50%, of the Direct Costs.  This is the reimbursement percentage with the federal Health and Human Services Department, KUCR's largest Sponsored Research funder.  For example, if the Direct Costs for salaries,

---

[5] KUCR held stock in 33 of these start-up companies as of February 17, 2009.  *See* "Resolution of Transfer of KUCR Equity Positions to the KU Center for Technology Commercialization (KUCTC)," Exhibit 33 in Nagel Deposition, copy of resolution attached hereto as Exhibit E.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

18

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

equipment and instruments for a cancer research project totaled $1.0 million, the Facilities and Administration reimbursement amount would be 50% of $1.0 million, or $500,000. *See generally* Goddard Deposition, KUCR Secretary/Treasurer, pp. 26:19 – 29:10, attached as Exhibit A.

26.     In recent years, the Facilities and Administration reimbursement amounts with federal agencies, for example, the federal Department of Health and Human Services, have been as set forth on the following table, *see Colleges and Universities Rate Agreement*, attached as Exhibit H:

| Table X | | | |
|---|---|---|---|
| **Federal (HHS) Facilities and Adminstration Rates** | | | |
| *Year* | | | |
| FYE 2012 | FYE 2013 | FYE 2014 | FYE 2015 |
| F & A Rate     47.0% | 49.0% | 49.5% | 50.0% |

27.     Facilities and Administration reimbursement amounts for contracts with private sector companies are higher, for example, 55.0%, 55.5% and 56.0% for FYE 2012, FYE 2013 and FYE 2014, respectively. *See* "For-Profit Entity Rate Agreement," July 1, 2012, copy attached as Exhibit I.

28.     Under the arrangement worked out between the University and KUCR and later memorialized in agreements, KUCR was compensated for its work by keeping the Facilities and Administration reimbursement, $500,000 in the above example.

29.     Annual amounts for Sponsored Research for KUCR over four years (FYE 2011 – FYE 2014), to pay for both Direct Costs and its retained Facilities and Administration reimbursement, measured by revenues, are in excess of $1.0 billion, averaging over $250.0 million a year, set forth in Table 1 below.  Over 80% of the Sponsored Research revenues have come from the federal government:

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

19

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

| Table 1 | | | | | | |
|---|---|---|---|---|---|---|
| KUCR Sponsored Research Revenues, FYE 2011 - 2014 | | | | | | |
| Source: KUCR Sponsored Research Annual Reports, FYE 2011-2014, Exhibits J, K, L and M | | | | | | |
| Source | FYE 2011 | FYE 2012 | FYE 2013 | FYE 2014 | Totals | Pct. |
| Federal Gov't | $   205,556,779 | $ 223,446,767 | $ 210,679,627 | $ 192,618,031 | $   832,301,204 | 81.4% |
| Industry | 8,288,644 | 8,432,075 | 10,075,193 | 12,990,102 | 39,786,014 | 3.9% |
| Foundations | 19,349,322 | 34,820,277 | 26,259,428 | 18,784,187 | 99,213,214 | 9.7% |
| State Gov't | 12,629,684 | 7,888,894 | 11,351,317 | 12,261,163 | 44,131,058 | 4.3% |
| Other Gov't | 350,795 | - | 1,357,677 | 1,967,414 | 3,675,886 | 0.4% |
| Other | 2,054,758 | 566,542 | 735,861 | 191,696 | 3,548,857 | 0.3% |
| Totals | $   248,229,982 | $ 275,154,555 | $ 260,459,103 | $ 238,812,593 | $ 1,022,656,233 | 100% |
| Average | | | | | $   255,664,058 | |

*See KUCR Annual Reports for Sponsored Research, FYE 2011, FYE 2012, FYE 2013 and FYE 2014,* attached as Exhibits J, K, L and M, and *Detailed Summary of KUCR Annual Reports for Sponsored Research, FYE 2011, FYE 2012, FYE 2013 and FYE 2014,* compiled by plaintiff's counsel, attached as Exhibit N.

30.     The breakout between (a) Direct Costs and (b) KUCR's retained Facilities and Administration reimbursements for these same four years are set forth in Table 2 below, with KUCR retaining over $180 million in Facilities and Administration reimbursements, averaging just over $45.0 million a year:

| Table 2 | | |
|---|---|---|
| Sponsored Research by KUCR FYE 2011 - FYE 2014 (Expenditures) | | |
| Sources: KUCR Annual Reports for Sponsored Research, FYE 2011, FYE 2012, FYE 2013 and FYE 2014 | | |
| Four Year Totals | | |
| Direct | $   839,202,593 | Paid to researchers, assistants; Paid for equipment, instruments |
| F & A | 183,424,792 | Retained by KUCR |
| Direct + F & A | 1,022,627,385 | |
| | | |
| Four-Year Averages | | |
| Direct | $   209,800,648 | Paid to researchers, assistants; Paid for equipment, instruments |
| F & A | 45,856,198 | Retained by KUCR |
| Direct + F & A | 255,656,846 | |

*See KUCR Annual Reports for Sponsored Research, FYE 2011, FYE 2012, FYE 2013 and FYE 2014,* attached as Exhibits J, K, L and M, and *Summary of KUCR Annual Reports for Sponsored Research, FYE 2011, FYE 2012, FYE 2013 and FYE 2014,* complied by plaintiff's counsel, attached as Exhibit N.

31.     KUCR has also received Sponsored Research grants from Kansas state agencies for doing specific research projects as fee-for-service income.  They are not general appropriations.  *See* Goddard Deposition, KUCR Secretary/Treasurer, pp. 77:24 – 78:14; attached as Exhibit A, and Gordzica Deposition, University Chief Financial Officer, pp. 11:19 – 12:8, 23:3 – 23:9, attached as Exhibit G.  As

shown in Table 1 above, total Sponsored Research grants from the State of Kansas for the four years from FYE 2011 – 2015 total $44.0 million, 4.3% of total revenues.

<u>KUCR Agreements with the University</u>

32.     The University and KUCR entered into four written agreements over the years to memorialize the Sponsored Research arrangement, as follows:

(a)     An untitled "Agreement," dated June 1, 1982 between the University and KUCR, a true and correct copy of which is attached hereto as Exhibit O__ ("Original Agreement");

(b)     An untitled "Agreement," entered into on April 20, 1994 between the University and KUCR, a true and correct copy of which is attached hereto as Exhibit P ("Original Technology Transfer Agreement");

(c)     An "Affiliation Agreement," effective December 21, 2004, between the University and KUCR, a true and correct copy of which is attached hereto as Exhibit Q ("Affiliation Agreement");

(d)     A "First Amendment to Affiliation Agreement," effective March 15, 2012, between the University and KUCR, done in connection with a bond financing, a true and correct copy of which is attached hereto as Exhibit R ("First Amendment to Affiliation Agreement");

(e)     An "Employee Services Agreement," effective June 14, 2009, between the University and KUCR, a true and correct copy of which is attached hereto as Exhibit S ("Employee Services Agreement").

33.     <u>Original Agreement</u>.  This agreement goes back to 1982 and provides for, at Sec. 1, KUCR's retention of the federal Facilities and Administration reimbursement for Sponsored Research projects undertaken by KUCR.  This is the "Facilities and Administration" reimbursement KUCR retains. Under Sec. 2, KUCR was to recommend guidelines or criteria for how it would spend the retained Facilities and Administration reimbursements each year, subject to review and approval by the University's chancellor.  However, in actual experience, it is not clear on the current record if KUCR ever

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

21

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

did this.  *See* Goddard Deposition, KUCR Secretary/Treasurer, pp. 47:7 - 19, copy attached as Exhibit A (Ms. Goddard's answer to whether this was done was, "1982, I have no idea.").

34.   <u>Original Technology Transfer Agreement</u>.   This agreement formally makes KUCR (informally called "CRINC" then[6]), at Sec. 2, the entity to identify patentable discoveries from Sponsored Research and prosecute patent applications, protect issued patents, and derive and collect revenues from issued patents from assignments, licensing and similar activities.  This agreement, at Sec. 4, permits KUCR to recover its costs for this work from revenues derived from this work, after first reimbursing the University for its costs, if any, developing the technology supporting the patents.  The agreement, at Sec. 5, requires an annual audit of the KUCR books and records.

35.   <u>Affiliation Agreement</u>.   This agreement was entered into in 2004. It more thoroughly outlines KUCR's Sponsored Research services responsibilities, at Sec. 1, and Technology Transfer services, at Sec. 4.  The agreement formalizes the parties' pre-existing practices and didn't change what the parties had been doing.  *See* Goddard Deposition, KUCR Secretary/Treasurer, pp. 91:14 – 92:1, attached as Exhibit A.  More specifically::

(a)   The Affiliation Agreement continues KUCR's retention of the Facilities and Administration reimbursement funds, Sec. 1, for Sponsored Research.  *See* Goddard Deposition, KUCR Secretary/Treasurer, pp. 92:16 – 93:17, attached as Exhibit A.

(b)   In addition, at Sec. 2, KUCR agrees to provide management and administration for any Internal Research for University-funded research by University faculty and staff.

(i)   As stated above, this annually is in "small percents, four percent, six percent . . . ."  *See* Goddard Deposition, KUCR Secretary/Treasurer, pp. 30:5 – 22, copy attached as Exhibit A.

(c)   The agreement, at Sec. 4, does not continue the same practice for KUCR's recovering its technology transfer costs out of technology transfer revenues, but instead requires

---

[6] *See* Goddard Deposition, KUCR Secretary Treasurer, pp. 50:1 – 50:21, 64:17 – 64:23, attached as Exhibit A.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

22

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

KUCR to develop policies for recovery of its costs, reimbursement to faculty and staff for expenses incurred in technology development, the use of future technology transfer revenues and the allocation of technology transfer revenues.

(i)     Eventually, however, the technology transfer function was taken over in 2008 by a new Kansas non-profit corporation, the KU Center for Technology Commercialization, Inc. ("KUCTC"), that combined the technology transfer functions of both the Lawrence and Edwards Campuses (which KUCR had handled) with those of the University of Kansas Medical Center Research Institute, Inc.  *See* Nagel Deposition, pp. 17:17 – 17:22; 46:21 – 46:24, copy attached as Exhibit __F.

(d)     The agreement, at Sec. 3, requires any buildings constructed by KUCR to be transferred to the University "upon the completion of their intended purpose or mission or at a time the parties agree to be appropriate." The same section requires that KUCR use the University's Design and Construction Management office for Lawrence Campus building renovations.  This requirement, however, does not apply to buildings leased by KUCR.   The section also gives the University a right of first refusal in the event KUCR wishes to sell or lease any of its research facilities.

(e)     The agreement, at Sec. 5, requires an annual audit of KUCR's books and records.

(f)     The agreement, at Sec.6, requires KUCR to comply the Kansas Open Records Act and the Kansas Open Meetings Act.

(g)     The agreement, at Sec. 7, notes that the University is covered by the Kansas Tort Claims Act, but requires KUCR to secure its own commercial liability insurance policy (minimum $1.0 per incident and $2.0 million aggregate per year) for KUCR's operations and to be responsible for "liability arising out of the negligence and errors and omissions of KUCR agents and employees, excluding KU faculty and staff members to the extent they are participating in or supporting sponsored research or technology transfer through KUCR, up to and

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

23

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

subject to the limitations contained in the provisions of the Kansas Tort Claims Act."  The University agrees to be responsible for negligence, errors and omissions of its own agents and employees.

(h)     The agreement has been amended once, by a "First Amendment to Affiliation Agreement," effective March 15, 2012, done in connection with refinancing the bonded debt issued through the Kansas Development Finance Agency for KUCR's construction of the Multidisciplinary Research Building and the Structural Biology Center, for which KUCR is and remains the obligor under the bonds.  The University agrees to pick up any shortfall in annual debt service on the bonds to the extent KUCR's revenues (from retained Facilities and Administration reimbursements) are insufficient.

36.     <u>Employee Services Agreement</u>.  This agreement was entered into in 2009.  It makes University employees while working on KUCR's Sponsored Research projects, "borrowed servants" of KUCR.[7]  In that regard, until 1999 KUCR (then commonly known as "CRINC") had its own employees.  This ended in 2003 at which time the former CRINC/KUCR employees became University employees.  *See* Goddard Deposition, pp. 64:17 – 65:15, copy attached as Exhibit A__, and "Transfer of University of Kansas Center for Research, Inc. Staff to the University of Kansas, Lawrence Campus – Notice of Changes," undated, copy attached as Exhibit T.  While working on KUCR Sponsored Research projects, the University monthly billed (and still monthly bills) KUCR for the use of the University's employees.  KUCR funds this out of the Direct Costs reimbursements it receives from Sponsored Research funders, *e.g.,* federal agencies.  *See* Goddard Deposition*,* pp. 99:13 – 101:17, 108:7 – 109:24, copy attached as Exhibit A.

(a)     Under this agreement, at Sec. 4, the University agrees to provide its employees to KUCR to do the actual work under Sponsored Research grants and contracts, Sec. 1, for which

---

[7] The University's General Counsel, James Pottorff, once told plaintiff that he was being "loaned" to KUCR when plaintiff was trying to figure out his employment relationship.  *See Affidavit of David S. Moore, Ph.D.*, attached hereto as Exhibit SS.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

24

DAVID S. MOORE, PH.D. v. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

KUCR agrees to pay the University based on the same rate of pay and benefits earned by the employee under the University's system based on bi-weekly accounting records and as otherwise determined by the parties.  *See* Gordzica Deposition, University Chief Financial Officer, pp. 38:18 – 39:12, attached as Exhibit G.

(b)     Under the agreement, when working for KUCR, the employee remains an employee of the University and a "borrowed servant" as to KUCR.  Sec. 2.

(c)     The agreement provides for application of the University's personnel policies, Sec. 1(b); the University's vacation and sick leave policies (Sec. 1(c); and University policies on Confidential Information and Intellectual Property, Sec. 5.

<u>KUCR Employees</u>

37.     KUCR states it has no employees of its own, *See Memorandum in Support of University of Kansas Center for Research's Motion for Summary Judgment* (ECF No. 157), p. 4, para. 11.

38.     However, KUCR lists as its "Key Employees" and "Highest Compensated Employees," including their compensation funded by KUCR, in its annual Internal Revenue Service Form 990, *Return of Organization Exempt from Income Tax, Part VI, Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees and Independent Contractors.*

39.     True and correct copies of KUCR's Internal Revenue Service Forms 990, *Return of Organization Exempt from Income Tax,* including Part VII, "Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees and Independent Contractors" for its tax years 2013, 2012, 2011, 2010 and 2009 are attached hereto as Exhibits U, V, W, X Y and Z_____.  ("KUCR Form 990 Income Tax Returns")[8].

40.     Attached hereto as Exhibit Z is a summary of all entries under Part VII, "Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees and Independent

---

[8] Part VII, "Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees and Independent Contractors" for each of tax years 2013, 2012, 2011, 2010 and 2009, can be found beginning on the following pates of the returns: 2013 Return, Bates Page No. 003282; 2012 Return, Bates Page No. 003223; 2011 Return, Bates Page No. 003162; 2010 Return, Bates Page No. 003105; 2009 Return, Bates Page No. 003040.

Contractors" for its tax years 2013, 2012, 2011, 2010 and 2009 from the KUCR Form 990 Income Tax Returns.  Total compensation of all such persons funded with KUCR funds for these five years are set forth in Table 3 as follows, totaling almost $4.5 million for five years and averaging approximately $890,000 a year:

| Table 3 |
| --- |
| **KUCR Funded Compensation for** |
| **Officers, Directors, Trustees, Key Employees, Highest Compensated Employees** |
| *Sources:  KUCR IRS Forms 990, Part VII, 2009 - 2013* |

| *Tax Year* | *Compensation Funded with KUCR Funds* |
| --- | --- |
| 2013 | $   1,192,381 |
| 2012 | 1,449,698 |
| 2011 | 939,523 |
| 2010 | 684,072 |
| 2009 | 198,740 |
| Five Year Total | $   4,464,414 |
| | |
| Five Year Average | 892,883 |

41.      While Table 3 above includes directors, trustees and officers, some of whom might not be employees, Table 4 below is limited to those persons KUCR listed as its "Key Employees" and "Highest Compensated Employees" in its Form 990 Income Tax Returns for the five tax years 2013, 2012, 2011, 2010 and 2009 (total of fifteen different persons), totaling just under $1.2 million for the five years and averaging approximately $237,000 a year:

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

26

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

**Table 4**

**Persons KUCR Reported to IRS as Its Key Employees and Highest Compensated Employees**

*Sources: KCUR Forms 990 Return of Organization Exempt from Income Tax to IRS, 2009- 2013*

*Part VII, Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees and Independent Contractors*

| Name | KUCR Position | Tax Year | Classification | Average Hours per Week | | KUCR Compensation |
|---|---|---|---|---|---|---|
| | | | | KUCR | Related Organizations | |
| Robert Goldstein | Director | 2013 | Highest Compensated Employee | 1.0 | 39.0 | - |
| Paulette Spencer | Director | 2013 | Highest Compensated Employee | 1.0 | 39.0 | - |
| Leonard Krishtalka | Manager | 2013 | Highest Compensated Employee | 1.0 | 39.0 | 28,604 |
| Elias Michaelis | Director | 2013 | Highest Compensated Employee | 20.0 | 20.0 | 47,972 |
| Kristin Bowman-James | Director | 2013 | Highest Compensated Employee | 1.0 | 39.0 | 84,560 |
| Thomas Heilke | Director | 2013 | Key Employee | 32.0 | 8.0 | - |
| Julie Goodwardene | President, KUCTC | 2013 | Key Employee | 24.0 | 16.0 | 146,237 |
| Robert Goldstein | Director | 2012 | Highest Compensated Employee | 1.0 | 39.0 | 8,066 |
| Paulette Spencer | Director | 2012 | Highest Compensated Employee | 1.0 | 39.0 | 13,040 |
| Leonard Krishtalka | Manager | 2012 | Highest Compensated Employee | 1.0 | 39.0 | 19,243 |
| Elias Michaelis | Director | 2012 | Highest Compensated Employee | 20.0 | 20.0 | 70,998 |
| Kristin Bowman-James | Director | 2012 | Highest Compensated Employee | 1.0 | 39.0 | 146,609 |
| Thomas Heilke | Director | 2012 | Key Employee | 32.0 | 8.0 | - |
| Jule Goonewardene | KUCTC President | 2012 | Key Employee | 24.0 | 16.0 | 140,813 |
| Kevin Boatright | Manager | 2011 | Highest Compensated Employee | 40.0 | Not Req'd on Form | - |
| Donald McMullen | Manager | 2011 | Highest Compensated Employee | 40.0 | Not Req'd on Form | 11,580 |
| Leonard Krishtalka | Director | 2011 | Highest Compensated Employee | 20.0 | Not Req'd on Form | 21,157 |
| Joanne Altieri | Manager | 2011 | Highest Compensated Employee | 40.0 | Not Req'd on Form | 48,559 |
| Elias Michaelis | Director | 2011 | Highest Compensated Employee | 20.0 | Not Req'd on Form | 75,870 |
| Julie Goonewardene | KUCTC President | 2011 | Key Employee | 24.0 | Not Req'd on Form | 113,226 |
| Rick McMullen | Manager | 2010 | Highest Compensated Employee | 40.0 | Not Req'd on Form | - |
| Kevin Boatright | Manager | 2010 | Highest Compensated Employee | 40.0 | Not Req'd on Form | 103,994 |
| Rick McMullen | Manager | 2009 | Highest Compensated Employee | 40.0 | Not Req'd on Form | - |
| Kevin Boatright | Manager | 2009 | Highest Compensated Employee | 40.0 | Not Req'd by Form | 104,696 |
| Total | | | | | | 1,185,225 |
| Annual Average | | | | | | 237,045 |

<u>KUCR Financial Support from the State</u>

42.   KUCR receives no annual appropriates from the State of Kansas.  State revenues are limited to Sponsored Research done for state agencies as fee-for-service income.  *See* Goddard Deposition, KUCR Secretary/Treasurer, pp. 77-13 – 78:14; copy attached as Exhibit A; Gordzica Deposition, University Chief Financial Officer, pp. 24:24 – 23:9; 11:19 – 12:6, copy attached as Exhibit G.

43.   The University provides some funding and in-kind support to KUCR for salaries, other investments, information technology services, maintenance and custodial services.  For the last five fiscal years (FYE's 2011 – 2015) University support as a percentage of all KUCR revenues has been 2.8%, 2.6%, 1.7%, 2.2%, and 3.3% according to KUCR's financial reports and audits prepared by independent certified accounting firms.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

27

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

44.     Attached hereto as Exhibits AA, BB, CC, DD and EE are the annual financial reports and audits for 2011, 2012, 2013 and 2014 (prepared by Cochran Head Vick & Co., P.A. of Kansas City, Kansas) and 2015 (prepared by Crowe Chezik LLP of Indianapolis, Indiana).

45.     Table 5 below summarizes all revenues of KUCR as reported in such financial statements' "Statements of Activities," including funding and in-kind support received from the University as reported in the financial statements' "Related Party Transactions" notes,[9] showing the amount of University financial support as a percentage of all revenues.

---

[9] The "Related Party Transactions" notes are found on the following pages:  FYE 2011, Bates Page Nos. KU-001824; FYE 2012, Bates Page Nos. KU-001841; FYE 2013, Bates Page Nos. KU-000428; FYE 2014, Bates Page Nos. KU-001862; FYE 2015, Bates Page Nos. KU-000520.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

28

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

| Table 5 University (State) Support as Percentage of All KUCR Revenues Sources: KUCR Financial Statements and Audit Reports, FYE 2011, FYE 2012, FYE 2013, FYE 2014 and FYE 2015 | | | | | |
|---|---|---|---|---|---|
| | FYE 2011 | FYE 2012 | FYE 2013 | FYE 2014 | FYE 2015 |
| Item | | | | | |
| Revenues, Gains and Other Support | | | | | |
| Direct Research Income | 129,929,915 | 139,282,318 | 134,468,296 | 126,291,625 | 115,937,302 |
| Facilities & Admininstration Revenue | 24,122,341 | 25,204,508 | 25,731,884 | 24,677,737 | 24,319,031 |
| Subtotals | 154,052,256 | 164,486,826 | 160,200,180 | 150,969,362 | 140,256,333 |
| Sponsored Research as | | | | | |
| Percent of Total Revenues | 95.3% | 89.4% | 93.1% | 92.3% | 92.3% |
| | | | | | |
| Service Centers* | 4,510,721 | 4,726,932 | 4,620,228 | 4,708,714 | 4,689,439 |
| Technology Transfer | 269,018 | 733,375 | - | - | - |
| Royalties | - | 5,377,172 | 5,224,372 | 5,163,677 | 5,550,140 |
| Donations of Equipment | 40,935 | 23,928 | 37,341 | - | 53,804 |
| Investment Income | 1,026,994 | 906,017 | 911,244 | 2,025,863 | 391,040 |
| Contributions** | - | 6,260,737 | 120,000 | 120,000 | 125,000 |
| Other Income | 1,712,399 | 1,425,893 | 994,067 | 640,538 | 912,252 |
| | 7,560,067 | 19,454,054 | 11,907,252 | 12,658,792 | 11,721,675 |
| | | | | | |
| Total Revenues, Gains & Other Support | 161,612,324 | 183,940,880 | 172,107,432 | 163,628,154 | 151,978,008 |
| Annual Average | | | | | $ 166,653,360 |
| | | | | | |
| University Support Included Above*** | | | | | |
| Salaries and Benefits | 3,398,046 | 4,042,034 | 2,094,353 | 1,887,335 | 1,389,217 |
| Start-Up | - | - | - | 500,000 | 2,000,000 |
| Other Investments | 1,005,429 | 686,867 | 770,552 | 1,068,059 | 1,462,687 |
| Utilities | 59,737 | 55,884 | 62,613 | 68,229 | 69,942 |
| Information Technology Services | - | - | - | - | 66,258 |
| Maintenance | 27,319 | 30,857 | 22,725 | 27,629 | 48,207 |
| Custodial | 27,747 | 27,747 | 38,938 | 36,556 | 20,791 |
| Total Univeristy Support | 4,518,278 | 4,843,389 | 2,989,181 | 3,587,808 | 5,057,102 |
| Annual Average | | | | | $ 4,199,152 |
| | | | | | |
| University Support as Percent of All Revenues, Gains and Other Support | 2.8% | 2.6% | 1.7% | 2.2% | 3.3% |
| Annual Average | | | | | 2.5% |

* Service Centers are Core Labs, like the MAI Lab directed by plaintiff, Deposition, Diane Goddard, pp. 81:16 - 82:1
** Listed as "Construction Contribution" for FYE 2012
*** Includes Funds and In-Kind Support

*See* KUCR Annual Financial Reports and Audits for 2011, 2012, 2013 and 2014 (prepared by Cochran Head Vick & Co., P.A. of Kansas City, Kansas) and 2015 (prepared by Crowe Chezik LLP of Indianapolis, Indiana), attached as Exhibits AA, BB, CC, DD and EE.

<u>KUCR Real Estate, Equipment and Other Property</u>

46.      KUCR also owns real estate, equipment and other property.  According to KUCR's annual financial reports and audits for FYE's 2011, 2012, 2013 and 2014 (prepared by Cochran Head Vick &b Co., P.A. of Kansas City, Kansas) and 2015 (prepared by Crowe Chezik LLP of Indianapolis,

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

29

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL. CASE NO. 2:14-CV-02420-SAC-KGS UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

Indiana), copies attached as Exhibits AA, BB, CC, DD and EE, KUCR owned and owns approximately $24.4 million in its own property, listed in Table 6 below.[10]  This does not include the Multi-Disciplinary Research Building and the Structural Biology Center.  They are carried as assets on the University's books.  *See* Gordzicka Deposition, University Chief Financial Officer, p. 26:6 – 25, copy attached as Exhibit G;

| Table 6 KUCR Builldings, Property and Equipment Sources:  KUCR Financial Statements and Audit Reports, FYE 2011, FYE 2012, FYE 2013, FYE 2014 and FYE 2015 | | | | | |
|---|---|---|---|---|---|
| | *FYE 2011* | *FYE 2012* | *FYE 2013* | *FYE 2014* | *FYE 2015* |
| Item | | | | | |
| Property & Equipment, Net | 26,371,008 | 24,349,389 | 24,479,874 | 22,933,752 | 20,271,391 |
| Buildings & Equipment in Progress | 256,482 | 505,997 | 882,668 | 948,294 | 828,067 |
| Totals | 26,627,490 | 24,855,386 | 25,362,542 | 23,882,046 | 21,099,458 |
| Average | | | | | 24,365,384 |

47.    Ownership for the Structural Biology Center and the Multi-Disciplinary Research Building, while still being constructed by KUCR, was transferred to the University.  State law requires than buildings being constructed on state land be conveyed to the state, s*ee* Gordzica Deposition, University Chief Financial Officer, pp. 26:13 – 27:10, attached as Exhibit G, even before completion.

48.    While KUCR has the authority to issue bonds, *see Restated Articles of Incorporation of University of Kansas Center for Research, Inc.,* Art. Second (j)    , attached as Exhibit TT, KUCR as the obligor went through the Kansas Development Finance Authority ("KDFA"), a state financing conduit, to borrow the funds to build and equip the buildings.  Bonding through the KDFA can reduce project costs to the extent the bonds are considered tax-exempt under the Internal Revenue Code, thereby carrying lower interest rates than non-tax-exempt or other corporate bonds.  The KDFA bonds issued for the Structural Biology Center Multidisciplinary Research Building were a mixture of tax exempt and non-tax-exempt bonds.  *See* Gordzica Deposition, University Chief Financial Officer, pp. 35:22 – 36:18, attached as Exhibit G.

---

[10] The "Buildings, Equipment and Other Property" information is found beginning on the following pages:  FYE 2011, Bates Page No. KU-001821; FYE 2012, Bates Page No. KU-001837; FYE 2013, Bates Page No. KU-000422; FYE 2014, Bates Page No. KU-1856; FYE 2015, Bates Page No. KU-000513.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

30

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

49.     The annual debt service on the bonds is approximately $4.0 to $5.0 million.  KUCR funds the debt service out of its retained Facilities and Administration reimbursement funds.  It is not a grant from KDFA or the state.  *See* Goddard Deposition, KUCR Secretary/Treasurer, p. 120:17 – 121:17, attached as Exhibit A.

50.     In the event KUCR has insufficient funds in any one year to make its bond payments, the University, by agreement with KUCR and bond indenture co-parties, not by state law, must cover the year's defaulted amount.  *See First Amendment to Affiliation Agreement,* Sec. 2, attached as Exhibit R.

51.     KUCR owns four other buildings, including the Wakarusa Research Facility (two buildings) purchased for $1.4 million in 2011, *see* KUCR Executive Committee Meeting Minutes, May 13, 2011, Bates No. KU-002588, copy attached as Exhibit GG, the INTERx Building a/k/a Takeru Higuchi Building (40,000 square feet, purchased in 2001) and the St. Andrews Research Facility (10,462 square feet, purchased for $475,000).   *See* Goddard Deposition, KUCR Secretary/Treasurer, pp. 96:9 – 97:13, attached as Exhibit A.   *See also* Minutes of Annual Meeting of KUCR Board of Trustees, December 14, 2001, Power Point® Slide No. 24 (lengthy exhibit, reader is directed to Bates Page No. KU 000805), copy attached as Exhibit HH, and Resolution of KUCR Executive Committee, August 12, 2013, Bates Page No. KU-002600, copy attached as Exhibit II.

### KUCR Loans to Other Entities

52.     KUCR loaned $1.1 million of its own funds to the Lawrence-Douglas County Biosciences Authority to assist in the construction of the Bioscience and Technology Business Center, an incubator for technology start-up companies, in 2010.   *See* Financial Statements together with Independent Auditor's Report, Fiscal Years Ended June 30, 2012 and 2011, Note 4, Notes Receivable, p. 10, prepared by Cochran, Head Vick & Co., P. A., Certified Public Accountants, copy attached as Exhibit BB.  *See also* Goddard Deposition, KUCR Secretary/Treasurer, 23:13 – 23:18, copy attached as Exhibit A.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

31

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL. CASE NO. 2:14-CV-02420-SAC-KGS UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

53.     In addition, KUCR loaned the University $4.0 million to build a Book and Archival Records Depository for the University's Library.  *See* Goddard Deposition, KUCR Secretary/Treasurer, 125:19 – 126:13, copy attached as Exhibit A, and Resolution of KUCR Board of Trustees, copy attached as Exhibit JJ.[11]

KUCR Net Worth (Net Assets)

54.     KUCR's total assets (cash, investments, buildings, equipment and personal property) are in excess of $100 million, with corresponding liabilities (accounts payable, bonds payable and deferred revenues) ranging from $70.0 million to $80.0 million for a current net worth (net assets) of over $41.0 million as summarized in Table 7 below.

| Table 7<br>**KUCR Unrestricted Net Assets (Net Worth)**<br>Sources: KUCR Financial Statements & Audit Reports, FYE 2011 through FYE 2015 | | | | | |
|---|---|---|---|---|---|
| | FYE 2011 | FYE 2012 | FYE 2013 | FYE 2014 | FYE 2015 |
| Total Assets<br>Less: | 99,586,237 | 103,787,946 | 104,367,775 | 114,038,841 | 115,275,320 |
|   Total Liabilities | 82,078,095 | 77,424,106 | 72,559,009 | 79,882,261 | 74,109,435 |
| Unrestricted Net<br>  Assets | **17,508,142** | **26,363,840** | **31,808,766** | **34,156,580** | **41,165,885** |

*See* KUCR Annual Financial Reports and Audits for 2011, 2012, 2013 and 2014 (prepared by Cochran Head Vick & Co., P.A. of Kansas City, Kansas) and 2015 (prepared by Crowe Chezik LLP of Indianapolis, Indiana), attached as Exhibits AA, BB, CC, DD and EE.[12]

KUCR Corporate Powers

55.     Under the Restated Articles of Incorporation of University of Kansas Center for Research, Inc. ("KUCR Articles of Incorporation"), copy attached as Exhibit TT, KUCR has all the normal powers of a corporation under the Kansas General Corporation Code, K.S.A. Secs. 17-101 through 17-7709, including, at Art. Second, the normal powers to:

---

[11] Copy of this resolution missing at time of filing this memorandum.  Plaintiff will file motion for leave of the Court to file the exhibit separately.

[12] The "Net Assets" information is found beginning on the following pages:  FYE 2011, Bates Page No. KU-001814; FYE 2012, Bates Page No. KU-001830; FYE 2013, Bates Page No. KU-000414; FYE 2014, Bates Page No. KU-001848; FYE 2015, Bates Page No. KU-000504.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO<br>MOTION FOR SUMMARY JUDGMENT OF<br>UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

32

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.<br>CASE NO. 2:14-CV-02420-SAC-KGS<br>UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

Hold, purchase, acquire, sell, convey, lease, mortgage, and dispose of property, real or personal, tangible or intangible, including its rights, privileges and franchise, including the power and authority to acquire, purchase, hold, lease, convey, mortgage and pledge real property outside the state of Kansas;

Borrow money and issue, sell or pledge, bonds, promissory notes, bills of exchange, debentures and other obligations and evidence of indebtedness, secured or unsecured, and to purchase, acquire, subscribe for, guarantee, hold and dispose of the shares,, bonds and other evidences of indebtedness or contracts or any other corporation, domestic or foreign.

Enter into, make, perform, and carry out contracts of every kind for any lawful purpose without limit as to amount, with any person, firm, association or corporation, with the Government of the United States of America, or any governmental subdivision thereof, with any county, city or state government or any other municipal or governmental subdivision, also with any foreign government or foreign corporation.

Sue and be sued;

Have and exercise all of the powers conferred by the laws of the Kansas upon corporations formed under the laws pursuant to and under which [the] corporation is formed as such laws are now in effect or may at any time hereafter be amended.

56.     In addition, under the *Restated Articles of Incorporation of University of Kansas Center for Research, Inc.*, Article Second, upon the corporate termination of KUCR, whether by dissolution or by expiration of its term, the assets of KUCR are to be distributed to the Kansas University Endowment Association to be used for such charitable, educational or scientific purposes as the trustees of the Endowment Association deem to be in the best interests of the University of Kansas.

<u>University of Kansas Endowment Association</u>

57.     The University of Kansas Endowment Association ("Endowment Association") is an independent, non-profit organization that annually provides funds to the University or pays expenses on behalf of the University for construction, equipment, library acquisitions, works of art, travel, salaries scholarships and fellowships.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

33

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-cv-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

58.     Attached hereto as Exhibits KK, LL, MM, NN and OO are true and correct copies of the Annual Financial Reports of the University as posted on the University's web site for the University's five fiscal years ending 2011, 2012, 2013, 2014 and 2015.[13]

59.     The Endowment Association provided the following amounts, by payments to the [14]University or paying expenses on the University's behalf, for construction, equipment, library acquisitions, works of art, travel, salaries scholarships and fellowships for the University's five fiscal years ending 2011, 2012, 2013, 2014 and 2015 as follows, averaging $125,920,000 a year, summarized in Table 8 below:

| Table 8 Endowment Association Financial Support to University Sources: University Annual Financial Reports, FYE 2011 - 23015 Management Discussion and Analysis: Endowment Expenses Paid on Behalf of University | | | | |
|---|---|---|---|---|
| | FYE 2011 | FYE 2012 | FYE 2013 | FYE 2014 | FYE 2015 |
| Annual Amount | $   108,000,000 | $   109,400,000 | $   116,800,000 | $117,400,000 | $  178,000,000 |
| Total | | | | | $  629,600,000 |
| Annual Average | | | | | $  125,920,000 |

## Question Presented

*"Arm of the State" Eleventh Amendment Immunity.*

60.     One question is presented:  Whether KUCR is an "arm of the state" immune from suit in federal court under the Eleventh Amendment, depriving the Court of subject matter jurisdiction on all counts of the *Second Amended Complaint for Disability Discrimination and Retaliation, Whistleblowing*

---

[13]    Accessed on April 26, 2016 at http://financial-reporting-services.ku.edu/sites/financial-reporting-services.drupal.ku.edu/files/docs/Annual_Financial_Reports/KU_AFR_FY2011.pdf;   ;   http://financial-reporting-services.ku.edu/sites/financial-reporting-services.drupal.ku.edu/files/docs/Annual_Financial_Reports/KU_AFR_FY2012.pdf;   ;   http://financial-reporting-services.ku.edu/sites/financial-reporting-services.drupal.ku.edu/files/docs/Annual_Financial_Reports/KU_AFR_FY2013.pdf;   ;   http://financial-reporting-services.ku.edu/sites/financial-reporting-services.drupal.ku.edu/files/docs/Annual_Financial_Reports/KU_AFR_FY2014.pdf;   http://financial-reporting-services.ku.edu/sites/financial-reporting-services.drupal.ku.edu/files/docs/Annual_Financial_Reports/KU_AFR_FY2015.pdf.

[14] Amounts paid for each  year begin on the following pages of the exhibits:  FYE 2011, p. 5; FYE 2012, p. 6; FYE 2013, p. 7; FYE 2014, p. 7; and FYE 2015, p. 7

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

34

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

*Retaliation and Deprivation of Constitutional Rights* (ECF No. 90) ("*Second Amended Complaint*") asserted against KUCR

## Argument

### *Introduction*

61.     KUCR has not met is burden of proof as both a summary judgment movant and as a party claiming "arm of the state" Eleventh Amendment Immunity.  KUCR meets only one of the "arm of the state" factors, namely, the University controls KUCR.  It falls short on all other factors.  The State of Kansas is not liable for its debts, the most important and determinative factor.  It is not authorized or even referred to in state statutes.  It is financially strong and independent of the state, with revenues averaging over $250 million a year, overwhelmingly from the federal government, and a net worth of over $41.0 million.  It receives no state appropriations and derives less than 3% of its total revenues from state agencies for which it performs fee-for-service sponsored research.  It's not being an "arm of the state" does not offend the dignity of the State of Kansas.

62.     Far from being an "arm of the state," KUCR was formed *to be apart from and to distance itself from the State,* specifically to avoid statutory requirements[15] to deposit sponsored research dollars with the state and, instead, keep its hundreds of millions in revenues and assets from the hands of the state.  While KUCR does not cite any facts supporting the notion that it's not being an arm of the state, it's being formed and operating to avoid the state likely does offend the dignity of the state.

63.     There is nothing illegal or wrong with a university-controlled corporation conducting and holding sponsored research revenues and assets to exclude state control of its funds.  But if it wishes to do so, it cannot accept all the *benefits*, *e.g.,* freeing itself from state law requirements, but avoid the *burdens*, *e.g.,* following the nation's employment laws.  The "arm of the state" doctrine is not intended to be used as both a sword and a shield.

### *Summary Judgment Standards*

---

[15]All moneys received by a state educational institution as overhead costs on sponsored research projects *shall* be deposited to the credit of the sponsored research overhead fund." K.S.A. Sec. 753(b)(emphasis added).

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

35

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

64.     KUCR has correctly stated the standards for summary judgment considerations.

*KUCR Bears the Burden*
*of Proving It Is an "Arm of the State"*

65.     KUCR claims it is an "arm of the state" immune from suit in federal court.  As this Court stated in its *Memorandum and Order* (ECF No. 83), p. 10, a party claiming this immunity bears the burden of proof to establish that it is an "arm of the state," *Teichgraeber v. Memorial Union Corporation of the Emporia State University,* 946 F.Supp. 900, 903 (D.Kan. 1996), by a preponderance of the evidence, like any affirmative defense, *ITSI TV Productions, Inc. v. Agricultural Associations,* 3 F.3d 1289, 1292 (9th Cir. 1993).  *See also Deep Sea Research, Inc. v. The Brother Jonathan*, 89 F.3d 680, 687-688 (9th Cir. 1996).

66.     Sister courts in the 10th Circuit agree.  *See Giddings v. Utah Transit Authority*, 107 F.Supp.3d 1205, 1208 (D.Utah 2015); *Ross v. Colorado Department of Transportation*, 978 F.Supp.23d 1197, 1199 (D.Colo. 2013); *Thomas v. Guffy*, 2008 WL 2884368 at *4 nn. 1-4 (W.D.Okla. Jul. 25, 2008), *Union Pacific Railroad Company v. Burton*, 949 F.Supp. 1546, 1551 (D.Wyo. 1996), *citing Christy v. Pennsylvania Turnpike Commission*, 54 F.3d 1140, 1144 (3rd Cir. 1995).

67.     While it does not appear that the 10th Circuit has passed on the question, all seven circuits that have passed on the question (1st, 2nd, 3rd, 5th, 6th, 7th and 9th Circuits), unanimously have so held. *Wojcik v. Massachusetts State Lottery Commission*, 300 F.3d 92, 99 (1st Cir. 20020); *Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico and the Caribbean Cardiovascular Corp.*, 322 F.3d 56, 61 (1st Cir. 2003); Second Circuit - *Woods v. Rondout Valley Central School District*, 466 F.3d 232, 237-239 (2nd Cir. 2006)("Although the Supreme Court has not specifically ruled on this burden question, circuit courts that have done so have unanimously concluded that 'the entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity.'"); *Christy v. Pennsylvania Turnpike Commission*, 54 F.3d 1140, 1144 (3rd Cir. 1995); *Skelton v. Camp*, 234 F.3d 292, 297 (5th Cir. 2000) and *Skelton v. Camp*, 234 F.2d 292, 297 (5th Cir. 2000); *Gragg v. Kentucky Cabinet for Workforce Development*, 289 F.3d 958, 963 (6th Cir. 2002); *Baxter v. Vigo County School Corporation,* 26 F.3d 728,

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF                              36
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

734 n.5 (7th Cir. 1994); and *ITSI TV Productions, Inc. v. Agricultural Associations*, 3 F.3d 1289, 1292 (9th Cir. 1993).

68.    KUCR has not met its burden.

*"Arm of the State" Eleventh Amendment Immunity*

69.    The Eleventh Amendment, U.S.Const., provides:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

70.    In *Mount Pleasant City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the United States Supreme Court determined that a public school district in Ohio was not entitled to state immunity as an "arm of the state" under the Eleventh Amendment.  The court looked to state law for determining whether an entity was an "arm of the state."   Under Ohio law, "political subdivisions" like cities and counties were not "arms of the state" and, accordingly, a public school district, also a "political subdivision," could not be an ""arm of the state"."   While the school district was subject to guidance from the Ohio State Board of Education and received significant state funding, it was financially independent of the state because it could levy its own taxes and issue bonded debt.   "On balance," the court concluded, the school board was "more like a county or a city than it is like an "arm of the state"."  *Mount Pleasant,* 429 U.S. at 280 – 281.

"Arm of the State" Factors

71.    Following *Mt. Healthy,* the circuits in the 1990s and thereafter fleshed out various "arm of the state" tests.   In the Tenth Circuit, *Sturdevant v. Paulsen,* 218 F.3d 1160 (10th Cir. 2000), is frequently cited.  Indeed, it was cited by this Court in its *Memorandum and Order* (ECF No. 83) denying, without prejudice, the earlier "arm of the state" *Motion to Dismiss [of] The University of Kansas Center for Research* (ECF No. 61) based on the need for more factual information.  According to the *Sturdevant* court, "'[t]he arm-of-the-state doctrine bestows immunity on entities created by state governments that

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

37

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

operate as *alter egos* or instrumentalities of the states.'"  *Id.* at 1164, *citing Mascheroni v. Board of Regents of the University of California*, 28 F.3d 1554, 1559 (10th Cir. 1994).

72.     The court described the analysis as a two-part, fact-intensive analysis looking, first, at *autonomy* of the entity from the state and, second, the *financial independence* of the entity from the state, each with subparts.  For ease of analysis, the *Sturdevant* opinion's text is broken into subparagraphs, as follows:

> To determine whether an entity is an "arm of the state" we engage in two general inquiries.
>
> [T]he court first examines the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state.
>
> Second, the court examines the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing.
>
> The governmental entity is immune from suit if the money judgment sought is to be satisfied out of the state treasury.  *Watson*, 75 F.3d at 574-75 (internal quotations and citations omitted).  With respect to the last and particularly important factor of state treasury liability, "[w]e interpret *Doe*, 519 U.S. at 431, to require us to focus on legal liability for a judgment, rather than practical, or indirect, impact a judgment would have on a state's treasury."  *Duke*, 127 F.3d at 981.

*Id.* at 1164.

73.     According to the court in *Studevant*, "State treasury liability strongly favors arm-of-the-state status.  *Id.* at *1165*.  Further,

> "The key question is whether funds to satisfy a money judgment would come directly from the state, or indirectly through commingled state and local funds or state indemnification provisions."  *Sutton*, 173 F.3d at 1233 (*citing Ambus*, 995 F.2d at 996) (*emphasis added*).  In answering this question, we focus on the legal incidence, not the practical effect, of the liability.  *See Duke*, 127 F.3d at 981.

*Id.* at 1165.

74.     The court then cited four factors for measuring *autonomy* and *financial independence*.

> Under the general rubrics of autonomy and financial independence, we have identified several other factors relevant to the arm-of-the-state determination: (1) the characterization of the governmental unit under state law; (2) the guidance and control exercised by the state over the governmental unit; (3) the degree of state funding

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

38

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

received; and (4) the governmental unit's ability to issue bonds and levy taxes on its own behalf.

*Sutton*, 173 F.3d at 1232 (*citing Mt. Healthy*, 429 U.S. at 280); *cf. Duke*, 127 F.3d at 978 (setting forth a substantially similar list of factors derived from *Hess*, 513 U.S. at 44-46); *Ambus*, 995 F.2d at 994.

*Id.* at 1166.

75.     As to the fourth factor, namely, the power to levy taxes and issue bonds, a distinction should be made between decisions distinguishing between levels of government entities, *e.g.,* school district, water and sewer authority, transit authority ("Level of Government Decisions"), and those determining whether a corporate entity is functioning as an *alter ego* of a state or state agency, as in this case.  ("Alter Ego Decisions").

76.     The power to levy taxes and issue bonds is a factor in the Level of Government decisions. *See for example Sturdevant* (state board of community colleges); *Sutton v. Utah State School for the Deaf and Blind*, 173 F.2d 1226, 1232 (10th Cir. 1999)(state school for deaf and blind); *Duke v. Grady Municipal Schools*, 127 F.3d 972, 982 (10th Cir. 1997)(school district); *Elam Construction District v. Regional Transportation District*, 129 F.3d 1343, 1345 (10th Cir. 1997)(transit authority); *Sonnenfield v. City and County of Denver*, 100 F.3d 744, 749 (10th Cir. 1996)(consolidated city and county); *White v. Adams County Detention Facility*, 69 F.3d 549, 549 (10th Cir. 1995)(county jail); *Haldeman v. State of Wyoming Farm Loan Board*, 32 F.3d 469, 473 (10th Cir. 1994)(farm loan board); *Mascheroni v. Board of Regents of the University of California*, 28 F.3d 1554, 1559 (10th Cir. 1994)(state board of regents operating federal laboratory); *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (school district); *Garcia v. Board of Education of the Socorro Consolidated School District*, 777 F.2d. 1403, 1412 (10th Cir. 1985)(school district, dissenting opinion); *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1493 (10th Cir. 1983)(state army national guard, no taxing power of its own);

77.     The power to levy taxes and issue bonds is not a factor in Alter Ego Decisions.  *Sikkenga, supra* (state university hospital pathology clinic); and *Watson v. University of Utah Medical Center*, 75 F.3d 569, 575 (10th Cir. 1996)(state university hospital).

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

39

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

78.     Finally, the analysis sometimes as been stated as including an additional factor, namely, whether the entity is primarily concerned with local or state affairs, including examination of its function, composition and purpose. *Steadfast Insurance Company v. Agricultural Insurance Company,* 507 F.3d 1250, 1253 (109th Cir. 2007), applied by this Court in making a removal diversity determination in *Kansas State University v. Prince,* 673 F.Supp.2d 1287, 1298 (D.Kan. 2009).   However, as this Court noted in its *Memorandum and Order* (ECF No. 83) denying the earlier "arm of the state" motion to dismiss, this factor may not have much application in this case, an Alter Ego Decision, because "this factor seems oriented to distinguishing between levels of government entities (Level of Government) and not to discerning whether a corporate entity is functioning as an alter ego. *Memorandum and Order* (ECF No. 83), p. 23.  Similarly, the Tenth Circuit discounted this factor in *Sturdevent,* noting that it was a factor considered in "other circuits." *Sturdevent*, 218 F.3d at 1166.

79.     While courts look to the four factors, the Eleventh Amendment overwhelmingly is about protecting state treasuries from money judgments.   Of the four factors, as the 10th Circuit stated in *Sturdevant, supra,* an "entity is immune from suit if the money judgment sought is to be satisfied out of the state treasury," citing the 10th Circuit's decision in *Watson v. University of Utah Medical Center*, 75 F.3d at 569, 574-75 (10th Cir. 1996)

80.     The Supreme Court decision is *Hess v. Port Authority Trans Hudson Corporation,* 513 U.S. 30, 115 S.Ct. 394, 130 L.Ed.2d 245, 63 U.S.L.W. 4009 (1994), makes this very clear.  The court emphasized a state treasury's liability for a judgment as the "core concern" and determinative factor in an "arm of the state" analysis.   According to the court, "When indicators of immunity point in different directions, the Eleventh Amendment's twin reasons for being remain our prime guide," *Hess,* 513 U.S. at 47, namely, protecting a state's treasury and a state's dignity.  *See also*, this Court's *Memorandum and Order* (ECF No. 83), p. 24, August 21, 2015, denying KUCR's earlier motion to dismiss based on its asserted "arm of the state" status, *see Motion to Dismiss [of] the University of Kansas Motion to Dismiss* (ECF No. 61), based on the need for more evidence.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

40

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

81.     In *Hess,* a FELA action, the Supreme Court denied "arm of the state" immunity to the

Port Authority Trans Hudson Corporation operating a New York/New Jersey bi-state rail system for

service between northern New Jersey and Manhattan Island in New York City[16] under an interstate

compact specifically approved by the States of New York and New Jersey.   According to the court's

syllabus, referring to pp. 47-51 of the opinion:

> [M]ost Federal Courts of Appeals have identified the "state treasury" criterion – whether
> a judgment against the entity must be satisfied out of a State's treasury – as the most
> important consideration in deciding whether a state-created entity qualified for Eleventh
> Amendment immunity.   The Port Authority, however, is financially self-sufficient; it
> generates its own revenues and pays its own debts.   Where, as here, the States are neither
> legally nor practically obligated to pay the entity's debts, the Eleventh Amendment's core
> concern is not implicated.

82.     The Port Authority tried to focus the court's attention on factors showing the two states'

control over the Authority, *e.g.,* state appointment of its commissioners, gubernatorial veto power over

Authority actions and state legislative determination of Authority projects.   That missed the mark,

according to the court, citing decisions from seven different circuits:

> [R]endering control dispositive does not home in on the impetus for the Eleventh
> Amendment:  the prevention of federal-court judgments that must be paid out of a State's
> treasury.  See Fletcher, A Historical Interpretation of the Eleventh Amendment, 35 Stan.
> L. Rev. 1033, 1129 (1983) (identifying "the award of money judgments against the
> states" as "the traditional core of eleventh amendment protection").  Accordingly, Courts
> of Appeals have recognized the vulnerability of the State's purse as the most salient factor
> in Eleventh Amendment determinations. See*, e. g., Baxter v. Vigo County School
> Corporation*, 26 F.3d 728, 732-733 (CA7 1994) (most significant factor is whether entity
> has power to raise its own funds); *Hutsell v. Sayre*, 5 F.3d 996, 999 (CA6 1993) ("The
> most important factor . . . is whether any monetary judgment would be paid out of the
> state treasury."), cert. denied, 510 U.S. 1119 (1994); *Metcalf & Eddy, Inc. v. Puerto Rico
> Aqueduct and Sewer Authority*, 991 F.2d 935, 942-943 (CA1 1993) ("First, and most
> fundamentally, [the entity's] inability to tap the Commonwealth treasury or pledge the
> Commonwealth's credit leaves it unable to exercise the power of the purse.  On this basis,
> [the entity] is ill-deserving of Eleventh Amendment protection.");     *Bolden v.
> Southeastern Pennsylvania Transportation. Authority*, 953 F.2d 807, 818 (CA3 1991) (in
> banc) ("[T]he 'most important' factor is 'whether any judgment would be paid from the
> state treasury.' ") (*quoting Fitchik v. New Jersey Transit Rail Operations, Inc*., 873 F.2d
> 655, 659 (CA3) (in banc), cert. denied, 493 U.S. 850 (1989)), cert. denied, 504 U.S. 943
> (1992); *Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp*., 948 F.2d 1084,
> 1087 (CA8 1991) ("Because Missouri and Illinois are not liable for judgments against Bi-

---

[16] Commonly known as the "PATH," an acronym for "Port Authority Trans Hudson."

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

41

DAVID S. MOORE, PH.D. v. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

State, there is no policy reason for extending the states' sovereign immunity to Bi-State."); *Feeney v. Port Authority Trans-Hudson Corporation*, 873 F.2d, at 631 ("In cases where doubt has existed as to the availability of Eleventh Amendment immunity, the Supreme Court has emphasized the exposure of the state treasury as a critical factor."), aff'd on other grounds, 495 U.S. 299 (1990); *Jacintoport Corp. v. Greater Baton Rouge Port Comm'n*, 762 F.2d 435, 440 (CA5 1985) ("One of the most important goals of the immunity of the Eleventh Amendment is to shield states' treasuries . . . . The purpose of the immunity therefore largely disappears when a judgment against the entity does not entail a judgment against the state."), cert. denied, 474 U.S. 1057 (1986). *In sum, as New York and New Jersey concede, the "vast majority of Circuits . . . have concluded that the state treasury factor is the most important factor to be considered . . . and, in practice, have generally accorded this factor dispositive weight."* Brief for States of New Jersey, New York et al. as Amici *Curiae* 18-19.

*Hess*, 513 U.S. at 48-49 (emphasis added).

83.     The court cited the Eleventh Amendment's history as making it clear that state treasury liability was the real and only reason for the Eleventh Amendment. *Hess*, 513 U.S. at 39 – 40.

84.     The amendment's history is thoroughly explained in Justice Brennan's lengthy majority opinion in *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1, 57 U.S.L.W. 4662 (1989), making portions of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. Secs. 9604 and 9606, applicable states, and in Justice Stevens' majority and similarly lengthy opinion in *Central Virginia Community College v. Katz*, 546 U.S. 356, 126 S.Ct. 960, 163 L.Ed.2d 945 (2006), holding that states were not immune from bankruptcy trustees' actions to set aside debtor's preferential transfers to state agencies.  While not as thorough as Justices Brennan's and Stevens' opinions, the history (much of it documented by legal scholars only in the last few decades) can be summarized as follows:

(a)     The states at the time of the American Revolution in the 1770's and 1780's borrowed extensively, particularly from foreign creditors, to fund their war efforts.  When the war was formally resolved under the 1783 Treaty of Paris recognizing the "United States of America" as a sovereign nation, both the United States and England agreed to, *inter alia,* stand behind their war debts, a fact perhaps not widely appreciated in the states at the time.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

42

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

(b)      As the proposed constitution went through the ratification process with the state assemblies and legislatures from 1787 through 1790, a major issue, if not *the* major issue, was the extent to which states were ceding sovereignty and power to a new national government.[17]   This played out on many fronts, including whether states could be hauled before a federal court by creditors, particularly, for the payment of states' Revolutionary War debts.   The matter was not resolved by either the Framers when drafting the Constitution or the many debates during ratification.   Many apparently assumed that federal courts under Art. III and the Judiciary Act of 1789 had no subject matter jurisdiction over the states.

(c)      Chief Justice Marshall surprised many in 1793 when the Supreme Court held (4 to 1) that one of Georgia's Revolutionary War creditors could sue the State of Georgia in federal court on the state's Revolutionary War bonds.   *Chisholm v. Georgia*, (2 Dall.) 419.   This supposedly was so shocking that the Eleventh Amendment was quickly passed barring actions against a state by a citizen of another state or nation, completing ratification among the then-fifteen states in only eleven months.   Clearly, the Eleventh Amendment was about money judgments against states.

(d)      The primacy of protecting state treasuries as the Eleventh Amendment's motivating force was again demonstrated during Reconstruction after the Civil War.   During Reconstruction, southern states issued significant debt to rebuild their war ravaged cities, towns and countryside.   Defaults on "Southern Debt" were widespread and unsettled the national economy throughout much of the last half of the 19th Century.   Once again, the Supreme Court surprised the nation when a Louisiana citizen sued the State of Louisiana in federal court in Louisiana to collect on defaulted Louisiana bonds.   While the Eleventh Amendment by its very terms is limited to actions against a state by a citizen of a different state (diversity actions,

---

[17] It's not an accident that the nation's name is the "United States of America," plural, as opposed to a unitary name, *e.g.,* France, Germany, Mexico or simply the "Republic of America."

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

43

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

generally), the Supreme Court in *Hans v. Louisiana*, 134 U. S. 1 (1890) held that the Eleventh Amendment extended to suits against states by their own citizens.

(e)     States wanted to control their liability for Revolutionary War and Reconstruction debts in their own courts, not a supposedly neutral federal court

85.     Accordingly, as concluded in *Hess*, risk to a state's treasury has become the determining factor in "arm of the state" decisions.

86.     The Supreme Court in *Hess* cited *Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct and Sewer Authority*, 991 F.2d 935 (1st Cir. 1993).  The decision is illustrative.  In *Metcalf & Eddy*, the 1st Circuit held that a water and sewer authority specifically authorized by statute was not entitled to Eleventh Amendment immunity as an "arm of the state".  As to the "principal issue - . . . access to the Commonwealth's treasury – the die is quickly cast" because the Authority had no power to pledge the Commonwealth's credit or taxing power and bonds issued by the Authority statutorily were not debts of the Commonwealth.  According to the court, "The statute erects a wall between the agency's appetite and the public fisc.  The existence of this statutory barrier presages the result we much reach:  PRASA [the Authority] is not an "arm of the state" for Eleventh Amendment purposes." *Metcalf & Eddy*, 991 F.2d at 939.

87.     Even though "PRSA's inability to draw on the public fisc cripples its immunity defense," the court looked to "the other factors mentioned in the case law in order that our investigation may be complete."  *Metcalf & Eddy*, 991 F.2d at 941.  In that regard, the court accepted that the Authority performed "an essential government function," that "its revenue bonds" were not taxable, and that it had the power of eminent domain.  On the other side of the scale, the court noted the Authority had the power to borrow on its own, it had its own revenue stream, its funds were separate and controlled by its own board and "last, but not least," the Commonwealth by statute had insulated itself from any responsibility for the Authority's general and bonded debt.  *Metcalf & Eddy*, 991 F.2d at 942.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

44

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

88.     In the end, the court held the "profound impact" of the Authority's inability to tap the Commonwealth's treasury or pledge its credit left it "unable to exercise the power of the purse." According to the court, "On this basis, PRASA is ill-deserving of Eleventh Amendment protection" and the "legislature chose to structure an arm's length relationship" between the Authority and the state.

89.     As to being specifically authorized by legislative statute, the court held, "The mere imprimatur of state authority is insufficient to inoculate an agency or institution against federal court jurisdiction. A "slice of state power," without more will not sate the Eleventh Amendment." *Metcalf and Eddy*, 991 F.2d at 939, citing *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979).

90.     KUCR states in its *Memorandum in Support of University of Kansas Center for Research's Motion for Summary Judgment* (ECF No. 157), at p. 11, that the four "arm of the state" factors are "co-equal," citing *Benn v. First Judicial District of Pennsylvania*, 426 F.3d 233 (3rd Cir. 2005), and it, in turn citing the Supreme Court in *Regents of the University of California v. Doe*, 519 U.S. 425, 430-431, 117 S.Ct. 900, 137 L.Ed2d 55, 65 U.S.L.W. 4129 (1997), contrary to the many Supreme Court and circuit court decisions holding that a state's treasury's exposure is the most important factor.

91.     KUCR's reliance on *Doe* is misplaced for two reasons:

(a)     First, it is a Third Circuit opinion, not controlling in this circuit or district.

(b)     Second, the Third Circuit misconstrued the Supreme Court's decision in *Doe*. In *Doe*, the California Board of Regents by contract with the federal government operated the Lawrence Livermore National Laboratory.

(i)     Under the contract, the federal government was required to indemnify the state board of regents for judgments that might be entered against it. An unsuccessful Lawrence Livermore job applicant sued the state board of regents for breach of a contract to hire him as a mathematical physicist and claimed the state board of regents was not

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

45

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

immune under the Eleventh Amendment because it would be indemnified by the federal government, citing the primacy of the state treasury factor. *Doe*, 519 U.S. at 426-427.

> (ii)    The 9th Circuit agreed, subject to one dissenting opinion. The dissenting judge agreed with the majority that the state treasury factor was "the most important factor," but that the state's "primary legal liability rather than the ultimate economic impact of the judgment" attributable to indemnity was determinative. *Id.* at 428.

> (iii)    Justice Stevens, writing for a unanimous court, stated "we agree with the dissenting judge" that:

>> It is the entity's potential legal liability, rather than its ability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant.

*Id.* at 431.

> (iv)    The Court adhered to *Hess*, *supra,* and stated state treasury factor was "of considerable importance." *Id.* at 430.

> (v)    In addition, it should be noted that Justice Stevens is one of the leading justices in the history of the Supreme Court for the position that the Eleventh Amendment is about money and that the state treasury factor is the driving factor in and Eleventh Amendment analysis. *See Central Virginia Community College v. Katz*, 546 U.S. 356, 126 S.Ct. 960, 163 L.Ed.2d 945 (2006)(majority opinion); and *Seminole Tribe of Florida v. Florida*, 517 U.S 44, 75 – 100, 116 S.Ct. 1114, 134 L.Ed.2d 252, 64 U.S.L.W. 4167 (dissenting opinion).

> (vi)    Accordingly, the Third Circuit's opinion in *Benn* that the "arm of the state" factors are "co-equal" based on *Doe* is off the mark.

92.    Even though "the die is quickly cast," *Metcalf & Eddy*, 991 F.2d at 939, that KUCR is not an arm of the state by virtue of state's not being liable for KUCR's debts, a review of the four *autonomy* and *financial independence* factors further shows that KUCR is not an arm of the state.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

46

DAVID S. MOORE, PH.D. v. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

*Factor 1*
*Autonomy of Entity: Characterization of Entity under State Law*

93.      This part of the analysis requires a "formalistic review of state law" under "state statutes, regulations, and constitutional provisions which characterize the entity, and holdings of state courts on the question," regarding the entity's status.  *Prince*, 673 F.Supp.2d. at 1288, 1299.

94.      A broader view regarding research organizations like KUCR may be helpful.  Before 1980, scientific research at universities generating new materials, procedures, substances and technologies could be patented with the federal government, but universities and their inventors were required to assign such patents to the federal government for its use, assignment or licensing to others, making it not possible for universities and their inventors to benefit financially from their patented discoveries and use funds earned thereby for additional scientific research and discoveries.

95.      Federal laws were changed in 1980 under the Bayh-Dole Act[18] permitting universities *and non-profit corporations* to patent new materials, procedures, substances and technologies developed in Internal Research or Sponsored Research that can be patented with the federal government, providing income opportunities for university inventors and their universities from the assignment (sale) of patents, licensing of patents, and other forms of remuneration.

96.      Under the Bayh-Dole Act, either a university *or a non-profit corporation* can conduct a research program, own patents derived therefrom, and apply net earnings from patent assignments, licensing royalties or stock equities to scientific education or research.

97.      As stated above, the University and KUCR decided to go the non-profit corporation route for conducting Sponsored Research in order to "combine corporate flexibility with state stability.  *See* Minutes of Annual Meeting of KUCR Board of Trustees, December 1, 1999, attached Power Point® presentation, Slide 4 (lengthy exhibit, reader is directed to Bates Page No. KU-000740), attached as Exhibit B.

---

[18] Bayh–Dole Act or Patent and Trademark Law Amendments Act (Pub. L. 96-517, December 12, 1980)

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF                                    47
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

98.     While Kansas at one time *had* a "Kansas Research Foundation Act," K.S.A. Sec. 76-2a11, it was repealed in 1974.  L. 1974, ch. 413, Sec. 1, July 1.[19]

99.     Today,  there is no enabling legislation for KUCR specifically or research foundations generally as is the case with legislatively authorized or enabled entities,[20] *e.g.,* Kansas Bioscience Authority, K.S.A. Secs. 74-99b03, *et seq.*; University of Kansas Hospital Authority, K.S.A. Secs. 76-3304, *et seq.*; Kansas Electric Transmission Authority, K.S.A. Secs. 74-99d03___, *et seq.*;  Kansas City Area Transportation District and Authority, K.S.A. Secs. 12-2524, *et seq.*; Redevelopment Authority for Federal Enclave (Sunflower Army Ammunition Plant, Johnson and Douglas Counties), K.S.A. Secs. 19-4904, *et seq.*; Kansas Turnpike Authority, K.S.A. Secs. 68-2003, *et seq.*; Kansas Water Authority, K.S.A. Secs. 74-2613, *et seq.*; Johnson County Education Research Triangle Authority, K.S.A. Secs. 19-5001, *et seq.*; City or County Port Authorities, K.S.A. Secs. 12-3401, *et seq.*; City or County Airport Authorities, K.S.A. Secs. 3-162, *et seq.*; Municipal Housing Authorities, K.S.A. Secs. 17-2340, *et seq.*; Capitol Area Plaza Authority, K.S.A. Secs. 75-2237, *et seq.*; Juvenile Justice Authority, K.S.A. Secs. 75-7001, *et seq.*

100.     In addition, as noted by this Court in its earlier *Memorandum and Order* (ECF No. 83), p. 11, KUCR "is not named in a state statute."  Other entities, in contradistinction, are.  For example, the Kansas University Endowment Association statutorily is named as the endowment association for the University of Kansas.  *See* K.S.A. Sec. 76-718b ("The Kansas university endowment association shall be the official foundation of the University of Kansas"), K.S.A. Sec. 76-756(b)(5)("endowment association" for the University of Kansas for capital improvements is the Kansas University Endowment Association). Of interest, according to Kansas Attorney General Opinion No. 80-239, November 4, 1980, copy attached as Exhibit PP, the Kansas University Endowment Association and is not subject to the Kansas Public Records Law, K.S.A. Sec. 76-721).

---

[19] **76-2a11.   Research foundation abolished; property and assets transferred to board of regents.** The research foundation of Kansas is hereby abolished.  All property and assets of the research foundation are hereby transferred to the state board of regents on the effective date of this act.

[20] This likely explains why KUCR's articles of incorporation and related corporate documents do not refer to any state enabling statute.  As far as state law is concerned, KUCR is simply a general non-profit corporation under the non-profit corporation provisions of the Kansas General Corporation Code, K.S.A. Secs. 17-101, *et seq.*

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF                                    48
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

101.     K.S.A. Chapter 76, Art. 7, "State Educational Institutions: Operation and Management," that applies generally to the Board of Regents, Kansas University, Kansas State University, Wichita State University, Emporia State University, Pittsburg State University and Ft. Hays State University as "educational institutions."  K.S.A. Sec. 76-111.

102.     There are seven generic statutes in Art. 7, none specific to KUCR, that could apply to KUCR.  These statutes were separately passed and amended at different times from 1970 through 2012.  These seven statutes (a) permit colleges and universities to contract generally with "controlled corporations" to perform university related work, K.S.A. Sec. 76-721; (b) permit colleges and universities to contract for Sponsored Research without using state competitive bidding, K.S.A. Sec. 76-752(a); (c) permit colleges and universities to contract with "research foundations" to construct research facilities upon university lands but only if totally financed by non-state funds, K.S.A. Sec. 76-759(a); (d) allow the Kansas Board of Regents to enter into agreements for the operation and management of scientific research and development facilities, K.S.A. Secs. 76-777, *et seq*.; (e) exempt purchases for goods and services from state sales tax by a state university (not an outside corporation) for a research and development activity K.S.A. Sec. 76-777(b); and (f) make the state not liable for any debts under Ch. 76, K.S.A. Secs. 76-734 and 76-783 (two separate statutes).   Each statute is discussed below.

K.S.A. SEC. 76-721
CONTRACTS WITH CONTROLLED CORPORATIONS

103.     K.S.A. Sec. 76-721[21] is not enabling legislation for the formation of a corporation or authority like KUCR.  However, it generally authorizes Kansas colleges and universities to enter into contracts with outside entities if the purpose of the contract is related to the operation of the college or university.

**Authority to contract; contracts with controlled corporations to have certain provisions; contracts subject to 75-3711b.** The board of regents, or any state educational institution with the approval of the board of regents, may enter into contracts with any party or parties including any agency of the United States or any state or any

---
[21] L. 1970, ch. 371, § 11; L. 1977, ch. 237, § 36; L. 1979, ch. 289, § 4; L. 2003, ch. 114, § 5; July 1.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF                          49
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

subdivision of any state or with any person, partnership or corporation if the purpose of such contract is related to the operation or function of such board or institution. If such contract is with a corporation whose operations are substantially controlled by the board or any state educational institution, such contract shall provide that the books and records of such corporation shall be public records and shall require an annual audit by an independent certified public accountant to be furnished to the board of regents and filed with the state agency in charge of post auditing state expenditures. All contracts of state educational institutions shall be subject to the provisions of K.S.A. 75-3711b [regarding approval of state finance council], and amendments thereto.

K.S.A. Sec. 76-721.

104.   This statute is generic and could apply to a wide range of activities, *e.g.,* contracts for the provision of computer services, trash removal, landscaping services, traffic control, energy conservation, etc.  To the extent an annual audit is required for entities "substantially controlled" by a college or university, such a requirement applies to numerous entities that are not "arms of the state," *e.g.,* school districts and municipalities are required to submit annual audits under K.S.A. Sec. 75-111 but are not "arms of the state," and is a "minor string" to be "ignored" in an "arm of the state" analysis, according to Judge Posner in *Takle v. University of Wisconsin Hospital and Clinics Authority*, 402 F.3d 768, 771 (7th Cir. 2005), cited approvingly by the 10th Circuit in *Sikkenga v. Regence v. blue Cross Blue Shield of Utah*, 472 F.3d 702, 721 – 722 (10th Cir. 2006).

105.   Accordingly, while this statute permits the University (as its focus, not an entity like KUCR as its focus) to contract with an entity like KUCR, this statute does not meaningfully shed light on the status of the Center of Research as an "arm of the state."  It does not address the *autonomy* and *financial independence* "arm of the state" factors for an entity like KUCR and, therefore, weighs heavily against KUCR being an "arm of the state."

K.S.A. Sec. 76-752(A)
SPONSORED RESEARCH CONTRACTING

106.   K.S.A. Sec. 76-752(a)[22] also is not enabling legislation for an entity like KUCR. However, it permits state universities to enter into contracts with an outside Sponsored Research entity

---

[22] L. 1986, ch. 348, § 2; July 1.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

50

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

like KUCR to do Sponsored Research projects, *e.g.,* the Affiliation Agreement, copy attached as Exhibit Q, in this action, without putting the matter out to bid to other Sponsored Research providers or otherwise complying with state purchasing procedures.

> When a sponsored research project involves the state educational institution and one or more other entities, the state educational institution is authorized to enter into contracts with such entities and such contracts shall not be subject to K.S.A. 75-3738 to 75-3740a, inclusive, [state requirements for purchasing, competitive bidding, etc.]

K.S.A. Sec. 76-752(a).

107.    Accordingly, this statute does not shed light on the status of KUCR other than permitting the University to contract with KUCR, *e.g.*, the Affiliation Agreement in this action, without competitive bidding open to other Sponsored Research providers.  While it may extend a form of preferred provider status to KUCR, it does not address the *autonomy* and *financial independence* "arm of the state" factors and, therefore, weighs against KUCR being an "arm of the state."

K.S.A. Sec. 76-759(a)
CAPITAL IMPROVEMENTS BY RESEARCH FOUNDATIONS

108.    K.S.A. Sec. 76-759(a)[23] permits private "research foundations" to construct research facilities upon state universities' lands if approved by the Kansas Board of Regents and the state's secretary of administration if "totally financed from nonstate moneys of the research foundation."  Upon completion, the facilities become the property of the State of Kansas.  "Research foundation" is defined as:

> . . . any not-for-profit research foundation organized and operated for the primary purpose of encouraging, fostering and conducting scholarly investigation and other types of research for the benefit of a state educational institution.

K.S.A. Sec. 76-759(b)(2).

109.    This statute *may* have provided authority for KUCR to construct the Structural Biology Center and the Multi-Disciplinary Building.  However, these buildings were built on Endowment

---

[23]Passed in 2000.  L. 2000, ch. 149, § 6; L. 2005, ch. 43, § 1; July 1.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

51

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-cv-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

Association land, not University land.   *See* Goddard Deposition, pp. 122:5 – 123:19.[24]   In addition, contrary to the statute, the KUCR Restated Articles of Incorporation, Article Fifth, para. 4, copy attached as Exhibit TT, the statute provides that in the event of termination of the corporation, its assets are to be distributed to the University of Kansas Endowment Association, not the University as required by K.S.A. Sec. 76-759(a).

110.   As to the *autonomy* and *financial independence* "arm of the state" factors, this statute weighs against KUCR being an "arm of the state."   It requires the entity to use "non-state" funds, meaning it must be financially independent.   Therefore, this weighs against KUCR being an "arm of the state."

K.S.A. SEC. 76-770(B)
SALES TAX EXEMPTION FOR RESEARCH AND DEVELOPMENT

111.   K.S.A. Sec. 76-770(b)[25] exempts from state sales tax purchases for goods and services *by a state university*, not a separate research corporation, for a "research and development activity," defined at K.S.A. Sec. 76-770(c)(1) as "sponsored research project at a state educational institution."   "Sponsored research" however, does not appear to be a defined term.

112.   By its terms, this statute does not apply to KUCR.   It applies to purchases "by a state university," not a separate corporate entity.

113.   In any event, many non-profit and similar organizations and activities are exempt from state sales tax, *e.g.,* public or private non-profit hospitals, blood banks and organ banks; public or private elementary and secondary schools; homebound elderly meal delivery organizations; youth development organizations; community-based organizations assisting disabled persons; community-based mental health centers; non-profit public health organizations; low income housing weatherization organizations; nonprofit museums and historical associations; public broadcasting stations; rural volunteer fire-fighting

---

[24] Perhaps the land was conveyed by the Endowment Association to the University as part of the bonded debt transaction.

[25] L. 1987, ch. 338, § 1; L. 2011, ch. 104, § 46; July 1.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

52

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-cv-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

organizations; habitat for humanity organizations; nonprofit zoos; parent-teacher associations; religious organizations exempt from federal income tax; primary care medical clinics for underserved individuals and families exempt from federal income tax; domestic violence organizations; nonprofit food pantries; special olympics organizations; public libraries; and homeless shelters.  K. S.A. Sec. 79-3606.

114.    As to the *autonomy* and *financial independence* "arm of the state" factors, this statute weighs against KUCR being and "arm of the state."  By its terms, it applies to University purchases, not those of another entity.   To the extent the statute could be construed to apply to KUCR, many organizations' purchases are exempt from state sales taxes that no one suggests are "arms of the state," *e.g.,* religious organizations, social service organizations, volunteer fire departments, food pantries, etc., another "minor string" in the analysis.

115.    Accordingly, this statute does not shed light on the status of the Center of Research as an entity and weighs against KUCR being an "arm of the state."

K.S.A. SECS. 76-777, ET SEQ.,
BOARD OF REGENTS CONTRACTING FOR RESEARCH FACILITIES

116.    The University Research and Development Act, K.S.A. Secs. 76-777, *et seq.*[26], authorizes the Kansas Board of Regents to enter into agreements for "the operation and management of scientific research and development facilities, K.S.A. Sec. 76-780(a), defined as "any facility, including real and personal property for which the primary purpose is to promote scientific research and development and which is under control" of a state university, K.S.A. Sec. 76-779(c), including borrowing money from the Kansas Development Finance Agency ("KDFA") to acquire, construct and equip scientific research and development facilities, K.S.A. Sec. 76-780(b).

117.    However, under K.S.A. Sec. 76-783 regarding KDFA bond financing on behalf of the board of regents for scientific research and development activities, "the state shall not be liable for bonds

---

[26] L. 2002, ch. 120, § 1; May 23.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

53

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

issued by the Kansas development finance agency on behalf of the board of regents" and which "shall not

constitute a debt of the state."

118.    No agreements with the Board of Regents have been produced in discovery or otherwise

produced in this action.

119.    However, KUCR may have benefitted from this borrowing authority to borrow funds, but

financially non-recourse to the state, to construct the Structural Biology Center and the Multidisciplinary

Research Building.

120.    Accordingly, this statute does not shed light on the status of KUCR as an entity and

weighs against KUCR being an "arm of the state."

### K.S.A. SECS.76-734 AND 76-783 AND STATE NOT LIABLE FOR DEBTS UNDER CH. 76

121.    Assuming *arguendo* that KUCR operates in any way under Ch. 76, Art. 7, by statute the

state is not responsible for any debts, obligations, liabilities or judgments of KUCR.  Specifically:

> The state of Kansas and its agencies, institutions, officers and employees shall not be
> liable for the debts, obligations or liabilities of any organization for which a function
> under this act is performed.

K.S.A. Sec. 76-734.[27]

122.    Similarly, under the Ch. 76, Art. 7 provisions permitting the KDFA to offer conduit

financing for scientific research and development facilities, *see* K.S.A. Sec. 76-777, *et seq.*, the state

explicitly is not liable for any KDFA bonds:

> The bonds shall be special, limited obligations of the Kansas development finance
> authority and the state shall not be liable for bonds issued by the Kansas development
> finance authority on behalf of the board of regents, and such bonds shall not constitute a
> debt of the state.

K.S.A. Sec. 76-783(i).[28]

---

[27] L. 1974, ch. 410, § 3; July 1.

[28] L. 2002, ch. 120, § 7; L. 2010, ch. 44, § 33; L. 2010, ch. 165, § 148; L. 2011, ch. 118, § 183; L. 2012, ch. 175, § 159; July 1.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

54

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

123.     *Factor One Conclusion:*  Characterization of Entity under State Law, provides no or little support for KUCR as an "arm of the state," as follows:

(a)     There is no authorizing or enabling statute specifically for the formation of KUCR.

(b)     There is no enabling statute for formation in general of research foundations. While at one time there as a Research Foundations Act, it was repealed.  Universities are permitted to contract with research foundations, but there is no special statutory recognition of research foundations other than as general business entities engaged in research.

(c)     The only statutory authority for formation of KUCR is the general corporations law, permitting the formation on non-profit corporations.

(d)     One statute refers generally to the Board of Regents and a college's or university's being able to contract with corporations if the purpose of the contract is related to the operation or function of the board or institution, *if* approved by the Board of Regents.  However, there is no evidence in this case of Board of Regents' approval.  In addition, this statute does not authorize or characterize KUCR in any manner.

(e)     Even if there was specific enabling legislation for KUCR or generally for research foundations or corporations, "[t]he mere imprimatur of state authority is insufficient to inoculate an agency or institution against federal court jurisdiction.  A 'slice of state power,' without more will not sate the Eleventh Amendment." *Metcalf and Eddy*, 991 F.2d at 939, citing *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979).

(f)     Further, as to a requirement for open meetings and records compliance and annual audits, such requirements apply to non-arm-of-the-state entities like school districts and municipalities.  Accordingly, as stated by Judge Posner writing for the 7th Circuit in *Takle v. University of Wisconsin Hospital and Clinics Authority*, 402 F.3d 768, 771 (7th Cir.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

55

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

2005)(hospital affiliated with the University of Wisconsin not an "arm of the state"), cited with approval by the 10th Circuit in *Sikkenga v. Regence v. Blue Cross Blue Shield of Utah*, 472 F.3d 702, 721 – 722 (10th Cir. 2006), are "minor strings" to be "ignored" in an "arm of the state" analysis, at least in that case.

*Factor Two*
*Autonomy - Guidance and Control Exercised by State*

124.    The Board of Regents policy on "university controlled affiliated corporations" is helpful. KUCR appears to be a "university controlled affiliated corporation" under Board Policy Manual, Ch. II, Pt. D, "Affiliated Corporations, Sec. 7(a)(i)(1).

125.    Documents produced in discovery, *e.g.,* KUCR bylaws and board of trustee meeting minutes, have  shown that a majority of a quorum of the board of directors, or other committee charged with making decisions on behalf of the corporation, in this case the board of trustees, are university personnel or appointed by the state university chief executive officer.

126.    *Factor Two Conclusion*:   Guidance and Control by the State:  KUCR is controlled by the University.  This weighs in favor of KUCR being arm of the state.

*Factor Three*
*Financial Independence:  Degree of State Funding Received*

127.    KUCR is financially independent and receives very little state funding, not of it as an appropriation.

128.    *Financial Independence.*  KUCR is financially very strong.  As summarized in Table X, KUCR the last five years has had average annual revenues of  $166.7 million, only 2.5% of which has come from the state.  The money from state sources has been for services provided, not appropriation funds.  *See* Goddard Deposition, KUCR Secretary/Treasurer, pp. 77-13 – 78:14; copy attached as Exhibit A; Gordzica Deposition, University Chief Financial Officer, pp. 24:24 – 23:9; 11:19 – 12:6, copy attached as Exhibit G.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

56

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

129.     KUCR downplays the significance of its strong financial position because its principal client, so to speak, is the University, making it dependent on the University.  However, KUCR cites no decisions in support of this notion other than the weight of significant commercial income as an indicator that an entity is not an "arm of the state."

130.     In fact, decisions evaluating state authorities created by statute deriving their revenues from state sanctioned franchises such as rail, water and sewer service consistently are determined not to be arms of the state when assessing the financial independence factor.  *See* is *Hess v. Port Authority Trans Hudson Corporation,* 513 U.S. 30, 115 S.Ct. 394, 130 L.Ed.2d 245, 63 U.S.L.W. 4009 (1994)(bi-state compact PATH commuter rail service between New Jersey and Manhattan Island); *Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct and Sewer Authority*, 991 F.2d 935 (1st Cir. 1993)(water and sewer utility for Commonwealth of Puerto Rico); *Elam Construction District v. Regional Transportation District*, 129 F.3d 1343, 1345 (10th Cir. 1997)(state statutorily created transit district authority).

131.     Indeed, *KUCR was formed not to be an "arm of the state," but to distance itself from the state* according to its legal counsel.  *See* Email from David R Cooper, legal counsel for defendant KUCR, to Daniel R. Cofran, legal counsel for plaintiff, December 7, 2015, copy attached hereto as Exhibit C. According to Mr. Cooper, KUCR was formed and is used to keep Sponsored Research funds "beyond the reach of the Kansas legislature and the executive when it comes to sweeping funds to bolster the State General Fund."  Counsel's statement within the scope of his representation is a binding agent's admission under Fed.R.Evid. 801(d)(2)(D).  *United States v. Adams,* 422 F.2d 515, 518 (10th Cir. 1970).  *See also United States v.  Harris,* 914 F.2d 927, 931 - 932 (7th Cir. 1990)(counsel's out of court statements not hearsay under Fed.R.Evid. 801(d)(2)(D)); *United States v. Brandon*, 50 F.3d 464, 468 – 469 (7th Cir. 1995)(counsel's out of court statement in response to grand jury subpoena not hearsay under Fed.R.Evid. 801(d)(2)(D)).  See also *Shanklin v. Thaler*, Case No. 09-20665 (D.Tex. April 14, 2011), copy attached as Exhibit RR.  While legal counsel's admissions are evaluated carefully under Fed.R.Evid. 801(d)(2)(D) in

criminal cases because of the attorney-client relationship and constitutional protections, *Harris*, 914 F.2d at 931, *Brandon*, 50 F.3d at 468 – 469, that is not the case in civil cases.

132.     *State Not Liable for KUCR Debts.*  The state is not responsible for any judgment entered against KUCR, the paramount consideration in any "arm of the state" analysis under the Supreme Court's and the 10th Circuit's decisions.  *Hess*, 513 U.S. at 48-49.  To the extent KUCR might arguable derive its existence, authority and powers from any of the K.S.A. Ch. 76 statutes discussed above, which it does not, K.S.A. Sec. 76-734 makes it clear the state is not liable for any debts, including judgments, of any Ch. 76 entities.

> The state of Kansas and its agencies, institutions, officers and employees shall not be liable for the debts, obligations or liabilities of any organization for which a function under this act is performed.

K.S.A. Sec. 76-734.

133.     This court in *Kansas State University v. Prince*, 673 F.Supp.2d 1287, 1304 (D.Kan. 2009), reviewed K.S.A. Sec. 76-734 and held it to be "very clear on the question whether a judgment against IAC would be paid from the state's treasury" and held that "the Kansas legislature had answered this question with a resounding, 'No,'" based on this statute.

134.     This is dispositive.  Primacy is given to whether any judgment against an entity would be satisfied out of the state treasury in an "arm of the state" analysis.  *Regents of the University of California v. Doe*, 519 U.S. 425, 430, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997)( "whether a money judgment against a state instrumentality or official would be enforceable against the State is of considerable importance to any evaluation of the relationship between the State and the entity or individual being sued"); *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 48, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994)("the impetus for the Eleventh Amendment" was "the prevention of federal-court judgments that must be paid out of a State's treasury"); *Duke v. Grady Municipal Schools*, 127 F.3d 972, 981 (10th Cir. 1997)(state treasury liability is "the most important factor" in an arm-of-the-state analysis); and *Ormsby v. C.O.F. Training*

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

58

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL. CASE NO. 2:14-CV-02420-SAC-KGS UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

*Services, Inc.,* 194 F.Supp.2d 1177, 1182 (D.Kan. 2002)("status as an "arm of the state" heavily depends on whether the Kansas treasury will bear liability for the judgment sought in the case").[29]

135.    *Factor Three Conclusion* – Financial Independence and State Treasury Liability.  .  This factor weighs overwhelmingly in favor of KUCR not being an "arm of the state."  In addition, of the four factors, it is the controlling factor.

*Factor Four*
*Financial Independence: Entity Ability to Issue Bonds and Levy Taxes*

136.    KUCR has the power to issue bonds under its articles of incorporation, *see* Restated Articles of Incorporation, Art. Second (j), copy attached as Exhibit TT.  These would be private, corporate bonds.  However, as discussed above, under K.S.A. Sec. 76-780(b), KUCR can use the Kansas Development Finance Agency bonding authority as a "conduit," see Gordzica Deposition, University Chief Financial Officer, pp. 35:22 -24, copy attached as Exhibit G, for bonded debt borrowing, with KUCR not the state, as the "obligor," but the state has no liability under any such bonds.  "The state shall not be liable for bonds issued by the Kansas development finance agency on behalf of the board of regents" and such bonds "shall not constitute a debt of the state."  K.S.A. Sec. 76-783.

137.    KUCR states in its *Memorandum in Support of University of Kansas Center for Research's Motion for Summary Judgment* (ECF No. 157), p. 18, that "KUCR did not have the authority to issue the bonds by itself, but instead was required to work through the Kansas Development Finance Authority."  This is not correct.  This is nowhere in the record.  KUCR has the corporate authority to issued bonds under its Restated Articles of Incorporation, Art. Second (j), copy attached as Exhibit TT. It merely used KDFA as a "conduit" in order to get a better interest rate for that portion of the borrowing

---

[29] This court, of course, gave less weight to the state not being liable for a judgment against the Intercollegiate Athletic Council of Kansas State University, Inc. under K.S.A. Sec. 76-734 in *Prince*, noting, as a diversity of citizenship case under 28 U.S.C. Sec. 1332, that "'concern with protecting the state treasury is not as relevant . . . . Thus in contrast to cases involving an entity's entitlement to Eleventh Amendment immunity, the effect of the action on the state treasury will not be controlling,'" citing *Maryland Stadium Authority v. Ellerbe Beckett, Inc.,* 407 F.3d 255, 262 (4th Cir. 2005).  *Prince,* 673 F.Supp.2d at 1304-1305.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF                                    59
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

that was done as tax exempt bonds.  *See* Deposition of Theresa Gordzica, University Chief Financial Officer, 2016, pp.35:22 – 36:18, attached as Exhibit G.

138.    Ms. Goddard testified in her deposition that the University has agreed to perform KUCR's obligations in the event of default under the KDFA bonds for these two buildings. However, this is limited to the financing for two buildings; there is no evidence that the University agreed to perform KUCR's obligations under all KUCR debt.  In addition, this was done by agreement of the University, no doubt to enhance the borrowing for, *inter alia*, a lower interest rate, not by any statutory requirement.

139.    KUCR does not, however, have the power to levy taxes.  However, the power to levy its own taxes is a factor oriented to distinguishing between levels of government entities, *e.g.,* school district, water and sewer authority, transit authority ("Level of Government Decisions") , and not to determining whether a corporate entity is functioning as an alter ego of a state or state agency ("Alter Ego Decisions").  *See for example Sturdevant* (state board of community colleges); *Sutton v. Utah State School for the Deaf and Blind*, 173 F.2d 1226, 1232 (10th Cir. 1999)(state school for deaf and blind); *Duke v. Grady Municipal Schools*, 127 F.3d 972, 982 (10th Cir. 1997)(school district); *Elam Construction District v. Regional Transportation District*, 129 F.3d 1343, 1345 (10th Cir. 1997)(transit authority); *Sonnenfield v. City and County of Denver*, 100 F.3d 744, 749 (10th Cir. 1996)(consolidated city and county); *White v. Adams County Detention Facility*, 69 F.3d 549, 549 (10th Cir. 1995)(county jail); *Haldeman v. State of Wyoming Farm Loan Board*, 32 F.3d 469, 473 (10th Cir. 1994)(farm loan board); *Mascheroni v. Board of Regents of the University of California*, 28 F.3d 1554, 1559 (10th Cir. 1994)(state board of regents operating federal laboratory); *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (school district); *Garcia v. Board of Education of the Socorro Consolidated School District*, 777 F.2d. 1403, 1412 (10th Cir. 1985)(school district, dissenting opinion); *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1493 (10th Cir. 1983)(state army national guard, no taxing power of its own);

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

60

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

140.    In Alter Ego Decisions, however, the power to borrow and levy taxes not included as a factor.  *Sikkenga* (state university hospital pathology clinic); *Watson v. University of Utah Medical Center*, 75 F.3d 569, 575 (10th Cir. 1996)(state university hospital).

141.    *Factor Four Conclusion:*  KUCR is not an "arm of the state" under this factor.

*The Twin Reasons:*
*State Treasury Liability and Dignity of the State*

142.    KUCR has not met its burden under the four-factor analysis.  Only one of the four factors, namely, state control, weighs in its favor. It has not met its burden on the other three factors.

143.    To the extent the Court might consider that the "indicators of immunity point in different directions," then "the Eleventh Amendment's twin reasons for being remain [the] prime guide."  *Hess*, 513 U.S. at 47.  The twin reasons are protecting (a) a state's fisc and (b) a state's dignity.  *See* this Court's earlier *Memorandum and Order* (ECF No. 83), p.24.

144.    The Kansas state treasury is fully protected in this case as discussed above.

145.    As to dignity, circuit courts provide very little guidance.  However, and in any event, KUCR has pointed to no facts supporting a notion that Kansas' dignity as a state will be sullied by holding a non-profit corporation that it has not recognized by statute and for which it has no financial responsibility being held responsible for its acts.

146.    Moreover, if anything, KUCR has sullied the dignity of the state by being formed to separate and distance itself from the state, specifically, to keep its millions beyond state reach.

*Liability Insurance and Indemnity*

147.    The Court in its *Memorandum and Order* (ECF No. 83), p. 22, August 21, 2015, denying without prejudice KUCR's earlier motion to dismiss based on its asserted "arm of the state" status, noted how the parties at that earlier stage of the case had not addressed how the Insurance and Indemnification provision of the Affiliation Agreement, copy attached as Exhibit TT, impacted this case.

148.    In addition, KUCR claims in its *Memorandum in Support of University of Kansas Center for Research's Motion for Summary Judgment* (ECF No. 157), a pp. 18, 19 – 20, that the University's

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

61

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

standing behind KUCR's KDFA bonds and its indemnity obligations under the Affiliation Agreement, copy attached as Exhibit Q, and the Kansas Tort Claims Act, means that the state treasury is exposed to money judgments.

149.    Liability insurance and indemnity are not relevant to an "arm of the state" analysis. Insurance and indemnity rights are not listed as an "arm of the state" factor in any of the decisions.

150.    Indeed, the Supreme Court has held, as discussed above, an "entity's potential legal liability, rather than its ability to require a third party to reimburse it, or to discharge the liability in the first instance" drives the analysis. *Regents of the University of California v. Doe*, 519 U.S. at 431.  The 10th Circuit agreed in *Sturdevant*, 218 F.3d at 1164 (courts "focus on legal liability for a judgment, rather than practical or indirect [*e.g.,* insurance or indemnity making treasury whole] impact a judgment would have on a state's treasury.")

151.    Similarly, in *Takle v. University of Wisconsin Hospital and Clinics Authority*, 402 F.3d 768, 771 (7th Cir. 2005), cited approvingly by the 10th Circuit in *Sikkenga v. Regence v. Blue Cross Blue Shield of Utah*, 472 F.3d 702, 721 – 722 (10th Cir. 2006), Judge Posner questioned whether the state treasury would be at risk if the University of Wisconsin Hospital and Clinics Authority had taken out liability insurance to fund possible judgments and concluded liability insurance was not relevant:

> Is Wisconsin's "sovereignty" impaired if the hospital is suable in a federal court?  It would be if the hospital were financed by the state . . . [citations omitted], so that any judgment against it would be paid out of state funds, unless the state had taken out some form of liability insurance [citation omitted] – but that would not negate its liability, for unless it were liable it wouldn't need liability insurance.

*Takle*, 402 F.3d at 769.

### *Kansas Tort Claims Act*

152.    KUCR cites the Affiliation Agreement's references to the Kansas Tort Claims Act, K.S.A. Sec. 75-6101, *et seq.*, concluding that it shows that the parties contemplated that KUCR was covered by the Act.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

62

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

153.     The language may suggest the opposite.  Under the Affiliation Agreement, copy attached as Exhibit Q, at Sec. 7, states that the that the University is covered by the Kansas Tort Claims Act, but requires KUCR to secure its own commercial liability insurance policy (minimum $1.0 per incident and $2.0 million aggregate per year) for KUCR's operations and to be responsible for "liability arising out of the negligence and errors and omissions of KUCR agents and employees, excluding KU faculty and staff members to the extent they are participating in or supporting sponsored research or technology transfer through KUCR, up to and subject to the limitations contained in the provisions of the Kansas Tort Claims Act."  The University agrees to be responsible for negligence, errors and omissions of its own agents and employees.

154.     The insurance requirement demonstrates that the parties may not have considered KUCR to be the "state of Kansas [or] any department or branch of state government, or any agency, authority, institution or other instrumentality" entitled to coverage under the Act.

155.     Under the Kansas Tort Claims Act, a "governmental entity" is liable for damages "caused by the negligent or wrongful act or omission of any of its employees" acting within the scope of their employment" if "the the governmental entity, if a private person, would be liable under the laws of this state."  K.S.A. Sec. 75-6103.  In such an event, however, compensatory damages are limited to "$500,000 for any number of claims arising out of a single occurrence or accident," K.S.A. Sec. 75-6105(a), punitive damages and pre-judgment interest are not allowed, K.S.A. Sec. 75-6105(c),

156.     The language in the Insurance Indemnification section of the Affiliation Agreement is not clear.  In any event, insurance and indemnity rights do not drive "arm of the state" decisions.

### *Whether KUCR Has Employees Is Not Relevant*

157.     KUCR makes much of the assertion that it has no employees.  *See Memorandum in Support of University of Kansas Center for Research's Motion for Summary Judgment* (ECF No. 157), pp. 4, para. 11, and pp. 14-15.

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

63

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

158.     Whether an entity claiming "arm of the state" status has employees is not cited as a factor in any of the "arm of the state" decisions, nor has KUCR referred the Court or counsel to any decisions so holding.

159.     In any event, the "borrowed servants" under the Employee Services Agreement, copy attached as Exhibit S, are its employees.

160.     In addition, KUCR has consistently filed Form 990 federal income tax returns claiming employees in Form 990, Part VII, "Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees and Independent Contractors."

161.     KUCR has paid out a total of $4,464,414 of its own funds, an average of $892,883 per year, for the five fiscal years ending 2009 – 2015 for all five categories of "officers, directors, trustees, key employees, highest compensated employees."   *See* attached Exhibit Z, "Persons KUCR Reported to IRS as Its Highest Compensated Employees, Key Employees, Officers and Directors."  While, of course, non-employees can serve and earn fees as "directors" or "trustees," that is not the case with persons identified as "key employees" and "highest compensated employees" of the reporting entity.  "Officers" may or may not be employees.  To be conservative, persons reported to the IRS as "key employees" and "highest compensated employees" were paid a total of $1,185,225 for the five years, an annual average of $237,045 , as shown in Table 4 above.

*Miscellaneous*

162.     KUCR states numerous times in its *Memorandum in Support of University of Kansas Center for Research's Motion for Summary Judgment* (ECF No. 157), that the Sponsored Research activity is "conducted by the University of Kansas," pp. 16 (twice), 17 and 18; that the Sponsored Research grants are "grants awarded to the University of Kansas, p. 20 and 22; and that "the F & A monies are paid to the University," p. 18.

163.     This is not correct.  This has no support in the record.  KUCR applies for the grants, KUCR is the grant recipient, KUCR is the recipient of the grant funds, KUCR keeps the grant funds in its

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF                                        64
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

own corporate bank account, KUCR does the research work with employees "borrowed" from the University and KUCR retains the Facilities and Administration reimbursements in its corporate bank account. *See for example* Goddard Deposition, KUCR Secretary/Treasurer, pp. 19:16 – 21:20, 22:23 – 23:1, copy attached as Exhibit A, and Gordzica Deposition, University Chief Financial Officer, pp. 31:7 – 3:17, 51:14 – 52:9.

164.    In addition, KUCR states in its *Memorandum in Support of University of Kansas Center for Research's Motion for Summary Judgment* (ECF No. 157), that it follows the University's financial system and purchasing process. This is correct, but it is not required by state law. According to Ms. Goddard, it is done as a practical matter of good business practice and financial overview. *See* Goddard Deposition, KUCR Secretary Treasurer of KUCR, pp. 73:16 – 74:8, 117:21 – 117:24, 115: 18 – 116:15, copy attached as Exhibit A.

Respectfully submitted,


/s/ Daniel R. Cofran
Daniel R. Cofran, Esq.
Kansas Supreme Court Enrollment No. 23258

1000 W. 70th St.
Kansas City, Missouri
Phone:  816-363-1218
Email:  dcofan@swbell.net

ATTORNEY FOR PLAINTIFF DAVID S. MOORE,
PH. D.

### Certificate of Service

The undersigned hereby certifies that copies of the above and foregoing *Plaintiff's Memorandum in Opposition to "Arm of the State" Motion to for Summary Judgment of Defendant University of Kansas Center for Research, Inc.* were mailed by first class mail, postage prepaid; facsimile;  hand delivery; electronic mail; and/or CM/ECF electronic filing, as indicated, this 16th day of May, 2015 to:

David R. Cooper, Esq.                    (By CM/ECF Electronic Filing)
Kevin J. Grauberger, Eq.                 (By CM/ECF Electronic Filing)
Fisher, Patterson, Sayler & Smith, L.L.P.
3550 SW 5th Street
P.O. Box 949
Topeka, Kansas  66601-0949

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

65

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-CV-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

Attorneys for defendants University of Kansas,
University of Kansas Center for Research, Inc.,
Bernadette Gray-Little, Jeffrey S. Vitter,
Steven F. Warren and Joseph P. Heppert.


_____/s/ Daniel R. Cofran_____
              Daniel R. Cofran


## Index of Exhibits Electronically Filed Contemporaneously Herewith as Separate Document

PLAINTIFF'S LEGAL MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF
UNIVERSITY OF KANSAS CENTER FOR RESEARCH, INC.

66

DAVID S. MOORE, PH.D. V. UNIVERSITY OF KANSAS, ET AL.
CASE NO. 2:14-cv-02420-SAC-KGS
UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS